Robert A. Rich  
HUNTON & WILLIAMS LLP  
200 Park Avenue  
New York, New York 10166  
Telephone: (212) 309-1132  

Hearing Date: March 3, 2017 at 10:00 a.m.  
Objection Deadline: February 6, 2017 at 4:00 p.m.  
Re: Docket No. 13

- and -

Gregory G. Hesse (to be admitted *pro hac vice*)  
Texas State Bar No. 09549419  
HUNTON & WILLIAMS LLP  
1445 Ross Avenue, Suite 3700  
Dallas, Texas 75202-2799  
Telephone: (214) 468-3335  

*Attorneys for GENBAND US LLC*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: <br><br> AVAYA INC., *et al.*[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 17-10089 (SMB) <br><br> Jointly Administered |

**OBJECTION OF GENBAND (US) LLC TO DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(3), 364(c)(3), 364(d)(1), AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364, AND 507(b) AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9828); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229). The location of Debtor Avaya Inc.'s corporate headquarters and the Debtor's service address is: 4655 Great America Parkway, Santa Clara, CA 95054.

GENBAND (US) LLC ("GENBAND"), by and through its undersigned counsel, hereby files this Objection (the "Objection") to *Debtors' Motion seeking Entry Of Interim And Final Orders (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(3), 364(c)(3), 364(d)(1), and 364(e) And (B) To Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection To Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364, and 507(b) and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) And (c)* (the "DIP Financing Motion") filed by Avaya, Inc., et. al (the "Debtors") in the above-captioned case. In support of this Objection, GENBAND respectfully states the following:

## I.    PRELIMINARY STATEMENT

1.    GENBAND objects to the DIP Financing Motion because it fails to preserve the rights that GENBAND has as beneficiary of a constructive trust over any and all accounts receivable or the proceeds of accounts receivable as a result of services provided directly to customers of the Debtors. Additionally, GENBAND is a secured creditor as a result of certain rights of setoff it has. GENBAND objects to the proposed DIP Financing Motion to the extent that the proposed order results in a lien that primes GENBAND's rights of setoff. For these reasons and the reasons set forth in more detail herein, the DIP Financing Motion should be denied.

## II.    PROCEDURAL BACKGROUND

2.    On January 19, 2017 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have remained in possession of their property and

have continued to operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.   On the Petition Date, the Debtors filed the DIP Financing Motion [Doc. No. 13]. Subsequently, the Court granted the DIP Financing Motion on an interim basis [Doc. No. 61] (the "Interim DIP Order"). The Court has scheduled a final hearing on the DIP Financing Motion for March 3, 2017.

### III.   FACTUAL BACKGROUND

4.   On or about September 30, 2012, GENBAND and certain of the Debtors entered into that certain Amended and Restated Purchase Agreement, as amended from time to time (the "MPA"). Pursuant to the terms of the MPA, Avaya became the sole and exclusive reseller of certain of GENBAND's products, support services, engineering, and installation services with regards to certain customers, including the Cleveland Clinic. In addition to having an obligation to pay GENBAND for the products and service it provided to the Debtors' customers, the Debtors agreed to (a) maintain information they obtained from GENBAND confidential and (b) not reverse engineer, decompile, or disassemble GENBAND's software or otherwise use, sell, copy, sublicense, loan, assign, convey, or transfer any of GENBAND's software or documents in violation of the MPA, including the confidentiality agreement.[2]

---

[2] On the Petition Date, the Debtors filed the *Debtors' Motion Seeking Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Honor Certain Prepetition Obligations to Customers and Partners and (II) Otherwise Continue Certain Customer and Partner Programs in the Ordinary Course of Business and (B) Granting Related Relief* [Doc. No. 4] (the "Third-Party Provider Motion"). In the Third-Party Provider Motion, the Debtors describe their relationship with Third-Party Providers such as GENBAND in the following way:

> In certain instances, although the Debtors contract with and pay the Third-Party Provider directly, the Third-Party Provider ships the requested product or provides the specific Customer support requirements directly to the Customer. For instance, certain Third-Party Providers manufacture and produce accessories that complement the Debtors' Product and Services offerings, and provide these products directly to the Customer in connection with the Customer's order from the Debtors. Similarly, certain Third-Party Providers integrate software solutions that complement the

2

## CLEVELAND CLINIC PROJECT

5. Prior to the Petition Date, as contemplated by the MPA, the Debtors entered into an agreement to supply to the Cleveland Clinic certain of GENBAND's products and services. To fulfill its obligations to the Cleveland Clinic, the Debtors issued purchase orders to GENBAND to provide and install certain equipment at locations owned by the Cleveland Clinic and then to provide consulting services to the Cleveland Clinic, which purchase orders were accepted by GENBAND (the "Cleveland Clinic Contract"). The Cleveland Clinic Contract was a very large project beginning in 2013 and completed in 2016 and encompassed 5 sites. The Cleveland Clinic Contract included the sale of hardware and software, which was installed at the Cleveland Clinic sites. Further, GENBAND provided professional services to the Cleveland Clinic, including hardware engineering; network integration services; project management; installation and commissioning; network engineering services; and GB Care Technical Support Services.

6. GENBAND's portion of the Cleveland Clinic Contract was completed on or about November 22, 2016. As of the Petition Date, the amount owing to GENBAND on the Cleveland Clinic Contract was $556,960.57.[3] As of the date of this Objection, GENBAND does not know if the Debtors have been paid by the Cleveland Clinic.

---

Avaya solutions directly into the product that is shipped to the Customer. And, certain other Third-Party Providers supply services to a Customer, including maintenance and support services, either on-site or remotely. In these instances, the Debtors have no direct contact with the Customer; instead, the Third-Party Provider invoices the Debtors, but provides the Product or Service directly to the Customer. The Debtors then pass these costs to the Customer.

The relationship between GENBAND and the Debtors fits squarely within the Debtors' description of Third-Party Provider.

[3] To preserve its rights, GENBAND has filed an affidavit of mechanics lien against the Cleveland Clinic in the deed records of Cuyahoga County, Ohio.

3

## GB CARE

7. As part of its third-party provider arrangement with GENBAND, on or about December 19, 2016, the Debtors issued a purchase order to GENBAND requesting GENBAND to provide GB Care technical support to the Government of British Columbia (the "BCSC Victoria Site") for the period of January 1, 2017 through December 31, 2017, which purchase order was accepted by GENBAND (the accepted purchase order is hereafter referred to as the "BCSC Contract"). GENBAND has provided GB Care Technical Support services to the BCSC Victoria Site since January 1, 2017 and the amount owing to GENBAND on the BCSC Contract is $59,845.00.

8. As part of its third-party provider arrangement with GENBAND, on or about January 5, 2017, the Debtors issued a purchase order to GENBAND requesting GENBAND to provide GB Care technical support to the Verizon facility in Weldon Springs, Missouri and the Verizon facility at Ashburn, Virginia for the period of January 1, 2017 through December 31, 2017, which purchase order was accepted by GENBAND (the accepted purchase order is hereafter referred to as the "Verizon Contract"). GENBAND has provided GB Care technical support to Verizon since January 1, 2017 and the amount owing to GENBAND on the Verizon Contract is $52,240.00.

## TECHNOLOGY PARTNER CREDITS

9. As a result of the MPA, GENBAND has considered the Debtors to be among its "technology partners" entitling them to certain benefits to assist in selling GENBAND products. One benefit that GENBAND provides to its technology partners, such as the Debtors, is the ability to earn credits to be applied against future purchases ("Coop Credits") based upon the

volume of GENBAND products sold by the technology partner. As of the Petition Date, the Debtors had accrued Coop Credits in the amount of $23,200.73 (the "Debtors' Coop Credits").

## IV. ARGUMENT

10. Section 364 of the Bankruptcy Code permits a debtor to obtain post-petition financing that is necessary to preserve the debtor's estate, provided that the debtor has exercised its "basic business judgement consistent with [its] fiduciary duties" in negotiating and securing such financing. See 11 U.S.C. § 364; *In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). The debtor bears the burden of proving that: (i) the proposed financing is an exercise of sound and reasonable business judgment (ii) the financing is in the best interests of the estate and its creditors; (iii) the transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the debtor's business; (iv) the terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor-borrower and proposed lender; and (v) the financing was negotiated in good faith and at arm's length by the debtor, on the one hand, and the lender, on the other hand. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del 2011); *In re St. Mary's Hosp.*, 86 B.R. 393, 401 (Bankr E.D. Pa. 1998); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 879-80 (Bankr. W.D. Mo. 2003); *In re Tenney Vill. Co., Inc,*. 104 B.R. 562, 569 (Bankr D.N.H. 1989) ("The [d]ebtor's pervading obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries."). In short, the financing's terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit" of a secured creditor. *Tenney Vill.*, 104 B.R. at 568.

11. Courts closely analyze a debtor's exercise of its business judgement when the proposed financing terms "would tilt the conduct of the bankruptcy case; prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors; or leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits." *Ames Dep. Stores*, 115 B.R. at 37 (citations omitted); *see, e.g. In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr D.N.C. 1985) ("Many lenders… want more, and it is not uncommon for the debtor… to ask the court to approve a lending arrangement containing terms favoring the lender which far exceed those authorized by § 364.")

CONSTRUCTIVE TRUST

12. GENBAND objects to the DIP Financing Motion to the extent it is intending to grant a lien on the accounts receivable relating to the Cleveland Clinic Contract, the BCSC Contract or the Verizon Contract (collectively, the "Contracts"), or the proceeds to be paid to the Debtors from the Contracts. As the Debtors represented to this Court in the Third-Party Provider Motion, GENBAND's invoices for services provided to the end users have merely been passed on by the Debtors to the ultimate end users for payment. As such, the proceeds from the Contracts, if received by the Debtors, should be impressed with a constructive trust for the benefit of GENBAND and, as such, should not be included as property of the Debtors' bankruptcy estates nor subject to a lien in favor of the DIP Lenders.

13. The MPA and each of the Contracts are governed by New York law. Under New York law, the Court should impose a constructive trust for the benefit of GENBAND if the following elements are established:

   (1) A confidential or fiduciary relationship exists between GENBAND and the Debtors;
   (2) An express or implied promise was made by the Debtors to GENBAND;
   (3) A transfer of property made in reliance on that promise; and
   (4) Unjust enrichment.

6

*See Asurion Ins. Servs. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.),* 377 B.R. 478, 483 (Bank. D. Del. 2007) (citing *Sharp v. Kosmalski*, 40 N.Y. 2d 119 (N.Y. 1976)). In *Amp'd Mobile*, the Delaware Bankruptcy Court noted the absence of any one of those four above elements is fatal to a party's request for imposition of a constructive trust. *Id.* However, courts in the Second Circuit have held that a constructive trust still may exist even in the absence of one of these elements if necessary to satisfy the demands of justice. See *Koreag, Controle et Revision S.A. v. Refco F/X Associates, Inc. (In re Koreag, Controle et Revision S.A.),* 961 F.2d 341, 352 (2d Cir. 1992) ("the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity"); *Simonds v. Simonds*, 45 N.Y. 2d 233, 241 (1978) ("[a]lthough the factors are useful in many cases [the] constructive trust doctoring is not rigidly limited).

In this case, the Court should conclude that the accounts receivable arising from the Contracts and any proceeds should be held in trust for the benefit of GENBAND, because each element has been met:

- A confidential relationship existed between the Debtors and GENBAND because the MPA provided that, (a) the Debtors have the exclusive rights to sell certain of GENBAND's products and services; (b) the Debtors had the exclusive right to sell GENBAND's products and services to the Cleveland Clinic (c) the Debtors agreed to not disclose confidential information provided by GENBAND to the Debtors.

- To the extent the Debtors' customers will pay (or have paid) the Debtors for the products and services GENBAND provided to the Debtors' customers on the

Contract, the Debtors, in turn, have promised to pay GENBAND the amounts it is owed for providing these services to the end users.

- GENBAND transferred hardware and software to Debtors' customers and provided installation, engineering and technical support to the Debtors' customers in reliance on the promises made by the Debtors.

- The Debtors would be unjustly enriched if they are not required to hold the proceeds from the Contracts in trust for the benefit of GENBAND and alternately pay over the proceeds to GENBAND.

14. Since all of the elements of a constructive trust are met with regards to GENBAND, the Court should not grant a lien in favor of the DIP Lenders over the accounts receivable from the Contracts of the proceeds therefrom.

## SETOFF

15. The Interim DIP Order grants the DIP Lenders a lien on all the Debtors' assets except for certain permitted encumbrances. Under the Bankruptcy Code, a secured creditor's lien cannot be primed unless the creditor is provided "adequate protection" for its lien interests. As a creditor of the Debtors, GENBAND has the state law right to setoff its accounts receivable against the Debtors' Coop Credits. According to section 506(a) of the Bankruptcy Code, a secured claim against a debtor in bankruptcy includes (a) a claim which is secured by a traditional lien and (b) the right of setoff of a creditor. As such, GENBAND is a secured creditor to the extent of its setoff rights.

16. Since the Interim DIP Order does not clearly preserve GENBAND's rights of setoff, nor make clear that GENBAND's rights of setoff will not be primed by the lien granted to the DIP Lenders, GENBAND objects to the DIP Financing Motion. The DIP Financing Motion

cannot be granted unless (i) the liens granted to the DIP Lenders are junior to GENBAND's setoff rights or (ii) GENBAND is granted adequate protection.

WHEREFORE, GENBAND requests that the Court enter an order (i) denying the DIP Financing Motion; or in the alternative, include in any order approving the DIP Financing Motion language (a) that preserves GENBAND's setoff rights as being senior to the lien rights granted to the DIP Lenders and (b) preserves GENBAND's rights as a beneficiary of a constructive trust of the proceeds of the Contracts and (ii) granting GENBAND such other and further related to which it is entitled.

Dated: New York, New York
       February 6, 2017

Respectfully submitted,

**HUNTON & WILLIAMS LLP**

*/s/ Robert A. Rich*
Robert A. Rich
New York, New York 10166
Telephone: (212) 309-1132
rrich2@hunton.com

- and -

Gregory G. Hesse (to be admitted *pro hac vice*)
Texas State Bar No. 09549419
HUNTON & WILLIAMS LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: (214) 468-3335

*Attorneys for GENBAND US LLC*