James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ryan Preston Dahl (admitted *pro hac vice*)
Bradley Thomas Giordano (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AVAYA INC., *et al.*,[1] | ) Case No. 17-10089 (SMB) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is:  4655 Great America Parkway, Santa Clara, CA 95054.

**NOTICE OF FILING
OF REVISED PROPOSED
ORDER (A) APPROVING
BIDDING PROCEDURES AND
BID PROTECTIONS IN CONNECTION
WITH THE SALE OF THE DEBTORS'
NETWORKING BUSINESS, (B) APPROVING
THE STALKING HORSE ASSET PURCHASE
AGREEMENT, (C) APPROVING THE FORM AND
MANNER OF NOTICE, (D) SCHEDULING AN AUCTION
AND A SALE HEARING, (E) APPROVING PROCEDURES
FOR DETERMINING CURE AMOUNTS, AND (F) EXTENDING
THE ASSUMPTION/REJECTION DEADLINE FOR THE BILLERICA LEASE**

---

**PLEASE TAKE NOTICE** that on March 8, 2017, Avaya Inc. and its affiliated debtors in the above captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion Seeking Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of the Debtors' Networking Business, (B) Approving the Form and Manner of Notice, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for Determining Cure Amounts, and (E) Extending the Deadline to Assume or Reject the Billerica Lease, and (II) an Order Authorizing and Approving the Sale of the Debtors' Networking Business* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the proposed *Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of the Debtors' Networking Business, (B) Approving the Stalking Horse Asset Purchase Agreement, (C) Approving the Form and Manner of Notice, (D) Scheduling an Auction and A Sale Hearing, (E) Approving Procedures for Determining Cure Amounts, and (F) Extending the Assumption/Rejection Deadline for the Billerica Lease* attached hereto as **Exhibit A** (the "Order").

**PLEASE TAKE FURTHER NOTICE** that a redline reflecting the changes from the proposed order filed with the Motion on March 8, 2017 is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider the Motion and approval of the Order will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in Courtroom 723, One Bowling Green, New York, New York on **April 4, 2017 at 10:00 a.m.** (prevailing Eastern Time).

Dated:  April 3, 2017  
New York, New York

*/s/ Jonathan S. Henes, P.C.*

James H.M. Sprayregen, P.C.  
Jonathan S. Henes, P.C.  
KIRKLAND & ELLIS LLP  
KIRKLAND & ELLIS INTERNATIONAL LLP  
601 Lexington Avenue  
New York, New York 10022  
Telephone:    (212) 446-4800  
Facsimile:    (212) 446-4900

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)  
Ryan Preston Dahl (admitted *pro hac vice*)  
Bradley Thomas Giordano (admitted *pro hac vice*)  
KIRKLAND & ELLIS LLP  
KIRKLAND & ELLIS INTERNATIONAL LLP  
300 North LaSalle Street  
Chicago, Illinois 60654  
Telephone:    (312) 862-2000  
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Revised Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (A) APPROVING**
**BIDDING PROCEDURES AND BID PROTECTIONS**
**IN CONNECTION WITH THE SALE OF THE DEBTORS'**
**NETWORKING BUSINESS, (B) APPROVING THE STALKING**
**HORSE ASSET PURCHASE AGREEMENT, (C) APPROVING**
**THE FORM AND MANNER OF NOTICE, (D) SCHEDULING AN**
**AUCTION AND A SALE HEARING, (E) APPROVING PROCEDURES**
**FOR DETERMINING CURE AMOUNTS, AND (F) EXTENDING THE**
**ASSUMPTION/REJECTION DEADLINE FOR THE BILLERICA LEASE**

Upon the portion of the motion, dated March 8, 2017 (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of an order (this "Order") (A) authorizing and approving bidding procedures with stalking horse bid protections in connection with the sale of the Business, (B) approving the form of asset purchase agreement, (C) approving the form and manner of notice of the auction by sale and sale hearing, (D) approving procedures for the assumption and assignment of contracts and leases and noticing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is:  4655 Great America Parkway, Santa Clara, CA 95054.

[2] Capitalized terms used in this Order and not immediately defined have the meanings given to such terms in the Motion or the Stalking Horse APA, as applicable.

of related cure amounts, (E) extending the deadline to assume or reject the Billerica Lease, (F) scheduling the sale hearing and setting other related dates and deadlines, and (G) granting related relief, all as more fully set forth in the Motion; and upon the Bosacco Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated December 1, 2016; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution, and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.    Bidding Procedures.  The Debtors have articulated good and sufficient reasons for authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"), which are fair, reasonable and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Business.

2

B.    <u>Stalking Horse Bid Protections</u>.    The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the termination fee equal to $3 million (the "<u>Termination Fee</u>"), the expense reimbursement of up to $750,000 (the "<u>Purchaser Expense Reimbursement</u>") and grant of the $1 million minimum overbid (the "<u>Minimum Overbid</u>," and together with the Termination Fee and the Purchaser Expense Reimbursement, collectively, the "<u>Bid Protections</u>") to a Stalking Horse Bidder, including:

i.    the Bid Protections are the product of negotiations between the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking Horse APA (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Business to maximize the value of the Debtors estates;

ii.    the Bid Protections are an actual and necessary cost and expense of preserving the respective Debtors' estates;

iii.    the Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed Sale under the Stalking Horse APA, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Business will be received;

iv.    the protections afforded to the Stalking Horse Bidder by way of the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the Stalking Horse APA, and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

v.    the assurance of the payment of the Bid Protections has promoted more competitive bidding by inducing the Stalking Horse Bidder's bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Business, induced the Stalking Horse Bidder to conduct due diligence with respect to the Debtors' business, assets, operations and liabilities, and propose the Sale contemplated by the Stalking Horse APA,

3

including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely and increases the likelihood that the final purchase price reflects the true value of the Business.

C.    <u>Sale Notice</u>.  The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including:  (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the sale motion and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the assets for sale; (v) instructions for promptly obtaining a copy of the Stalking Horse APA; (vi) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and (viii) notice of the proposed assumption and assignment of contracts and leases to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder arising from the Auction, if any (a "<u>Successful Bidder</u>")) and the right, procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

D.    <u>Assumption Procedures</u>.  The Motion and the Contract Assumption Notice are reasonably calculated to provide counterparties to the Debtors' Transferred Contracts and Assumed Leases with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any cure amounts relating thereto, and the Assumption Procedures.

E.    <u>Billerica Lease Assumption/Rejection Deadline Extension</u>.  The Debtors have articulated good and sufficient reasons for extending the deadline to assume or reject the

4

Billerica Lease in order to maximize the value of the Debtors' estates and will not prejudice or otherwise affect the substantive rights of the Billerica Lease Counterparty.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted to the extent set forth herein.

**I.** **Important Dates and Deadlines**

2. **Sale Hearing**. **Thursday, May 25, 2017, at 10:00 a.m.** Eastern Time is the date and time the sale hearing (the "Sale Hearing") will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, at: One Bowling Green, New York, New York 10004. Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order. **Please take notice that**: the Sale Hearing may not be adjourned without further notice other than by announcement in open Court or on the Court's calendar.

3. **Sale Objection Deadline**. **Thursday, May 18, 2017, at 4:00 p.m.** Eastern Time is the deadline to object to entry of the proposed Sale Order (the "Sale Objection Deadline"). Objections, if any, **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the LBRs and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so **actually received** no later than the Sale Objection Deadline by the following parties (the "Notice Parties"):

| Debtors | Counsel to Debtors |
|---|---|
| Avaya Inc.<br>4655 Great American Parkway<br>Santa Clara, California 95054<br>Attn: Adele Freedman, VP & Deputy General Counsel | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn: Ryan Preston Dahl, Esq.; Steve Toth, Esq.;<br>Brad Giordano, Esq. |
| **Counsel to the Creditors' Committee** | **United States Trustee** |
| Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019<br>Attn: Lorenzo Marinuzzi, Esq.; Jon I. Levine, Esq. | Office of the United States Trustee<br>Southern District of New York<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, New York 10014<br>Attn: Susan D. Golden, Esq.; Susan Arbeit, Esq. |
| **Counsel to the Agent for the<br>Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn: Damian S. Schaible, Esq. | Latham & Watkins LLP<br>355 S. Grand Ave<br>Los Angeles, California 91105<br>Attn: Peter M. Gilhuly; Kimberly A. Posin |
| **Counsel to the Ad Hoc Group of First Lien Holders** | **Counsel to the Ad Hoc Group of Crossover Holders** |
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attn: Philip C. Dublin, Esq.; Naomi Moss, Esq. | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038<br>Attn: Kristopher M. Hansen, Esq.; Sayan<br>Bhattacharyya, Esq. |
| **United States Attorney** | **Counsel to the 7.00% First Lien Notes Trustee,<br>9.00% First Lien Notes Trustee, and Second Lien<br>Notes Trustee** |
| Office of the United States Attorney for the Southern<br>District of New York<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007 | Morgan, Lewis & Bockius LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn: Glenn E. Siegel, Esq.; Joshua Dorchak, Esq.;<br>Rachel Jaffe Mauceri, Esq. |

**The failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.**

4.    **Response Deadline**.  **Wednesday, May 24, 2017, at 12:00 p.m.** Eastern Time is the deadline for filing a response to any timely-filed objection to entry of the Sale Order with the Court; <u>provided</u> that such deadline may be extended by agreement of the Debtors and the affected objecting party.

5.    **Competitive Bidding**.  The following dates and deadlines regarding competitive bidding are hereby established (subject to modification as needed):

a.    **Preliminary Bid Deadline**:  **Tuesday, April 18, 2017, at 4:00 p.m.** Eastern Time is the deadline by which anyone interested in participating in the bidding process must deliver the Preliminary Bid Documents (as defined in the Bidding Procedures);

b.    **Qualified Bid Deadline**:  **Thursday, May 18, 2017, at 4:00 p.m.** Eastern Time is the deadline by which all Qualified Bids (as defined in the Bidding Procedures) must be **actually received** by the parties specified in the Bidding Procedures (the "Bid Deadline"); and

c.    **Auction**:  **Tuesday, May 23, 2017, at 10:00 a.m.** Eastern Time is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtors:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022.

## II.    **Bidding Procedures and Related Relief**

### A.    **Bidding Procedures**

6.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved to the extent set forth herein.  The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the proposed Sale, and any party desiring to submit a higher or better offer for the Debtors' assets shall do so strictly in accordance with the terms of the Bidding Procedures and this Order.

7.    As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder or if no Qualified Bidder (as defined in

the Bidding Procedures) other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors will seek approval of the Stalking Horse APA at the Sale Hearing.    If one or more Qualified Bids is timely received from a Qualified Bidder (other than the Stalking Horse Bidder) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

8.      If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the Sale, the Auction will be conducted openly and shall be transcribed or videotaped.

**B.      Bid Protections**

9.      The Bid Protections described in the Motion and set forth in the Stalking Horse APA are hereby approved to the extent set forth herein.

10.      If the Stalking Horse Bidder becomes entitled to receive the Bid Protections in accordance with the terms of the Stalking Horse APA:  (a) the Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA, including the Termination Fee and Purchaser Expense Reimbursement, without further action or order by the Bankruptcy Court, in accordance with the terms and conditions of the Stalking Horse APA and this Order; and (b) the Stalking Horse Bidder shall be granted an allowed administrative claim in the Debtors' chapter 11 cases in an amount equal to the Termination Fee and Purchaser Expense Reimbursement under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, provided that such claim shall, in no circumstances, be pari passu or senior to the claims granted to the DIP Lenders or the Prepetition Secured Parties under the Final

DIP Order.[3]  Notwithstanding the foregoing and, for greater certainty, the Purchaser Expense Reimbursement due to the Stalking Horse Bidder is payable directly from the proceeds of the sale to a Successful Bidder and upon the closing of such sale, and such Purchaser Expense Reimbursement shall not remain an unpaid expense of the Debtors following the closing of such sale.

11.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, termination fee, "topping," or other similar fee or payment.

### III.    Sale Hearing Notice and Related Relief

12.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2** is hereby approved.  Within seven days of the entry of this Order, or as soon as reasonably practicable thereafter (the "Mailing Date"), the Debtors will serve the Sale Notice, the Stalking Horse APA, the Order, and the Bidding Procedures in accordance with the Sale Guidelines by first-class mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon the following parties:  (a) the Standard Parties; (b) the Rule 2002 Parties; (c) the Federal Trade Commission; (d) the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice; (e) counsel to the Stalking Horse Bidder; (f) any parties known or reasonably believed to have expressed interest in any of the Transferred Assets; (g) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Transferred Assets; (h) all parties to executory contracts or unexpired leases to be assumed and assigned, or rejected as part of the transaction; (i) all applicable state and local

---

3    Capitalized terms used in this paragraph 10 and not immediately defined have the meanings given to such terms in the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 178] (the "Final DIP Order").

taxing authorities; and (j) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder.

13.     Additionally, on the Mailing Date or as soon as practicable thereafter, the Debtors shall publish a notice, substantially in the form of the Sale Notice, on one occasion, in *The Wall Street Journal* or *New York Times*, and on one occasion in *The Financial Times*.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

## IV.    <u>Assumption Procedures</u>

14.     The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "<u>Assumption Procedures</u>") are hereby approved to the extent set forth herein.

15.     These Assumption Procedures shall govern the assumption and assignment of all Debtors' Transferred Contracts and Assumed Leases assumed and assigned in connection with the Sale under the Stalking Horse APA:

  a.  **Contract Assumption Notice.**  No less than 21 days prior to the Sale Objection Deadline (the "<u>Assumption and Assignment Service Deadline</u>"), the Debtors shall serve a notice of contract assumption (the "<u>Contract Assumption Notice</u>"), in substantially the form of the attached hereto as **<u>Exhibit 3</u>** via overnight delivery on all non-Debtor counterparties to all potential Transferred Contracts and Assumed Leases and provide a copy of the same to the Stalking Horse Bidder.  The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable (i) the title of the executory contract or lease, (ii) the name of the counterparty to the executory contract or lease, (iii) Sellers' good faith estimates of the Cure Payments (if any) required in connection with the executory contract or lease, (iv) the identity of Stalking Horse Bidder

(as assignee, if applicable), and (v) the Sale Objection Deadline; provided, however, that service of a Contract Assumption Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

b.    **Cure Payments.**    The payment of the applicable Cure Payments (as defined in the Stalking Horse APA) by the Debtors or Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (iii) together with the assumption of the Debtors' Transferred Contracts and Assumed Leases by the Debtors and the assignment of the Debtors' Transferred Contracts and Assumed Leases to Stalking Horse Bidder, constitute adequate assurance of future performance thereof.

c.    **Mixed-Use Contracts.**    Transferred Contracts and Assumed Leases identified as Mixed-Use Contracts on the Contract Assumption Notice shall be subject to section 5.12 of the Stalking Horse APA, which provides that, prior to closing of the Sale, the Debtors shall separate Mixed-Use Contracts into two contracts with the applicable counterparty.    One contract will have terms and conditions that are related to the Business, which will be assigned to the Stalking Horse Bidder or other Successful Bidder upon closing of the Sale, and one contract will relate to the other businesses of the Debtors, which will be retained by the Debtors, in each case on terms and conditions which, in the aggregate, are comparable to those of such Mixed-Use Contract prior to separation.

d.    **Additions.**  Stalking Horse Bidder may designate, up to the Bid Deadline, additional executory contracts and unexpired leases as agreements to be assumed by the Debtors and assigned to the Stalking Horse Bidder or Successful Bidder, as applicable, (the "Additional Transferred Contracts"). Within three Business Days of notice by the Stalking Horse Bidder of the Additional Transferred Contracts, the Debtors shall serve a Contract Assumption Notice on each of the counterparties to such Additional Transferred Contracts and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign the counterparty's executory contract or unexpired lease to the Stalking Horse Bidder or Successful Bidder, as applicable, and (ii) the corresponding Cure Payment.

e.    **Eliminations.**  Stalking Horse Bidder may remove any executory contract or unexpired lease to be assumed by the Debtors and assigned to the Stalking Horse Bidder or Successful Bidder, as applicable, (the "Eliminated Agreements") until the Bid Deadline.  Upon the Stalking Horse Bidder's removal of an Eliminated Agreement, the Debtors shall serve a notice (a "Removal Notice") on each of the impacted counterparties and their counsel of record, indicating that the Debtors no

longer intend to assign the counterparty's contract to the Stalking Horse Bidder or Successful Bidder, as applicable, in connection with the sale.

f.   **Supplemental Contract Assumption Notice.**   Although the Debtors intend to make a good faith effort to identify all Debtors' Transferred Contracts and Assumed Leases that may be assumed and assigned in connection with a Sale, the Debtors may discover certain executory contracts or unexpired leases inadvertently omitted from the Debtors' Transferred Contracts and Assumed Leases list or Successful Bidders may identify other executory contracts or unexpired leases that they desire to assume and assign in connection with the Sale.  Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse APA, or as otherwise agreed by the Debtors and the Successful Bidder, at any time after the Assumption and Assignment Service Deadline and before the closing of a Sale, to (i) supplement the list of Debtors' Transferred Contracts on the Contract Assumption Notice with previously omitted executory contracts or unexpired leases, (ii) remove a Debtors' Transferred Contract or Assumed Lease from the list of executory contracts and unexpired leases ultimately selected as a Debtors' Transferred Contract or Assumed Lease that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list, and/or (iii) modify the previously stated Cure Payment associated with any Debtors' Transferred Contract or Assumed Lease.  In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice").   Each Supplemental Assumption Notice will include the same information with respect to listed Debtors' Transferred Contracts and Assumed Leases as was included in the Contract Assumption Notice.

g.   **Objections.**   Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, LBRs and Case Management Order, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by, the Notice Parties before the Sale Objection Deadline or deadline set forth in the Supplemental Assumption Notice, as applicable.

h.   **Dispute Resolution**.   Any objection to the proposed assumption and assignment of a contract or related cure proposed in connection with the Sale that remains unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Court).

16.    Any party failing to timely file an objection to the cure amount or the proposed assumption and assignment of a Debtors' Transferred Contract or Assumed Lease or Additional Transferred Contract listed on the Contract Assumption Notice is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Transferred Contract, Assumed Lease, or Additional Transferred Contract, (c) the related relief requested in the Motion and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Transferred Contract, Assumed Lease, or Additional Transferred Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or Successful Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Bidder or Successful Bidder, as applicable, with respect to such party's Transferred Contract, Assumed Lease, or Additional Transferred Contract.

17.    Notwithstanding any other provision of this Order, the Asset Purchase Agreement or Transition Services Agreement, no agreement between Oracle Credit Corporation and its affiliate, Oracle America, Inc., successor in interest to Siebel Systems and Sun Microsystems ("Oracle") and the Debtors will be assumed, assigned, or transferred, and no shared use will be authorized, by this Order.  All parties reserve all rights with respect to Oracle's invocation of consent rights.

18.    A party in interest may object to the proposed assumption and assignment of a Debtors' Transferred Contract or Assumed Lease by the Debtors following the closing of the

Sale only to the extent such objection could not have been raised prior to the Sale Hearing **and** pertains to matters arising **after** the closing of the Sale.

## V.    Billerica Lease Assumption/Rejection Deadline Extension

19.    The time period within which the Debtors may assume or reject the Billerica Lease is extended for an additional ninety days from May 19, 2017, through and including August 17, 2017, in accordance with section 365(d)(4) of the Bankruptcy Code.

20.    This Order is without prejudice to the right of the Debtors to request additional extensions of time to assume or reject the Billerica Lease consistent with section 365(d)(4) of the Bankruptcy Code.

21.    Nothing contained in this Order shall be construed as an assumption or rejection of the Billerica Lease under section 365(a) of the Bankruptcy Code.  Any and all of the Debtors' rights, claims, and defenses with respect to the characterization of the Billerica Lease pursuant to sections 365(d)(3) and 365(d)(4) of the Bankruptcy Code or otherwise are expressly reserved.

22.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

23.    Notwithstanding anything to the contrary in this Order, any payment made hereunder, and any authorization herein, shall be subject to the requirements (if any) imposed on the Debtors under any order(s) of this Court approving the postpetition secured debtor-in-possession financing facility and the use of cash collateral (any such order, a "Financing Order").  In the event of any conflict between the terms of this Order and a Financing

14

Order, the terms of the applicable Financing Order shall control (solely to the extent of such

conflict).  For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the

rights or remedies of the DIP Agent or the DIP Lenders under the DIP Credit Agreement or the

rights or remedies of the Prepetition Secured Parties under the Final DIP Order.[4]

24.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order

are immediately effective and enforceable upon its entry.

25.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Motion.

26.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2017

_____
THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[4]   Capitalized terms used in this paragraph 22 and not immediately defined have the meanings given to such terms
in the Final DIP Order.

## Exhibit 1

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**BIDDING PROCEDURES FOR THE SUBMISSION,**
**RECEIPT AND ANALYSIS OF BIDS IN CONNECTION**
**WITH THE SALE OF THE DEBTORS' NETWORKING BUSINESS**

These bidding procedures (the "Bidding Procedures") have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on April [__], 2017 [Docket No. ___] (the "Bidding Procedures Order") on the docket of the lead case in the above-captioned jointly administered cases of Avaya, Inc. and certain of its affiliates (collectively, the "Debtors").

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "Auction") for (i) the sale (the "Sale") of the Business,[2] including certain of the contracts and leases related thereto (the "Transferred Contracts and Assumed Leases"), on a going concern basis, on the terms substantially set forth in the Asset Purchase Agreement dated as of March 7, 2017, by and among the Debtors and Extreme Networks, Inc. (the "Stalking Horse Bidder"), a copy of which is attached hereto as **Exhibit A** (the "Stalking Horse APA"). The Sale will be implemented pursuant to the terms and conditions of the Stalking Horse APA, as the same may be amended pursuant to the terms thereof, subject to the receipt of higher or otherwise better bids (each, a "Bid") in accordance with these Bidding Procedures.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is:  4655 Great America Parkway, Santa Clara, CA 95054.

[2]  Capitalized terms used and not immediately defined have the meanings given to such terms in the Stalking Horse APA or the Motion, as applicable.

Copies of the Bidding Procedures Order and Stalking Horse APA or other documents related thereto are available upon request to Prime Clerk, LLC, by calling (855) 252–2156 or visiting https://cases.primeclerk.com/avaya/.

### A.    Approval of Stalking Horse Bidder

On March 7, 2017, the Debtors and the Stalking Horse Bidder entered into the Stalking Horse APA for the sale of the Business, pursuant to which, among other things: (i) the Stalking Horse Bidder agreed to pay the Closing Date Payment for the Transferred Assets and assume the Assumed Liabilities (collectively, the "Stalking Horse Bid"), subject to Bankruptcy Court approval; and (ii) the Debtors agreed that in the event the purchase of the Transferred Assets is ultimately consummated by any person other than the Stalking Horse Bidder, to pay the Stalking Horse Bidder a termination fee in the amount of $3,000,000, which represents approximately 3% of the potential transaction value, subject to adjustments, paid by Stalking Horse Bidder under the Stalking Horse Bid, and to reimburse Purchaser's reasonable and documented expenses in conjunction with the Stalking Horse Bid up to a maximum amount of $750,000 (the "Purchaser Expense Reimbursement").

### B.    Participation Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a Bid (a "Potential Bidder") must, on or before Tuesday, April 18, 2017, at 4:00 p.m. prevailing Eastern Time (the "Preliminary Bid Deadline"), deliver (unless previously delivered) to each of the following (each, a "Consultation Party" and collectively, the "Consultation Parties"): (i) the Debtors, 4655 Great American Parkway, Santa Clara, California 95054, Attn: Adele Freedman; (ii) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Jonathan S. Henes, P.C.; (iii) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Patrick J. Nash, Jr., P.C., Ryan Preston Dahl, Steve Toth, and Brad Giordano; (iv) Centerview Partners, 31 West 52nd Street, New York, New York 10019, Attn: John Bosacco and Bob Beasley; (v) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, New York, 10014, Attn: Susan D. Golden (the "U.S. Trustee"); (vi) counsel to the official committee appointed by the U.S. Trustee (the "Creditors' Committee"), Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019, Attn: Lorenzo Marinuzzi, and Jon I. Levine; (vii) counsel to Citibank, N.A., the agent acting on behalf of the lenders (the "Lenders") under the Debtors' postpetition secured financing facility (in such capacity, the "DIP Agent"), Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Damian S. Schaible; (viii) counsel to the Ad Hoc Group of First Lien Holders (the "Ad Hoc First Lien Group"), Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, New York 10036, Attn: Philip C. Dublin and Naomi Moss; (ix) counsel to the Ad Hoc Group of Crossover Holders (the "Ad Hoc Crossover Group," and together with the Ad Hoc First Lien Group, the "Ad Hoc Groups"), Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attn: Kristopher M. Hansen and Sayan Bhattacharyya; and (x) counsel to the 7.00% First Lien Notes Trustee, 9.00% First Lien Notes Trustee, and Second Lien Notes Trustee, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Glenn E.

Siegel, Joshua Dorchak, and Rachel Jaffe Mauceri, the following documents (the "Preliminary Bid Documents"); provided, that the Debtors may consider Bids submitted by Potential Bidders after the Preliminary Bid Deadline, but such Potential Bidders shall not receive any extension of time to conduct a due diligence review or to submit a Qualified Bid (defined below):

(i)     an executed confidentiality agreement on terms reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder, the Debtors and certain of their respective affiliates (the "Confidentiality Agreement"); and

(ii)    preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, including a preliminary perspective on value of the Business.  Such proof may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and their advisors will determine in their discretion, in consultation with the DIP Agent and the Ad Hoc Groups.

After a Potential Bidder delivers the Preliminary Bid Documents, it may conduct a due diligence review with respect to the Debtors.  Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents in the Debtors' discretion, in consultation with the DIP Agent, the Ad Hoc Groups, and the Creditors' Committee (each, an "Acceptable Bidder") may submit bids.  The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

Promptly upon a Potential Bidder entering into a Confidentiality Agreement, but in any event no later than two Business Days following such event, the Debtors shall so notify the Consultation Parties.

C.      **Due Diligence**

(i)     **Access to Due Diligence**.

Only Acceptable Bidders shall be eligible to receive due diligence and access to additional non-public information.  The Debtors shall provide to each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder but shall only extend to those assets that are the subject of such Acceptable Bidder's Bid.  The due diligence period will end on the Bid Deadline (as defined herein) and the Debtors shall have no obligation to furnish any due diligence information after the Bid Deadline.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors, the Debtors' assets

or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement and only to the extent of the assets that are the subject of such Acceptable Bidder's Bid.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; provided, however, the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment, in consultation with the DIP Agent and the Ad Hoc Groups, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction to the extent of the assets and liabilities that are the subject of their Bid prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the Stalking Horse APA. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

> The Debtors have designated Centerview Partners, 31 West 52nd Street, New York, New York 10019, Attn: John Bosacco and Samuel Greene, to coordinate all reasonable requests for additional information and due diligence access.

(ii)     **Communications with Acceptable Bidders**.

There shall be no direct communications between and amongst Acceptable Bidders.

(iii)    **Due Diligence from Acceptable Bidders**.

Each bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Acceptable Bidder to consummate the Sale. Failure by an Acceptable Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for

the Debtors to determine, after consultation with their advisors, that such bidder is no longer an Acceptable Bidder or that a bid made by such Acceptable Bidder is not a Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable Confidentiality Agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to cause their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable Confidentiality Agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information:  (a) with the prior written consent of such Acceptable Bidder and/or the Debtors, as applicable; (b) to the applicable Acceptable Bidder; (c) to the advisors to the DIP Agent, the Ad Hoc Groups, and the Creditors' Committee, in each case on a professionals' eyes only basis; and (d) as otherwise required or allowed by any applicable Confidentiality Agreement with respect to any particular Acceptable Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

### D.    Bid Requirements.

To be eligible to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver to the Debtors and their advisors, a written, irrevocable offer (a "Written Offer") that must be determined in good faith by the Debtors, in consultation with the Consultation Parties, to satisfy each of the following conditions, and otherwise be acceptable to the Debtors:

(i)    **Bid Deposit**.  Each Bid (other than the Stalking Horse Bid, with respect to which the deposit requirements shall be governed by the Stalking Horse APA) must be accompanied by a cash deposit equal to 10% of the cash purchase price thereunder (the "Good Faith Deposit"), which shall be sent to an escrow account, established pursuant to the authority granted by the Cash Management Order, by wire transfer or certified or cashier's check.

(ii)    **Minimum Bid Amount**.  The value of each Bid must exceed the aggregate sum of:  (a) the Stalking Horse Bid; (b) the Termination Fee and Purchaser Expense Reimbursement; and (c) the minimum Bid increment of $1 million (all of which must be in the form of cash or cash equivalents and/or the assumption of administrative expense liabilities).  The Debtors, in consultation with the DIP Agent and the Ad Hoc Groups, shall determine the value of any assumed liabilities that differ from those included in the Stalking Horse Bid.

(iii)    **Good Faith Offer**.  Each Bid must constitute a good faith, bona fide offer to purchase all of the Transferred Assets.

(iv)  **Same or Better Terms/Identification of Executory Contracts and Unexpired Leases**.  Each Bid must be accompanied by clean and duly executed transaction documents (including schedules and exhibits thereto that identify with particularity which of the Debtors' executory contracts and unexpired leases the Bidder seeks to have assigned), along with copies that are marked to reflect the amendments and modifications from the Stalking Horse APA, which modifications may not be materially more burdensome than the Stalking Horse APA or inconsistent with these Bidding Procedures.  The Debtors, in consultation with the DIP Agent and Ad Hoc Groups, shall determine whether such modifications are materially more burdensome than the Stalking Horse APA.

(v)  **No Contingencies**.  A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following:  (a) financing; (b) shareholder, board of directors or other approval; and/or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

(vi)  **Binding and Irrevocable**.  An Acceptable Bidder's Bid shall be irrevocable unless and until the Debtors accept a higher Bid and such Acceptable Bidder is not selected as the Back-up Bidder (as defined herein).

(vii)  **Joint Bids**.  The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

(viii)  **Adequate Assurance Information**.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors, that such Acceptable Bidder:  (a) has the financial wherewithal and ability to consummate the acquisition of certain of the Debtors' assets,  the assumption of certain of the Debtors' liabilities and the operation of the Business until such time as the executory contracts and leases with respect thereto have been rejected or assumed and assigned to the Acceptable Bidder following the Closing and (b) can provide adequate assurance of future performance with respect to any executory contract or lease to be assumed and assigned to the Acceptable Bidder in connection with the proposed transaction. The Bid shall also identify a contact person that counterparties to any assumed contract or lease may contact to obtain additional Adequate Assurance Information.

(ix)  **Identity & Corporate Authority**.  Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.  A Bid must also fully disclose any connections or agreements with the Debtors, the Stalking Horse Bidder, or any other known, potential, prospective Bidder or Qualified Bidder, or any officer, director, or equity security holder of the Debtors.

6

(x)     **Authorization.** Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xi)    **No Fees**. The Bids must not be subject to any termination fee, transaction fee, expense reimbursement or any similar type of payment or reimbursement.

(xii)   **Adherence to Bidding Procedures.** By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xiii)  **Regulatory Approvals and Covenants.** A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than 30 days following execution and delivery of the asset purchase agreement, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).

(xiv)   **Consent to Jurisdiction.** The Acceptable Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable.

The Debtors will promptly deliver, after receipt thereof, copies of all Written Offers to the DIP Agent and the Ad Hoc Groups.

Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, after consultation with the other Consultation Parties, shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders." All information disclosed by any Bidder in connection with all of the preceding requirements shall be made available by the Debtors to the Consultation Parties promptly upon the Debtors' receipt thereof but in any event no later than two Business Days following the Bid Deadline. The Debtors reserve the right, after consultation with the DIP Agent and the Ad Hoc Groups, to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, in consultation with the DIP Agent and the Ad Hoc Groups, may accept a single Qualified Bid or multiple bids for non-overlapping material portions of the Debtors' assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

Within two Business Days after the Bid Deadline, the Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and the other

Consultation Parties and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The Stalking Horse APA submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, qualifying the Stalking Horse Bidder to participate in the Auction.

E.      **Bid Deadline.**

**Qualified Bids must be received by each of the Debtors and their advisors so as to be actually received no later than Thursday, May 18, 2017, at 4:00 p.m. prevailing Eastern Time (the "Bid Deadline").**

F.      **Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, and in consultation with each Consultation Party, the highest or otherwise best bid (the "Starting Bid"). In making such determination, the Debtors shall take into account, among other things, the execution risk attendant to any submitted bids. Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors' shall notify the Stalking Horse Bidder as to which Qualified Bid is the Starting Bid. The Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

G.      **No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse APA will be deemed the Successful Bid, and, subject to the Debtors' termination rights under the APA, the Debtors will pursue entry of an order by the Bankruptcy Court approving the Stalking Horse APA and authorizing the Sale to the Stalking Horse Bidder as soon as practicable.

H.      **Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then the Debtors shall conduct the Auction with respect to the Debtors' assets. The Auction shall commence on Tuesday, May 23, 2017, at 10:00 a.m. prevailing Eastern Time at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place as the Debtors shall, in consultation with the DIP Agent and the Ad Hoc Groups, timely notify the Stalking Horse Bidder and all other Qualified Bidders to the extent consented to by the Stalking Horse Bidder.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(i)      the Auction will be conducted openly;

(ii)    only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

(iii)    the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

(iv)    only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, their respective advisors, the advisors to the Consultation Parties, and creditors of the Debtors shall be permitted to attend the Auction;

(v)    bidding at the Auction shall begin at the Starting Bid;

(vi)    subsequent Bids at the Auction, including any Bids by Stalking Horse Bidder, shall be made in minimum increments of $1 million of additional value;

(vii)    the Stalking Horse Bid shall receive a credit equal to the aggregate total of: (a) the Termination Fee and (b) the Purchaser Expense Reimbursement;

(viii)    each Qualified Bidder will be informed of the terms of the previous Bids;

(ix)    the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(x)    each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(xi)    the Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, in consultation with the DIP Agent and the Ad Hoc Groups, to be the highest or otherwise best Bid.  For the avoidance of doubt, but without limiting the Bid Protections or the provisions of the Stalking Horse APA, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law, subject to the Debtors' obligation to pay the Termination Fee and Purchaser Expense Reimbursement under the terms and conditions set forth in the Stalking Horse APA.

(xii)    the Debtors reserve the right, in their reasonable business judgment, in consultation with the DIP Agent and the Ad Hoc Groups, to adjourn the Auction one or more times to, among other things:  (a) facilitate discussions between the Debtors and Qualified Bidders; (b) allow Qualified Bidders to consider how they wish to proceed; and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount.

9

(xiii)    absent irregularities in the conduct of the Auction, and subject to the Debtors' fiduciary obligations pursuant to section 8.01(h) of the Stalking Horse APA, the Bankruptcy Court will not consider Bids made after the Auction is closed; and

(xiv)    the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors, after consultation with their advisors, the DIP Agent, and the Ad Hoc Groups, from time to time on the record at the Auction; provided, that any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the Stalking Horse APA with respect to these Bidding Procedures.

## I.    Acceptance of the Successful Bid.

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, in consultation with the DIP Agent, the Ad Hoc Groups, and the Creditors' Committee, shall identify the highest or otherwise best Qualified Bid that in the exercise of their fiduciary duties the Debtors in good faith believe is materially more beneficial to the Debtors than the Stalking Horse Bid (the "Successful Bid"), which will be determined by considering, among other things: (a) the number, type, and nature of any changes to the Stalking Horse APA; (b) the extent to which such modifications are likely to delay closing of the sale of the Debtors' assets and the cost to the Debtors of such delay; (c) the total expected consideration to be received by the Debtors; (d) the likelihood of the bidder's ability to close a transaction and the timing thereof; (e) the likely employment of employees over the long term; (f) expected net benefit to the estate; and (g) any other criteria as may be considered by the Debtors, after consultation with their advisors, the DIP Agent, and the Ad Hoc Groups in their reasonable, good-faith business judgment (collectively, the "Bid Assessment Criteria").  The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder."  The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that:  (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures; and (d) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

**J.      Sale Hearing.**

A hearing to consider approval of the Qualified Bid submitted by the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on Thursday, May 25, 2017, or as soon thereafter as counsel may be heard, before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

**K.      Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors, the DIP Agent, and the Ad Hoc Groups at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.  Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**L.      Termination Fee and Expense Reimbursement.**

The Debtors may be obligated to pay a Termination Fee and Purchaser Expense Reimbursement to the Stalking Horse Bidder as described in, and under the terms and conditions of, the Stalking Horse APA.

**M.      Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for Debtors' assets and liabilities.  If the Successful Bidder (or Back-Up Bidder, if applicable) fails to consummate the Successful Bid (or Back-Up Bid, if applicable), then the Good Faith Deposit of such Successful Bidder (or Back-Up Bidder, if applicable) shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Stalking Horse Bidder, which shall be subject to the terms of the Stalking Horse APA, and the Back-Up Bidder) will be returned within 15 Business Days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale of the Debtors' assets.  The Good Faith Deposit of

the Back-Up Bidder, if any, shall be returned to such Back-Up Bidder no later than 5 Business Days after the closing of the transaction with the Successful Bidder for the assets bid upon by such Back-Up Bidder.

**N.    Reservation of Rights.**

Subject to the consent of the Stalking Horse Bidder, and after consultation with the DIP Agent and the Ad Hoc Groups, the Debtors reserve their rights to modify these Bidding Procedures in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Business.

The Debtors shall provide to the Stalking Horse Bidder the information and documents specified in the Stalking Horse APA relating to the Auction and other Bids within the time period and on the terms and conditions set forth in the Stalking Horse APA.

**O.    Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Preliminary Bid Documents, as applicable.

**P.    Fiduciary Out.**

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtor or non-Debtor affiliate to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; provided that in the event of any such action, all rights and remedies of any Stalking Horse Bidder in these Bidding Procedures or any Stalking Horse APA shall be preserved, including payment of the Bid Protections by the Debtors under the terms and conditions as set forth in the Stalking Horse APA.

**Q.    Sale Is As Is/Where Is.**

Except as otherwise provided in the Stalking Horse APA, if applicable, or any order by the Bankruptcy Court approving any Sale of the Business as contemplated hereunder, the Transferred Assets sold pursuant to these Bidding Procedures shall be conveyed at the closing of the Sale of the Transferred Assets in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

## __Exhibit A__

**Stalking Horse Asset Purchase Agreement**

*Due to the voluminous nature of the Stalking Horse APA and its associated exhibits and disclosure schedules, it is omitted from this filing. The Stalking Horse APA can be found as Exhibit B to the Bidding Procedures and Sale Motion [Docket No. 223].*

*You may also request to have a copy of the Stalking Horse APA sent to you by calling 855-252-2156 or you may view and download the full Bidding Procedures and Sale motion by visiting https://cases.primeclerk.com/Avaya.*

## Exhibit 2

**Form of the Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF DEBTORS' MOTION
### SEEKING ENTRY OF (I) AN ORDER
### (A) APPROVING BIDDING PROCEDURES IN CONNECTION
### WITH THE SALE OF THE DEBTORS' NETWORKING BUSINESS,
### (B) APPROVING THE FORM AND MANNER OF NOTICE, (C) SCHEDULING
### AN AUCTION AND A SALE HEARING, AND (D) APPROVING PROCEDURES
### FOR DETERMINING CURE AMOUNTS, AND (II) AN ORDER AUTHORIZING
### AND APPROVING THE SALE OF THE DEBTORS' NETWORKING BUSINESS

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on January 19, 2017 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE THAT** on March 8, 2017 in connection with the proposed sale (the "Sale") of the Business[2] to Extreme Networks, Inc., or any other Successful Bidder for the Transferred Assets, at an auction for the Transferred Assets (the "Auction"), the Debtors filed a motion (the "Motion") [Docket No. 223] seeking, among other things, the entry of an order approving:  (a) bidding procedures governing the Sale (the "Bidding Procedures");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is: 4655 Great America Parkway, Santa Clara, CA 95054.

[2]    Capitalized terms used in this Notice and not immediately defined have the meanings given to such terms in the Motion or Bidding Procedures, as applicable.

(b) the form of asset purchase agreement for the Transferred Assets; (c) payment of a Termination Fee and Purchaser Expense Reimbursement to the Stalking Horse Bidder in certain instances, including if the Successful Bidder at the Auction consummates a transaction; (d) procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption Procedures"); and (e) the form and manner of notices.

**PLEASE TAKE FURTHER NOTICE THAT** on April [__], 2017 the Bankruptcy Court entered an order [Docket No. ___] (the "Bidding Procedures Order") granting certain of the relief sought in the Motion, including, among other things, approving:  (a) the Bidding Procedures and (b) the Assumption Procedures.  Copies of the Bidding Procedures Order (which incorporates the Assumption Procedures) and the Bidding Procedures are enclosed herein.

## Contact Person for Parties Interested in Submitting a Bid

The Bidding Procedures set forth in detail the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Transferred Assets **must** comply strictly with the Bidding Procedures.  **Only Qualified Bids will be considered by the Debtors**.  Any persons interested in making an offer to purchase the Transferred Assets should contact:

| Financial Advisor to Debtors | Counsel to Debtors |
|---|---|
| Centerview Partners<br>31 West 52nd Street<br>New York, New York 10019<br>Attn: John Bosacco and Samuel Greene<br><br>(415) 393-7500 | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn: Ryan Preston Dahl, Steve Toth, and Brad Giordano<br><br>(312) 862-2000 |

## Obtaining Additional Information

Additional copies of the Bidding Procedures Order, the Bidding Procedures and any other related documents are available upon request to Prime Clerk, LLC, the Debtors' notice and claims agent, at (855) 252–2156, or by visiting the case website at https://cases.primeclerk.com/avaya/.

## Important Dates and Deadlines

1.     The deadline to submit a Qualified Bid is **4:00 p.m. Eastern Time on May 18, 2017**.

2.      The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "Sale Order") is **4:00 p.m. Eastern Time on May 18, 2017** (the "Sale Objection Deadline").

3.      The Auction for the Transferred Assets, if one is necessary, will commence at **10:00 a.m. Eastern Time on May 23, 2017**, or such other date as determined by the Court, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

4.      A hearing (the "Sale Hearing") to consider the proposed Sale will be held before the Honorable Stuart M. Bernstein of the Bankruptcy Court at **10:00 a.m. Eastern Time on May 25, 2017**, or such other date as determined by the Court, at One Bowling Green, New York, New York 10004.

## Filing Objections to the Sale

Any objection to the Motion as it relates to the Sale must:  (a) be in writing; (b) state with specificity the nature of such objection; (c) comply with the Bankruptcy Rules and the LBRs for the Southern District of New York; and (d) be filed with this Court and served upon, so as to be **actually received** on or prior to the Sale Objection Deadline, by the following parties:

| Debtors | Counsel to Debtors |
|---|---|
| Avaya Inc.<br>4655 Great American Parkway<br>Santa Clara, California 95054<br>Attn:  Adele Freedman, VP & Deputy General Counsel | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn: Ryan Preston Dahl, Esq.; Steve Toth, Esq.;<br>Brad Giordano, Esq. |
| **Counsel to the Creditors' Committee** | **United States Trustee** |
| Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019<br>Attn: Lorenzo Marinuzzi, Esq.; Jon I. Levine, Esq. | Office of the United States Trustee<br>Southern District of New York<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, New York 10014<br>Attn:  Susan D. Golden, Esq.; Susan Arbeit, Esq. |
| **Counsel to the Agent for the<br>Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn: Damian S. Schaible, Esq. | Latham & Watkins LLP<br>355 S. Grand Ave<br>Los Angeles, California 91105<br>Attn: Peter M. Gilhuly; Kimberly A. Posin |

| Counsel to the Ad Hoc Group of First Lien Holders | Counsel to the Ad Hoc Group of Crossover Holders |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attn: Philip C. Dublin, Esq.; Naomi Moss, Esq. | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038<br>Attn: Sayan Bhattacharyya, Esq.;<br>Kristopher M. Hansen, Esq. |
| **United States Attorney** | **Counsel to the 7.00% First Lien Notes Trustee,<br>9.00% First Lien Notes Trustee, and Second Lien<br>Notes Trustee** |
| Office of the United States Attorney for the Southern<br>District of New York<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007 | Morgan, Lewis & Bockius LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn: Glenn E. Siegel, Esq.; Joshua Dorchak, Esq.;<br>Rachel Jaffe Mauceri, Esq. |

### Consequences of Failing to Timely File and Serve an Objection:

**Any party or entity who fails to timely file and serve an Objection to the Sale on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order shall be forever barred from asserting any Objection to the Sale, including with respect to the transfer of the Transferred Assets of the Debtor estates free and clear of liens, claims, encumbrances, and other interests effected thereunder.**

4

## No Successor or Transferee Liability

The Stalking Horse Asset Purchase Agreement and proposed Sale Order provide that the Stalking Horse Bidder and/or Successful Bidder, if applicable, will have no responsibility for, and the Transferred Assets will be sold free and clear of, any successor liability, including the following:  (a) any liability or other obligation of the Debtors' estates or related to the Debtors' Transferred Assets other than as expressly set forth in the Stalking Horse Asset Purchase Agreement; or (b) any claims against the Debtors, their estates, or any of their predecessors or affiliates.  Except as expressly provided in the Sale Order or the Stalking Horse Asset Purchase Agreement, the Stalking Horse Bidder or Successful Bidder shall have no liability whatsoever with respect to the Debtors' estates' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' estates' (or their predecessors' or affiliates') obligations (as described below, "Successor Liability") based on any action taken in connection with the Sale, the assumption of the Assumed Liabilities (as defined in the Stalking Horse Asset Purchase Agreement), or the continued operation of the Business on any basis, including under any doctrines of successor, transferee, or vicarious liability (whether based on de facto merger, mere continuation, or any other basis or theory of liability), including (a) any past, present, or future liabilities of Avaya or any of its affiliates to any shareholder, governmental entity, or person, (b) any past, present or future liabilities of Avaya or any of its affiliates arising out of any civil or criminal investigations or claims brought by any governmental entity, including the United States Attorney's Office or the Securities and Exchange Commission, seeking sanctions, penalties, restitution, disgorgement, or other amounts owed or that become owed, and (c) any past, present or future claims of or liability associated with indemnity, advancement, reimbursement or contribution of legal or other expenses incurred by current or former directors, officers, employees, agents, attorneys, or other representatives of Avaya or its affiliates in connection with or arising out of any proceedings, including those referenced in sections (a) and (b) above.

## <u>Exhibit 3</u>

**Form of the Contract Assumption Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT
## OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on January 19, 2017 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE THAT** on March 8, 2017 in connection with the proposed sale (the "Sale") of the Business[2] to Extreme Networks, Inc., or any other Successful Bidder for the Transferred Assets, at an auction for the Transferred Assets (the "Auction"), the Debtors filed a motion (the "Motion") [Docket No. 223] seeking, among other things: the entry of an order approving (a) bidding procedures governing the Sale; (b) the form of asset purchase agreement for the Transferred Assets; (c) payment of a Termination Fee and Purchaser Expense Reimbursement to the Stalking Horse Bidder in certain instances defined in the Stalking Horse APA; (d) the form and manner of notices; and (e) procedures relating to the assumption and assignment of executory contracts and unexpired leases in connection with the Sale.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is:  4655 Great America Parkway, Santa Clara, CA 95054.

[2]     Capitalized terms used in this Notice and not immediately defined have the meanings given to such terms in the Motion or Bidding Procedures as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** on April [__], 2017, the Bankruptcy Court entered an order (the "Bidding Procedures Order") [Docket No. ____] granting certain of the relief sought in the Motion, including, among other things, approving:  (a) the bidding procedures (the "Bidding Procedures") for the Sale of the Transferred Assets; and (b) procedures (the "Assumption Procedures") for the assumption and assignment of executory contracts and unexpired leases (the "Transferred Contracts and Assumed Leases").   Copies of the Bidding Procedures Order (which incorporates the Assumption Procedures) and the Bidding Procedures are enclosed herein.

**PLEASE TAKE FURTHER NOTICE THAT** upon the closing of the Sale, the Debtors intend to assume and assign to the Stalking Horse Bidder or any other Successful Bidder the Transferred Contracts and Assumed Leases set forth on **Exhibit 1** hereto.  In addition, the cure payments, if any, necessary for the assumption and assignment of the Transferred Contracts and Assumed Leases (the "Cure Payments") are set forth on **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE THAT** **Exhibit 1** identifies those Transferred Contracts and Assumed Leases that are Mixed-Use Contracts subject to section 5.12 of the Stalking Horse APA, which provides that, prior to closing of the Sale, the Debtors shall separate Mixed-Use Contracts into two contracts with the applicable counterparty.  One contract will have terms and conditions that are related to the Business, which will be assigned to the Stalking Horse Bidder or other Successful Bidder upon closing of the Sale, and one contract will relate to the other businesses of the Debtors, which will be retained by the Debtors, in each case on terms and conditions which, in the aggregate, are comparable to those of such Mixed-Use Contract prior to separation.

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE STALKING HORSE BIDDER HAS IDENTIFIED YOU AS A COUNTERPARTY TO A POTENTIAL TRANSFERRED CONTRACT OR ASSUMED LEASE.**  Under the terms of the Assumption Procedures, the Stalking Horse Bidder may modify the list of Transferred Contracts and Assumed Leases until the Bid Deadline, and the Debtors reserve the right at any time after the Assumption and Assignment Service Deadline and before the closing of a Sale, to: (a) supplement the list of Transferred Contracts on the Contract Assumption Notice with previously omitted executory contracts or unexpired leases; (b) remove a Transferred Contract or Assumed Lease from the list of executory contracts and unexpired leases ultimately selected as a Transferred Contract or Assumed Lease that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list; and/or (c) modify the previously stated Cure Payment associated with any Transferred Contract or Assumed Lease.  Any counterparty impacted by such a modification will receive notice thereof (the "Supplemental Assumption Notice") and an opportunity to object to the proposed assumption and assignment of the Transferred Contract or Assumed Lease, if applicable.

2

**Obtaining Additional Information**

Additional copies of the Bidding Procedures Order, the Bidding Procedures and any other related documents are available upon request to Prime Clerk, LLC, the Debtors' notice and claims agent, at (855) 252–2156, or by visiting the case website at https://cases.primeclerk.com/avaya/.

**Important Dates and Deadlines**

1.      The deadline to submit a Qualified Bid is **4:00 p.m. Eastern Time on May 18, 2017**.

2.      The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "Sale Order") is **4:00 p.m. Eastern Time on May 18, 2017** (the "Sale Objection Deadline").

3.      The Auction for the Transferred Assets, if one is necessary, will commence at **10:00 a.m. Eastern Time on May 23, 2017**, or such other date as determined by the Court, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

4.      A hearing (the "Sale Hearing") to consider the proposed Sale will be held before the Honorable Stuart M. Bernstein of the Bankruptcy Court at **10:00 a.m. Eastern Time on May 25, 2017**, or such other date as determined by the Court, at One Bowling Green, New York, New York 10004.

**Filing Assumption and Assignment Objections**

Pursuant to the Assumption Procedures, objections to the proposed assumption and assignment of a Transferred Contract or Assumed Lease, including any objection relating to the Cure Payment and/or adequate assurance of future performance, must:  (a) be in writing; (b) state with specificity the nature of such objection and alleged Cure Payment, including applicable and appropriate documentation in support of such alleged Cure Payment; (c) comply with the Bankruptcy Rules and the LBRs; and (d) be filed with the Bankruptcy Court and served so as to be **actually received** on or before **(i) the Sale Objection Deadline, (ii) for those counterparties receiving this notice after the Sale Objection Deadline, ten (10) days after service of this notice, or (iii) for those counterparties that receive a Supplemental Assumption Notice, the deadline set forth therein**.

3

Failure to timely file an objection shall constitute a waiver of any objections related to accepting performance by, or rendering performance to, the Stalking Horse Bidder for purposes of section 365(c)(1) of the Bankruptcy Code.

In the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, parties who have previously received this notice shall have **ten (10) Business Days after the Auction** to file an objection related to adequate assurance of future performance or related to whether applicable law excuses the party from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code.

Any objections will be considered at the Sale Hearing, or as soon thereafter as counsel may be heard, and must be served on the following parties:

| Debtors | Counsel to Debtors |
|---|---|
| Avaya Inc.<br>4655 Great American Parkway<br>Santa Clara, California 95054<br>Attn:  Adele Freedman, VP & Deputy General Counsel | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn: Ryan Preston Dahl, Esq.; Steve Toth, Esq.;<br>Brad Giordano, Esq. |
| **Counsel to the Creditors' Committee** | **United States Trustee** |
| Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019<br>Attn: Lorenzo Marinuzzi, Esq.; Jon I. Levine, Esq. | Office of the United States Trustee<br>Southern District of New York<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, New York 10014<br>Attn:  Susan D. Golden, Esq.; Susan Arbeit, Esq. |
| **Counsel to the Agent for the<br>Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn: Damian S. Schaible, Esq. | Latham & Watkins LLP<br>355 S. Grand Ave<br>Los Angeles, California 91105<br>Attn: Peter M. Gilhuly; Kimberly A. Posin |
| **Counsel to the Ad Hoc Group of First Lien Holders** | **Counsel to the Ad Hoc Group of Crossover Holders** |
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attn: Philip C. Dublin, Esq.; Naomi Moss, Esq. | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038<br>Attn: Sayan Bhattacharyya, Esq.;<br>Kristopher M. Hansen, Esq. |
| **United States Attorney** | **Counsel to the 7.00% First Lien Notes Trustee,<br>9.00% First Lien Notes Trustee, and Second Lien<br>Notes Trustee** |
| Office of the United States Attorney for the Southern<br>District of New York<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007 | Morgan, Lewis & Bockius LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn: Glenn E. Siegel, Esq.; Joshua Dorchak, Esq.;<br>Rachel Jaffe Mauceri, Esq. |

## <u>Consequences of Failing to Timely File and Serve an Objection</u>

**Any counterparty to a Transferred Contract or Assumed Lease who fails to timely file and serve an Objection to the proposed assumption and assignment of a Transferred Contract or Assumed Lease in accordance with the Bidding Procedures Order and the Assumption Procedures shall be forever barred from asserting any Objection to the assumption and assignment of the Transferred Contract or Assumed Lease and/or the cure amount set forth on <u>Exhibit 1</u>, including asserting additional cure amounts with respect to the Transferred Contract or Assumed Lease relating to any period prior to the time of assumption and assignment.**

## Exhibit 1

**Transferred Contracts and Assumed Leases**

The below list of Transferred Contracts and Assumed Leases includes only those Transferred Contracts and Assumed Leases of Debtors to be assumed and assigned pursuant to section 365 of the Bankruptcy Code and not Transferred Contracts and Assumed Leases of non-Debtor subsidiaries of Avaya Inc.

## Networking Transferred Contracts & Leases

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|--------|--------------|---------------------|-------------|
| Avaya Inc. | Commonwealth of Kentucky - Department of Education | Master Agreement between Avaya Inc. and the Commonwealth of Kentucky - Department of Education, effective the 1st of March, 2013. [MA 758 1300000900] | $0 |
| Avaya Inc. | Xirrus, Inc. | Amendment One to Strategic Alliance and OEM Agreement, effective October 3, 2014, amending the Strategic Alliance and OEM Agreement of March 24, 3014 [sic] by and between Xirrus, Inc., Avaya, Inc. and Avaya International Sales, Ltd. | $0 |
| Avaya Inc. | Xirrus, Inc. | First Amended and Restated Strategic Alliance and OEM Agreement, entered into on December 20, 2016, effective as of January 16, 2017, by and between Avaya Inc., Avaya International Sales Limited and XIRRUS. | $0 |
| Avaya Inc. | Tata Elxsi Ltd. | Professional Services Agreement between Tata Elxsi Ltd. and Avaya Inc., effective the 12th of September, 2005 (as amended). | $0 |
| Avaya Inc. | Xirrus, Inc. | Fifth Amended and Restated Investors' Rights Agreement by and between Avaya Inc. and the other investors and shareholders party thereto and Xirrus, Inc., effective as of April 22nd, 2014. | $0 |
| Avaya Inc. | Xirrus, Inc. | Fifth Amended and Restated Right of First Refusal and Co-Sale Agreement by and between Avaya Inc. and the other investors and shareholders party thereto and Xirrus, Inc., effective as of April 22nd, 2014. | $0 |
| Avaya Inc. | Xirrus, Inc. , Questmark Partners III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP, Dirk I. Gates | Fourth Amended and Restated Voting Agreement between Xirrus, Inc., Questmark Partners III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP, Dirk I. Gates, Patrick P. Parker, Steven F. and Kelly J. Degennaro (Trustees of the Degennaro Family 2001 Trust Dated May 30, 2001), and Avaya Inc., effective as of April 22nd, 2014. | $0 |
| Avaya Inc. | Xirrus, Inc. | Note and Warrant Purchase Agreement by and between Avaya Inc. and the other lenders party thereto, and Xirrus, Inc., dated as of February 26, 2015. | $0 |
| Avaya Inc. | Xirrus, Inc. | Secured Convertible Promissory Note No 15-5, by and between Xirrus, Inc. and Avaya Inc., dated February 26, 2015. | $0 |
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No 15-5, by and between Xirrus, Inc. and Avaya Inc., dated February 26, 2015. | $0 |

---

[1]    The Debtors reserve their right to amend the Cure Amount prior to serving the Contract Assumption Notice.

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|---|---|---|---|
| Avaya Inc. | Triple Point Venture Growth BDC Corp., Carr & Farrell LLP | Subordination Agreement, by and between Avaya Inc. and the other Creditors party thereto, Triple Point Venture Growth BDC Corp., as Lender, and Carr & Farrell LLP, as Collateral Agent, dated as of February 26, 2015. | $0 |
| Avaya Inc. | Xirrus, Inc. | Security Agreement, dated as of February 26, 2015, by and between Xirrus, Inc., Avaya Inc. and the other Lenders party thereto. | $0 |
| Avaya Inc. | Xirrus, Inc., Carr & Farrell LLP | Intellectual Property Security Agreement, dated as of February 26, 2015, by and between Xirrus, Inc., Carr & Farrell LLP as Collateral Agent for Avaya Inc. and the other Lenders (including Avaya Inc. identified therein). | $0 |
| Avaya Inc. | Xirrus, Inc. | Secured Convertible Promissory Note No 15-15, by and between Xirrus, Inc. and Avaya Inc., dated April 6, 2015. | $0 |
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No. 16-22, by and between Avaya Inc. and Xirrus, Inc., dated January 1, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No. 16-12, by and between Avaya Inc. and Xirrus, Inc., dated January 1, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc., Questmark Partners III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP, The Board of Trustees of the Leland Stanford Junior University | Note and Warrant Purchase Agreement between Avaya Inc., Questmark Partners III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP, The Board of Trustees of the Leland Stanford Junior University and Xirrus, Inc. effective as of February 19th, 2016. | $0 |
| Avaya Inc. | Triple Point Venture Growth BDC Corp., Carr & Farrell LLP | Subordination Agreement, dated as of February 19, 2016, by and between Avaya Inc. and the other Creditors party thereto, Triple Point Venture Growth BDC Corp., as Lender, and Carr & Farrell LLP, as Collateral Agent. | $0 |
| Avaya Inc. | Xirrus, Inc. | Security Agreement, dated as of February 19, 2016, by and between Xirrus, Inc., Avaya Inc. and the other Lenders party thereto. | $0 |
| Avaya Inc. | Xirrus, Inc., Carr & Farrell LLP | Intellectual Property Security Agreement, dated as of February 19, 2016, by and between Xirrus, Inc., Carr & Farrell LLP as Collateral Agent for Avaya Inc. and the other Lenders (including Avaya Inc. identified therein). | $0 |
| Avaya Inc. | Xirrus, Inc. | Secured Convertible Promissory Note  No. 16-5, by and between Xirrus, Inc. and Avaya Inc., dated February 19, 2016. | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|---|---|---|---|
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No 16-5, by and between Xirrus, Inc. and Avaya Inc., dated February 19, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Amendment No. 1 to Secured Convertible Promissory Notes, by and between Xirrus, Inc., Avaya Inc. and the other Lenders party thereto, dated February 19, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Note and Purchase Agreement between Avaya Inc., QuestMark Partners III, L.P., QuestMark Partners Side Fund III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP and Xirrus Inc., entered into as of May 31st, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc., QuestMark Partners III, L.P., QuestMark Partners Side Fund III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP | Capital Stock Warrant No. 16-22, by and between Avaya Inc. and Xirrus, Inc., dated January 1, 2016. | $0 |
| Avaya Inc. | Triple Point Venture Growth BDC Corp., Carr & Farrell LLP | Subordination Agreement, dated as of May 31, 2016, by and between Avaya Inc. and the other Creditors party thereto, Triple Point Venture Growth BDC Corp., as Lender, and Carr & Farrell LLP, as Collateral Agent. | $0 |
| Avaya Inc. | Xirrus, Inc. | Security Agreement, dated as of May 31, 2016, by and between Xirrus, Inc., Avaya Inc. and the other Lenders party thereto. | $0 |
| Avaya Inc. | Xirrus, Inc., Carr & Farrell LLP | Intellectual Property Security Agreement, dated as of May 31, 2016, by and between Xirrus, Inc., Carr & Farrell LLP as Collateral Agent for Avaya Inc. and the other Lenders (including Avaya Inc. identified therein). | $0 |
| Avaya Inc. | Xirrus, Inc. | Secured Convertible Promissory Note  No. 16-14, by and between Xirrus, Inc. and Avaya Inc., dated May 31, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No 16-31, by and between Xirrus, Inc. and Avaya Inc., dated May 31, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Amendment One to Strategic Alliance and OEM Agreement, effective October 3, 2014, amending the Strategic Alliance and OEM Agreement of March 24, 3014 [sic] by and between Xirrus, Inc., Avaya, Inc. and Avaya International Sales, Ltd. | $0 |
| Avaya EMEA Ltd. - South Africa Branch | Capital Propfund 1 (PTY) Ltd. | 307211 Lease agreement, dated 1st June 2016, between Capital Propfund 1 (PTY) Ltd and Avaya Emea Ltd - South Africa for ERF 38, 16 Culcross Court, Johannesburg, South Africa. | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|--------|-------------|---------------------|----------------|
| Sierra Asia Pacific Inc. | Quality Houses Leasehold Property Fund | 306908 Lease agreement, dated January 1st 2015, between Quality Houses Leasehold Property Fund and Sierra Asia Pacific Inc. for 55 Wireless Road, Lumpini, Bangkok, Thailand. | $0 |
| Avaya Inc. | Meridian-OCP, LLP | 308321 Lease agreement, dated 1st August, 2016, between Meridian-OCP, LLP and Avaya Inc. for 2650 Meridian Parkway, Durham, North Carolina. | $0 |
| Avaya Inc. | AO Mt. Kemble, LLC | Office Lease, dated April 14, 2016, between Avaya Inc. and AO Mt. Kemble, LLC for 350 Mount Kemble Avenue, Morristown, New Jersey (as amended). | $0 |
| Avaya Inc. | Sanctuary Park Realty Holding Company | 307897 Lease agreement, dated 1st July 2008, between Sanctuary Park Realty Holding Company and Avaya Inc. for 1145 Sanctuary Parkway, Alpharetta, Georgia. As amended by Amendment #1 dated 1st January 2014 between Sanctuary Park Realty Holding Company and Avaya Inc. | $0 |
| Avaya Inc. | Technology Park X, Limited Partnership | 307951 Lease agreement, dated 30th July 2012, between Technology Park X, Limited Partnership and Avaya Inc. for 600 Technology Park Drive, Billerica, Massachusetts. | $0 |
| Avaya Inc. | The Prudential Insurance Company of America | 307965 Lease agreement, dated 1st June 2012, between The Prudential Insurance Company of America and Avaya Inc. for 4655 Great America Parkway, Santa Clara, California. | $0 |
| Avaya Inc. | MR 12121, LLC | 308136 Lease agreement, dated 1st November 2014, between MR 12121, LLC and Avaya Inc. for 12121 Grant St, Thornton, Colorado. | $0 |
| Avaya Inc. | Concord Storage Associates | 304499 Lease agreement, dated 8th July 1999, between Concord Storage Associates and Avaya Inc. for 1111 Freeport Parkway, Coppell, Texas. | $0 |
| Avaya Inc. | Vornado Two Penn Property LLC | 307820 Lease agreement, dated 30th June 2006, and amended December 28th 2015 between Vornado Two Penn Property LLC and Avaya Inc. for Two Penn Plaza, New York, New York (as amended). | $0 |
| Avaya Inc. | Reva Norfolk, LLC | 307989 Lease agreement, dated 1st December 2002, between Reva Norfolk, LLC and Avaya Federal Solutions, Inc. for 12730 Fair Lakes Circle, Fairfax, Virginia. | $0 |
| Avaya Inc. | 1000 Waterford Operating LP | 308040 Lease agreement, dated 6th May 2011, between 1000 Waterford Operating LP and Avaya Inc. for 1000 NW 57th Court, Miami, Florida. | $0 |
| Avaya Inc. | Minneapolis 225 Holdings LLC | 308048 Lease agreement, dated 1st May 2011, between Minneapolis 225 Holdings LLC and Avaya Inc. for 225 South Sixth Street, Minneapolis, Minnesota, USA, as amended. | $0 |
| Avaya Inc. | Telenav, Inc. | 307965-03 Sublease agreement, dated 11 November 2015, between Telenav, Inc. and Avaya Inc., for 4655 Great America Parkway, 3rd Floor, Santa Clara, California, 95054. | $0 |
| Avaya Inc. | AT&T Services, Inc. | Master Component and Services Subcontracting Agreement between AT&T Services, Inc. and Avaya Inc., dated the 13th of August, 2009 (as amended). | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|--------|--------------|---------------------|----------------|
| Avaya Inc. | Tata Elxsi Limited | Master Services Agreement between Tata Elxsi Limited and Avaya Inc., effective the 6th of May, 2015 (as amended by the Addendum to Master Services Agreement between Tata Elxsi Limited and Avaya Inc., effective the 15th of June, 2015). | $0 |
| Avaya Inc. | Tata Elxsi Limited | Statement of Work Software Application Development for SDN Fx Healthcare Solution between Avaya Inc. and Tata Elxsi Limited, dated the 30th of June, 2016. | $0 |
| Avaya Inc. | Inocybe Technologies | Software OEM and Resale Agreement between Avaya Inc., and Inocybe Technologies, effective the 14th of August, 2015 (as amended). | $0 |
| Avaya Inc. | KEMP Technologies, Inc. | Software OEM and Resale Agreement between Avaya Inc. and KEMP Technologies Inc., effective 21st of January, 2016. | $0 |
| Avaya Inc. | DrievnBI, LLC | Software OEM and Resale Agreement between Avaya Inc. and DrivenBI, LLC, effective the 3rd of September 2010, as amended. | $0 |
| Avaya Inc. | Mirantis, Inc. | Software OEM and Resale Agreement between Avaya Inc., Avaya International Sales Limited, and Mirantis, Inc., effective August 19, 2015. | $0 |
| Avaya Inc. | State of North Carolina Statewide IT Procurement Office | Statewide Term Contract for Layer 2 LAN Switches and Peripheral, Contract Number 204L, between State of North Carolina Statewide IT Procurement Office and Avaya Inc., effective the 7th of October 2013. | $0 |
| Avaya Inc. | Fuji Xerox Co., Ltd. | Reseller Agreement between Fuji Xerox Co., Ltd. and Avaya Inc., effective the 26th of July, 2010 (as amended). | $0 |

## Mixed-Use Contracts

The below are Mixed-Use Contracts which will each be separated into a Transferred Mixed-Use Contract and a Retained Mixed-Use Contract in accordance with section 5.12 of the Stalking Horse APA.

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|---|---|---|---|
| Avaya Inc. | County of Loudoun, Virginia | Transactional Agreement For Sale and License of Products and Services between Avaya Inc. and the County of Loudoun, Virginia, effective the 3rd of January, 2017. | $0 |
| Avaya Inc. | Commonwealth of Kentucky (Finance and Administration Cabinet Commonwealth Office of Technology) | Master Agreement for Enterprise Networking Routing & Switching Equipment between the Commonwealth of Kentucky (Finance and Administration Cabinet Commonwealth Office of Technology) and Avaya Inc., effective the 1st of June, 2010 (as amended). [MA 758 1000000828] | $0 |
| Avaya Inc. | State of New York Office of General Services | Contract #PT64524 in response to RFP 21350, Group 77018 Comprehensive Telecommunications Equipment and Solutions (between Avaya, Inc. and the State of New York Office of General Services), awarded the 12th of May, 2009. | $0 |
| Avaya World Services Inc. | Allstate Insurance Company | Global Customer Agreement between Allstate Insurance Company and Avaya World Services Inc., effective the 6th of April, 2013 (as amended). | $0 |
| Avaya Inc. | Avnet, Inc. | Agreement between Avnet, Inc. and Avaya Inc., effective the 15th of April, 2005 (as amended). | $0 |
| Avaya Inc. | Lite-On Technology Corporation | Manufacturing Services Agreement between Lite-On Technology Corporation, Avaya International Sales Limited and Avaya Inc., effective the 9th of July, 2013 (as amended). | $0 |
| Avaya Inc. | Flextronics Systems, Ltd. | International Manufacturing Services Agreement between Flextronics Systems, Ltd and Avaya Inc., effective the 30th of July, 2008. | [TBD][3] |
| Avaya Inc. | Flextronics Logistics (Zhuhai) Co., Ltd. | HUB Operator Agreement between Flextronics Logistics (Zhuhai) Co., Ltd. and Avaya Inc., dated the 5th of March, 2012. | [TBD][4] |
| Avaya Inc. | Flextronics Telecom Systems, Ltd. | Letter of Agreement between Flextronics Telecom Systems, Ltd. and Avaya Inc., dated the 13th of October, 2014. | [TBD][5] |

---

[2]    The Debtors reserve their right to amend the Cure Amount prior to serving the Contract Assumption Notice.

[3]    Due to the mixed-use nature of this contract, the Debtors are still determining the Cure Amount associated with the Networking Business.

[4]    Due to the mixed-use nature of this contract, the Debtors are still determining the Cure Amount associated with the Networking Business.

[5]    Due to the mixed-use nature of this contract, the Debtors are still determining the Cure Amount associated with the Networking Business.

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|--------|--------------|---------------------|-------------|
| Avaya Inc. | Luxoft Global Operations GmbH | Master Services Agreement, dated as of January 1st, 2014, by and between Avaya, Inc., Avaya International Sales Limited and Luxoft Global Operations GmbH, as amended and the related Amended and Restated Addendum to Master Services Agreement, dated September 1st, 2014. | $0 |
| Avaya Inc. | Infosys Limited | Services Agreement between Infosys Limited and Avaya Inc., effective the 5th of September, 2006 (as amended). | [TBD][6] |
| Avaya Inc. | Innovatia Inc. | Master Subcontractor Agreement for Supply of Services between Innovatia Inc. and Avaya Inc., effective the 1st of October, 2010 (as amended). | $0 |
| Avaya Inc. | TAPFIN Process Solutions, a ManpowerGroup Company | Master Services Agreement between TAPFIN Process Solutions, a ManpowerGroup Company and Avaya Inc., effective the 17th of February, 2014. | $0 |
| Avaya Inc. | CSI Leasing, Inc. | Master Lease Agreement between CSI Leasing, Inc. and Avaya Inc., dated the 25th of June, 2015. | $0 |
| Avaya Inc. | State of New Jersey, Department of the Treasury, Division of Purchase and Property | Term Contract T-1316 Telecommunications Equipment & Services between State of New Jersey, Department of the Treasury, Division of Purchase and Property and Avaya Inc., effective the 1st of February, 2012. | $0 |
| Avaya Inc. | Commissioner of the Office of General Services of the State of New York | Contract PM20790 between The People of the State of New York, acting by and through the Commissioner of the Office of General Services and Avaya Inc., effective the 30th of November, 2015 (as amended). | $0 |
| Avaya Inc. | Central Susquehanna Intermediate Unit | PEPPM 2015 Product Line Bid CSIU and Awarded Vendor Agreement between Central Susquehanna Intermediate Unit, Lewisburg, Pennsylvania and Avaya Inc., effective the 1st of January, 2015. | $0 |
| Avaya Inc. | Chrimar Systems, Inc., d/b/a CMS Technologies; Chrimar Holding Company, LLC | License and Settlement Agreement between Avaya Inc. and Chrimar Systems, Inc., d/b/a CMS Technologies; Chrimar Holding Company, LLC, effective July 12, 2012. | $0 |
| Avaya Inc. | Wetro Lan LLC | Release Agreement between Avaya Inc. (including its Affiliates) and Wetro Lan LLC, effective October 6, 2015. | $0 |
| Avaya Inc. | Mitel Networks Corporation | Settlement and License Agreement between Avaya Inc. and Mitel Networks Corporation, effective February 1, 2007 and amended April 11, 2013. | $0 |
| Avaya Inc. | Westcon Group, Inc. | Distributor Agreement #DV1-T100801 between Westcon Group, Inc. and Avaya Inc. on behalf of its identified subsidiaries, dated the 2nd of August, 2010 (as amended). | $0 |
| Avaya Inc. | ScanSource, Inc. (d/b/a Catalyst Telecom) | Distribution Agreement between ScanSource, Inc. (d/b/a Catalyst Telecom) and Avaya Inc., dated the 16th of August, 2002 (as amended). | $0 |

---

[6]    Due to the mixed-use nature of this contract, the Debtors are still determining the Cure Amount associated with the Networking Business.

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|---|---|---|---|
| Avaya Inc. | Synnex Corporation | Distributor Agreement between Synnex Corporation and Avaya Inc., effective the 14th of December, 2012 (as amended). | $0 |
| Avaya Inc. | Jenne Distributors, Inc. (now Jenne, Inc.) | Distributor Agreement #DV1-T0910004 between Jenne Distributors, Inc. (now Jenne, Inc.) and Avaya Inc., dated the 22nd of October, 2009 (as amended). | $0 |
| Avaya Inc. | Tallard Technologies Inc. (now Avnet Inc.) | Distributor Agreement between Tallard Technologies Inc. (now Avnet Inc.) and Avaya Inc., effective the 1st of April, 2010 (as amended). | $0 |
| Avaya World Services Inc. | Dimension Data Commerce Centre Limited | Direct Partner Agreement between Dimension Data Commerce Centre Limited and Avaya World Services, Inc., dated the 17th of July, 2012. | $0 |
| Avaya Inc. | Avnet Applied Computing and Avnet Electronics Marketing | Agreement between Avnet Applied Computing and Avnet Electronics Marketing. and Avaya Inc., effective the 15th of April, 2005 (as amended). | $0 |
| Avaya Inc. | EION International Inc. | Master Service Agreement between EION International Inc. and Avaya Inc., effective the 25th of July, 2011 (as amended). | $0 |
| Avaya Inc. | Spirent Communications Israel Ltd., Radvision Ltd., and Radvision Inc. | Cross-License Agreement between Spirent Communications Israel Ltd., Avaya Inc., Radvision Ltd., and Radvision Inc., dated the 1st of July, 2014. | $0 |
| Avaya Inc. | Communication Test Design, Inc. | License Agreement between Communication Test Design, Inc. and Avaya Inc., effective the 1st of August, 2013 (as amended). | $0 |
| Avaya Inc. | Communications Test Design, Inc. | Master Repair and Logistics Service Agreement between Communications Test Design, Inc. and Avaya Inc., effective the 1st of February, 2016. | $0 |
| Avaya Inc. | Broadcom Corporation | Source Code License and Software Distribution Agreement between Broadcom Corporation and Avaya Inc., effective the 16th of December, 2003 (as amended). | $0 |
| Avaya Inc. | Broadcom Corporation | Software License Agreement between Broadcom Corporation and Avaya Inc., effective the 17th of November, 2005 (as amended). | $0 |
| Avaya Inc. | HP Enterprise Services LLC | Master Professional Services Agreement between HP Enterprise Services LLC and Avaya Inc., effective the 20th of August, 2014 (as amended). | $0 |
| Avaya Inc. | Cisco Systems, Inc. | Patent License Agreement between Avaya Inc. and Cisco Systems, Inc., effective the 1st of October, 2000. | $0 |
| Avaya Inc. | Cisco Systems, Inc. | Amendment No. 1 to the Patent License Agreement between Avaya Inc. and Cisco Systems, Inc., effective the 24th of October, 2013. | $0 |
| Avaya Inc. | International Business Machines Corporation | Patent License Agreement between Avaya Inc. and International Business Machines Corporation, effective the 1st of October, 2000. | $0 |
| Avaya Inc. | International Business Machines Corporation | Patent License Agreement between Avaya Inc. and International Business Machines Corporation, effective the 22nd of December, 2006. | $0 |
| Avaya Inc. | Iwatsu Electric Co., Ltd. | Patent License Agreement between Avaya Licensing LLC and Iwatsu Electric Co., Ltd., effective the 1st of January, 2006 (as amended). | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|--------|--------------|---------------------|----------------|
| Avaya Inc. | Leviton Manufacturing Co. | Amendment to November 15, 2002 Patent License Agreement between Avaya Licensing Corporation and Leviton Manufacturing Co., Inc., effective the 15th of June, 2013. | $0 |
| Avaya Inc. | Leviton Manufacturing Co. | Patent License Agreement between Avaya Licensing Corporation and Leviton Manufacturing Co., Inc., effective the 15th of November, 2002, as amended. | $0 |
| Avaya Inc. | Leviton Manufacturing Co. | Letter Agreement between Avaya Inc. and Leviton Manufacturing Co., Inc., effective September 27, 2002. | $0 |
| Avaya Inc. | Leviton Manufacturing Co. | Offer Letter of Amendment and Release between Avaya Licensing Corporation and Leviton Manufacturing Co., Inc., effective the 30th of September, 2003. | $0 |
| Avaya Inc. | Leviton Manufacturing Co. | Letter of Amendment to Patent License Agreement of November 15, 2002 between Avaya Licensing Corporation and Leviton Manufacturing Co., Inc., effective the 30th of January, 2004. | $0 |
| Avaya Inc. | Mitel Corporation | Settlement and Patent License Agreement between Avaya Inc. and Mitel Corporation, effective the 1st of February, 2007. | $0 |
| Avaya Inc. | Mitel Networks Corporation | Addendum to Settlement and Patent License Agreement between Avaya Inc. and Mitel Networks Corporation, effective the 11th of April, 2013. | $0 |
| Avaya Inc. | Panduit Corporation | Patent License Agreement between Avaya Licensing Corporation and Panduit Corporation, effective the 4th of December, 2002. | $0 |
| Avaya Inc. | Lucent Technologies Inc. and Lucent Technologies GRL CORP. | Patent and Technology License Agreement by and between Lucent Technologies Inc. and Lucent Technologies GRL CORP. and Avaya Inc. and Avaya Technology Corp., effective the 1st of October, 2000. | $0 |
| Avaya Inc. | Rocket Software, Inc. | Software License Agreement between Avaya Inc. and Rocket Software, Inc., effective the 2nd of February, 2007 (as amended). | $0 |
| Avaya Inc. | Oracle America Inc. | Binary License and Redistribution Agreement for Royalty License between Avaya Inc., Avaya International Sales Limited and Oracle America Inc., effective 15th of July, 2012 (as amended). | $0 |
| Avaya Inc. | Oracle America Inc. | Oracle Partnernetwork Embedded Software License Distribution Agreement between Avaya Inc. and Oracle America Inc., effective of 15th of July, 2011 (as amended). | $0 |
| Avaya Inc. | Red Hat, Inc. | Closed System Partner Program Agreement between Avaya Inc. and Red Hat, Inc., effective the 22nd of July, 2008 (as amended). | $0 |
| Avaya Inc. | Red Hat, Inc. | Partner Acceptance Document Agreement between Avaya Inc. and Red Hat, Inc. effective the 31st of May, 2016. | $0 |
| Avaya Inc. | Mentor Graphics Corporation | End User License agreement No. e5311 between Avaya Inc. and Mentor Graphics Corporation, effective the 27th of June 2008 (as amended). | $0 |
| Avaya Inc. | Azul Systems, Inc. | Software OEM and resale Agreement between Avaya Inc. and Azul Systems, Inc. effective the 28th of February 2016. | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|--------|--------------|---------------------|----------------|
| Avaya Inc. | Rocket Software, Inc. | Adoption Agreement to Rocket Software SLA 07-1082 #15621 by and between Rocket Software, Inc. and Nortel Networks Limited, dated September 17, 2010, by and between Avaya Inc. and Rocket Software, Inc. | $0 |
| Avaya Inc. | Anixter Inc. | Distributor Agreement between Anixter Inc. and Avaya Inc., dated the 21st of December, 2009 (as amended). | $0 |

**<u>Exhibit B</u>**

**Redline Against Proposed Order Filed with the Motion on March 8, 2017**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

ORDER (A) APPROVING
BIDDING PROCEDURES AND BID PROTECTIONS
IN CONNECTION WITH THE SALE OF THE DEBTORS'
NETWORKING BUSINESS, (B) APPROVING THE STALKING
HORSE ASSET PURCHASE AGREEMENT, (C) APPROVING
THE FORM AND MANNER OF NOTICE, (D) SCHEDULING AN
AUCTION AND A SALE HEARING, (E) APPROVING PROCEDURES
FOR DETERMINING CURE AMOUNTS, AND (F) EXTENDING THE
ASSUMPTION/REJECTION DEADLINE FOR THE BILLERICA LEASE

Upon the portion of the motion, dated March 8, 2017 (the "Motion"),[2] of the

above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of

an order (this "Order") (A) authorizing and approving bidding procedures with stalking horse bid

protections in connection with the sale of the Business, (B) approving the form of asset purchase

agreement, (C) approving the form and manner of notice of the auction by sale and sale hearing,

(D) approving procedures for the assumption and assignment of contracts and leases and noticing

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is:  4655 Great America Parkway, Santa Clara, CA 95054.

[2]    Capitalized terms used in this Order and not immediately defined have the meanings given to such terms in the Motion or the Stalking Horse APA, as applicable.

of related cure amounts, (E) extending the deadline to assume or reject the Billerica Lease, (F) scheduling the sale hearing and setting other related dates and deadlines, and (G) granting related relief, all as more fully set forth in the Motion; and upon the Bosacco Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated December 1, 2016; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution, and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.    Bidding Procedures.  The Debtors have articulated good and sufficient reasons for authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"), which are fair, reasonable and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Business.

B.      <u>Stalking Horse Bid Protections</u>.  The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the termination fee equal to $3 million (the "<u>Termination Fee</u>"), the expense reimbursement of up to $750,000 (the "<u>Purchaser Expense Reimbursement</u>") and grant of the $1 million minimum overbid (the "<u>Minimum Overbid</u>," and together with the Termination Fee and the Purchaser Expense Reimbursement, collectively, the "<u>Bid Protections</u>") to a Stalking Horse Bidder, including:

i.      the Bid Protections are the product of negotiations between the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking Horse APA (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Business to maximize the value of the Debtors estates;

ii.     the Bid Protections are an actual and necessary cost and expense of preserving the respective Debtors' estates;

iii.    the Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed Sale under the Stalking Horse APA, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Business will be received;

iv.     the protections afforded to the Stalking Horse Bidder by way of the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the Stalking Horse APA, and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

v.      the assurance of the payment of the Bid Protections has promoted more competitive bidding by inducing the Stalking Horse Bidder's bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Business, induced the Stalking Horse Bidder to conduct due diligence with respect to the Debtors' business, assets, operations and liabilities, and propose the Sale contemplated by the Stalking Horse APA,

3

including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely and increases the likelihood that the final purchase price reflects the true value of the Business.

C.    <u>Sale Notice</u>.  The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including:  (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the sale motion and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the assets for sale; (v) instructions for promptly obtaining a copy of the Stalking Horse APA; (vi) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and (viii) notice of the proposed assumption and assignment of contracts and leases to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder arising from the Auction, if any (a "<u>Successful Bidder</u>")) and the right, procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

D.    <u>Assumption Procedures</u>.  The Motion and the Contract Assumption Notice are reasonably calculated to provide counterparties to the Debtors' Transferred Contracts and Assumed Leases with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any cure amounts relating thereto, and the Assumption Procedures.

E.    <u>Billerica Lease Assumption/Rejection Deadline Extension</u>.  The Debtors have articulated good and sufficient reasons for extending the deadline to assume or reject the

Billerica Lease in order to maximize the value of the Debtors' estates and will not prejudice or otherwise affect the substantive rights of the Billerica Lease Counterparty.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted to the extent set forth herein.

**I.      <u>Important Dates and Deadlines</u>**

2.      **<u>Sale Hearing</u>**.  **<u>Thursday, May 25, 2017, at 10:00 a.m.</u>** Eastern Time is the date and time the sale hearing (the "<u>Sale Hearing</u>") will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, at:  One Bowling Green, New York, New York 10004. Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order.  **<u>Please take notice that</u>**: the Sale Hearing may not be adjourned without further notice other than by announcement in open Court or on the Court's calendar.

3.      **<u>Sale Objection Deadline</u>**.  **<u>Thursday, May 18, 2017, at 4:00 p.m.</u>** Eastern Time is the deadline to object to entry of the proposed Sale Order (the "<u>Sale Objection Deadline</u>"). Objections, if any, **<u>must</u>**:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the LBRs and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so **<u>actually</u>** **<u>received</u>** no later than the Sale Objection Deadline by the following parties (the "<u>Notice Parties</u>"):

| Debtors | Counsel to Debtors |
|---|---|
| Avaya Inc.<br>4655 Great American Parkway<br>Santa Clara, California 95054<br>Attn: Adele Freedman, VP & Deputy General Counsel | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn: Ryan Preston Dahl, Esq.; Steve Toth, Esq.;<br>Brad Giordano, Esq. |
| **Counsel to the Creditors' Committee** | **United States Trustee** |
| Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019<br>Attn: Lorenzo Marinuzzi, Esq.; Jon I. Levine, Esq. | Office of the United States Trustee<br>Southern District of New York<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, New York 10014<br>Attn: Susan D. Golden, Esq.; Susan Arbeit, Esq. |
| **Counsel to the Agent for the<br>Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn: Damian S. Schaible, Esq. | Latham & Watkins LLP<br>~~140 Scott Drive~~<br>~~Menlo Park~~355 S. Grand Ave<br>Los Angeles, California 94~~110~~25<br>~~Attn: Tad J. Freese, Esq.; Mark Bekheit, Esq.~~<br><br>Attn: Peter M. Gilhuly; Kimberly A. Posin |
| **Counsel to the Ad Hoc Group of First Lien Holders** | **Counsel to the Ad Hoc Group of Crossover Holders** |
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attn: Philip C. Dublin, Esq.; Naomi Moss, Esq. | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038<br>Attn: Kristopher M. Hansen, Esq.; Sayan<br>Bhattacharyya, Esq. |
| **United States Attorney** | **Counsel to the 7.00% First Lien Notes Trustee,<br>9.00% First Lien Notes Trustee, and Second Lien<br>Notes Trustee** |
| Office of the United States Attorney for the Southern<br>District of New York<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007 | Morgan, Lewis & Bockius LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn: Glenn E. Siegel, Esq.; Joshua Dorchak, Esq.;<br>Rachel Jaffe Mauceri, Esq. |

**The failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.**

4.      **Response Deadline**.  **Wednesday, May 24, 2017, at 12:00 p.m.** Eastern Time is the deadline for filing a response to any timely-filed objection to entry of the Sale Order with the Court; <u>provided</u> that such deadline may be extended by agreement of the Debtors and the affected objecting party.

5.      **Competitive Bidding**.  The following dates and deadlines regarding competitive bidding are hereby established (subject to modification as needed):

> a.      **Preliminary Bid Deadline**:  **Tuesday, April 18, 2017, at 4:00 p.m.** Eastern Time is the deadline by which anyone interested in participating in the bidding process must deliver the Preliminary Bid Documents (as defined in the Bidding Procedures);
>
> b.      **Qualified Bid Deadline**:  **Thursday, May 18, 2017, at 4:00 p.m.** Eastern Time is the deadline by which all Qualified Bids (as defined in the Bidding Procedures) must be **actually received** by the parties specified in the Bidding Procedures (the "<u>Bid Deadline</u>"); and
>
> c.      **Auction**:  **Tuesday, May 23, 2017, at 10:00 a.m.** Eastern Time is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtors:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022.

## II.      **Bidding Procedures and Related Relief**

### A.      **Bidding Procedures**

6.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved to the extent set forth herein.  The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the proposed Sale, and any party desiring to submit a higher or better offer for the Debtors' assets shall do so strictly in accordance with the terms of the Bidding Procedures and this Order.

7.      As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder or if no Qualified Bidder (as defined in

the Bidding Procedures) other than the Stalking Horse Bidder indicates its intent to participate in
the Auction, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the
Successful Bidder and the Debtors will seek approval of the Stalking Horse APA at the Sale
Hearing.    If one or more Qualified Bids is timely received from a Qualified Bidder
(other than the Stalking Horse Bidder) in accordance with the Bidding Procedures, the Debtors
shall conduct the Auction as set forth herein.

8.    If the Auction is conducted, each Qualified Bidder participating in the Auction
shall be required to confirm that it has not engaged in any collusion with respect to the bidding
process or the Sale, the Auction will be conducted openly and shall be transcribed or videotaped.

**B.    Bid Protections**

9.    The Bid Protections described in the Motion and set forth in the Stalking Horse
APA are hereby approved to the extent set forth herein.

10.    If the Stalking Horse Bidder becomes entitled to receive the Bid Protections in
accordance with the terms of the Stalking Horse APA:  (a) the Debtors are authorized to pay any
and all amounts owing to the Stalking Horse Bidder in accordance with the terms of the Stalking
Horse APA, including the Termination Fee and Purchaser Expense Reimbursement, without
further action or order by the Bankruptcy Court, in accordance with the terms and conditions of
the Stalking Horse APA and this Order; and (b) the Stalking Horse Bidder shall be granted an
allowed administrative claim in the Debtors' chapter 11 cases in an amount equal to the
Termination Fee and Purchaser Expense Reimbursement under sections 503(b)(1) and 507(a)(2)
of the Bankruptcy Code, provided that such claim shall, in no circumstances, be pari passu or
senior to the claims granted to the DIP Lenders or the Prepetition Secured Parties under the Final

8

DIP Order.[3]  Notwithstanding the foregoing and, for greater certainty, the Purchaser Expense Reimbursement due to the Stalking Horse Bidder is payable directly from the proceeds of the sale to a Successful Bidder and upon the closing of such sale, and such Purchaser Expense Reimbursement shall not remain an unpaid expense of the Debtors following the closing of such sale.

11.    No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, termination fee, "topping," or other similar fee or payment.

## III.    Sale Hearing Notice and Related Relief

12.    The Sale Notice, substantially in the form attached hereto as **Exhibit 2** is hereby approved.  Within seven days of the entry of this Order, or as soon as reasonably practicable thereafter (the "Mailing Date"), the Debtors will serve the Sale Notice, the Stalking Horse APA, the Order, and the Bidding Procedures in accordance with the Sale Guidelines by first-class mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon the following parties:  (a) the Standard Parties; (b) the Rule 2002 Parties; (c) the Federal Trade Commission; (d) the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice; (e) counsel to the Stalking Horse Bidder; (f) any parties known or reasonably believed to have expressed interest in any of the Transferred Assets; (g) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Transferred Assets; (h) all parties to executory contracts or unexpired leases to be assumed and assigned, or rejected as part of the transaction; (i) all applicable state and local

---

[3]    Capitalized terms used in this paragraph 10 and not immediately defined have the meanings given to such terms in the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 178] (the "Final DIP Order").

9

taxing authorities; and (j) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder.

13.     Additionally, on the Mailing Date or as soon as practicable thereafter, the Debtors shall publish a notice, substantially in the form of the Sale Notice, on one occasion, in *The Wall Street Journal* or *New York Times*, and on one occasion in *The Financial Times*.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

## IV.     Assumption Procedures

14.     The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "Assumption Procedures") are hereby approved to the extent set forth herein.

15.     These Assumption Procedures shall govern the assumption and assignment of all Debtors' Transferred Contracts and Assumed Leases assumed and assigned in connection with the Sale under the Stalking Horse APA:

     a.     **Contract Assumption Notice.**  No less than 21 days prior to the Sale Objection Deadline (the "Assumption and Assignment Service Deadline"), the Debtors shall serve a notice of contract assumption (the "Contract Assumption Notice"), in substantially the form of the attached hereto as **Exhibit 3** via overnight delivery on all non-Debtor counterparties to all potential Transferred Contracts and Assumed Leases and provide a copy of the same to the Stalking Horse Bidder.  The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable (i) the title of the executory contract or lease, (ii) the name of the counterparty to the executory contract or lease, (iii) Sellers' good faith estimates of the Cure Payments (if any) required in connection with the executory contract or lease, (iv) the identity of Stalking Horse Bidder

(as assignee, if applicable), and (v) the Sale Objection Deadline; provided, however, that service of a Contract Assumption Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

b.    **Cure Payments.**    The payment of the applicable Cure Payments (as defined in the Stalking Horse APA) by the Debtors or Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (iii) together with the assumption of the Debtors' Transferred Contracts and Assumed Leases by the Debtors and the assignment of the Debtors' Transferred Contracts and Assumed Leases to Stalking Horse Bidder, constitute adequate assurance of future performance thereof.

c.    **Mixed-Use Contracts.**    Transferred Contracts and Assumed Leases identified as Mixed-Use Contracts on the Contract Assumption Notice shall be subject to section 5.12 of the Stalking Horse APA, which provides that, prior to closing of the Sale, the Debtors shall separate Mixed-Use Contracts into two contracts with the applicable counterparty.  One contract will have terms and conditions that are related to the Business, which will be assigned to the Stalking Horse Bidder or other Successful Bidder upon closing of the Sale, and one contract will relate to the other businesses of the Debtors, which will be retained by the Debtors, in each case on terms and conditions which, in the aggregate, are comparable to those of such Mixed-Use Contract prior to separation.

c.d.    **Additions.**    Stalking Horse Bidder may designate, up to the Bid Deadline, additional executory contracts and unexpired leases as agreements to be assumed by the Debtors and assigned to the Stalking Horse Bidder or Successful Bidder, as applicable, (the "Additional Transferred Contracts"). Within three Business Days of notice by the Stalking Horse Bidder of the Additional Transferred Contracts, the Debtors shall serve a Contract Assumption Notice on each of the counterparties to such Additional Transferred Contracts and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign the counterparty's executory contract or unexpired lease to the Stalking Horse Bidder or Successful Bidder, as applicable, and (ii) the corresponding Cure Payment.

d.e.    **Eliminations.**    Stalking Horse Bidder may remove any executory contract or unexpired lease to be assumed by the Debtors and assigned to the Stalking Horse Bidder or Successful Bidder, as applicable, (the "Eliminated Agreements") until the Bid Deadline.  Upon the Stalking Horse Bidder's removal of an Eliminated Agreement, the Debtors shall serve a notice (a "Removal Notice") on each of the impacted counterparties and their counsel of record, indicating that the Debtors no

11

longer intend to assign the counterparty's contract to the Stalking Horse Bidder or Successful Bidder, as applicable, in connection with the sale.

e.f.    **Supplemental Contract Assumption Notice.**    Although the Debtors intend to make a good faith effort to identify all Debtors' Transferred Contracts and Assumed Leases that may be assumed and assigned in connection with a Sale, the Debtors may discover certain executory contracts or unexpired leases inadvertently omitted from the Debtors' Transferred Contracts and Assumed Leases list or Successful Bidders may identify other executory contracts or unexpired leases that they desire to assume and assign in connection with the Sale.  Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse APA, or as otherwise agreed by the Debtors and the Successful Bidder, at any time after the Assumption and Assignment Service Deadline and before the closing of a Sale, to (i) supplement the list of Debtors' Transferred Contracts on the Contract Assumption Notice with previously omitted executory contracts or unexpired leases, (ii) remove a Debtors' Transferred Contract or Assumed Lease from the list of executory contracts and unexpired leases ultimately selected as a Debtors' Transferred Contract or Assumed Lease that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list, and/or (iii) modify the previously stated Cure Payment associated with any Debtors' Transferred Contract or Assumed Lease.  In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice").  Each Supplemental Assumption Notice will include the same information with respect to listed Debtors' Transferred Contracts and Assumed Leases as was included in the Contract Assumption Notice.

f.g.    **Objections.**    Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, LBRs and Case Management Order, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by, the Notice Parties before the Sale Objection Deadline or deadline set forth in the Supplemental Assumption Notice, as applicable.

g.h.    **Dispute Resolution**.    Any objection to the proposed assumption and assignment of a contract or related cure proposed in connection with the Sale that remains unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Court).

16.     Any party failing to timely file an objection to the cure amount or the proposed

assumption and assignment of a Debtors' Transferred Contract or Assumed Lease or Additional

Transferred Contract listed on the Contract Assumption Notice is deemed to have consented to

(a) such Cure Payment, (b) the assumption and assignment of such Transferred Contract,

Assumed Lease, or Additional Transferred Contract, (c) the related relief requested in the Motion

and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure

Payments, the assumption and assignment of the Transferred Contract, Assumed Lease, or

Additional Transferred Contract, adequate assurance of future performance, the relief requested

in the Motion, whether applicable law excuses such counterparty from accepting performance

by, or rendering performance to, the Stalking Horse Bidder or Successful Bidder, as applicable,

for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure

or other amounts against the Debtors and the Stalking Horse Bidder or Successful Bidder, as

applicable, with respect to such party's Transferred Contract, Assumed Lease, or Additional

Transferred Contract.

17.     Notwithstanding any other provision of this Order, the Asset Purchase Agreement

or Transition Services Agreement, no agreement between Oracle Credit Corporation and its

affiliate, Oracle America, Inc., successor in interest to Siebel Systems and Sun Microsystems

("Oracle") and the Debtors will be assumed, assigned, or transferred, and no shared use will be

authorized, by this Order.  All parties reserve all rights with respect to Oracle's invocation of

consent rights.

17.18.  A party in interest may object to the proposed assumption and assignment of a

Debtors' Transferred Contract or Assumed Lease by the Debtors following the closing of the

13

Sale only to the extent such objection could not have been raised prior to the Sale Hearing **and** pertains to matters arising **after** the closing of the Sale.

## V.        **Billerica Lease Assumption/Rejection Deadline Extension**

~~18.~~19.  The time period within which the Debtors may assume or reject the Billerica Lease is extended for an additional ninety days from May 19, 2017, through and including August 17, 2017, in accordance with section 365(d)(4) of the Bankruptcy Code.

~~19.~~20.  This Order is without prejudice to the right of the Debtors to request additional extensions of time to assume or reject the Billerica Lease consistent with section 365(d)(4) of the Bankruptcy Code.

~~20.~~21.  Nothing contained in this Order shall be construed as an assumption or rejection of the Billerica Lease under section 365(a) of the Bankruptcy Code.  Any and all of the Debtors' rights, claims, and defenses with respect to the characterization of the Billerica Lease pursuant to sections 365(d)(3) and 365(d)(4) of the Bankruptcy Code or otherwise are expressly reserved.

~~21.~~22.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

~~22.~~23.  Notwithstanding anything to the contrary in this Order, any payment made hereunder, and any authorization herein, shall be subject to the requirements (if any) imposed on the Debtors under any order(s) of this Court approving the postpetition secured debtor-in-possession financing facility and the use of cash collateral (any such order, a "Financing Order").  In the event of any conflict between the terms of this Order and a Financing

14

Order, the terms of the applicable Financing Order shall control (solely to the extent of such conflict).  For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the rights or remedies of the DIP Agent or the DIP Lenders under the DIP Credit Agreement or the rights or remedies of the Prepetition Secured Parties under the Final DIP Order.[4]

23.24.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

24.25.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

25.26.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2017

_____
THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[4]    Capitalized terms used in this paragraph 22 and not immediately defined have the meanings given to such terms in the Final DIP Order.

## Exhibit 1

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS' NETWORKING BUSINESS

These bidding procedures (the "Bidding Procedures") have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on April [__], 2017 [Docket No. ___] (the "Bidding Procedures Order") on the docket of the lead case in the above-captioned jointly administered cases of Avaya, Inc. and certain of its affiliates (collectively, the "Debtors").

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "Auction") for (i) the sale (the "Sale") of the Business,[2] including certain of the contracts and leases related thereto (the "Transferred Contracts and Assumed Leases"), on a going concern basis, on the terms substantially set forth in the Asset Purchase Agreement dated as of March 7, 2017, by and among the Debtors and Extreme Networks, Inc. (the "Stalking Horse Bidder"), a copy of which is attached hereto as **Exhibit A** (the "Stalking Horse APA"). The Sale will be implemented pursuant to the terms and conditions of the Stalking Horse APA, as the same may be amended pursuant to the terms thereof, subject to the receipt of higher or otherwise better bids (each, a "Bid") in accordance with these Bidding Procedures.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is:  4655 Great America Parkway, Santa Clara, CA 95054.

[2]  Capitalized terms used and not immediately defined have the meanings given to such terms in the Stalking Horse APA or the Motion, as applicable.

---

Copies of the Bidding Procedures Order and Stalking Horse APA or other documents related thereto are available upon request to Prime Clerk, LLC, by calling (855) 252–2156 or visiting https://cases.primeclerk.com/avaya/.

---

**A.      Approval of Stalking Horse Bidder**

On March 7, 2017, the Debtors and the Stalking Horse Bidder entered into the Stalking Horse APA for the sale of the Business, pursuant to which, among other things: (i) the Stalking Horse Bidder agreed to pay the Closing Date Payment for the Transferred Assets and assume the Assumed Liabilities (collectively, the "<u>Stalking Horse Bid</u>"), subject to Bankruptcy Court approval; and (ii) the Debtors agreed that in the event the purchase of the Transferred Assets is ultimately consummated by any person other than the Stalking Horse Bidder, to pay the Stalking Horse Bidder a termination fee in the amount of $3,000,000, which represents approximately 3% of the potential transaction value, subject to adjustments, paid by Stalking Horse Bidder under the Stalking Horse Bid, and to reimburse Purchaser's reasonable and documented expenses in conjunction with the Stalking Horse Bid up to a maximum amount of $750,000 (the "<u>Purchaser Expense Reimbursement</u>").

**B.      Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a Bid (a "<u>Potential Bidder</u>") must, on or before Tuesday, April 18, 2017, at 4:00 p.m. prevailing Eastern Time (the "<u>Preliminary Bid Deadline</u>"), deliver (unless previously delivered) to each of the following (each, a "<u>Consultation Party</u>" and collectively, the "<u>Consultation Parties</u>"): (i) the Debtors, 4655 Great American Parkway, Santa Clara, California 95054, Attn: Adele Freedman; (ii) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Jonathan S. Henes, P.C.; (iii) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Patrick J. Nash, Jr., P.C., Ryan Preston Dahl, Steve Toth, and Brad Giordano; (iv) Centerview Partners, 31 West 52nd Street, New York, New York 10019, Attn: John Bosacco and Bob Beasley; (v) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, New York, 10014, Attn: Susan D. Golden (the "<u>U.S. Trustee</u>"); (vi) counsel to the official committee appointed by the U.S. Trustee (the "<u>Creditors' Committee</u>"), Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019, Attn: Lorenzo Marinuzzi, and Jon I. Levine; (vii) counsel to Citibank, N.A., the agent acting on behalf of the lenders (the "<u>Lenders</u>") under the Debtors' postpetition secured financing facility (in such capacity, the "<u>DIP Agent</u>"), Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Damian S. Schaible; (viii) counsel to the Ad Hoc Group of First Lien Holders (the "<u>Ad Hoc First Lien Group</u>"), Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, New York 10036, Attn: Philip C. Dublin and Naomi Moss; (ix) counsel to the Ad Hoc Group of Crossover Holders (the "<u>Ad Hoc Crossover Group</u>," and together with the Ad Hoc First Lien Group, the "<u>Ad Hoc Groups</u>"), Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attn: Kristopher M. Hansen and Sayan Bhattacharyya; and (x) counsel to the 7.00% First Lien Notes Trustee, 9.00% First Lien Notes Trustee, and Second Lien Notes Trustee, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Glenn E.

2

Siegel, Joshua Dorchak, and Rachel Jaffe Mauceri, the following documents (the "Preliminary Bid Documents"); provided, that the Debtors may consider Bids submitted by Potential Bidders after the Preliminary Bid Deadline, but such Potential Bidders shall not receive any extension of time to conduct a due diligence review or to submit a Qualified Bid (defined below):

    (i)      an executed confidentiality agreement on terms reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder, the Debtors and certain of their respective affiliates (the "Confidentiality Agreement"); and

    (ii)     preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, including a preliminary perspective on value of the Business. Such proof may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and their advisors will determine in their discretion, in consultation with the DIP Agent and the Ad Hoc Groups.

After a Potential Bidder delivers the Preliminary Bid Documents, it may conduct a due diligence review with respect to the Debtors. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents in the Debtors' discretion, in consultation with the DIP Agent, the Ad Hoc Groups, and the Creditors' Committee (each, an "Acceptable Bidder") may submit bids. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

Promptly upon a Potential Bidder entering into a Confidentiality Agreement, but in any event no later than two Business Days following such event, the Debtors shall so notify the Consultation Parties.

**C.**    **Due Diligence**

    (i)    **Access to Due Diligence**.

Only Acceptable Bidders shall be eligible to receive due diligence and access to additional non-public information. The Debtors shall provide to each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder but shall only extend to those assets that are the subject of such Acceptable Bidder's Bid. The due diligence period will end on the Bid Deadline (as defined herein) and the Debtors shall have no obligation to furnish any due diligence information after the Bid Deadline.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors, the Debtors' assets

or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement and only to the extent of the assets that are the subject of such Acceptable Bidder's Bid.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; provided, however, the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment, in consultation with the DIP Agent and the Ad Hoc Groups, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction to the extent of the assets and liabilities that are the subject of their Bid prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the Stalking Horse APA. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

> The Debtors have designated Centerview Partners, 31 West 52nd Street, New York, New York 10019, Attn: John Bosacco and Samuel Greene, to coordinate all reasonable requests for additional information and due diligence access.

(ii)    **Communications with Acceptable Bidders**.

There shall be no direct communications between and amongst Acceptable Bidders.

(iii)    **Due Diligence from Acceptable Bidders**.

Each bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Acceptable Bidder to consummate the Sale. Failure by an Acceptable Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for

the Debtors to determine, after consultation with their advisors, that such bidder is no longer an Acceptable Bidder or that a bid made by such Acceptable Bidder is not a Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable Confidentiality Agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to cause their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable Confidentiality Agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (a) with the prior written consent of such Acceptable Bidder and/or the Debtors, as applicable; (b) to the applicable Acceptable Bidder; (c) to the advisors to the DIP Agent, the Ad Hoc Groups, and the Creditors' Committee, in each case on a professionals' eyes only basis; and (d) as otherwise required or allowed by any applicable Confidentiality Agreement with respect to any particular Acceptable Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

## D.    Bid Requirements.

To be eligible to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver to the Debtors and their advisors, a written, irrevocable offer (a "Written Offer") that must be determined in good faith by the Debtors, in consultation with the Consultation Parties, to satisfy each of the following conditions, and otherwise be acceptable to the Debtors:

(i)    **Bid Deposit**. Each Bid (other than the Stalking Horse Bid, with respect to which the deposit requirements shall be governed by the Stalking Horse APA) must be accompanied by a cash deposit equal to 10% of the cash purchase price thereunder (the "Good Faith Deposit"), which shall be sent to an escrow account, established pursuant to the authority granted by the Cash Management Order, by wire transfer or certified or cashier's check.

(ii)    **Minimum Bid Amount**. The value of each Bid must exceed the aggregate sum of: (a) the Stalking Horse Bid; (b) the Termination Fee and Purchaser Expense Reimbursement; and (c) the minimum Bid increment of $1 million (all of which must be in the form of cash or cash equivalents and/or the assumption of administrative expense liabilities). The Debtors, in consultation with the DIP Agent and the Ad Hoc Groups, shall determine the value of any assumed liabilities that differ from those included in the Stalking Horse Bid.

(iii)    **Good Faith Offer**. Each Bid must constitute a good faith, bona fide offer to purchase all of the Transferred Assets.

(iv)    **Same or Better Terms/Identification of Executory Contracts and Unexpired Leases**.  Each Bid must be accompanied by clean and duly executed transaction documents (including schedules and exhibits thereto that identify with particularity which of the Debtors' executory contracts and unexpired leases the Bidder seeks to have assigned), along with copies that are marked to reflect the amendments and modifications from the Stalking Horse APA, which modifications may not be materially more burdensome than the Stalking Horse APA or inconsistent with these Bidding Procedures.  The Debtors, in consultation with the DIP Agent and Ad Hoc Groups, shall determine whether such modifications are materially more burdensome than the Stalking Horse APA.

(v)    **No Contingencies**.   A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following:  (a) financing; (b) shareholder, board of directors or other approval; and/or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

(vi)    **Binding and Irrevocable**.   An Acceptable Bidder's Bid shall be irrevocable unless and until the Debtors accept a higher Bid and such Acceptable Bidder is not selected as the Back-up Bidder (as defined herein).

(vii)    **Joint Bids**.   The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

(viii)    **Adequate Assurance Information**.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors, that such Acceptable Bidder:  (a) has the financial wherewithal and ability to consummate the acquisition of certain of the Debtors' assets,  the assumption of certain of the Debtors' liabilities and the operation of the Business until such time as the executory contracts and leases with respect thereto have been rejected or assumed and assigned to the Acceptable Bidder following the Closing and (b) can provide adequate assurance of future performance with respect to any executory contract or lease to be assumed and assigned to the Acceptable Bidder in connection with the proposed transaction.  The Bid shall also identify a contact person that counterparties to any assumed contract or lease may contact to obtain additional Adequate Assurance Information.

(ix)    **Identity & Corporate Authority**.  Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.  A Bid must also fully disclose any connections or agreements with the Debtors, the Stalking Horse Bidder, or any other known, potential, prospective Bidder or Qualified Bidder, or any officer, director, or equity security holder of the Debtors.

6

(x)     **Authorization.**  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xi)    **No Fees**.  The Bids must not be subject to any termination fee, transaction fee, expense reimbursement or any similar type of payment or reimbursement.

(xii)   **Adherence to Bidding Procedures.**  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xiii)  **Regulatory Approvals and Covenants.**  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than 30 days following execution and delivery of the asset purchase agreement, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).

(xiv)   **Consent to Jurisdiction.**  The Acceptable Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable.

The Debtors will promptly deliver, after receipt thereof, copies of all Written Offers to the DIP Agent and the Ad Hoc Groups.

Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, after consultation with the other Consultation Parties, shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders." All information disclosed by any Bidder in connection with all of the preceding requirements shall be made available by the Debtors to the Consultation Parties promptly upon the Debtors' receipt thereof but in any event no later than two Business Days following the Bid Deadline. The Debtors reserve the right, after consultation with the DIP Agent and the Ad Hoc Groups, to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors, in consultation with the DIP Agent and the Ad Hoc Groups, may accept a single Qualified Bid or multiple bids for non-overlapping material portions of the Debtors' assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

Within two Business Days after the Bid Deadline, the Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and the other

Consultation Parties and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The Stalking Horse APA submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, qualifying the Stalking Horse Bidder to participate in the Auction.

E.    **Bid Deadline.**

**Qualified Bids must be received by each of the Debtors and their advisors so as to be actually received no later than Thursday, May 18, 2017, at 4:00 p.m. prevailing Eastern Time (the "Bid Deadline").**

F.    **Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, and in consultation with each Consultation Party, the highest or otherwise best bid (the "Starting Bid"). In making such determination, the Debtors shall take into account, among other things, the execution risk attendant to any submitted bids. Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors' shall notify the Stalking Horse Bidder as to which Qualified Bid is the Starting Bid. The Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

G.    **No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse APA will be deemed the Successful Bid, and, subject to the Debtors' termination rights under the APA, the Debtors will pursue entry of an order by the Bankruptcy Court approving the Stalking Horse APA and authorizing the Sale to the Stalking Horse Bidder as soon as practicable.

H.    **Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then the Debtors shall conduct the Auction with respect to the Debtors' assets. The Auction shall commence on Tuesday, May 23, 2017, at 10:00 a.m. prevailing Eastern Time at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place as the Debtors shall, in consultation with the DIP Agent and the Ad Hoc Groups, timely notify the Stalking Horse Bidder and all other Qualified Bidders to the extent consented to by the Stalking Horse Bidder.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(i)    the Auction will be conducted openly;

8

(ii)     only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

(iii)    the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

(iv)     only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, their respective advisors, the advisors to the Consultation Parties, and creditors of the Debtors shall be permitted to attend the Auction;

(v)      bidding at the Auction shall begin at the Starting Bid;

(vi)     subsequent Bids at the Auction, including any Bids by Stalking Horse Bidder, shall be made in minimum increments of $1 million of additional value;

(vii)    the Stalking Horse Bid shall receive a credit equal to the aggregate total of: (a) the Termination Fee and (b) the Purchaser Expense Reimbursement;

(viii)   each Qualified Bidder will be informed of the terms of the previous Bids;

(ix)     the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(x)      each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(xi)     the Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, in consultation with the DIP Agent and the Ad Hoc Groups, to be the highest or otherwise best Bid.  For the avoidance of doubt, but without limiting the Bid Protections or the provisions of the Stalking Horse APA, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law, subject to the Debtors' obligation to pay the Termination Fee and Purchaser Expense Reimbursement under the terms and conditions set forth in the Stalking Horse APA.

(xii)    the Debtors reserve the right, in their reasonable business judgment, in consultation with the DIP Agent and the Ad Hoc Groups, to adjourn the Auction one or more times to, among other things:  (a) facilitate discussions between the Debtors and Qualified Bidders; (b) allow Qualified Bidders to consider how they wish to proceed; and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount.

9

(xiii)    absent irregularities in the conduct of the Auction, and subject to the Debtors' fiduciary obligations pursuant to section 8.01(h) of the Stalking Horse APA, the Bankruptcy Court will not consider Bids made after the Auction is closed; and

(xiv)    the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors, after consultation with their advisors, the DIP Agent, and the Ad Hoc Groups, from time to time on the record at the Auction; provided, that any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the Stalking Horse APA with respect to these Bidding Procedures.

## I.    Acceptance of the Successful Bid.

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, in consultation with the DIP Agent, the Ad Hoc Groups, and the Creditors' Committee, shall identify the highest or otherwise best Qualified Bid that in the exercise of their fiduciary duties the Debtors in good faith believe is materially more beneficial to the Debtors than the Stalking Horse Bid (the "Successful Bid"), which will be determined by considering, among other things: (a) the number, type, and nature of any changes to the Stalking Horse APA; (b) the extent to which such modifications are likely to delay closing of the sale of the Debtors' assets and the cost to the Debtors of such delay; (c) the total expected consideration to be received by the Debtors; (d) the likelihood of the bidder's ability to close a transaction and the timing thereof; (e) the likely employment of employees over the long term; (f) expected net benefit to the estate; and (g) any other criteria as may be considered by the Debtors, after consultation with their advisors, the DIP Agent, and the Ad Hoc Groups in their reasonable, good-faith business judgment (collectively, the "Bid Assessment Criteria").  The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder."  The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that:  (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures; and (d) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

### J.    Sale Hearing.

A hearing to consider approval of the Qualified Bid submitted by the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on Thursday, May 25, 2017, or as soon thereafter as counsel may be heard, before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

### K.    Designation of Back-Up Bidder.

If for any reason the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors, the DIP Agent, and the Ad Hoc Groups at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.  Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

### L.    Termination Fee and Expense Reimbursement.

The Debtors may be obligated to pay a Termination Fee and Purchaser Expense Reimbursement to the Stalking Horse Bidder as described in, and under the terms and conditions of, the Stalking Horse APA.

### M.    Return of Good Faith Deposit.

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for Debtors' assets and liabilities.  If the Successful Bidder (or Back-Up Bidder, if applicable) fails to consummate the Successful Bid (or Back-Up Bid, if applicable), then the Good Faith Deposit of such Successful Bidder (or Back-Up Bidder, if applicable) shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Stalking Horse Bidder, which shall be subject to the terms of the Stalking Horse APA, and the Back-Up Bidder) will be returned within 15 Business Days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale of the Debtors' assets.  The Good Faith Deposit of

the Back-Up Bidder, if any, shall be returned to such Back-Up Bidder no later than 5 Business Days after the closing of the transaction with the Successful Bidder for the assets bid upon by such Back-Up Bidder.

**N.      Reservation of Rights.**

Subject to the consent of the Stalking Horse Bidder, and after consultation with the DIP Agent and the Ad Hoc Groups, the Debtors reserve their rights to modify these Bidding Procedures in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Business.

The Debtors shall provide to the Stalking Horse Bidder the information and documents specified in the Stalking Horse APA relating to the Auction and other Bids within the time period and on the terms and conditions set forth in the Stalking Horse APA.

**O.      Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Preliminary Bid Documents, as applicable.

**P.      Fiduciary Out.**

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtor or non-Debtor affiliate to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; provided that in the event of any such action, all rights and remedies of any Stalking Horse Bidder in these Bidding Procedures or any Stalking Horse APA shall be preserved, including payment of the Bid Protections by the Debtors under the terms and conditions as set forth in the Stalking Horse APA.

**Q.      Sale Is As Is/Where Is.**

Except as otherwise provided in the Stalking Horse APA, if applicable, or any order by the Bankruptcy Court approving any Sale of the Business as contemplated hereunder, the Transferred Assets sold pursuant to these Bidding Procedures shall be conveyed at the closing of the Sale of the Transferred Assets in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

**<u>Exhibit A</u>**

**Stalking Horse Asset Purchase Agreement**

*Due to the voluminous nature of the Stalking Horse APA and its associated exhibits and disclosure schedules, it is omitted from this filing. The Stalking Horse APA can be found as Exhibit B to the Bidding Procedures and Sale Motion [Docket No. 223].*

*You may also request to have a copy of the Stalking Horse APA sent to you by calling 855-252-2156 or you may view and download the full Bidding Procedures and Sale motion by visiting https://cases.primeclerk.com/Avaya.*

## <u>Exhibit 2</u>

**Form of the Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF DEBTORS' MOTION
## SEEKING ENTRY OF (I) AN ORDER
## (A) APPROVING BIDDING PROCEDURES IN CONNECTION
## WITH THE SALE OF THE DEBTORS' NETWORKING BUSINESS,
## (B) APPROVING THE FORM AND MANNER OF NOTICE, (C) SCHEDULING
## AN AUCTION AND A SALE HEARING, AND (D) APPROVING PROCEDURES
## FOR DETERMINING CURE AMOUNTS, AND (II) AN ORDER AUTHORIZING
## AND APPROVING THE SALE OF THE DEBTORS' NETWORKING BUSINESS

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on January 19, 2017 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE THAT** on March 8, 2017 in connection with the proposed sale (the "Sale") of the Business[2] to Extreme Networks, Inc., or any other Successful Bidder for the Transferred Assets, at an auction for the Transferred Assets (the "Auction"), the Debtors filed a motion (the "Motion") [Docket No. ——]223] seeking, among other things, the entry of an order approving:   (a) bidding procedures governing the Sale (the "Bidding

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is: 4655 Great America Parkway, Santa Clara, CA 95054.

[2]    Capitalized terms used in this Notice and not immediately defined have the meanings given to such terms in the Motion or Bidding Procedures, as applicable.

Procedures"); (b) the form of asset purchase agreement for the Transferred Assets; (c) payment of a Termination Fee and Purchaser Expense Reimbursement to the Stalking Horse Bidder in certain instances, including if the Successful Bidder at the Auction consummates a transaction; (d) procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption Procedures"); and (e) the form and manner of notices.

PLEASE TAKE FURTHER NOTICE THAT on April [__], 2017 the Bankruptcy Court entered an order [Docket No. ___] (the "Bidding Procedures Order") granting certain of the relief sought in the Motion, including, among other things, approving: (a) the Bidding Procedures and (b) the Assumption Procedures. Copies of the Bidding Procedures Order (which incorporates the Assumption Procedures) and the Bidding Procedures are enclosed herein.

### Contact Person for Parties Interested in Submitting a Bid

The Bidding Procedures set forth in detail the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Transferred Assets **must** comply strictly with the Bidding Procedures. **Only Qualified Bids will be considered by the Debtors**. Any persons interested in making an offer to purchase the Transferred Assets should contact:

| Financial Advisor to Debtors | Counsel to Debtors |
| --- | --- |
| Centerview Partners<br>31 West 52nd Street<br>New York, New York 10019<br>Attn: John Bosacco and Samuel Greene<br><br>(415) 393-7500 | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn: Ryan Preston Dahl, Steve Toth, and Brad Giordano<br><br>(312) 862-2000 |

### Obtaining Additional Information

Additional copies of the Bidding Procedures Order, the Bidding Procedures and any other related documents are available upon request to Prime Clerk, LLC, the Debtors' notice and claims agent, at (855) 252–2156, or by visiting the case website at https://cases.primeclerk.com/avaya/.

### Important Dates and Deadlines

1.     The deadline to submit a Qualified Bid is **4:00 p.m. Eastern Time on May 18, 2017**.

2.       The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "Sale Order") is **4:00 p.m. Eastern Time on May 18, 2017** (the "Sale Objection Deadline").

3.       The Auction for the Transferred Assets, if one is necessary, will commence at **10:00 a.m. Eastern Time on May 23, 2017**, or such other date as determined by the Court, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

4.       A hearing (the "Sale Hearing") to consider the proposed Sale will be held before the Honorable Stuart M. Bernstein of the Bankruptcy Court at **10:00 a.m. Eastern Time on May 25, 2017**, or such other date as determined by the Court, at One Bowling Green, New York, New York 10004.

### Filing Objections to the Sale

Any objection to the Motion as it relates to the Sale must:  (a) be in writing; (b) state with specificity the nature of such objection; (c) comply with the Bankruptcy Rules and the LBRs for the Southern District of New York; and (d) be filed with this Court and served upon, so as to be **actually received** on or prior to the Sale Objection Deadline, by the following parties:

| Debtors | Counsel to Debtors |
|---|---|
| Avaya Inc.<br>4655 Great American Parkway<br>Santa Clara, California 95054<br>Attn:  Adele Freedman, VP & Deputy General Counsel | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn: Ryan Preston Dahl, Esq.; Steve Toth, Esq.;<br>Brad Giordano, Esq. |
| **Counsel to the Creditors' Committee** | **United States Trustee** |
| Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019<br>Attn: Lorenzo Marinuzzi, Esq.; Jon I. Levine, Esq. | Office of the United States Trustee<br>Southern District of New York<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, New York 10014<br>Attn:  Susan D. Golden, Esq.; Susan Arbeit, Esq. |
| **Counsel to the Agent for the Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn: Damian S. Schaible, Esq. | Latham & Watkins LLP<br>~~140 Scott Drive~~<br>~~Menlo Park~~355 S. Grand Ave<br>Los Angeles, California 94~~110~~25<br>~~Attn: Tad J. Freese, Esq.; Mark Bekheit, Esq.~~ |

3

| | Attn: Peter M. Gilhuly; Kimberly A. Posin |
|---|---|
| **Counsel to the Ad Hoc Group of First Lien Holders** | **Counsel to the Ad Hoc Group of Crossover Holders** |
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attn: Philip C. Dublin, Esq.; Naomi Moss, Esq. | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038<br>Attn: Sayan Bhattacharyya, Esq.;<br>Kristopher M. Hansen, Esq. |
| **United States Attorney** | **Counsel to the 7.00% First Lien Notes Trustee,<br>9.00% First Lien Notes Trustee, and Second Lien<br>Notes Trustee** |
| Office of the United States Attorney for the Southern<br>District of New York<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007 | Morgan, Lewis & Bockius LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn: Glenn E. Siegel, Esq.; Joshua Dorchak, Esq.;<br>Rachel Jaffe Mauceri, Esq. |

## Consequences of Failing to Timely File and Serve an Objection:

Any party or entity who fails to timely file and serve an Objection to the Sale on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order shall be forever barred from asserting any Objection to the Sale, including with respect to the transfer of the Transferred Assets of the Debtor estates free and clear of liens, claims, encumbrances, and other interests effected thereunder.

## No Successor or Transferee Liability

   The Stalking Horse Asset Purchase Agreement and proposed Sale Order provide that the Stalking Horse Bidder and/or Successful Bidder, if applicable, will have no responsibility for, and the Transferred Assets will be sold free and clear of, any successor liability, including the following:  (a) any liability or other obligation of the Debtors' estates or related to the Debtors' Transferred Assets other than as expressly set forth in the Stalking Horse Asset Purchase Agreement; or (b) any claims against the Debtors, their estates, or any of their predecessors or affiliates.  Except as expressly provided in the Sale Order or the Stalking Horse Asset Purchase Agreement, the Stalking Horse Bidder or Successful Bidder shall have no liability whatsoever with respect to the Debtors' estates' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' estates' (or their predecessors' or affiliates') obligations (as described below, "Successor Liability") based on any action taken in connection with the Sale, the assumption of the Assumed Liabilities (as defined in the Stalking Horse Asset Purchase Agreement), or the continued operation of the Business on any basis, including under any doctrines of successor, transferee, or vicarious liability (whether based on de facto merger, mere continuation, or any other basis or theory of liability), including (a) any past, present, or future liabilities of Avaya or any of its affiliates to any shareholder, governmental entity, or person, (b) any past, present or future liabilities of Avaya or any of its affiliates arising out of any civil or criminal investigations or claims brought by any governmental entity, including the United States Attorney's Office or the Securities and Exchange Commission, seeking sanctions, penalties, restitution, disgorgement, or other amounts owed or that become owed, and (c) any past, present or future claims of or liability associated with indemnity, advancement, reimbursement or contribution of legal or other expenses incurred by current or former directors, officers, employees, agents, attorneys, or other representatives of Avaya or its affiliates in connection with or arising out of any proceedings, including those referenced in sections (a) and (b) above.

## **Exhibit 3**

**Form of the Contract Assumption Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT
## OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on January 19, 2017 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE THAT** on March 8, 2017 in connection with the proposed sale (the "Sale") of the Business[2] to Extreme Networks, Inc., or any other Successful Bidder for the Transferred Assets, at an auction for the Transferred Assets (the "Auction"), the Debtors filed a motion (the "Motion") [Docket No. ——]223] seeking, among other things:  the entry of an order approving (a) bidding procedures governing the Sale; (b) the form of asset purchase agreement for the Transferred Assets; (c) payment of a Termination Fee and Purchaser Expense Reimbursement to the Stalking Horse Bidder in certain instances defined in the Stalking Horse APA; (d) the form and manner of notices; and (e) procedures relating to the assumption and assignment of executory contracts and unexpired leases in connection with the Sale.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is:  4655 Great America Parkway, Santa Clara, CA 95054.

[2]  Capitalized terms used in this Notice and not immediately defined have the meanings given to such terms in the Motion or Bidding Procedures as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** on April [__], 2017, the Bankruptcy Court entered an order (the "Bidding Procedures Order") [Docket No. ___] granting certain of the relief sought in the Motion, including, among other things, approving: (a) the bidding procedures (the "Bidding Procedures") for the Sale of the Transferred Assets; and (b) procedures (the "Assumption Procedures") for the assumption and assignment of executory contracts and unexpired leases (the "Transferred Contracts and Assumed Leases"). Copies of the Bidding Procedures Order (which incorporates the Assumption Procedures) and the Bidding Procedures are enclosed herein.

**PLEASE TAKE FURTHER NOTICE THAT** upon the closing of the Sale, the Debtors intend to assume and assign to the Stalking Horse Bidder or any other Successful Bidder the Transferred Contracts and Assumed Leases set forth on **Exhibit 1** hereto. In addition, the cure payments, if any, necessary for the assumption and assignment of the Transferred Contracts and Assumed Leases (the "Cure Payments") are set forth on **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE THAT Exhibit 1** identifies those Transferred Contracts and Assumed Leases that are Mixed-Use Contracts subject to section 5.12 of the Stalking Horse APA, which provides that, prior to closing of the Sale, the Debtors shall separate Mixed-Use Contracts into two contracts with the applicable counterparty. One contract will have terms and conditions that are related to the Business, which will be assigned to the Stalking Horse Bidder or other Successful Bidder upon closing of the Sale, and one contract will relate to the other businesses of the Debtors, which will be retained by the Debtors, in each case on terms and conditions which, in the aggregate, are comparable to those of such Mixed-Use Contract prior to separation.

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE STALKING HORSE BIDDER HAS IDENTIFIED YOU AS A COUNTERPARTY TO A POTENTIAL TRANSFERRED CONTRACT OR ASSUMED LEASE.** Under the terms of the Assumption Procedures, the Stalking Horse Bidder may modify the list of Transferred Contracts and Assumed Leases until the Bid Deadline, and the Debtors reserve the right at any time after the Assumption and Assignment Service Deadline and before the closing of a Sale, to: (a) supplement the list of Transferred Contracts on the Contract Assumption Notice with previously omitted executory contracts or unexpired leases; (b) remove a Transferred Contract or Assumed Lease from the list of executory contracts and unexpired leases ultimately selected as a Transferred Contract or Assumed Lease that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list; and/or (c) modify the previously stated Cure Payment associated with any Transferred Contract or Assumed Lease. Any counterparty impacted by such a modification will receive notice thereof (the "Supplemental Assumption Notice") and an opportunity to object to the proposed assumption and assignment of the Transferred Contract or Assumed Lease, if applicable.

## Obtaining Additional Information

Additional copies of the Bidding Procedures Order, the Bidding Procedures and any other related documents are available upon request to Prime Clerk, LLC, the Debtors' notice and claims agent, at (855) 252–2156, or by visiting the case website at https://cases.primeclerk.com/avaya/.

## Important Dates and Deadlines

1.    The deadline to submit a Qualified Bid is **4:00 p.m. Eastern Time on May 18, 2017**.

2.    The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "Sale Order") is **4:00 p.m. Eastern Time on May 18, 2017** (the "Sale Objection Deadline").

3.    The Auction for the Transferred Assets, if one is necessary, will commence at **10:00 a.m. Eastern Time on May 23, 2017**, or such other date as determined by the Court, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

4.    A hearing (the "Sale Hearing") to consider the proposed Sale will be held before the Honorable Stuart M. Bernstein of the Bankruptcy Court at **10:00 a.m. Eastern Time on May 25, 2017**, or such other date as determined by the Court, at One Bowling Green, New York, New York 10004.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption Procedures, objections to the proposed assumption and assignment of a Transferred Contract or Assumed Lease, including any objection relating to the Cure Payment and/or adequate assurance of future performance, must:  (a) be in writing; (b) state with specificity the nature of such objection and alleged Cure Payment, including applicable and appropriate documentation in support of such alleged Cure Payment; (c) comply with the Bankruptcy Rules and the LBRs; and (d) be filed with the Bankruptcy Court and served so as to be **actually received** on or before **(i) the Sale Objection Deadline, (ii) for those counterparties receiving this notice after the Sale Objection Deadline, ten (10) days after service of this notice, or (iii) for those counterparties that receive a Supplemental Assumption Notice, the deadline set forth therein**.

Failure to timely file an objection shall constitute a waiver of any objections related to accepting performance by, or rendering performance to, the Stalking Horse Bidder for purposes of section 365(c)(1) of the Bankruptcy Code.

In the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, parties who have previously received this notice shall have **ten (10) Business Days after the Auction** to file an objection related to adequate assurance of future performance or related to whether applicable law excuses the party from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code.

Any objections will be considered at the Sale Hearing, or as soon thereafter as counsel may be heard, and must be served on the following parties:

| Debtors | Counsel to Debtors |
|---|---|
| Avaya Inc.<br>4655 Great American Parkway<br>Santa Clara, California 95054<br>Attn: Adele Freedman, VP & Deputy General Counsel | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn: Ryan Preston Dahl, Esq.; Steve Toth, Esq.;<br>Brad Giordano, Esq. |
| **Counsel to the Creditors' Committee** | **United States Trustee** |
| Morrison & Foerster LLP<br>250 West 55th Street<br>New York, New York 10019<br>Attn: Lorenzo Marinuzzi, Esq.; Jon I. Levine, Esq. | Office of the United States Trustee<br>Southern District of New York<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, New York 10014<br>Attn: Susan D. Golden, Esq.; Susan Arbeit, Esq. |
| **Counsel to the Agent for the<br>Debtors' Prepetition and Postpetition Lenders** | **Counsel to the Stalking Horse Bidder** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn: Damian S. Schaible, Esq. | Latham & Watkins LLP<br>~~140 Scott Drive~~<br>~~Menlo Park~~355 S. Grand Ave<br>Los Angeles, California 94~~110~~25<br>~~Attn: Tad J. Freese, Esq.; Mark Bekheit, Esq.~~<br>Attn: Peter M. Gilhuly; Kimberly A. Posin |
| **Counsel to the Ad Hoc Group of First Lien Holders** | **Counsel to the Ad Hoc Group of Crossover Holders** |
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attn: Philip C. Dublin, Esq.; Naomi Moss, Esq. | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038<br>Attn: Sayan Bhattacharyya, Esq.;<br>Kristopher M. Hansen, Esq. |

| United States Attorney | Counsel to the 7.00% First Lien Notes Trustee, 9.00% First Lien Notes Trustee, and Second Lien Notes Trustee |
|---|---|
| Office of the United States Attorney for the Southern District of New York<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007 | Morgan, Lewis & Bockius LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn: Glenn E. Siegel, Esq.; Joshua Dorchak, Esq.;<br>Rachel Jaffe Mauceri, Esq. |

## **Consequences of Failing to Timely File and Serve an Objection**

**Any counterparty to a Transferred Contract or Assumed Lease who fails to timely file and serve an Objection to the proposed assumption and assignment of a Transferred Contract or Assumed Lease in accordance with the Bidding Procedures Order and the Assumption Procedures shall be forever barred from asserting any Objection to the assumption and assignment of the Transferred Contract or Assumed Lease and/or the cure amount set forth on Exhibit 1, including asserting additional cure amounts with respect to the Transferred Contract or Assumed Lease relating to any period prior to the time of assumption and assignment.**

## Exhibit 1

### Transferred Contracts and Assumed Leases

The below list of Transferred Contracts and Assumed Leases includes only those Transferred Contracts and Assumed Leases of Debtors to be assumed and assigned pursuant to section 365 of the Bankruptcy Code and not Transferred Contracts and Assumed Leases of non-Debtor subsidiaries of Avaya Inc.

### Networking Transferred Contracts & Leases

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|--------|--------------|----------------------|----------------|
| Avaya Inc. | Commonwealth of Kentucky - Department of Education | Master Agreement between Avaya Inc. and the Commonwealth of Kentucky - Department of Education, effective the 1st of March, 2013. [MA 758 1300000900] | $0 |
| Avaya Inc. | Xirrus, Inc. | Amendment One to Strategic Alliance and OEM Agreement, effective October 3, 2014, amending the Strategic Alliance and OEM Agreement of March 24, 3014 [sic] by and between Xirrus, Inc., Avaya, Inc. and Avaya International Sales, Ltd. | $0 |
| Avaya Inc. | Xirrus, Inc. | First Amended and Restated Strategic Alliance and OEM Agreement, entered into on December 20, 2016, effective as of January 16, 2017, by and between Avaya Inc., Avaya International Sales Limited and XIRRUS. | $0 |
| Avaya Inc. | Tata Elxsi Ltd. | Professional Services Agreement between Tata Elxsi Ltd. and Avaya Inc., effective the 12th of September, 2005 (as amended). | $0 |
| Avaya Inc. | Xirrus, Inc. | Fifth Amended and Restated Investors' Rights Agreement by and between Avaya Inc. and the other investors and shareholders party thereto and Xirrus, Inc., effective as of April 22nd, 2014. | $0 |
| Avaya Inc. | Xirrus, Inc. | Fifth Amended and Restated Right of First Refusal and Co-Sale Agreement by and between Avaya Inc. and the other investors and shareholders party thereto and Xirrus, Inc., effective as of April 22nd, 2014. | $0 |
| Avaya Inc. | Xirrus, Inc. , Questmark Partners III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP, Dirk I. Gates | Fourth Amended and Restated Voting Agreement between Xirrus, Inc., Questmark Partners III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP, Dirk I. Gates, Patrick P. Parker, Steven F. and Kelly J. Degennaro (Trustees of the Degennaro Family 2001 Trust Dated May 30, 2001), and Avaya Inc., effective as of April 22nd, 2014. | $0 |
| Avaya Inc. | Xirrus, Inc. | Note and Warrant Purchase Agreement by and between Avaya Inc. and the other lenders party thereto, and Xirrus, Inc., dated as of February 26, 2015. | $0 |
| Avaya Inc. | Xirrus, Inc. | Secured Convertible Promissory Note No 15-5, by and between Xirrus, Inc. and Avaya Inc., dated February 26, 2015. | $0 |
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No 15-5, by and between Xirrus, Inc. and Avaya Inc., dated February 26, 2015. | $0 |

---

[1]    The Debtors reserve their right to amend the Cure Amount prior to serving the Contract Assumption Notice.

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|--------|-------------|---------------------|-------------|
| Avaya Inc. | Triple Point Venture Growth BDC Corp., Carr & Farrell LLP | Subordination Agreement, by and between Avaya Inc. and the other Creditors party thereto, Triple Point Venture Growth BDC Corp., as Lender, and Carr & Farrell LLP, as Collateral Agent, dated as of February 26, 2015. | $0 |
| Avaya Inc. | Xirrus, Inc. | Security Agreement, dated as of February 26, 2015, by and between Xirrus, Inc., Avaya Inc. and the other Lenders party thereto. | $0 |
| Avaya Inc. | Xirrus, Inc., Carr & Farrell LLP | Intellectual Property Security Agreement, dated as of February 26, 2015, by and between Xirrus, Inc., Carr & Farrell LLP as Collateral Agent for Avaya Inc. and the other Lenders (including Avaya Inc. identified therein). | $0 |
| Avaya Inc. | Xirrus, Inc. | Secured Convertible Promissory Note No 15-15, by and between Xirrus, Inc. and Avaya Inc., dated April 6, 2015. | $0 |
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No. 16-22, by and between Avaya Inc. and Xirrus, Inc., dated January 1, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No. 16-12, by and between Avaya Inc. and Xirrus, Inc., dated January 1, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc., Questmark Partners III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP, The Board of Trustees of the Leland Stanford Junior University | Note and Warrant Purchase Agreement between Avaya Inc., Questmark Partners III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP, The Board of Trustees of the Leland Stanford Junior University and Xirrus, Inc. effective as of February 19th, 2016. | $0 |
| Avaya Inc. | Triple Point Venture Growth BDC Corp., Carr & Farrell LLP | Subordination Agreement, dated as of February 19, 2016, by and between Avaya Inc. and the other Creditors party thereto, Triple Point Venture Growth BDC Corp., as Lender, and Carr & Farrell LLP, as Collateral Agent. | $0 |
| Avaya Inc. | Xirrus, Inc. | Security Agreement, dated as of February 19, 2016, by and between Xirrus, Inc., Avaya Inc. and the other Lenders party thereto. | $0 |
| Avaya Inc. | Xirrus, Inc., Carr & Farrell LLP | Intellectual Property Security Agreement, dated as of February 19, 2016, by and between Xirrus, Inc., Carr & Farrell LLP as Collateral Agent for Avaya Inc. and the other Lenders (including Avaya Inc. identified therein). | $0 |
| Avaya Inc. | Xirrus, Inc. | Secured Convertible Promissory Note  No. 16-5, by and between Xirrus, Inc. and Avaya Inc., dated February 19, 2016. | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|---|---|---|---|
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No 16-5, by and between Xirrus, Inc. and Avaya Inc., dated February 19, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Amendment No. 1 to Secured Convertible Promissory Notes, by and between Xirrus, Inc., Avaya Inc. and the other Lenders party thereto, dated February 19, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Note and Purchase Agreement between Avaya Inc., QuestMark Partners III, L.P., QuestMark Partners Side Fund III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP and Xirrus Inc., entered into as of May 31st, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc., QuestMark Partners III, L.P., QuestMark Partners Side Fund III, L.P., August Capital IV, L.P., Canaan VIII, L.P., U.S. Venture Partners IX, L.P., InterWest Partners X, LP | Capital Stock Warrant No. 16-22, by and between Avaya Inc. and Xirrus, Inc., dated January 1, 2016. | $0 |
| Avaya Inc. | Triple Point Venture Growth BDC Corp., Carr & Farrell LLP | Subordination Agreement, dated as of May 31, 2016, by and between Avaya Inc. and the other Creditors party thereto, Triple Point Venture Growth BDC Corp., as Lender, and Carr & Farrell LLP, as Collateral Agent. | $0 |
| Avaya Inc. | Xirrus, Inc. | Security Agreement, dated as of May 31, 2016, by and between Xirrus, Inc., Avaya Inc. and the other Lenders party thereto. | $0 |
| Avaya Inc. | Xirrus, Inc., Carr & Farrell LLP | Intellectual Property Security Agreement, dated as of May 31, 2016, by and between Xirrus, Inc., Carr & Farrell LLP as Collateral Agent for Avaya Inc. and the other Lenders (including Avaya Inc. identified therein). | $0 |
| Avaya Inc. | Xirrus, Inc. | Secured Convertible Promissory Note  No. 16-14, by and between Xirrus, Inc. and Avaya Inc., dated May 31, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Capital Stock Warrant No 16-31, by and between Xirrus, Inc. and Avaya Inc., dated May 31, 2016. | $0 |
| Avaya Inc. | Xirrus, Inc. | Amendment One to Strategic Alliance and OEM Agreement, effective October 3, 2014, amending the Strategic Alliance and OEM Agreement of March 24, 3014 [sic] by and between Xirrus, Inc., Avaya, Inc. and Avaya International Sales, Ltd. | $0 |
| Avaya EMEA Ltd. - South Africa Branch | Capital Propfund 1 (PTY) Ltd. | 307211 Lease agreement, dated 1st June 2016, between Capital Propfund 1 (PTY) Ltd and Avaya Emea Ltd - South Africa for ERF 38, 16 Culcross Court, Johannesburg, South Africa. | $0 |

3

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|---|---|---|---|
| Sierra Asia Pacific Inc. | Quality Houses Leasehold Property Fund | 306908 Lease agreement, dated January 1st 2015, between Quality Houses Leasehold Property Fund and Sierra Asia Pacific Inc. for 55 Wireless Road, Lumpini, Bangkok, Thailand. | $0 |
| Avaya Inc. | Meridian-OCP, LLP | 308321 Lease agreement, dated 1st August, 2016, between Meridian-OCP, LLP and Avaya Inc. for 2650 Meridian Parkway, Durham, North Carolina. | $0 |
| Avaya Inc. | AO Mt. Kemble, LLC | Office Lease, dated April 14, 2016, between Avaya Inc. and AO Mt. Kemble, LLC for 350 Mount Kemble Avenue, Morristown, New Jersey (as amended). | $0 |
| Avaya Inc. | Sanctuary Park Realty Holding Company | 307897 Lease agreement, dated 1st July 2008, between Sanctuary Park Realty Holding Company and Avaya Inc. for 1145 Sanctuary Parkway, Alpharetta, Georgia. As amended by Amendment #1 dated 1st January 2014 between Sanctuary Park Realty Holding Company and Avaya Inc. | $0 |
| Avaya Inc. | Technology Park X, Limited Partnership | 307951 Lease agreement, dated 30th July 2012, between Technology Park X, Limited Partnership and Avaya Inc. for 600 Technology Park Drive, Billerica, Massachusetts. | $0 |
| Avaya Inc. | The Prudential Insurance Company of America | 307965 Lease agreement, dated 1st June 2012, between The Prudential Insurance Company of America and Avaya Inc. for 4655 Great America Parkway, Santa Clara, California. | $0 |
| Avaya Inc. | MR 12121, LLC | 308136 Lease agreement, dated 1st November 2014, between MR 12121, LLC and Avaya Inc. for 12121 Grant St, Thornton, Colorado. | $0 |
| Avaya Inc. | Concord Storage Associates | 304499 Lease agreement, dated 8th July 1999, between Concord Storage Associates and Avaya Inc. for 1111 Freeport Parkway, Coppell, Texas. | $0 |
| Avaya Inc. | Vornado Two Penn Property LLC | 307820 Lease agreement, dated 30th June 2006, and amended December 28th 2015 between Vornado Two Penn Property LLC and Avaya Inc. for Two Penn Plaza, New York, New York (as amended). | $0 |
| Avaya Inc. | Reva Norfolk, LLC | 307989 Lease agreement, dated 1st December 2002, between Reva Norfolk, LLC and Avaya Federal Solutions, Inc. for 12730 Fair Lakes Circle, Fairfax, Virginia. | $0 |
| Avaya Inc. | 1000 Waterford Operating LP | 308040 Lease agreement, dated 6th May 2011, between 1000 Waterford Operating LP and Avaya Inc. for 1000 NW 57th Court, Miami, Florida. | $0 |
| Avaya Inc. | Minneapolis 225 Holdings LLC | 308048 Lease agreement, dated 1st May 2011, between Minneapolis 225 Holdings LLC and Avaya Inc. for 225 South Sixth Street, Minneapolis, Minnesota, USA, as amended. | $0 |
| Avaya Inc. | Telenav, Inc. | 307965-03 Sublease agreement, dated 11 November 2015, between Telenav, Inc. and Avaya Inc., for 4655 Great America Parkway, 3rd Floor, Santa Clara, California, 95054. | $0 |
| Avaya Inc. | AT&T Services, Inc. | Master Component and Services Subcontracting Agreement between AT&T Services, Inc. and Avaya Inc., dated the 13th of August, 2009 (as amended). | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[1] |
|--------|--------------|---------------------|----------------|
| Avaya Inc. | Tata Elxsi Limited | Master Services Agreement between Tata Elxsi Limited and Avaya Inc., effective the 6th of May, 2015 (as amended by the Addendum to Master Services Agreement between Tata Elxsi Limited and Avaya Inc., effective the 15th of June, 2015). | $0 |
| Avaya Inc. | Tata Elxsi Limited | Statement of Work Software Application Development for SDN Fx Healthcare Solution between Avaya Inc. and Tata Elxsi Limited, dated the 30th of June, 2016. | $0 |
| Avaya Inc. | Inocybe Technologies | Software OEM and Resale Agreement between Avaya Inc., and Inocybe Technologies, effective the 14th of August, 2015 (as amended). | $0 |
| Avaya Inc. | KEMP Technologies, Inc. | Software OEM and Resale Agreement between Avaya Inc. and KEMP Technologies Inc., effective 21st of January, 2016. | $0 |
| Avaya Inc. | DrievnBI, LLC | Software OEM and Resale Agreement between Avaya Inc. and DrivenBI, LLC, effective the 3rd of September 2010, as amended. | $0 |
| Avaya Inc. | Mirantis, Inc. | Software OEM and Resale Agreement between Avaya Inc., Avaya International Sales Limited, and Mirantis, Inc., effective August 19, 2015. | $0 |
| Avaya Inc. | State of North Carolina Statewide IT Procurement Office | Statewide Term Contract for Layer 2 LAN Switches and Peripheral, Contract Number 204L, between State of North Carolina Statewide IT Procurement Office and Avaya Inc., effective the 7th of October 2013. | $0 |
| Avaya Inc. | Fuji Xerox Co., Ltd. | Reseller Agreement between Fuji Xerox Co., Ltd. and Avaya Inc., effective the 26th of July, 2010 (as amended). | $0 |

## Mixed-Use Contracts

The below are Mixed-Use Contracts which will each be separated into a Transferred Mixed-Use Contract and a Retained Mixed-Use Contract in accordance with section 5.12 of the Stalking Horse APA.

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|--------|--------------|---------------------|---------------|
| Avaya Inc. | County of Loudoun, Virginia | Transactional Agreement For Sale and License of Products and Services between Avaya Inc. and the County of Loudoun, Virginia, effective the 3rd of January, 2017. | $0 |
| Avaya Inc. | Commonwealth of Kentucky (Finance and Administration Cabinet Commonwealth Office of Technology) | Master Agreement for Enterprise Networking Routing & Switching Equipment between the Commonwealth of Kentucky (Finance and Administration Cabinet Commonwealth Office of Technology) and Avaya Inc., effective the 1st of June, 2010 (as amended). [MA 758 1000000828] | $0 |
| Avaya Inc. | State of New York Office of General Services | Contract #PT64524 in response to RFP 21350, Group 77018 Comprehensive Telecommunications Equipment and Solutions (between Avaya, Inc. and the State of New York Office of General Services), awarded the 12th of May, 2009. | $0 |
| Avaya World Services Inc. | Allstate Insurance Company | Global Customer Agreement between Allstate Insurance Company and Avaya World Services Inc., effective the 6th of April, 2013 (as amended). | $0 |
| Avaya Inc. | Avnet, Inc. | Agreement between Avnet, Inc. and Avaya Inc., effective the 15th of April, 2005 (as amended). | $0 |
| Avaya Inc. | Lite-On Technology Corporation | Manufacturing Services Agreement between Lite-On Technology Corporation, Avaya International Sales Limited and Avaya Inc., effective the 9th of July, 2013 (as amended). | $0 |
| Avaya Inc. | Flextronics Systems, Ltd. | International Manufacturing Services Agreement between Flextronics Systems, Ltd and Avaya Inc., effective the 30th of July, 2008. | [TBD][3] |
| Avaya Inc. | Flextronics Logistics (Zhuhai) Co., Ltd. | HUB Operator Agreement between Flextronics Logistics (Zhuhai) Co., Ltd. and Avaya Inc., dated the 5th of March, 2012. | [TBD][4] |
| Avaya Inc. | Flextronics Telecom Systems, Ltd. | Letter of Agreement between Flextronics Telecom Systems, Ltd. and Avaya Inc., dated the 13th of October, 2014. | [TBD][5] |

---

[2]    The Debtors reserve their right to amend the Cure Amount prior to serving the Contract Assumption Notice.

[3]    Due to the mixed-use nature of this contract, the Debtors are still determining the Cure Amount associated with the Networking Business.

[4]    Due to the mixed-use nature of this contract, the Debtors are still determining the Cure Amount associated with the Networking Business.

[5]    Due to the mixed-use nature of this contract, the Debtors are still determining the Cure Amount associated with the Networking Business.

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|---|---|---|---|
| Avaya Inc. | Luxoft Global Operations GmbH | Master Services Agreement, dated as of January 1st, 2014, by and between Avaya, Inc., Avaya International Sales Limited and Luxoft Global Operations GmbH, as amended and the related Amended and Restated Addendum to Master Services Agreement, dated September 1st, 2014. | $0 |
| Avaya Inc. | Infosys Limited | Services Agreement between Infosys Limited and Avaya Inc., effective the 5th of September, 2006 (as amended). | [TBD][6] |
| Avaya Inc. | Innovatia Inc. | Master Subcontractor Agreement for Supply of Services between Innovatia Inc. and Avaya Inc., effective the 1st of October, 2010 (as amended). | $0 |
| Avaya Inc. | TAPFIN Process Solutions, a ManpowerGroup Company | Master Services Agreement between TAPFIN Process Solutions, a ManpowerGroup Company and Avaya Inc., effective the 17th of February, 2014. | $0 |
| Avaya Inc. | CSI Leasing, Inc. | Master Lease Agreement between CSI Leasing, Inc. and Avaya Inc., dated the 25th of June, 2015. | $0 |
| Avaya Inc. | State of New Jersey, Department of the Treasury, Division of Purchase and Property | Term Contract T-1316 Telecommunications Equipment & Services between State of New Jersey, Department of the Treasury, Division of Purchase and Property and Avaya Inc., effective the 1st of February, 2012. | $0 |
| Avaya Inc. | Commissioner of the Office of General Services of the State of New York | Contract PM20790 between The People of the State of New York, acting by and through the Commissioner of the Office of General Services and Avaya Inc., effective the 30th of November, 2015 (as amended). | $0 |
| Avaya Inc. | Central Susquehanna Intermediate Unit | PEPPM 2015 Product Line Bid CSIU and Awarded Vendor Agreement between Central Susquehanna Intermediate Unit, Lewisburg, Pennsylvania and Avaya Inc., effective the 1st of January, 2015. | $0 |
| Avaya Inc. | Chrimar Systems, Inc., d/b/a CMS Technologies; Chrimar Holding Company, LLC | License and Settlement Agreement between Avaya Inc. and Chrimar Systems, Inc., d/b/a CMS Technologies; Chrimar Holding Company, LLC, effective July 12, 2012. | $0 |
| Avaya Inc. | Wetro Lan LLC | Release Agreement between Avaya Inc. (including its Affiliates) and Wetro Lan LLC, effective October 6, 2015. | $0 |
| Avaya Inc. | Mitel Networks Corporation | Settlement and License Agreement between Avaya Inc. and Mitel Networks Corporation, effective February 1, 2007 and amended April 11, 2013. | $0 |
| Avaya Inc. | Westcon Group, Inc. | Distributor Agreement #DV1-T100801 between Westcon Group, Inc. and Avaya Inc. on behalf of its identified subsidiaries, dated the 2nd of August, 2010 (as amended). | $0 |
| Avaya Inc. | ScanSource, Inc. (d/b/a Catalyst Telecom) | Distribution Agreement between ScanSource, Inc. (d/b/a Catalyst Telecom) and Avaya Inc., dated the 16th of August, 2002 (as amended). | $0 |

---

[6]    Due to the mixed-use nature of this contract, the Debtors are still determining the Cure Amount associated with the Networking Business.

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|---|---|---|---|
| Avaya Inc. | Synnex Corporation | Distributor Agreement between Synnex Corporation and Avaya Inc., effective the 14th of December, 2012 (as amended). | $0 |
| Avaya Inc. | Jenne Distributors, Inc. (now Jenne, Inc.) | Distributor Agreement #DV1-T0910004 between Jenne Distributors, Inc. (now Jenne, Inc.) and Avaya Inc., dated the 22nd of October, 2009 (as amended). | $0 |
| Avaya Inc. | Tallard Technologies Inc. (now Avnet Inc.) | Distributor Agreement between Tallard Technologies Inc. (now Avnet Inc.) and Avaya Inc., effective the 1st of April, 2010 (as amended). | $0 |
| Avaya World Services Inc. | Dimension Data Commerce Centre Limited | Direct Partner Agreement between Dimension Data Commerce Centre Limited and Avaya World Services, Inc., dated the 17th of July, 2012. | $0 |
| Avaya Inc. | Avnet Applied Computing and Avnet Electronics Marketing | Agreement between Avnet Applied Computing and Avnet Electronics Marketing. and Avaya Inc., effective the 15th of April, 2005 (as amended). | $0 |
| Avaya Inc. | EION International Inc. | Master Service Agreement between EION International Inc. and Avaya Inc., effective the 25th of July, 2011 (as amended). | $0 |
| Avaya Inc. | Spirent Communications Israel Ltd., Radvision Ltd., and Radvision Inc. | Cross-License Agreement between Spirent Communications Israel Ltd., Avaya Inc., Radvision Ltd., and Radvision Inc., dated the 1st of July, 2014. | $0 |
| Avaya Inc. | Communication Test Design, Inc. | License Agreement between Communication Test Design, Inc. and Avaya Inc., effective the 1st of August, 2013 (as amended). | $0 |
| Avaya Inc. | Communications Test Design, Inc. | Master Repair and Logistics Service Agreement between Communications Test Design, Inc. and Avaya Inc., effective the 1st of February, 2016. | $0 |
| Avaya Inc. | Broadcom Corporation | Source Code License and Software Distribution Agreement between Broadcom Corporation and Avaya Inc., effective the 16th of December, 2003 (as amended). | $0 |
| Avaya Inc. | Broadcom Corporation | Software License Agreement between Broadcom Corporation and Avaya Inc., effective the 17th of November, 2005 (as amended). | $0 |
| Avaya Inc. | HP Enterprise Services LLC | Master Professional Services Agreement between HP Enterprise Services LLC and Avaya Inc., effective the 20th of August, 2014 (as amended). | $0 |
| Avaya Inc. | Cisco Systems, Inc. | Patent License Agreement between Avaya Inc. and Cisco Systems, Inc., effective the 1st of October, 2000. | $0 |
| Avaya Inc. | Cisco Systems, Inc. | Amendment No. 1 to the Patent License Agreement between Avaya Inc. and Cisco Systems, Inc., effective the 24th of October, 2013. | $0 |
| Avaya Inc. | International Business Machines Corporation | Patent License Agreement between Avaya Inc. and International Business Machines Corporation, effective the 1st of October, 2000. | $0 |
| Avaya Inc. | International Business Machines Corporation | Patent License Agreement between Avaya Inc. and International Business Machines Corporation, effective the 22nd of December, 2006. | $0 |
| Avaya Inc. | Iwatsu Electric Co., Ltd. | Patent License Agreement between Avaya Licensing LLC and Iwatsu Electric Co., Ltd., effective the 1st of January, 2006 (as amended). | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|---|---|---|---|
| Avaya Inc. | Leviton Manufacturing Co. | Amendment to November 15, 2002 Patent License Agreement between Avaya Licensing Corporation and Leviton Manufacturing Co., Inc., effective the 15th of June, 2013. | $0 |
| Avaya Inc. | Leviton Manufacturing Co. | Patent License Agreement between Avaya Licensing Corporation and Leviton Manufacturing Co., Inc., effective the 15th of November, 2002, as amended. | $0 |
| Avaya Inc. | Leviton Manufacturing Co. | Letter Agreement between Avaya Inc. and Leviton Manufacturing Co., Inc., effective September 27, 2002. | $0 |
| Avaya Inc. | Leviton Manufacturing Co. | Offer Letter of Amendment and Release between Avaya Licensing Corporation and Leviton Manufacturing Co., Inc., effective the 30th of September, 2003. | $0 |
| Avaya Inc. | Leviton Manufacturing Co. | Letter of Amendment to Patent License Agreement of November 15, 2002 between Avaya Licensing Corporation and Leviton Manufacturing Co., Inc., effective the 30th of January, 2004. | $0 |
| Avaya Inc. | Mitel Corporation | Settlement and Patent License Agreement between Avaya Inc. and Mitel Corporation, effective the 1st of February, 2007. | $0 |
| Avaya Inc. | Mitel Networks Corporation | Addendum to Settlement and Patent License Agreement between Avaya Inc. and Mitel Networks Corporation, effective the 11th of April, 2013. | $0 |
| Avaya Inc. | Panduit Corporation | Patent License Agreement between Avaya Licensing Corporation and Panduit Corporation, effective the 4th of December, 2002. | $0 |
| Avaya Inc. | Lucent Technologies Inc. and Lucent Technologies GRL CORP. | Patent and Technology License Agreement by and between Lucent Technologies Inc. and Lucent Technologies GRL CORP. and Avaya Inc. and Avaya Technology Corp., effective the 1st of October, 2000. | $0 |
| Avaya Inc. | Rocket Software, Inc. | Software License Agreement between Avaya Inc. and Rocket Software, Inc., effective the 2nd of February, 2007 (as amended). | $0 |
| Avaya Inc. | Oracle America Inc. | Binary License and Redistribution Agreement for Royalty License between Avaya Inc., Avaya International Sales Limited and Oracle America Inc., effective 15th of July, 2012 (as amended). | $0 |
| Avaya Inc. | Oracle America Inc. | Oracle Partnernetwork Embedded Software License Distribution Agreement between Avaya Inc. and Oracle America Inc., effective of 15th of July, 2011 (as amended). | $0 |
| Avaya Inc. | Red Hat, Inc. | Closed System Partner Program Agreement between Avaya Inc. and Red Hat, Inc., effective the 22nd of July, 2008 (as amended). | $0 |
| Avaya Inc. | Red Hat, Inc. | Partner Acceptance Document Agreement between Avaya Inc. and Red Hat, Inc. effective the 31st of May, 2016. | $0 |
| Avaya Inc. | Mentor Graphics Corporation | End User License agreement No. e5311 between Avaya Inc. and Mentor Graphics Corporation, effective the 27th of June 2008 (as amended). | $0 |
| Avaya Inc. | Azul Systems, Inc. | Software OEM and resale Agreement between Avaya Inc. and Azul Systems, Inc. effective the 28th of February 2016. | $0 |

| Debtor | Counterparty | Contract Description | Cure Amount[2] |
|--------|--------------|---------------------|----------------|
| Avaya Inc. | Rocket Software, Inc. | Adoption Agreement to Rocket Software SLA 07-1082 #15621 by and between Rocket Software, Inc. and Nortel Networks Limited, dated September 17, 2010, by and between Avaya Inc. and Rocket Software, Inc. | $0 |
| Avaya Inc. | Anixter Inc. | Distributor Agreement between Anixter Inc. and Avaya Inc., dated the 21st of December, 2009 (as amended). | $0 |