Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Marlene Clark*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. 17-10089-smb |
| AVAYA INC., *et al.*,[1] | Jointly Administered |
| Debtors. | Re: ECF Nos. 522, 609, 612, 614, 616 |

**REPLY IN SUPPORT OF MARLENE CLARK'S MOTION FOR**
**ORDER DETERMINING SURVIVORSHIP BENEFITS UNDER SUPPLEMENTAL**
**PLAN ARE "RETIREE BENEFITS" UNDER BANKRUPTCY CODE SECTION 1114(a),**
**COMPELLING COMPLIANCE WITH SECTION 1114(e), AND APPOINTING**
**AN OFFICIAL COMMITTEE UNDER SECTION 1114(d)**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax ID number, are: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9828); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229). Their address is: 4655 Great America Parkway, Santa Clara, California 95054.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.  SURVIVORSHIP BENEFITS UNDER THE SUPPLEMENTAL PLAN ARE DEATH BENEFITS UNDER SECTION 1114(a) ............................................... 2

    A.  This Court Should Look to ERISA's Definition of Welfare Plan to Interpret the Scope of Section 1114(a) ............................................................... 2

    B.  The Objectors are Precluded under the Doctrines of Judicial and Collateral Estoppel from Arguing Survivorship Benefits are Pension Benefits, Not Death Benefits ............................................................................ 3

        1.  Welfare Benefits under ERISA Include Lump Sum Death Benefits Provided under the Supplemental Plan's Predecessor ............................... 3

        2.  Judicial Estoppel ........................................................................................ 5

        3.  Collateral Estoppel ..................................................................................... 6

    C.  Survivorship Benefits are Death Benefits under the Statute's Plain Language, and Nonprecedential Decisions Cited by Objectors are Inapposite and/or Incorrect ............................................................................ 7

II.  THE SUPPLEMENTAL PLAN IS A QUALIFYING PLAN, FUND, OR PROGRAM UNDER SECTION 1114(a) .............................................................. 10

III. THE OBJECTORS' REMAINING ARGUMENTS ARE WITHOUT MERIT ............. 11

    A.  The Unsecured Status of Survivorship Benefits under the Supplemental Plan Has No Effect On their Postpetition Priority Status under Section 1114(e)(2) ........... 11

    B.  Section 1114 was Intended to Cover Death Benefits ........................................... 12

    C.  The Result Sought by Mrs. Clark is Consistent with Section 1114's Purpose ..... 12

    D.  Mrs. Clark Has Constitutional and Prudential Standing to Seek the Relief Sought in Her Motion ........................................................................................... 13

    E.  The Supplemental Plan's Termination at Will Clause Has No Bearing on Section 1114's Application ................................................................................... 13

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

                                                                                                              Page(s)

**Cases**

*Adventure Res. Inc. v. Holland*,
    137 F.3d 786 (4th Cir. 1998) ............................................................................................. 8

*In re AMR Corp.*,
    508 B.R. 296 (Bankr. S.D.N.Y. 2014) ............................................................................ 15

*In re Arclin U.S. Holding, Inc.*,
    416 B.R. 117 (Bankr. D. Del. 2009) ........................................................................... 3, 12

*Butner v. United States*,
    440 U.S. 48 (1979) .......................................................................................................... 11

*In re Certified Air Techs., Inc.*,
    300 B.R. 355 (Bankr. C.D. Cal. 2003) ............................................................................. 3

*In re Chemtura Corp.*,
    No. 09-bk-11233, 2011 WL 1344573 (Bankr. S.D.N.Y. Apr. 8, 2011) ..................... 14, 15

*In re Delphi Corp.*,
    No. 05-bk-44481, 2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009) .................... 14, 15

*DeRosa v. Nat'l Envelope Corp.*,
    595 F.3d 99 (2d Cir. 2010) ............................................................................................... 5

*In re Exide Techs.*,
    378 B.R. 762 (Bankr. D. Del. 2007) ....................................................................... 8, 9, 10

*In re Farmland Indus., Inc.*,
    294 B.R. 903 (Bankr. W.D. Mo. 2003) ........................................................................... 8

*Foss v. Lucent Techs. Inc.*,
    No. 03-cv-5017, 2006 WL 3437586 (D. N.J. Nov. 27, 2006) ......................................... 3

*In re Freuehauf Trailer Corp.*,
    444 F.3d 203 (3d Cir. 2006) ............................................................................................. 7

*IUE-CWA v. Visteon Corp. (In re Visteon Corp.)*,
    612 F.3d 210 (3d Cir. 2010) ..................................................................................... passim

*Kosakow v. New Rochelle Radiology Associates, P.C.*,
    274 F.3d 706 (2d Cir. 2001) ........................................................................................... 10

*Leather v. Eyck*,
    180 F.3d 420 (2d Cir. 1999)...........................................................................................6

*In re Lucent Death Benefits ERISA Litig.*,
    541 F.3d 250 (3d Cir. 2008)..................................................................................... passim

*In re Lyondell Chem. Co.*,
    445 B.R. 296 (Bankr. S.D.N.Y. 2011).................................................................... passim

*McMillan v. LTV Steel, Inc.*,
    555 F.3d 218 (6th Cir. 2009) .........................................................................................7

*In re N.Y. Trap Rock Corp.*,
    126 B.R. 19 (Bankr. S.D.N.Y. 1991).............................................................................3

*Rombach v. Nestle USA, Inc.*,
    211 F.3d 190 (2d Cir. 2000)....................................................................................4, 10

*Rubin v. United States,*
    449 U.S. 424 (1981) ....................................................................................................14

*In re WorldCom, Inc.*,
    364 B.R. 538 (Bankr. S.D.N.Y. 2007)........................................................................8, 9

### **Statutes**

11 U.S.C. § 507(a) ..............................................................................................................11

11 U.S.C. § 1114............................................................................................................ passim

29 U.S.C. § 1002............................................................................................................ passim

29 U.S.C. § 1054(g) .........................................................................................................6, 7

Marlene Clark submits this reply in in support of her motion[1] and in response to the objections of the Debtors, the Ad Hoc First Lien and Crossover Groups, and the Official Committee of Unsecured Creditors (together, the "Objectors"), and states:

**PRELIMINARY STATEMENT**

The irony of the Objectors' position is that a decade ago the Debtors' predecessor argued that lump-sum death benefits payable to eligible retirees' surviving spouses under the Lucent Technologies Inc. Management Pension Plan (the "Lucent Plan"), which is the predecessor to the Supplemental Plan,[2] were welfare benefits, not pension benefits, under ERISA, and prevailed before the Third Circuit. There, Judge Ambro held death benefits provided under the Lucent Plan were not pension benefits, <u>even though they were provided under a pension plan and had characteristics consistent with a pension benefit</u>. Because the parties agree that this Court should look to ERISA to determine the scope of section 1114(a), and section 1114(a) tracks the definition of "welfare plan" under ERISA, the Objectors are now precluded from arguing survivorship benefits under the Supplemental Plan are not death benefits under section 1114(a). Moreover, the Objectors are precluded from arguing the Supplemental Plan is not an eligible plan, fund, or program under section 1114(a), as Judge Ambro expressly held the Lucent Plan was a welfare plan under ERISA to the extent it provided death benefits, and thus a "plan" under ERISA. The Objectors remaining arguments are without merit and are addressed below.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the motion.

[2] *See* Schedule 14A Information, filed Oct. 26, 2001 (an excerpt is attached as <u>Exhibit 5</u>) (emphasis added) ("Prior to our separation from Lucent, most of our U.S. salaried employees, including Executive Officers, were participants in the Lucent Technologies Inc. Management Pension Plan. Effective September 30, 2000, we established a non-contributory pension plan which covers salaried employees, including the Executive Officers. We have also adopted a non-contributory supplemental pension plan … <u>Participants were given full credit under our pension plan for service and compensation accrued prior to the separation under the Lucent pension plan</u>").

1

# ARGUMENT

## I. SURVIVORSHIP BENEFITS UNDER THE SUPPLEMENTAL PLAN ARE DEATH BENEFITS UNDER SECTION 1114(a)

1.      In her motion, Mrs. Clark argued that her entitlement to monthly payments under the Supplemental Plan ("Survivorship Benefit") constitutes a death benefit under section 1114(a). The Objectors argue the Survivorship Benefit is a pension benefit, not a death benefit, notwithstanding the fact that it was triggered by the death of Mrs. Clark's husband, Stephan Clark, because the Supplemental Plan merely transfers her husband's pension benefit to her upon his death. (*See*, *e.g.*, Debtor Obj. ¶¶13, 15; Committee Obj. ¶¶9-10.) Putting aside that the Objectors do not dispute the Survivorship Benefit is a benefit payable upon the death of a Supplemental Plan participant, the Objectors are precluded under the doctrines of judicial and collateral estoppel from arguing Survivorship Benefits are pension, not welfare, benefits.

### A.    This Court Should Look to ERISA's Definition of Welfare Plan to Interpret the Scope of Section 1114(a)

2.      The parties are in agreement that this Court should look to ERISA to determine the scope of the definition of "retiree benefits" under section 1114(a) (*see*, *e.g.*, Debtor Obj. ¶17; Committee Obj. ¶14), and specifically, ERISA's definition of "welfare plan" under 29 U.S.C. § 1002(1)(A), as the language of section 1114(a) tracks that of section 1002(1)(A).[3] *See also In re Lyondell Chem. Co.*, 445 B.R. 296, 299 n. 13-14 (Bankr. S.D.N.Y. 2011) (courts "have looked to … ERISA" and "in particular, 29 U.S.C. § 1002(1)" to interpret the scope

---

[3] Compare 11 U.S.C. § 1114(a) (defining "retiree benefits" as "payments to any entity or person for the purpose of providing … payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established … by the debtor") with 29 U.S.C. § 1002(1) (defining "welfare plan" as "any plan, fund, or program … established or maintained by an employer … to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment")

2

of section 1114(a), citing *In re N.Y. Trap Rock Corp.*, 126 B.R. 19, 22 (Bankr. S.D.N.Y. 1991) and *In re Certified Air Techs., Inc.,* 300 B.R. 355, 371 (Bankr. C.D. Cal. 2003)); *In re Arclin U.S. Holding, Inc.*, 416 B.R. 117, 120 n.7 (Bankr. D. Del. 2009) (courts have looked to section 1002(1) to interpret the scope of section 1114(a)).

> **B.  The Objectors are Precluded under the Doctrines of Judicial and Collateral Estoppel from Arguing Survivorship Benefits are Pension Benefits, Not Death Benefits**
>
>> 1.  <u>Welfare Benefits under ERISA Include Lump Sum Death Benefits Provided under the Supplemental Plan's Predecessor</u>

3.      In *In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250 (3d Cir. 2008), the Third Circuit held that a lump sum payment due on the death of a Lucent Plan participant was a welfare benefit, not a pension benefit, under ERISA. There, Lucent amended the Lucent Plan to eliminate a "<u>pensioner death benefit</u>," a lump sum payment due on a plan participant's death. *Id*. at 252-53. Several pensioners filed a class action alleging the termination of the pensioner death benefit was unlawful because it was an accrued pension benefit under ERISA. Lucent argued the pensioner death benefit was an unvested welfare benefit that can be terminated unilaterally. *Id*. at 254. The District Court agreed with Lucent. *Foss v. Lucent Techs. Inc.*, No. 03-cv-5017, 2006 WL 3437586 (D. N.J. Nov. 27, 2006).

4.      On appeal, the Third Circuit affirmed. The Third Circuit noted "ERISA defines pension and welfare benefits" by reference to the definition of "welfare plan" and "pension plan" in 29 U.S.C. § 1002(1)-(2)(A),[4] 541 F.3d at 254, and held the pensioner death benefit plainly falls within the definition of the former, not the latter:

---

[4] As noted above, 29 U.S.C. § 1002(1) defines "welfare plan" as "any plan, fund, or program … established or maintained by an employer … to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment". 29 U.SC. § 1002(2)(A) defines "pension plan" as "any plan, fund, or program … established or maintained by an employer … to the extent that [it] (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond [in each

3

> The pensioner death benefit neither provides retirement income to employees nor results in a deferral of income by employees. *See* 29 U.S.C. § 1002(2)(A) …
>
> Instead, the pensioner death benefit provides "benefits in the event of … death." *See* 29 U.S.C. § 1002(1) (defining welfare plan). This fits readily within the definition of a welfare benefit. <u>As the Second Circuit Court of Appeals has explained, the fact that a welfare benefit appears in a larger plan that also provides pension benefits does not change the character of that welfare benefit</u>. *See Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 193-94 (2d Cir. 2000) … As in *Rombach*, the "meaning and function" of the pensioner death benefit "remain clear" despite surrounding benefits or the use of the word "Pensioner" to describe the benefit." *See id.* at 194. The … plan language thus identifies the plan as a welfare benefit plan to the extent that it provides the pensioner death benefit. *See generally* 29 U.S.C. § 1002(1) …
>
> <u>Nor does the asserted fact that the pensioner death benefit has characteristics "consistent with" or "not inconsistent with" a pension benefit change its character</u>. The amount and calculation method of the pensioner death benefit, the identity of the recipient of payment, and the treatment of the pensioner death benefit for tax, accounting, and plan termination purposes, are relevant details for administrators of the plan, but they do not change the fundamental character of the benefit. The type of benefit provided, not other considerations, determines whether a plan is a pension plan or a welfare plan …
>
> The Lucent plan is thus a welfare plan to the extent that it provides for the pensioner death benefits at issue in this case.

*Id.* at 255-56 (emphasis added).

5.      Significantly, the Third Circuit relied on *Rombach v. Nestle USA, Inc.*, 211 F.3d 190 (2d Cir. 2000) in reaching the foregoing conclusion, which rejected an employee's argument that the "disability retirement pension" portion of her pension plan should be considered a pension plan under ERISA because the employer-sponsor described the benefit as a pension benefit and included it a part of its master pension plan:

> We are unpersuaded by Rombach's arguments and find the disability provisions of Nestle's Pension Plan to be a welfare plan under § 1002(1). <u>As the language of the statute makes clear, "to the extent" that a plan provides "benefits in the event of … disability," it is a welfare plan. *Id*. § 1002(1)</u>. For this reason, the Sixth Circuit in *McBarron v. S&T Indus., Inc.*, 771 F.2d 94 (6th Cir. 1985), held that the disability

---

case] regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan").

4

provisions in the "Masterly Hourly Retirement Plan" constituted a welfare plan even though they were part of a comprehensive retirement plan …

Much like the plan in *McBarron*, one portion of Nestle's Pension program before us provides a disability retirement pension for employees who have served the company for over ten years and have become permanently disabled, while other parts grant benefits that relate to retirement generally. In our view, it does not matter that Nestle called the disability retirement pension portion of its plan a "pension benefit" and made it part of its master "pension plan." <u>Its meaning and function remained clear; it was a benefit triggered by disability. And, under the plain language of the statute, "to the extent" that Nestle's Pension Plan provides benefits that are triggered by disability, that portion of the plan is a welfare plan under § 1002(1)</u>.

*Id*. at 193-94 (emphasis added).

          2.    <u>Judicial Estoppel</u>

6.      Judicial estoppel applies where "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010).

7.      <u>The Debtors' Position Herein is Clearly Inconsistent with Lucent's Position in the ERISA Death Benefits Litigation</u>. In the prior litigation, "Lucent … argue[d] that the pensioner death benefit is an unvested welfare benefit" under ERISA. 541 F.3d at 254. Moreover, as noted above, the parties are in agreement this Court should look to ERISA's definition of "welfare plan" to interpret the scope of section 1114(a). Now, the Debtors argue the Survivorship Benefit is not a death benefit under section 1114(a) or ERISA's definition of welfare plan, but is instead a pension benefit under ERISA. (Debtors Obj. ¶13.)

8.      <u>The Debtors' Position in the Prior Litigation was Adopted by the Third Circuit</u>. Both the District Court and Third Circuit agreed with Lucent's position that the pensioner death

5

benefit was a welfare benefit and dismissed the pensioners' putative class action challenging Lucent's modification of the same.

9. <u>Adopting the Debtors' Position Would Result in a Double Recovery</u>. The Third Circuit's conclusion that pensioner death benefits were "death benefits" within ERISA's definition of "welfare plan" permitted Lucent to unilaterally modify the pensioner death benefit without running afoul of ERISA's anti-cutback provision for pension benefits (29 U.S.C. § 1054(g)), which it did. Now the Debtors argue substantially similar Survivorship Benefits are not death benefits under section 1114(a) but are instead pension benefits in order to reduce administrative expense obligations to surviving spouses. Accepting the Debtors' position would result in a double recovery for the Debtors, at the expense of surviving spouses.

### 3.   Collateral Estoppel

10. Collateral estoppel bars relitigation in the following circumstances:

> (1) the issues of both proceedings must be identical, (2) the relevant issues [must have been] litigated and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for litigation of the issues in the prior proceeding, and (4) the issues [must have been] necessary to support a valid and final judgment on the merits.

*Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999).

11. <u>The Issue in the ERISA Death Benefits Litigation is Identical to the Issue Herein</u>. The issue in the prior litigation was whether the pensioner death benefit was a death benefit that fell within the definition of "welfare plan" under ERISA or whether the pensioner death benefit fell within definition of "pension plan" under ERISA. The issue herein is whether the Survivorship Benefit is a death benefit under section 1114(a), and the parties are in agreement this Court should look to how courts have interpreted the definition of "welfare plan" under ERISA to interpret the scope of section 1114(a) given that the language of the former tracks that of the latter.

6

12. <u>The Relevant Issue Was Litigated and Decided</u>. The issue in the prior litigation was decided by the District Court on a motion to dismiss, which decision was affirmed by the Third Circuit.

13. <u>Full and Fair Opportunity Existed for Litigation of the Issue in the Prior Action</u>. The pensioners in the prior litigation briefed and argued the issue which was the subject thereof both in the District Court and the Third Circuit.

14. <u>The Issue of Whether the Pensioner Death Benefit was a Welfare or Pension Benefit was Necessary to the Prior Decision</u>. Indeed, that was the threshold issue in the prior litigation, as a determination the pensioner death benefit fell within ERISA's definition of "pension plan" would have rendered the benefit protected from modification under ERISA's anti-cutback provision. 541 F.3d at 253 (citing 29 U.S.C. § 1054(g) and *In re Freuehauf Trailer Corp.*, 444 F.3d 203, 212 (3d Cir. 2006)). The prior litigation also addressed the ancillary question of whether the pensioner death benefit vested (the Third Circuit concluded that it had not), but that issue was only addressed because the Third Circuit concluded the pensioner death benefit fell within ERISA's definition of "welfare plan." 541 F.3d at 256 ("Having concluded that the pensioner death benefit is a welfare benefit, we must decide if that benefit had vested prior to its termination").

**C. Survivorship Benefits are Death Benefits under the Statute's Plain Language, and Nonprecedential Decisions Cited by Objectors are Inapposite and/or Incorrect**

15. Pension payments to retirees are not considered retiree benefits because such payments do not fall within a category of benefit specified in section 1114(a) ("medical, surgical, or hospital care benefits" or "benefits in the event of sickness, accident, disability or death"). *See, e.g.*, *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 226 (6th Cir. 2009) ("While the pension program was 'maintained or established … by [LTV Steel] prior to filing' its bankruptcy petition, the program does not provide for medical, surgical, or hospital-care benefits … Thus, § 1114 does

7

not apply to LTV Steel's benefit program directed at administering pensions"); *Adventure Res. Inc. v. Holland*, 137 F.3d 786, 795 (4th Cir. 1998) ("The term 'retiree benefits' is limited to [quoting section 1114(a)]. True to their designation, the Pension Trusts administer only *pension* benefits for retired coal miners. None of their claims are for the types of benefits enumerated in § 1114(a)").

16. However, a surviving spouse's entitlement to payments under a plan that is triggered on her retiree-husband's death, plainly <u>does</u> qualify as a death benefit under the statute. *See In re Farmland Indus., Inc.*, 294 B.R. 903, 921 (Bankr. W.D. Mo. 2003) ("Because these plans and programs provide benefits in the event of death, they constitute 'retiree benefits' within the meaning of § 1114(a) and are therefore governed by the provisions of § 1114"). Accordingly, it does not matter whether the amount due to the surviving spouse each month is equal to what her retiree-husband would have received under the plan had he not died, or whether her monthly payment amount is calculated using some other methodology. In either case, she is entitled to retiree benefits, even though pension payments to retirees under the same plan are not retiree benefits.

17. The Debtors argue monthly payments due to a surviving spouse on her retiree-husband's death under the Supplemental Plan are not retiree benefits, citing *Lyondell*, 445 B.R. at 296, *In re Exide Techs.*, 378 B.R. 762 (Bankr. D. Del. 2007), and *In re WorldCom, Inc.*, 364 B.R. 538, 549-50 (Bankr. S.D.N.Y. 2007).

18. The Debtors' argument fails for several reasons. At the outset, only one of the foregoing decisions, *Lyondell*, involved a surviving spouse seeking priority treatment for monthly payments due to her. In both *Exide* and *WorldCom* a retiree argued his or her own pension benefit was a retiree benefit because the underlying plan provided for the award of a death benefit to a designated beneficiary. However, in both cases the death benefit belonged not to the retiree but to

8

the designated beneficiary, and of course such benefit remained contingent as the retiree had not yet died. Here, in contrast, the designated beneficiary is asserting her own entitlement to monthly payments is a retiree benefit, and there is no contingency.

19. In addition, *Lyondell* relied solely on *Exide* for its conclusion, which in turn relied solely on *WorldCom*. *WorldCom* held that deferred compensation payments to a retiree were not retiree benefits under section 1114(a), notwithstanding the fact that the underlying plan provided for the award of death benefits, because the plan's <u>principal</u> purpose was to provide monthly payments to the retiree, not death benefits to his or her surviving spouse. 364 B.R. at 550 ("The purpose of the Deferred Compensation Plan was to defer income, and the requisite income taxes, until some later date. That the timing and method of payment of the deferred income may have been altered in the event of death … is merely incidental to that purpose"). Judge Gonzalez cited no authority in support of his conclusion that it is the principal purpose of a plan that determines whether benefits provided thereunder are retiree benefits, and indeed, that is not what section 1114(a) provides.

20. Moreover, it is readily apparent from the Bankruptcy Code itself that if Congress wanted to limit the scope of section 1114(a) in the manner described by Judge Gonzalez it could have easily done so by specifying that to qualify as a retiree benefit, the applicable plan, fund, or program's <u>principal</u> purpose must be to provide a qualifying benefit (*e.g.*, death benefits). Compare 11 U.S.C. § 1114(a) (retiree benefits means "payments to any … person for <u>the purpose</u> of providing or reimbursing payments") with 11 U.S.C. § 1129(d) (plan not confirmable "if <u>the principal purpose</u> of the plan is the avoidance of taxes").

21. Further, *Exide* and *WorldCom* preceded the Third Circuit's decision in *Lucent Death Benefits ERISA Litig.*, and none of the persons owed benefits in *Exide, WorldCom,* or

9

*Lyondell* argued, as Mrs. Clark does herein, that whether a benefit is a retiree benefit is linked to the definition of welfare plan under ERISA.[5]

22.     Finally, the conclusion in *Lyondell and Exide* relied upon by the Debtors was dicta, as both decisions denied relief, in the first instance, on the grounds that the death benefit at issue was not provided under a qualifying plan, fund, or program under section 1114(a). *Exide*, 378 B.R. at 768 (benefits not provided under qualifying plan, fund, or program since "the SERP payments do not arise from benefits which accumulated over a period of time"); *Lyondell*, 445 B.R. at 300 ("Applying these factors to the Contract [the "private contract" under which death benefit was provided], I must conclude that the Contract cannot be construed as a 'plan, fund, or program' under ERISA"). Here, there can be no dispute the Supplemental Plan is a qualifying plan under section 1114(a), as described below.

## II.     THE SUPPLEMENTAL PLAN IS A QUALIFYING PLAN, FUND, OR PROGRAM UNDER SECTION 1114(a)

23.     The Objectors argue the Supplemental Plan is not a qualified plan, fund, or program under section 1114(a) because it does not qualify as a plan under ERISA under the three-part test utilized in *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706 (2d Cir. 2001), which concerned whether an employer's a written severance program constituted a "plan" under ERISA.

24.     Mrs. Clark agrees this Court should look to ERISA to determine whether the Supplemental Plan is a qualifying plan under section 1114(a), but submits consideration of the factors set forth in *Kosakow* is unnecessary and inappropriate given that the definition of "plan" under ERISA set forth in 29 U.S.C. § 1001(3) includes welfare plans, pension plans, and plans

---

[5] As noted above, Judge Gerber held courts consider "in particular, 29 U.S.C. § 1002(1)" in interpreting section 1114(a)'s scope (445 B.R. at 299 n.13), but did not consider circuit-level authority actually interpreting that provision, namely, *Lucent Death Benefits ERISA Litig.* or *Rombach*.

10

which qualify as both, and the Third Circuit agreed with Lucent's position that the pensioner death benefit under the Lucent Plan was a welfare plan under ERISA (notwithstanding the fact that the pensioner death benefit is even easier to administer than monthly annuity payments). Because the Survivorship Benefit is likewise a welfare plan located within a pension plan, it is a plan under the statutory definition, and hence, managerial discretion, employee expectations, and administrative burden are irrelevant to the inquiry at hand.

### III. THE OBJECTORS' REMAINING ARGUMENTS ARE WITHOUT MERIT

#### A. The Unsecured Status of Survivorship Benefits under the Supplemental Plan Has No Effect On their Postpetition Priority Status under Section 1114(e)(2)

25. The Objectors argue that Survivorship Benefits are not entitled to priority under section 1114(e)(2) because the Supplemental Plan provides that such benefits are unsecured, and that surviving spouses are pari passu in right to payment with other general unsecured creditors. (Debtors Obj. ¶¶1, 8, 16, 21; Committee Obj. ¶¶2, 9, 12; Crossover Obj. ¶5.)

26. Mrs. Clark does not dispute that outside of bankruptcy, her Survivorship Benefits are unsecured, and pari passu in right to payment with that of other unsecured creditors. However, upon the petition date her entitlement to Survivorship Benefits was elevated to priority status by operation of section 1114(e)(2), notwithstanding the fact that the Supplemental Plan characterizes her right to payment as unsecured. This is not unusual, as every claim entitled to priority under Bankruptcy Code section 507(a)(1)-(10) is by definition unsecured. Were they secured, or otherwise entitled to priority status under nonbankruptcy law it would be unnecessary to provide them special treatment under the Bankruptcy Code. Accordingly, it does not matter that the Supplemental Plan provides Mrs. Clark's claim is unsecured as her death benefit was afforded priority under section 1114(e)(2). *See also IUE-CWA v. Visteon Corp. (In re Visteon Corp.)*, 612 F.3d 210, 220 n.9 (3d Cir. 2010) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)) ("although property interests are usually defined by non-bankruptcy law, a 'federal interest [may] require a

11

different result," and further noting that "Section 1114 unambiguously states that federal bankruptcy law compels a 'different result' here").

### B. Section 1114 was Intended to Cover Death Benefits

27. The Objectors argue the motion should be denied because section 1114 was only intended to cover "health and life insurance benefits" (Debtors. Obj. ¶4, citing *Arclin*, 416 B.R. at 119 n.6, which states the statute was enacted in response to the termination of health and life insurance benefits in LTV Corp.'s bankruptcy) or "health, disability, and other insurance benefits" (Committee Obj. ¶2).

28. Respectfully, this argument reads the phrase death benefit out of the statute, and ignores the statute's history. As noted in *Visteon*, 612 F.3d at 220 n.9, section 1114 is the product of "twice renewed stop-gap legislation" enacted in response to LTV Corporation's termination of health and life insurance benefits of 78,000 retirees during its 1986 chapter 11 case without prior notice. Nevertheless, the first piece of stop-gap legislation covered "benefits … to retired former employees under a plan, fund, or program maintained … for the purpose of providing … benefits in the event of … death." *Id*. When section 1114 was formally codified by the Retiree Benefits Bankruptcy Protection Act of 1988, the statute clarified that it was intended to cover qualifying benefits "for spouses and dependents" in addition to retirees. Moreover, that the statute was intended to cover spouses' death benefits is evident from the body of case law Objectors rely upon stating courts should look to ERISA's definition of welfare plan to interpret section 1114(a).

### C. The Result Sought by Mrs. Clark is Consistent with Section 1114's Purpose

29. The Objectors argue that it would be inappropriate for this Court to confer priority on surviving spouses' death benefits under the Supplemental Plan when the pension benefits of retirees under the same plan are not entitled to priority. (*See, e.g.*, Ad Hoc First Lien Group Obj.

12

¶¶4-5, describing priority treatment for surviving spouses but non-priority treatment for retirees as an "incongruous result.")

30. Significantly, no Objector provides any support for their conclusion that the result sought by Mrs. Clark is incongruous. Mrs. Clark submits this result is not only mandated by the statute, which expressly affords priority to surviving spouses' death benefits but not to retirees' pension benefits, it is consistent with the statute's purpose. As noted above, section 1114 was enacted in response to the loss of retirees' life insurance benefits without prior notice in the chapter 11 case of LTV Corp., which benefits would only be payable to spouses and dependents, not retirees. Moreover, it makes practical sense that Congress wished to protect surviving spouses' death benefits, but not retirees' pension benefits, given that the former often sacrifice their careers to raise children while permitting the latter to advance in their respective careers with the debtor. That is, because as a group retirees are far more likely than surviving spouses to have a skillset that would permit them to obtain gainful employment if a debtor terminated monthly payments post-bankruptcy, terminating payment of monthly death benefits to surviving spouses would likely be catastrophic, as compared to terminating monthly pension payments to retirees.

**D.    Mrs. Clark Has Constitutional and Prudential Standing to Seek the Relief Sought in Her Motion**

31. The Ad Hoc First Lien Group argues (in Paragraph 6 of its Objection) Mrs. Clark lacks Article III and prudential standing because her Survivorship Benefit does not fall within the scope of section 1114(a). That argument fails for reasons described above.

**E.    The Supplemental Plan's Termination at Will Clause Has No Bearing on Section 1114's Application**

32. The Ad Hoc First Lien Group argues (in Paragraph 7 of its Objection) the relief sought in the motion is unavailable because the Supplemental Plan provides in Section 10.1 the Debtors "may from time to time amend, suspend or terminate the Plan at any time," citing two

13

unreported bench decisions, *In re Chemtura Corp.*, No. 09-bk-11233, 2011 WL 1344573 (Bankr. S.D.N.Y. Apr. 8, 2011); *In re Delphi Corp.*, No. 05-bk-44481, 2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009).

33. In *Visteon*, however, the Third Circuit held the opposite, based on the statute's plain language:

> Section 1114 could hardly be clearer. It restricts a debtor's ability to modify any payments to any entity or person under any plan, fund, or program in existence when the debtor filed for chapter 11 bankruptcy, and it does so notwithstanding any other provision of the bankruptcy code. There is therefore no ambiguity as to whether § 1114 applies here … Benefits that the debtor *could* have terminated outside of bankruptcy, but which it was nonetheless providing at the time of its Chapter 11 filing, are plainly included in the phrase, "payments to any entity or person … under any plan, fund, or program."

612 F.3d at 220.

34. In determining section 1114 to be unambiguous, the Third Circuit, relied upon, among other things, section 1114(*l*) which was added in 2005 and restricts a debtor's ability to modify or terminate retiree benefits in the six months preceding the petition date. The Third Circuit observed the subsection would be meaningless if not applied to retiree benefits terminable at will, and held because section 1114(*l*) must apply to such benefits, section 1114 as a whole must as well. *Id*. at 225. The Third Circuit also considered and rejected the manner in which Judge Drain addressed the consequences of section 1114(*l*) in *Delphi*:

> This analysis exemplifies a fundamental flaw of many of the cases which have failed to afford § 1114 its plain meaning. Rather than beginning with the language of § § 1114(a) or (e), and the language of the related provisions of § 1114(*l*) or § 1129(a)(13), the *Delphi* court began with its own assumptions of why § 1114 could not prohibit a debtor from doing in bankruptcy what it could do outside of bankruptcy. It then found statutory language, such as subsection (*l*), insufficiently persuasive to alter its view of what would be an appropriate result under Chapter 11. Statutory interpretation "should be made of sterner stuff" than that. The language Congress chose when crafting a statute must be considered first and foremost, and if plain and unambiguous, it must be credited, except in "rare and exceptional circumstances." *Rubin v. United States,* 449 U.S. 424, 430… (1981).

*Id*. at 226.

14

35. After analyzing the statute's legislative history and determining its conclusion was consistent with the same (*id*. at 227-31), the Third Circuit addressed (and rejected) the debtors' argument that a plain language interpretation would yield an absurd result because it would contradict the bankruptcy principle that prepetition contractual rights should not be enhanced by the Bankruptcy Code. The Third Circuit held the absurdity argument "reflects a major source of confusion about § 1114, and … is the primary reason that courts have failed to give effect to the statute as written." *Id*. at 231. It explained that while property interests are generally defined by nonbankruptcy law, the Bankruptcy Code creates a federal interest that can modify those property interests for bankruptcy purposes. The Third Circuit then explained that while ERISA was designed to give employers flexibility to provide and terminate welfare plans, the focus instead should be on the policy reasons behind section 1114's enactment, which was to remedy "the social problems that had resulted from the exclusion of retiree welfare benefits from ERISA's protections." *Id*. at 232-33. The Third Circuit held those courts refusing to apply section 1114 to at-will retiree benefits (*e.g.*, *Delphi*) fail to recognize that section 1114 does not unequivocally prohibit retiree benefit termination, but rather, it "creates an equitable procedure through which the debtor can argue the economic necessity of doing so, and the [authorized representative] can counter with their own arguments about economics, fairness, and equity." *Id*. at 235.

36. Significantly, the *Chemtura* decision cited by the Ad Hoc First Lien Group did not consider *Visteon*, and in *In re AMR Corp.*, 508 B.R. 296, 313 n.13 (Bankr. S.D.N.Y. 2014) Judge Lane acknowledged the decision's persuasiveness. Accordingly, the Supplemental Plan's termination at will clause should have no bearing on section 1114's application.

15

**CONCLUSION**

37.  Given Mrs. Clark's case on the merits, it is astonishing that the Objectors and their advisors thought it advisable to terminate Surviving Spouses' death benefits under the Supplemental Plan postpetition without prior Court authorization.  Mrs. Clark respectfully requests an order compelling compliance with section 1114(e)(1) and awarding her an administrative claim for postpetition payments the Debtors have failed to make to date under section 1114(e)(2).  Finally, it is <u>critical</u> that an Official Committee promptly be appointed under section 1114(d) to represent the interests of those persons receiving retiree benefits and ensure the continuation of those benefits post-confirmation pursuant to a chapter 11 plan, given that section 1114's protections terminate on confirmation (*Visteon*, 612 F.3d at 236) and the Debtors' proposed solicitation procedures contemplate an August 10, 2017 confirmation hearing [ECF No. 390, ¶1.ix].

Dated: May 21, 2017
       New York, New York

STORCH AMINI PC

/s/ Jeffrey Chubak
Jeffrey Chubak
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Marlene Clark*

16