**Hearing Date:  May 25, 2017 at 10:00 a.m. (prevailing Eastern Time)**

James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ryan Preston Dahl (admitted *pro hac vice*)
Bradley Thomas Giordano (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229).  The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is:  4655 Great America Parkway, Santa Clara, CA 95054.

**NOTICE OF FILING
OF REVISED PROPOSED ORDER (I) APPROVING THE SALE
OF THE DEBTORS' NETWORKING BUSINESS FREE AND CLEAR
OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES;
(II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM THEIR
OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT; AND (III) ASSUME
AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

**PLEASE TAKE NOTICE** that on March 8, 2017, Avaya Inc. and its affiliated debtors in the above captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion Seeking Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of the Debtors' Networking Business, (B) Approving the Form and Manner of Notice, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for Determining Cure Amounts, and (E) Extending the Deadline to Assume or Reject the Billerica Lease, and (II) an Order Authorizing and Approving the Sale of the Debtors' Networking Business* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that on April 5, 2017, the Court entered the *Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of the Debtors' Networking Business, (B) Approving the Stalking Horse Asset Purchase Agreement, (C) Approving the Form and Manner of Notice, (D) Scheduling an Auction and A Sale Hearing, (E) Approving Procedures for Determining Cure Amounts, and (F) Extending the Assumption/Rejection Deadline for the Billerica Lease* (the "Bidding Procedures Order") [Docket No. 356].

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the proposed *Order (I) Approving the Sale of the Debtors' Networking Business Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances; (II) Authorizing the Debtors to Enter into and Perform*

2

*Their Obligations Under the Asset Purchase Agreement; and (III) Assume and Assign Certain Executory Contracts and Unexpired Leases* attached hereto as **Exhibit A** (the "Order").

  **PLEASE TAKE FURTHER NOTICE** that a redline reflecting the changes from the proposed order filed with the Motion on March 8, 2017 is attached hereto as **Exhibit B**.

  **PLEASE TAKE FURTHER NOTICE** that the hearing to consider the Motion and approval of the Order will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in Courtroom 723, One Bowling Green, New York, New York on **May 25, 2017 at 10:00 a.m.** (prevailing Eastern Time).

| | |
|---|---|
| Dated: May 24, 2017<br>New York, New York | */s/ Jonathan S. Henes, P.C.*<br>James H.M. Sprayregen, P.C.<br>Jonathan S. Henes, P.C.<br>KIRKLAND & ELLIS LLP<br>KIRKLAND & ELLIS INTERNATIONAL LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>- and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ryan Preston Dahl (admitted *pro hac vice*)<br>Bradley Thomas Giordano (admitted *pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>KIRKLAND & ELLIS INTERNATIONAL LLP<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br><br>*Counsel to the Debtors and Debtors in Possession* |

## **Exhibit A**

**Revised Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AVAYA INC., *et al.*,[1] | ) | Case No. 17-10089 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING THE SALE
## OF THE DEBTORS' NETWORKING BUSINESS
## FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS,
## INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING THE
## DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS
## UNDER THE ASSET PURCHASE AGREEMENT; AND (III) ASSUME
## AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the portion of the motion, dated March 8, 2017 (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (A) authorizing and approving the entry into and performance under the terms and conditions of the Asset Purchase Agreement substantially in the form attached hereto as **Exhibit A** (the "APA"), whereby the Debtors have agreed to sell, and Extreme Networks, Inc. (the "Successful Bidder") to purchase the Business, and the Debtors have agreed to transfer and the Successful Bidder has agreed to assume certain liabilities (specifically as set forth and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229). The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is: 4655 Great America Parkway, Santa Clara, CA 95054.

[2] Capitalized terms used in this Order and not immediately defined have the meanings given to such terms in the Motion or the APA, as applicable.

defined in the APA, the "Assumed Liabilities") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "Sale"); (B) authorizing and approving the sale of the Transferred Assets of the Debtors' estates (the "Debtors' Transferred Assets") free and clear of any and all liens, claims, interests and encumbrances; (C) authorizing the assumption and assignment to the Successful Bidder of the Transferred Contracts and Assumed Leases in accordance with the provisions of the order approving the bidding procedures and granting certain related relief (the "Bidding Procedures Order") and the APA; and (D) granting other relief; and the Court having entered the Bidding Procedures Order on April 5, 2017; and an auction conducted in accordance with the Bidding Procedures (the "Auction") having been held on May 23, 2017, pursuant to the Bidding Procedures Order; and the Successful Bidder having submitted the highest and best offer at the Auction; and the Court having conducted a hearing on the Motion on May 25, 2017 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court, having reviewed and considered the Motion and the APA, approved the Bidding Procedures Order and all objections to the Sale and the APA filed in accordance with the Bidding Procedures Order; and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and it appearing that due notice of the Motion, the APA, the Bidding Procedures Order and the Auction has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties-in-interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

2

**THE COURT HEREBY FINDS AS FOLLOWS:**

## Jurisdiction, Venue and Final Order

A.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

## Notice of the Sale, APA, Sale Hearing, Auction and the Cure Payments

C.     As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the APA and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 2002, 6004, 6006 and 9014.  The Debtors have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the APA, and the Sale as required by the Bidding Procedures Order.  The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Sale is required.

D.     A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

E.      In accordance with the Bidding Procedures Order, the Debtors have served a notice of their intent to assume and assign the Transferred Contracts and Assumed Leases and of the Cure Payments upon each non-Debtor counterparty to a Transferred Contract or Assumed Lease.  The service and provision of such notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Transferred Contracts and Assumed Leases or establishing a Cure Payment for the respective Transferred Contracts and Assumed Leases.  Non-Debtor counterparties to the Transferred Contracts and Assumed Leases have had an adequate opportunity to object to assumption and assignment of the applicable Transferred Contracts and Assumed Leases and the Cure Payments set forth in the notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code).  All objections, responses, or requests for adequate assurance, if any, have been resolved.

### Highest and Best Offer

A.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted an Auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The Auction was duly noticed and conducted in a noncollusive, fair, and good faith manner and the Auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Transferred Assets and assume the Assumed Liabilities.

4

B.      The Transferred Assets were adequately marketed by the Debtors, and the consideration provided by the Successful Bidder under the APA constitutes the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of the Transferred Assets and the assumption of the Assumed Liabilities.    The Debtors' determination that the consideration provided by the Successful Bidder under the APA constitutes the highest and best offer for the Transferred Assets constitutes a valid and sound exercise of the Debtors' business judgment.

C.      Approval of the Motion and the APA, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates, and other parties in interest.    The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of their obligations under the APA.

D.      The consummation of the Sale outside a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.

E.      Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to Successful Bidder's consummation of the Sale, as set forth in the APA.

F.      The APA was not entered into, and none of the Debtors or the Successful Bidder, have entered into the APA or propose to consummate the Sale, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors.    None of the Debtors or the Successful Bidder is entering into the APA, or proposing to consummate the Sale, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer Claims whether under the Bankruptcy Code or under the laws of the United States, any state,

5

territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

G.      The Successful Bidder has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the APA, and the Sale and the APA likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

### Good Faith of Successful Bidder

H.      The APA and the Sale contemplated thereunder were proposed, negotiated, and entered into by and among the Debtors and the Successful Bidder without collusion, in good faith, and at arm's-length.

I.      Neither the Successful Bidder, nor any of its affiliates, present or contemplated members, officers, directors, shareholders, or any of their respective successors and assigns (each such entity individually and taken together, the "Successful Bidder Group") is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, or their affiliates.  The Successful Bidder Group is entering into the Sale in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Debtors nor the Successful Bidder Group have engaged in any action or inaction that would cause or permit the APA to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

### No Fraudulent Transfer

J.      The consideration provided by the Successful Bidder pursuant to the APA for its purchase of the Transferred Assets and the assumption of the Assumed Liabilities constitutes

6

reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and under the laws of the United States, any state, territory, possession, or the District of Columbia.

K.    The Successful Bidder is not a continuation of the Debtors or their respective estates and the Successful Bidder is not holding itself out to the public as a continuation of the Debtors or their respective estates and the Sale does not amount to a consolidation, merger, or de facto merger of the Successful Bidder and the Debtors.

**Validity of Transfer**

L.    Each Debtors' board of directors or managing members, as applicable, has authorized the execution and delivery of the APA, the sale of the Transferred Assets and the assumption of the Assumed Liabilities to the Successful Bidder.  The Debtors and their affiliates: (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, as applicable; (ii) have all of the power and authority necessary to consummate the Sale; and (iii) have taken all action necessary to authorize and approve the APA and to consummate the Sale, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.  The Debtors' Transferred Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

**Section 363(f) Is Satisfied**

M.    The sale of the Debtors' Transferred Assets to the Successful Bidder under the terms of the APA meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the sale of the Debtors' Transferred Assets will be free and clear of any and all liens, claims,

7

interests, and encumbrances, and except as expressly provided in the APA with respect to the Assumed Liabilities, the (i) transfer of the Debtors' Transferred Assets to the Successful Bidder and (ii) assumption and/or assignment to the Successful Bidder of the Transferred Contracts and Assumed Leases and Assumed Liabilities will be free and clear of all liens, claims, interests, and encumbrances and will not subject the Successful Bidder to any liability for any liens, claims, interests, and encumbrances whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability).   All holders of liens, claims, interests, and encumbrances who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of liens, claims, interests, and encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their liens, claims, interests, and encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert liens, claims, interests, and encumbrances, or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to any rights, claims and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein.

N.      The Successful Bidder would not have entered into the APA and would not consummate the sale of the Transferred Assets, thus adversely affecting the Debtors, their estates, creditors, employees, and other parties in interest, if the sale of the Debtors' Transferred Assets was not free and clear of all liens, claims, interests, and encumbrances or if the Successful Bidder would, or in the future could, be liable for any Claims, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Successful Bidder as set forth in the APA or in this Order.  The Successful Bidder asserts that it will not consummate the

8

Sale unless the APA specifically provides, and this Court specifically orders, that neither the Successful Bidder, nor its assets, or the Debtors' Transferred Assets, will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claim or successor or transferee liability for any of the Debtors.

O.      The transfer of the Debtors' Transferred Assets to the Successful Bidder under the APA will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Debtors' Transferred Assets free and clear of all liens, claims, interests, and encumbrances.  The Debtors may sell their interests in the Transferred Assets free and clear of all liens, claims, interests, and encumbrances because, in each case, one or more of the standards set forth in section 363(f) has been satisfied.

**Assumption and Assignment of the Transferred Contracts and Assumed Leases**

P.      The assumption and assignment of the Transferred Contracts and Assumed Leases pursuant to the terms of this Order are integral to the APA, are in the best interests of the Debtors and their respective estates, creditors, and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

Q.      The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Transferred Contracts and Assumed Leases.  The Debtors and/or the Successful Bidder, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Transferred Contracts and Assumed Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Transferred

9

Contracts and Assumed Leases, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Each of the Transferred Contracts and Assumed Leases is free and clear of all liens, claims, interests, and encumbrances against the Successful Bidder.

R.       The Successful Bidder has provided adequate assurance of its future performance under the Transferred Contracts and Assumed Leases within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Transferred Contracts and Assumed Leases to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Successful Bidder notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.       The Motion is granted to the extent set forth herein.

2.       All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are, except as provided in other orders of the Court, hereby overruled on the merits with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein including, without limitation, all non-Debtor counterparties to the Transferred Contracts and Assumed Leases.

3.       Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

10

**Approval of the APA**

4.      The APA, all of the terms and conditions thereof, and all of the transactions contemplated therein, are approved in all respects.   The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

5.      The Debtors are authorized to:   (a) take any and all actions necessary or appropriate to perform, consummate, implement and close the Sale, including the sale to Successful Bidder of the Transferred Assets, in accordance with the terms and conditions set forth in the APA and this Order; (b) provide transition services to the Successful Bidder in accordance with the form of transition services agreement attached to the APA as Exhibit G; (c) to assume and assign any and all Transferred Contracts and Assumed Leases; and (d) to take all further actions and to execute and deliver the APA and any and all additional instruments and documents that may be (i) reasonably requested by the Successful Bidder for the purpose of assigning, transferring, granting, conveying, and conferring to the Successful Bidder, or reducing to possession, the Transferred Assets (including, but not limited to, all necessary transition services to be provided to Successful Bidder by the Debtors), (ii) necessary, appropriate or desirable to the performance of the obligations contemplated by the APA, and (iii) as may be reasonably requested by Successful Bidder to implement the APA and consummate the Sale in accordance with the terms thereof, all without further order of the Court.

6.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors

to transfer the Transferred Assets to Successful Bidder in accordance with the APA and this Order.

7.      Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the APA or this Order, and to the extent of any conflict or derogation between this Order or the APA and such future plan or order, the terms of this Order and the APA shall control.

### Sale and Transfer Free and Clear of Liens, Claims, Interests, and Encumbrances

8.      At Closing, all of the Debtors' right, title and interest in and to, and possession of, the Transferred Assets shall be immediately vested in the Successful Bidder pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code.  Such transfer shall constitute a legal, valid, binding, and effective transfer of such Transferred Assets.  All persons or entities, presently or on or after the Closing, in possession of some or all of the Debtors' Transferred Assets, are directed to surrender possession of the Transferred Assets to the Successful Bidder or its respective designees on the Closing or at such time thereafter as the Successful Bidder may request.

9.      This Order:  (a) shall be effective as a determination that, as of the Closing, (i) no Claims other than Assumed Liabilities will be assertable against the Successful Bidder or any of its respective assets, (ii) the Debtors' Transferred Assets shall have been transferred to the Successful Bidder free and clear of all liens, claims, interests and encumbrances, and (iii) the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental

12

departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.   The Debtors' Transferred Assets are sold free and clear of any reclamation rights.   For the avoidance of doubt, all liens, claims, interests, and encumbrances on the Transferred Assets attach to the proceeds of the Sale ultimately attributable to the property against which such liens, claims, interests, and encumbrances applied or other specifically dedicated funds, in the same order of priority and with the same validity, force and effect that such liens, claims, interests, and encumbrances applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein, <u>provided</u>, that the allocation of proceeds of the Sale per the terms of the APA shall be non-binding with respect to the ultimate allocation of value among the Debtors or any of their non-Debtor subsidiaries for any purpose in connection with the Debtors' chapter 11 cases including, but not limited to, the value of any of the Debtors or their non-Debtor subsidiaries, distributions under any chapter 11 plan or creditor recoveries and all parties rights with respect to any such allocation or valuation are expressly preserved.   For the avoidance of doubt, the Successful Bidder shall not be liable for the allocation of proceeds among the Debtors or their non-Debtor subsidiaries.

10.    Except as otherwise provided in the APA, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers,

vendors, employees, trade creditors, litigation claimants, and other creditors holding Claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' Transferred Assets, and the ownership, sale, or operation of the Debtors' Transferred Assets prior to Closing or the transfer of the Debtors' Transferred Assets to the Successful Bidder, are hereby forever barred, estopped, and permanently enjoined from asserting such Claims against the Successful Bidder, its property or the Transferred Assets. Following the Closing, no holder of any Claim shall interfere with the Successful Bidder's title to or use and enjoyment of the Debtors' Transferred Assets based on or related to any such Claim, or based on any action the Debtor may take in their chapter 11 cases.

11.      If any person or entity that has filed financing statements, mortgages, mechanic's Claims, lis pendens, or other documents or agreements evidencing Claims against or in the Debtors or the Debtors' Transferred Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims that the person or entity has with respect to the Debtors or the Debtors' Transferred Assets or otherwise, then only with regard to the Transferred Assets that are purchased by the Successful Bidder pursuant to the APA and this Order: (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors' Transferred Assets; (b) the Successful Bidder is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, Claims, interests, and encumbrances against the Successful Bidder and the Debtors' Transferred Assets; and (c) upon consummation of the Sale, the Successful Bidder may seek in this Court or any other court to

14

compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims and liens that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Debtors' Transferred Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Debtors' Transferred Assets free and clear of Claims and liens shall be self-executing, and neither the Debtors nor the Successful Bidder shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

### No Successor or Transferee Liability

12.    The Successful Bidder Group shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Sale contemplated by the APA, or the transfer, operation, or use of the Transferred Assets to:  (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Successful Bidder, with respect to any obligations as an assignee under the Transferred Contracts and Assumed Leases arising after the Closing); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine.

15

13.     The Successful Bidder shall not have any responsibility for: (a) any liability or other obligation of the Debtors or related to the Transferred Assets other than as expressly set forth in the APA or (b) any Claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the APA with respect to the Successful Bidder, the Successful Bidder shall have no liability whatsoever with respect to the Debtors, (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing. Except to the extent expressly included in the Assumed Liabilities with respect to the Successful Bidder, the Successful Bidder shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.), the Comprehensive Environmental Response Compensation and Liability Act, the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), or the National Labor Relations Act, 29 U.S.C. § 151, et seq. (the "NLRA"). or any foreign, federal, state or local labor, employment (including any rights under any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974, health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any

16

pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability)), or environmental law by virtue of the Successful Bidder's purchase of the Transferred Assets or assumption of the Assumed Liabilities. Without limitation of the foregoing, the Successful Bidder Group shall have no liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Transferred Assets except to the extent they are Assumed Liabilities with respect to the Successful Bidder. The Successful Bidder shall have no liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing.

14.    Except as provided in the APA for the Assumed Liabilities, with respect to the Successful Bidder, nothing in this Order or the APA shall require the Successful Bidder Group to:   (a) continue or maintain in effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

15.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Successful Bidder, or its assets (including the Transferred Assets), with respect to any:  (a) Claim

17

or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating or failing, or refusing to renew any license, permit, or authorization to operate any of the Transferred Assets or conduct any of the businesses operated with such assets.

### Good Faith of Purchaser

16.    The Sale contemplated by the APA is undertaken by the Successful Bidder without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Sale (including the assumption and assignment of the Transferred Contracts and Assumed Leases), unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.

17.    Neither the Debtors nor the Successful Bidder have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The consideration provided by the Successful Bidder for the Transferred Assets under the APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Transferred Contracts and Assumed Leases**

18.　　The Debtors are authorized and directed at the Closing to assume and assign each of the Transferred Contracts and Assumed Leases to the Successful Bidder pursuant to sections 105(a) and 365 of the Bankruptcy Code and to execute and deliver to the Successful Bidder such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts and Assumed Leases to the Successful Bidder.  The payment of the applicable Cure Payments (if any) shall:  (a) effect a cure of all defaults existing thereunder as of the Closing; (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default; and (c) together with the assumption of the Transferred Contracts and Assumed Leases by the Debtors and the assignment of the Transferred Contracts and Assumed Leases to the Successful Bidder, constitute adequate assurance of future performance thereof.

19.　　Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Payments, the Transferred Contracts and Assumed Leases to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Successful Bidder notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.  Any provisions in any Transferred Contract or Assumed Lease that prohibit or condition the assignment of such Transferred Contract or Assumed Lease to the Successful Bidder or allow the counterparty to such Transferred Contract or Assumed Lease to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Transferred Contract or Assumed Lease to the Successful Bidder, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the

Successful Bidder of the Transferred Contracts and Assumed Leases have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Successful Bidder shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Transferred Contracts and Assumed Leases, and such Transferred Contracts and Assumed Leases shall remain in full force and effect for the benefit of the Successful Bidder.  Each non-Debtor counterparty to the Transferred Contracts and Assumed Leases shall be forever barred, estopped, and permanently enjoined from:  (a) asserting against the Debtors or the Successful Bidder or their respective property any assignment fee, acceleration, default, breach or Claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including any breach related to or arising out of change-in-control provisions in such Transferred Contracts and Assumed Leases, or any purported written or oral modification to the Transferred Contracts and Assumed Leases and (b) asserting against the Successful Bidder (or its property, including the Transferred Assets) any Claim, counterclaim, defense, breach, condition, setoff asserted, or assertable against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

20.     Upon the Closing and the payment of the relevant Cure Payments, if any, the Successful Bidder shall be deemed to be substituted for the Debtors as a party to the applicable Transferred Contracts and Assumed Leases and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Transferred Contracts and Assumed Leases.  There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Successful Bidder or the Debtors as a result of the assumption and assignment of the Transferred Contracts and Assumed Leases.  The failure of the Debtors or the Successful Bidder to enforce at any time one or more terms or conditions of any Transferred Contract or

20

Assigned Lease shall not be a waiver of such terms or conditions or of the right of the Debtors or the Successful Bidder, as the case may be, to enforce every term and condition of such Transferred Contract or Assumed Lease. The validity of the assumption and assignment of any Transferred Contract or Assumed Lease to the Successful Bidder shall not be affected by any existing dispute between the Debtors and any counterparty to such Transferred Contract or Assigned Lease. Any party that may have had the right to consent to the assignment of any Transferred Contract or Assumed Lease is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

21.    All defaults or other obligations of the Debtors under the Transferred Contracts and Assumed Leases arising or accruing after the Sale Objection Deadline and prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing, or as soon thereafter as reasonably practicable.

22.    In accordance with section 5.12 of the APA, Transferred Contracts and Assumed Leases identified as "Mixed-Use" on Exhibit 1 to Exhibit A to the Notice of Filing of Revised Exhibit 1 to the Form of the Contract Assumption Notice for the Sale of the Debtors' Networking Business [Docket No. 467] (as amended, the "Contract Assumption List"), subject to permitted additions and deletions to the Contract Assumption List, shall be duplicated and only the Transferred Mixed-Use Contract shall be assigned to the Successful Bidder, and the Retained Mixed-Use Contract shall be retained by the Debtors, such that following assignment of the Transferred Contracts and Assumed Leases, for each Mixed-Use Contract identified in the Contract Assumption List, an applicable counterparty will have one contract with the Successful Bidder Related to the Business and one contract with the Debtors related to other businesses of

21

the Debtors.  The terms and conditions of the Transferred Mixed-Use Contract will be identical

to the terms and conditions of such Mixed-Use Contract prior to assignment of the Transferred

Mixed-Use Contract to the extent that such terms and conditions were Related to the Business.

The terms and conditions of the Retained Mixed-Use Contract will be identical to the terms and

conditions of such Mixed-Use Contract prior to assignment of the Transferred Mixed-Use

Contract to the extent that such terms and conditions were related to other businesses of the

Debtors.

23.    The assignments of each of the Transferred Contracts and Assumed Leases are

made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

24.    Notwithstanding anything to the contrary in this Order (including the language

that this Sale is made free and clear of any and all liens, claims, interests and encumbrances and

the effect of Cure Payments found in paragraph 18 of this Order), nothing herein waives,

impairs, alters, or otherwise affects any claims or causes of actions of Westcon Group, Inc., its

subsidiaries and affiliates, including without limitation Voda One Corp. (collectively "Westcon")

arising under the Transferred Contracts by and among the Debtors and Westcon (the "Westcon

Transferred Contracts"); provided, however, that Westcon shall not assert any claims or causes

of action against the Successful Bidder that arose under any of the Westcon Transferred

Contracts prior to the Closing.  The Debtors shall, as mutually agreed to in writing among the

Debtors and Westcon prior to Closing, (a) pay Westcon its Cure Payments arising from pre-

Closing transactions under any of the Westcon Transferred Contracts in cash at or before

Closing, (b) provide that any such Cure Payments that are in the form of credit memoranda

issued by the Debtors (collectively, the "Credit Memos", and each a "Credit Memo") that arise

from pre-Closing transactions under the Westcon Transferred Contracts be applied by Westcon,

22

in the ordinary course of business against the Retained Mixed-Use Contracts with the Debtors, irrespective of whether such Credit Memo is attributable to the Business, or (c) allocate the Cure Payments among a combination of (a) and (b).  Any Credit Memo that arises from a transaction occurring post-Closing, either on account of Westcon's Transferred Mixed-Use Contracts or its Retained Mixed-Use Contracts, shall be issued and owed by the Successful Bidder or the Debtors, as applicable.  With respect to any Westcon Transferred Contracts between Westcon and any of the Debtors' non-debtor affiliates, the treatment of pre-Closing Credit Memos shall be agreed to in the same manner set forth in (a), (b) and (c) of this Paragraph.  To the extent that any dispute arises regarding the application and/or payment of any pre-Closing Credit Memos owed to Westcon, the parties shall submit that dispute for resolution to this Court.

25.    The Debtors are not assuming and assigning to Successful Bidder any licenses or any other agreements between Avaya Inc. and SNMP Research International, Inc. or SNMP Research, Inc. (together, "SNMP Research"), including, but not limited to, the SNMP Research International License Agreement dated May 5, 2016 (the "SNMP Research License Agreement").  The Debtors also shall not transfer or otherwise disclose any Source (as defined in the SNMP Research License Agreement) obtained, directly or indirectly, from SNMP Research, in whole or in part, in any way or medium, to Successful Bidder.  Notwithstanding anything in this Order, the Debtors shall abide by all obligations of the SNMP Research License Agreement, including the Confidentiality and Non-Disclosure provisions of Paragraph 10 of the SNMP Research License Agreement.

26.    No provision of this Order, the APA or the Transition Services Agreement shall authorize the Debtors to use software licensed under any agreement with SAP America, Inc., SuccessFactors, Inc., Business Objects Software Limited, and Ariba, Inc. (collectively, the "SAP

23

Entities") to provide transition services to the Successful Bidder; provided, however, that the provisions of this paragraph shall not prohibit the Debtors from providing transition services to the Successful Bidder if and to the extent that such transition services are authorized under the applicable agreements with the SAP Entities in accordance with their terms, and provided further that the Debtors remain current on all post-petition fees owed to the SAP Entities under the applicable agreements under which any transition services are provided.

27.    Notwithstanding any other provision of this Order, the Asset Purchase Agreement or Transition Services Agreement, no agreement between Oracle Credit Corporation and its affiliate, Oracle America, Inc., successor in interest to Siebel Systems and Sun Microsystems, Inc. ("Oracle") and the Debtors will be assumed, assigned, or transferred, and no shared use by any third party will be authorized, absent further Court order or Oracle's prior written consent. All parties reserve all rights with respect to Oracle's invocation of consent rights.

28.    Any assignment of any executory contract listed on Exhibit 1 to the *Notice of Filing of Second Revised Exhibit 1 to the Form of the Contract Assumption Notice for the Sale of the Debtors' Networking Business* [Docket No. ___] to which Delta Networks Inc. or any of its affiliates (collectively, "DNI") is a party (collectively, the "DNI Contracts") will be on terms as may be amended by mutual agreement of DNI and the Debtors following the entry of this Order.  Notwithstanding anything to the contrary herein, nothing in this Order shall limit or affect DNI's right to object to the assumption and assignment of any DNI Contract prior to Closing.

29.    Notwithstanding the foregoing or anything to the contrary in this Order or the APA, the lease agreement relating to the property known as Building 3 Maidenhead Office Park, Maidenhead, Berkshire UK dated 20 April 2005 and made between (1) AXA Sun Life Plc (2)

24

Nortel Networks UK Limited and (3) Maidenhead Office Park Management Company Limited and including any document which is supplemental or collateral to it (whether or not expressly stated to be so) including, without limitation, the lease agreement dated 22 June 1998 and made between (1) AXA Equity & Law Life Assurance Society PLC (2) Nortel Properties Limited and (3) Nortel PLC, identified as an "Assumed Lease" in section 1.03(a)(vii) of the disclosure schedules to the APA, cannot be and is not assumed and assigned to the Successful Bidder free and clear of any liens, claims, interests and encumbrances (including any claim or liability arising out of any breach, misfeasance or under any other theory related to the conduct of Avaya or of its subsidiaries prior to the Closing), pursuant to sections 105(a) and 365 of the Bankruptcy Code or this Order, because such lease agreement is property of Avaya UK, a non-Debtor subsidiary of Avaya Inc.

## Other Provisions

30.    To the maximum extent permitted by applicable law, and in accordance with the APA, the Successful Bidder shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Transferred Assets.  To the extent the Successful Bidder cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall be in effect while the Successful Bidder, with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Successful Bidder.  The Debtors shall maintain the Licenses in good standing to the fullest extent allowed by applicable law for the Successful Bidder's benefit until equivalent new Licenses are issued to the Successful Bidder.

31.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or License relating to the operation of the Transferred Assets sold, transferred or conveyed to the Successful Bidder on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale contemplated by the APA.

32.    The Successful Bidder shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided however that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

33.    The terms and provisions of the APA and this Order shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of (whether known or unknown) and holders of equity interests in any Debtor, any holders of Claims against or on all or any portion of the Transferred Assets, all non-Debtor counterparties to the Transferred Contracts and Assumed Leases, the Successful Bidder, and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s), examiner(s) or receiver(s) appointed in any of the Debtors' chapter 11 cases or upon conversion to Chapter 7 under the Bankruptcy Code, as to which trustee(s), examiner(s) or receiver(s) such terms and provisions likewise shall be binding.  The APA shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders, or any trustee(s), examiner(s), or receiver(s).

34.     Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

35.     This Order approves the transfer to the Successful Bidder of only those Avoidance Actions related exclusively to the Business.

36.     Upon the closing of the Sale, this Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Transferred Assets and Transferred Contracts and Assumed Leases or a bill of sale transferring good and marketable title in the Transferred Assets and Transferred Contracts and Assumed Leases to the Successful Bidder pursuant to the terms of the APA.

37.     The APA may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates or their creditors, and, with respect to the Debtors, such amendment, supplement, or modification shall be in consultation with the DIP Agent and the Ad Hoc Groups.  The Debtors shall provide the DIP Agent and the Ad Hoc Groups with notice of any modification, amendment, or supplement of the APA or any material and related agreement, document, or other instrument at least two business days in advance of such modification, amendment, or supplement.

38.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors

27

to the Successful Bidder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale. This Court retains jurisdiction to compel delivery of the Transferred Assets, to protect the Successful Bidder and its assets, including the Transferred Assets, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Transferred Assets and the Transferred Contracts and Assumed Leases to the Successful Bidder.

39.    Notwithstanding the possible applicability of Rules 6004(h), 6006(d), 7062 and 9014 of the Bankruptcy Rules or otherwise, the terms and conditions of this Order shall be effective immediately upon entry and the Debtors and the Successful Bidder are authorized to close the sale immediately upon entry of this Order.

40.    This Order and the APA shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, the Debtors, any holders of Claims or liens in, against, or on all or any portion of the Transferred Assets, all non-Debtor counterparties to the Transferred Contracts and Assigned Leases, all successors and assigns of the Successful Bidder, the Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases, any order confirming any such chapter 11 plan, or any order approving wind-down or dismissal of these chapter 11 cases or any subsequent chapter 7 cases shall conflict with or derogate from the provisions of the APA or this Order, and to the extent of any conflict or derogation between this Order or the APA and such future plan or order, the terms of this Order and the APA shall control.

28

41.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42.     To the extent there are any inconsistencies between the terms of this Order and the APA, the terms of this Order shall control.

43.     The APA and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

44.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

45.     Notwithstanding anything to the contrary in this Order, any payment made hereunder, and any authorization herein, shall be subject to the requirements (if any) imposed on the Debtors under any order(s) of this Court approving the postpetition secured debtor in possession financing facility and the use of cash collateral (any such order, a "Financing Order"). In the event of any conflict between the terms of this Order and a Financing Order, the terms of the applicable Financing Order shall control (solely to the extent of such conflict).  For the avoidance of doubt, nothing herein shall modify, alter, or otherwise affect the rights or remedies of the DIP Agent or the DIP Lenders under the DIP Credit Agreement except with respect to the Transferred Assets.

29

46.     Notwithstanding anything to the contrary in this Order (including the language that this Sale is made free and clear of any and all liens, claims, interests and encumbrances), nothing herein waives, impairs, alters, or otherwise affects any claims or causes of actions of Blackberry, Ltd. and Blackberry Corporation or its successors and assigns, arising on or after the Closing against any member of the Successful Bidder Group relating to the Transferred Assets or Business, including, but not limited to, any claims to preliminarily or permanently enjoin any member of the Successful Bidder Group from allegedly infringing those patents as set forth in the action styled *BlackBerry Limited v. Avaya, Inc.*, Case No. 16-02185 (N.D. Tex.) or any other claims relating to any patent infringement by any member of the Successful Bidder Group.

47.     Notwithstanding anything to the contrary in this Order (including the language that this Sale is made free and clear of any and all liens, claims, interests and encumbrances), nothing herein waives, impairs, alters, or otherwise affects any claims or causes of actions of Network-1 Technologies, Inc. or its successors and assigns, arising on or after the Closing against any member of the Successful Bidder Group relating to the Transferred Assets or Business, including, but not limited to, the claims set forth in the action styled *Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA Inc.*, et al., No. 6:11-cv-492 (E.D. Tex.) or any other claims relating to any patent infringement by any member of the Successful Bidder Group.

New York, New York
Dated: _____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Redline Against Proposed Order Filed with the Motion on March 8, 2017**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AVAYA INC., *et al.*,[1] | ) Case No. 17-10089 (SMB) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### ORDER (I) APPROVING THE SALE
### OF THE DEBTORS' NETWORKING BUSINESS
### FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS,
### INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING THE
### DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS
### UNDER THE ASSET PURCHASE AGREEMENT; AND (III) ASSUME
### AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the portion of the motion, dated March 8, 2017 (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (A) authorizing and approving the entry into and performance under the terms and conditions of the Asset Purchase Agreement substantially in the form attached hereto as **Exhibit A** (the "APA"), whereby the Debtors have agreed to sell, and [●]Extreme Networks, Inc. (the "Successful Bidder")[3] to purchase the Business, and the Debtors have agreed to transfer

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Avaya Inc. (3430); Avaya CALA Inc. (9365); Avaya EMEA Ltd. (9361); Avaya Federal Solutions, Inc. (4392); Avaya Holdings Corp. (9726); Avaya Holdings LLC (6959); Avaya Holdings Two, LLC (3240); Avaya Integrated Cabinet Solutions Inc. (9449); Avaya Management Services Inc. (9358); Avaya Services Inc. (9687); Avaya World Services Inc. (9364); Octel Communications LLC (5700); Sierra Asia Pacific Inc. (9362); Sierra Communication International LLC (9282); Technology Corporation of America, Inc. (9022); Ubiquity Software Corporation (6232); VPNet Technologies, Inc. (1193); and Zang, Inc. (7229). The location of Debtor Avaya Inc.'s corporate headquarters and the Debtors' service address is: 4655 Great America Parkway, Santa Clara, CA 95054.

[2] Capitalized terms used in this Order and not immediately defined have the meanings given to such terms in the Motion or the APA, as applicable.

[3] This Form of Order will serve as the Form Order for any transaction completed pursuant to the Bidding Procedures.

and the Successful Bidder has agreed to assume certain liabilities (specifically as set forth and defined in the APA, the "Assumed Liabilities") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "Sale"); (B) authorizing and approving the sale of the Transferred Assets of the Debtors' estates (the "Debtors' Transferred Assets") free and clear of any and all liens, claims, interests and encumbrances; (C) authorizing the assumption and assignment to the Successful Bidder of the Transferred Contracts and Assumed Leases in accordance with the provisions of the order approving the bidding procedures and granting certain related relief (the "Bidding Procedures Order") and the APA; and (D) granting other relief; and the Court having entered the Bidding Procedures Order on April [___],5, 2017; and an auction conducted in accordance with the Bidding Procedures (the "Auction") having been held on May 23, 2017, pursuant to the Bidding Procedures Order; and the Successful Bidder having submitted the highest and best offer at the Auction; and the Court having conducted a hearing on the Motion on May 25, 2017 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court, having reviewed and considered the Motion and the APA, approved the Bidding Procedures Order and all objections to the Sale and the APA filed in accordance with the Bidding Procedures Order; and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and it appearing that due notice of the Motion, the APA, the Bidding Procedures Order and the Auction has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties-in-interest; and it appearing that the Court has jurisdiction over this matter; and it further

appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

### Jurisdiction, Venue and Final Order

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

### Notice of the Sale, APA, Sale Hearing, Auction and the Cure Payments

C.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the APA and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 2002, 6004, 6006 and 9014.  The Debtors have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the APA, and the Sale as required by the Bidding Procedures Order.  The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Sale is required.

3

D.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

E.      In accordance with the Bidding Procedures Order, the Debtors have served a notice of their intent to assume and assign the Transferred Contracts and Assumed Leases and of the Cure Payments upon each non-Debtor counterparty to a Transferred Contract or Assumed Lease.  The service and provision of such notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Transferred Contracts and Assumed Leases or establishing a Cure Payment for the respective Transferred Contracts and Assumed Leases.  Non-Debtor counterparties to the Transferred Contracts and Assumed Leases have had an adequate opportunity to object to assumption and assignment of the applicable Transferred Contracts and Assumed Leases and the Cure Payments set forth in the notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code).  All objections, responses, or requests for adequate assurance, if any, have been resolved.

## **Highest and Best Offer**

A.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted an Auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The Auction was duly noticed and conducted in a noncollusive, fair, and good faith manner and the Auction process set forth in the Bidding Procedures Order

4

afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Transferred Assets and assume the Assumed Liabilities.

B.      The Transferred Assets were adequately marketed by the Debtors, and the consideration provided by the Successful Bidder under the APA constitutes the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of the Transferred Assets and the assumption of the Assumed Liabilities.  The Debtors' determination that the consideration provided by the Successful Bidder under the APA constitutes the highest and best offer for the Transferred Assets constitutes a valid and sound exercise of the Debtors' business judgment.

C.      Approval of the Motion and the APA, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of their obligations under the APA.

D.      The consummation of the Sale outside a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.

E.      Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to Successful Bidder's consummation of the Sale, as set forth in the APA.

F.      The APA was not entered into, and none of the Debtors or the Successful Bidder, have entered into the APA or propose to consummate the Sale, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors.  None of the Debtors or the Successful Bidder is entering into the APA, or proposing to consummate the Sale, fraudulently,

for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer Claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

G.    The Successful Bidder has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the APA, and the Sale and the APA likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

## Good Faith of Successful Bidder

H.    The APA and the Sale contemplated thereunder were proposed, negotiated, and entered into by and among the Debtors and the Successful Bidder without collusion, in good faith, and at arm's-length.

I.    Neither the Successful Bidder, nor any of its affiliates, present or contemplated members, officers, directors, shareholders, or any of their respective successors and assigns (each such entity individually and taken together, the "Successful Bidder Group") is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, or their affiliates.  The Successful Bidder Group is entering into the Sale in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Debtors nor the Successful Bidder Group have engaged in any action or inaction that would cause or permit the APA to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

## No Fraudulent Transfer

J.      The consideration provided by the Successful Bidder pursuant to the APA for its purchase of the Transferred Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and under the laws of the United States, any state, territory, possession, or the District of Columbia.

K.      The Successful Bidder is not a continuation of the Debtors or their respective estates and the Successful Bidder is not holding itself out to the public as a continuation of the Debtors or their respective estates and the Sale does not amount to a consolidation, merger, or de facto merger of the Successful Bidder and the Debtors.

## Validity of Transfer

L.      Each Debtors' board of directors or managing members, as applicable, has authorized the execution and delivery of the APA, the sale of the Transferred Assets and the assumption of the Assumed Liabilities to the Successful Bidder.  The Debtors and their affiliates: (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, as applicable; (ii) have all of the power and authority necessary to consummate the Sale; and (iii) have taken all action necessary to authorize and approve the APA and to consummate the Sale, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.  The Debtors' Transferred Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

### Section 363(f) Is Satisfied

M.      The sale of the Debtors' Transferred Assets to the Successful Bidder under the

terms of the APA meets the applicable provisions of section 363(f) of the Bankruptcy Code such

that the sale of the Debtors' Transferred Assets will be free and clear of any and all liens, claims,

interests, and encumbrances, and except as expressly provided in the APA with respect to the

Assumed Liabilities, the (i) transfer of the Debtors' Transferred Assets to the Successful Bidder

and (ii) assumption and/or assignment to the Successful Bidder of the Transferred Contracts and

Assumed Leases and Assumed Liabilities will be free and clear of all liens, claims, interests, and

encumbrances and will not subject the Successful Bidder to any liability for any liens, claims,

interests, and encumbrances whatsoever (including, without limitation, under any theory of

equitable law, antitrust, or successor or transferee liability).   All holders of liens, claims,

interests, and encumbrances who did not object, or withdrew their objections to the Sale, are

deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and

all holders of liens, claims, interests, and encumbrances are adequately protected—thus

satisfying section 363(e) of the Bankruptcy Code—by having their liens, claims, interests, and

encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the property

against or in which they assert liens, claims, interests, and encumbrances, or other specifically

dedicated funds, in the same order of priority and with the same validity, force, and effect that

such holder had prior to the Sale, subject to any rights, claims and defenses of the Debtors or

their estates, as applicable, or as otherwise provided herein.

N.      The Successful Bidder would not have entered into the APA and would not

consummate the sale of the Transferred Assets, thus adversely affecting the Debtors, their

estates, creditors, employees, and other parties in interest, if the sale of the Debtors' Transferred

Assets was not free and clear of all liens, claims, interests, and encumbrances or if the Successful

Bidder would, or in the future could, be liable for any Claims, including, without limitation and

as applicable, certain liabilities that expressly are not assumed by the Successful Bidder as set

forth in the APA or in this Order.  The Successful Bidder asserts that it will not consummate the

Sale unless the APA specifically provides, and this Court specifically orders, that neither the

Successful Bidder, nor its assets, or the Debtors' Transferred Assets, will have any liability

whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity,

whether by payment, setoff or otherwise, directly or indirectly, any Claim or successor or

transferee liability for any of the Debtors.

O.      The transfer of the Debtors' Transferred Assets to the Successful Bidder under the

APA will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial

right, title, and interest in and to the Debtors' Transferred Assets free and clear of all liens,

claims, interests, and encumbrances.  The Debtors may sell their interests in the Transferred

Assets free and clear of all liens, claims, interests, and encumbrances because, in each case, one

or more of the standards set forth in section 363(f) has been satisfied.

**Assumption and Assignment of the Transferred Contracts and Assumed Leases**

P.      The assumption and assignment of the Transferred Contracts and Assumed Leases

pursuant to the terms of this Order are integral to the APA, are in the best interests of the Debtors

and their respective estates, creditors, and other parties in interest, and represent the reasonable

exercise of sound and prudent business judgment by the Debtors.

Q.      The Debtors have met all requirements of section 365(b) of the Bankruptcy Code

for each of the Transferred Contracts and Assumed Leases.  The Debtors and/or the Successful

Bidder, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure

9

of any default existing prior to the Closing under all of the Transferred Contracts and Assumed Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Transferred Contracts and Assumed Leases, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Each of the Transferred Contracts and Assumed Leases is free and clear of all liens, claims, interests, and encumbrances against the Successful Bidder.

R.    The Successful Bidder has provided adequate assurance of its future performance under the Transferred Contracts and Assumed Leases within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Transferred Contracts and Assumed Leases to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Successful Bidder notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.    The Motion is granted to the extent set forth herein.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are, except as provided in other orders of the Court, hereby overruled on the merits with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto

are deemed to consent to the relief sought therein including, without limitation, all non-Debtor

counterparties to the Transferred Contracts and Assumed Leases.

3.      Where appropriate herein, findings of fact shall be deemed conclusions of law and

conclusions of law shall be deemed findings of fact.

**Approval of the APA**

4.      The APA, all of the terms and conditions thereof, and all of the transactions

contemplated therein, are approved in all respects.   The failure specifically to include any

particular provision of the APA in this Order shall not diminish or impair the effectiveness of

such provision, it being the intent of the Court that the APA be authorized and approved in its

entirety.

5.      The Debtors are authorized to:   (a) take any and all actions necessary or

appropriate to perform, consummate, implement and close the Sale, including the sale to

Successful Bidder of the Transferred Assets, in accordance with the terms and conditions set

forth in the APA and this Order; (b) provide transition services to the Successful Bidder in

accordance with the form of transition services agreement attached to the APA as Exhibit G;

(c) to assume and assign any and all Transferred Contracts and Assumed Leases; and (d) to take

all further actions and to execute and deliver the APA and any and all additional instruments and

documents that may be (i) reasonably requested by the Successful Bidder for the purpose of

assigning, transferring, granting, conveying, and conferring to the Successful Bidder, or reducing

to possession, the Transferred Assets (including, but not limited to, all necessary transition

services to be provided to Successful Bidder by the Debtors), (ii) necessary, appropriate or

desirable to the performance of the obligations contemplated by the APA, and (iii) as may be

11

reasonably requested by Successful Bidder to implement the APA and consummate the Sale in accordance with the terms thereof, all without further order of the Court.

6.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Transferred Assets to Successful Bidder in accordance with the APA and this Order.

7.    Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the APA or this Order, and to the extent of any conflict or derogation between this Order or the APA and such future plan or order, the terms of this Order and the APA shall control.

**Sale and Transfer Free and Clear of Liens, Claims, Interests, and Encumbrances**

8.    At Closing, all of the Debtors' right, title and interest in and to, and possession of, the Transferred Assets shall be immediately vested in the Successful Bidder pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code ~~free and clear of any and all liens, Claims, interests, and encumbrances.~~.  Such transfer shall constitute a legal, valid, binding, and effective transfer of such Transferred Assets.  All persons or entities, presently or on or after the Closing, in possession of some or all of the Debtors' Transferred Assets, are directed to surrender possession of the Transferred Assets to the Successful Bidder or its respective designees on the Closing or at such time thereafter as the Successful Bidder may request.

9.    This Order:  (a) shall be effective as a determination that, as of the Closing, (i) no Claims other than Assumed Liabilities will be assertable against the Successful Bidder or any of its respective assets, (ii) the Debtors' Transferred Assets shall have been transferred to the Successful Bidder free and clear of all liens, claims, interests and encumbrances, and (iii) the

12

conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.    The Debtors' Transferred Assets are sold free and clear of any reclamation rights.  For the avoidance of doubt, all liens, claims, interests, and encumbrances on the Transferred Assets attach to the proceeds of the Sale ultimately attributable to the property against which such liens, claims, interests, and encumbrances applied or other specifically dedicated funds, in the same order of priority and with the same validity, force and effect that such liens, claims, interests, and encumbrances applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein, provided, that the allocation of proceeds of the Sale per the terms of the APA shall be non-binding with respect to the ultimate allocation of value among the Debtors or any of their non-Debtor subsidiaries for any purpose in connection with the Debtors' chapter 11 cases including, but not limited to, the value of any of the Debtors or their non-Debtor subsidiaries, distributions under any chapter 11 plan or creditor recoveries and all parties rights with respect to any such allocation or valuation are expressly

preserved. For the avoidance of doubt, the Successful Bidder shall not be liable for the allocation of proceeds among the Debtors or their non-Debtor subsidiaries.

10.     Except as otherwise provided in the APA, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' Transferred Assets, and the ownership, sale, or operation of the Debtors' Transferred Assets prior to Closing or the transfer of the Debtors' Transferred Assets to the Successful Bidder, are hereby forever barred, estopped, and permanently enjoined from asserting such Claims against the Successful Bidder, its property or the Transferred Assets. Following the Closing, no holder of any Claim shall interfere with the Successful Bidder's title to or use and enjoyment of the Debtors' Transferred Assets based on or related to any such Claim, or based on any action the Debtor may take in their chapter 11 cases.

11.     If any person or entity that has filed financing statements, mortgages, mechanic's Claims, lis pendens, or other documents or agreements evidencing Claims against or in the Debtors or the Debtors' Transferred Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims that the person or entity has with respect to the Debtors or the Debtors' Transferred Assets or otherwise, then only with regard to the Transferred Assets that are purchased by the Successful Bidder pursuant to the APA and this Order: (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the

14

Debtors' Transferred Assets; (b) the Successful Bidder is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, Claims, interests, and encumbrances against the Successful Bidder and the Debtors' Transferred Assets; and (c) upon consummation of the Sale, the Successful Bidder may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims and liens that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Debtors' Transferred Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Debtors' Transferred Assets free and clear of Claims and liens shall be self-executing, and neither the Debtors nor the Successful Bidder shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

### No Successor or Transferee Liability

12.    The Successful Bidder Group shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Sale contemplated by the APA, or the transfer, operation, or use of the Transferred Assets to:  (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Successful Bidder, with respect to any obligations as an assignee under the Transferred Contracts and Assumed Leases arising after the Closing); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors

15

including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine.

13.     The Successful Bidder shall not have any responsibility for:  (a) any liability or other obligation of the Debtors or related to the Transferred Assets other than as expressly set forth in the APA or (b) any Claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the APA with respect to the Successful Bidder, the Successful Bidder shall have no liability whatsoever with respect to the Debtors, (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing.  Except to the extent expressly included in the Assumed Liabilities with respect to the Successful Bidder, the Successful Bidder shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.), the Comprehensive Environmental Response Compensation and Liability Act, the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of

1973 (as amended), or the National Labor Relations Act, 29 U.S.C. § 151, et seq. (the "NLRA").

or any foreign, federal, state or local labor, employment (including any rights under any pension,

multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the

Employee Retirement Income Security Act of 1974, health or welfare, compensation or other

employee benefit plans, agreements, practices, and programs, including, without limitation, any

pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time

contributed to or had any liability or potential liability)), or environmental law by virtue of the

Successful Bidder's purchase of the Transferred Assets or assumption of the Assumed

Liabilities.  Without limitation of the foregoing, the Successful Bidder Group shall have no

liability or obligation with respect to any environmental liabilities of the Debtors or any

environmental liabilities associated with the Transferred Assets except to the extent they are

Assumed Liabilities with respect to the Successful Bidder.  The Successful Bidder shall have no

liabilities on account of any taxes arising, accruing or payable under, out of, in connection with,

or in any way relating to the operation of the Transferred Assets prior to the Closing.

14.     Except as provided in the APA for the Assumed Liabilities, with respect to the

Successful Bidder, nothing in this Order or the APA shall require the Successful Bidder Group

to:  (a) continue or maintain in effect, or assume any liability in respect of any employee,

pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements

to which the Debtors are a party or have any responsibility therefor including, without limitation,

medical, welfare, and pension benefits payable after retirement or other termination of

employment; or (b) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for

making any contribution to, or in respect of the funding, investment or administration of any

employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

15.     Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Successful Bidder, or its assets (including the Transferred Assets), with respect to any:  (a) Claim or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating or failing, or refusing to renew any license, permit, or authorization to operate any of the Transferred Assets or conduct any of the businesses operated with such assets.

**<u>Good Faith of Purchaser</u>**

16.     The Sale contemplated by the APA is undertaken by the Successful Bidder without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Sale (including the assumption and assignment of the Transferred Contracts and Assumed Leases), unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.

18

17.    Neither the Debtors nor the Successful Bidder have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The consideration provided by the Successful Bidder for the Transferred Assets under the APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

### Assumption and Assignment of Transferred Contracts and Assumed Leases

18.    The Debtors are authorized and directed at the Closing to assume and assign each of the Transferred Contracts and Assumed Leases to the Successful Bidder free and clear of all liens, claims, interests and encumbrances pursuant to sections 105(a) and 365 of the Bankruptcy Code and to execute and deliver to the Successful Bidder such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts and Assumed Leases to the Successful Bidder.  The payment of the applicable Cure Payments (if any) shall:  (a) effect a cure of all defaults existing thereunder as of the Closing; (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default; and (c) together with the assumption of the Transferred Contracts and Assumed Leases by the Debtors and the assignment of the Transferred Contracts and Assumed Leases to the Successful Bidder, constitute adequate assurance of future performance thereof.

19.    Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Payments, the Transferred Contracts and Assumed Leases to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Successful Bidder notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.  Any provisions in any Transferred Contract or Assumed Lease that prohibits or conditions the assignment of such Transferred Contract or

19

Assumed Lease to the Successful Bidder or allow the counterparty to such Transferred Contract or Assumed Lease to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Transferred Contract or Assumed Lease to the Successful Bidder, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Successful Bidder of the Transferred Contracts and Assumed Leases have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Successful Bidder shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Transferred Contracts and Assumed Leases, and such Transferred Contracts and Assumed Leases shall remain in full force and effect for the benefit of the Successful Bidder.  Each non-Debtor counterparty to the Transferred Contracts and Assumed Leases shall be forever barred, estopped, and permanently enjoined from:  (a) asserting against the Debtors or the Successful Bidder or their respective property any assignment fee, acceleration, default, breach or Claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including any breach related to or arising out of change-in-control provisions in such Transferred Contracts and Assumed Leases, or any purported written or oral modification to the Transferred Contracts and Assumed Leases and (b) asserting against the Successful Bidder (or its property, including the Transferred Assets) any Claim, counterclaim, defense, breach, condition, setoff asserted, or assertable against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

20.    Upon the Closing and the payment of the relevant Cure Payments, if any, the Successful Bidder shall be deemed to be substituted for the Debtors as a party to the applicable

Transferred Contracts and Assumed Leases and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Transferred Contracts and Assumed Leases. There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Successful Bidder or the Debtors as a result of the assumption and assignment of the Transferred Contracts and Assumed Leases. The failure of the Debtors or the Successful Bidder to enforce at any time one or more terms or conditions of any Transferred Contract or Assigned Lease shall not be a waiver of such terms or conditions or of the right of the Debtors or the Successful Bidder, as the case may be, to enforce every term and condition of such Transferred Contract or Assumed Lease. The validity of the assumption and assignment of any Transferred Contract or Assumed Lease to the Successful Bidder shall not be affected by any existing dispute between the Debtors and any counterparty to such Transferred Contract or Assigned Lease. Any party that may have had the right to consent to the assignment of any Transferred Contract or Assumed Lease is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

21.     All defaults or other obligations of the Debtors under the Transferred Contracts and Assumed Leases arising or accruing after the Sale Objection Deadline and prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing, or as soon thereafter as reasonably practicable.

22.     In accordance with section 5.12 of the APA, Transferred Contracts and Assumed Leases identified as "Mixed-Use" on Exhibit 1 to Exhibit A to the Notice of Filing of Revised Exhibit 1 to the Form of the Contract Assumption Notice for the Sale of the Debtors' Networking Business [Docket No. 467] (as amended, the "Contract Assumption List"), subject

21

to permitted additions and deletions to the Contract Assumption List, shall be duplicated and only the Transferred Mixed-Use Contract shall be assigned to the Successful Bidder, and the Retained Mixed-Use Contract shall be retained by the Debtors, such that following assignment of the Transferred Contracts and Assumed Leases, for each Mixed-Use Contract identified in the Contract Assumption List, an applicable counterparty will have one contract with the Successful Bidder Related to the Business and one contract with the Debtors related to other businesses of the Debtors.  The terms and conditions of the Transferred Mixed-Use Contract will be identical to the terms and conditions of such Mixed-Use Contract prior to assignment of the Transferred Mixed-Use Contract to the extent that such terms and conditions were Related to the Business. The terms and conditions of the Retained Mixed-Use Contract will be identical to the terms and conditions of such Mixed-Use Contract prior to assignment of the Transferred Mixed-Use Contract to the extent that such terms and conditions were related to other businesses of the Debtors.

21.23.  The assignments of each of the Transferred Contracts and Assumed Leases are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

24.    Notwithstanding anything to the contrary in this Order (including the language that this Sale is made free and clear of any and all liens, claims, interests and encumbrances and the effect of Cure Payments found in paragraph 18 of this Order), nothing herein waives, impairs, alters, or otherwise affects any claims or causes of actions of Westcon Group, Inc., its subsidiaries and affiliates, including without limitation Voda One Corp. (collectively "Westcon") arising under the Transferred Contracts by and among the Debtors and Westcon (the "Westcon Transferred Contracts"); provided, however, that Westcon shall not assert any claims or causes of action against the Successful Bidder that arose under any of the Westcon Transferred

22

Contracts prior to the Closing. The Debtors shall, as mutually agreed to in writing among the Debtors and Westcon prior to Closing, (a) pay Westcon its Cure Payments arising from pre-Closing transactions under any of the Westcon Transferred Contracts in cash at or before Closing, (b) provide that any such Cure Payments that are in the form of credit memoranda issued by the Debtors (collectively, the "Credit Memos", and each a "Credit Memo") that arise from pre-Closing transactions under the Westcon Transferred Contracts be applied by Westcon, in the ordinary course of business against the Retained Mixed-Use Contracts with the Debtors, irrespective of whether such Credit Memo is attributable to the Business, or (c) allocate the Cure Payments among a combination of (a) and (b). Any Credit Memo that arises from a transaction occurring post-Closing, either on account of Westcon's Transferred Mixed-Use Contracts or its Retained Mixed-Use Contracts, shall be issued and owed by the Successful Bidder or the Debtors, as applicable. With respect to any Westcon Transferred Contracts between Westcon and any of the Debtors' non-debtor affiliates, the treatment of pre-Closing Credit Memos shall be agreed to in the same manner set forth in (a), (b) and (c) of this Paragraph. To the extent that any dispute arises regarding the application and/or payment of any pre-Closing Credit Memos owed to Westcon, the parties shall submit that dispute for resolution to this Court.

25.     The Debtors are not assuming and assigning to Successful Bidder any licenses or any other agreements between Avaya Inc. and SNMP Research International, Inc. or SNMP Research, Inc. (together, "SNMP Research"), including, but not limited to, the SNMP Research International License Agreement dated May 5, 2016 (the "SNMP Research License Agreement"). The Debtors also shall not transfer or otherwise disclose any Source (as defined in the SNMP Research License Agreement) obtained, directly or indirectly, from SNMP Research, in whole or in part, in any way or medium, to Successful Bidder. Notwithstanding anything in

this Order, the Debtors shall abide by all obligations of the SNMP Research License Agreement, including the Confidentiality and Non-Disclosure provisions of Paragraph 10 of the SNMP Research License Agreement.

26.    No provision of this Order, the APA or the Transition Services Agreement shall authorize the Debtors to use software licensed under any agreement with SAP America, Inc., SuccessFactors, Inc., Business Objects Software Limited, and Ariba, Inc. (collectively, the "SAP Entities") to provide transition services to the Successful Bidder; provided, however, that the provisions of this paragraph shall not prohibit the Debtors from providing transition services to the Successful Bidder if and to the extent that such transition services are authorized under the applicable agreements with the SAP Entities in accordance with their terms, and provided further that the Debtors remain current on all post-petition fees owed to the SAP Entities under the applicable agreements under which any transition services are provided.

27.    Notwithstanding any other provision of this Order, the Asset Purchase Agreement or Transition Services Agreement, no agreement between Oracle Credit Corporation and its affiliate, Oracle America, Inc., successor in interest to Siebel Systems and Sun Microsystems, Inc. ("Oracle") and the Debtors will be assumed, assigned, or transferred, and no shared use by any third party will be authorized, absent further Court order or Oracle's prior written consent. All parties reserve all rights with respect to Oracle's invocation of consent rights.

28.    Any assignment of any executory contract listed on Exhibit 1 to the *Notice of Filing of Second Revised Exhibit 1 to the Form of the Contract Assumption Notice for the Sale of the Debtors' Networking Business* [Docket No. ___] to which Delta Networks Inc. or any of its affiliates (collectively, "DNI") is a party (collectively, the "DNI Contracts") will be on terms as may be amended by mutual agreement of DNI and the Debtors following the entry of this

24

Order. Notwithstanding anything to the contrary herein, nothing in this Order shall limit or affect DNI's right to object to the assumption and assignment of any DNI Contract prior to Closing.

29.    Notwithstanding the foregoing or anything to the contrary in this Order or the APA, the lease agreement relating to the property known as Building 3 Maidenhead Office Park, Maidenhead, Berkshire UK dated 20 April 2005 and made between (1) AXA Sun Life Plc (2) Nortel Networks UK Limited and (3) Maidenhead Office Park Management Company Limited and including any document which is supplemental or collateral to it (whether or not expressly stated to be so) including, without limitation, the lease agreement dated 22 June 1998 and made between (1) AXA Equity & Law Life Assurance Society PLC (2) Nortel Properties Limited and (3) Nortel PLC, identified as an "Assumed Lease" in section 1.03(a)(vii) of the disclosure schedules to the APA, cannot be and is not assumed and assigned to the Successful Bidder free and clear of any liens, claims, interests and encumbrances (including any claim or liability arising out of any breach, misfeasance or under any other theory related to the conduct of Avaya or of its subsidiaries prior to the Closing), pursuant to sections 105(a) and 365 of the Bankruptcy Code or this Order, because such lease agreement is property of Avaya UK, a non-Debtor subsidiary of Avaya Inc.

**Other Provisions**

22.30.  To the maximum extent permitted by applicable law, and in accordance with the APA, the Successful Bidder shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Transferred Assets. To the extent the Successful Bidder cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall be in

25

effect while the Successful Bidder, with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Successful Bidder.  The Debtors shall maintain the Licenses in good standing to the fullest extent allowed by applicable law for the Successful Bidder's benefit until equivalent new Licenses are issued to the Successful Bidder.

23.31.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or License relating to the operation of the Transferred Assets sold, transferred or conveyed to the Successful Bidder on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale contemplated by the APA.

24.32.  The Successful Bidder shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided however that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

25.33.  The terms and provisions of the APA and this Order shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of (whether known or unknown) and holders of equity interests in any Debtor, any holders of Claims against or on all or any portion of the Transferred Assets, all non-Debtor counterparties to the Transferred Contracts and Assumed Leases, the Successful Bidder, and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s), examiner(s) or receiver(s) appointed in any of the Debtors' chapter 11 cases or upon conversion to Chapter 7 under the Bankruptcy Code, as to which trustee(s), examiner(s) or receiver(s) such terms and provisions

likewise shall be binding. The APA shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders, or any trustee(s), examiner(s), or receiver(s).

26.34. Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

27.35. This Order approves the transfer to the Successful Bidder of only those Avoidance Actions related exclusively to the Business.

28.36. Upon the closing of the Sale, this Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Transferred Assets and Transferred Contracts and Assumed Leases or a bill of sale transferring good and marketable title in the Transferred Assets and Transferred Contracts and Assumed Leases to the Successful Bidder pursuant to the terms of the APA.

29.37. The APA may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates or their creditors, and, with respect to the Debtors, such amendment, supplement, or modification shall be in consultation with the DIP Agent and the Ad Hoc Groups. The Debtors shall provide the DIP Agent and the Ad Hoc Groups with notice of any modification, amendment, or supplement of the APA or any material and related agreement, document, or other instrument at least two business days in advance of such modification, amendment, or supplement.

30.     If the Successful Bidder fails to close the Sale, the Back-up Bidder is required to consummate the Sale pursuant to the Back-up Bid and on the same terms otherwise set forth in this Order, without further Order of this Court.

31.38.  The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Successful Bidder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.   This Court retains jurisdiction to compel delivery of the Transferred Assets, to protect the Successful Bidder and its assets, including the Transferred Assets, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Transferred Assets and the Transferred Contracts and Assumed Leases to the Successful Bidder.

32.39.  Notwithstanding the possible applicability of Rules 6004(h), 6006(d), 7062 and 9014 of the Bankruptcy Rules or otherwise, the terms and conditions of this Order shall be effective immediately upon entry and the Debtors and the Successful Bidder are authorized to close the sale immediately upon entry of this Order.

33.40.  This Order and the APA shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, the Debtors, any holders of Claims or liens in, against, or on all or any portion of the Transferred Assets, all non-Debtor counterparties to the Transferred Contracts and Assigned Leases, all successors and assigns of the Successful Bidder, the Debtors and their affiliates and subsidiaries, and any subsequent

28

trustees appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.  Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases, any order confirming any such chapter 11 plan, or any order approving wind-down or dismissal of these chapter 11 cases or any subsequent chapter 7 cases shall conflict with or derogate from the provisions of the APA or this Order, and to the extent of any conflict or derogation between this Order or the APA and such future plan or order, the terms of this Order and the APA shall control.

34.41.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.42.  To the extent there are any inconsistencies between the terms of this Order and the APA, the terms of this Order shall control.

36.43.  The APA and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

37.44.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

38.45.  Notwithstanding anything to the contrary in this Order, any payment made hereunder, and any authorization herein, shall be subject to the requirements (if any) imposed on the Debtors under any order(s) of this Court approving the postpetition secured debtor in

29

possession financing facility and the use of cash collateral (any such order, a "Financing Order"). In the event of any conflict between the terms of this Order and a Financing Order, the terms of the applicable Financing Order shall control (solely to the extent of such conflict). For the avoidance of doubt, nothing herein shall modify, alter, or otherwise affect the rights or remedies of the DIP Agent or the DIP Lenders under the DIP Credit Agreement except with respect to the Transferred Assets.

46.    Notwithstanding anything to the contrary in this Order (including the language that this Sale is made free and clear of any and all liens, claims, interests and encumbrances), nothing herein waives, impairs, alters, or otherwise affects any claims or causes of actions of Blackberry, Ltd. and Blackberry Corporation or its successors and assigns, arising on or after the Closing against any member of the Successful Bidder Group relating to the Transferred Assets or Business, including, but not limited to, any claims to preliminarily or permanently enjoin any member of the Successful Bidder Group from allegedly infringing those patents as set forth in the action styled *BlackBerry Limited v. Avaya, Inc.*, Case No. 16-02185 (N.D. Tex.) or any other claims relating to any patent infringement by any member of the Successful Bidder Group.

47.    Notwithstanding anything to the contrary in this Order (including the language that this Sale is made free and clear of any and all liens, claims, interests and encumbrances), nothing herein waives, impairs, alters, or otherwise affects any claims or causes of actions of Network-1 Technologies, Inc. or its successors and assigns, arising on or after the Closing against any member of the Successful Bidder Group relating to the Transferred Assets or Business, including, but not limited to, the claims set forth in the action styled *Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA Inc.*, et al., No. 6:11-cv-492 (E.D. Tex.) or any other claims relating to any patent infringement by any member of the Successful Bidder Group.

New York, New York
Dated: _____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE