```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
                                                 :
In re:                                           :   Case No. 17-10089 (SMB)
                                                 :
AVAYA INC., et al.¹                              :   Chapter 11
                                                 :
         Debtors.                                :   (Jointly Administered)
-------------------------------------------------X
```

## MEMORANDUM DECISION REGARDING DETERMINATION OF SURVIVORSHIP BENEFITS AS "RETIREE BENEFITS"

**A P P E A R A N C E S:**

STORCH AMINI PC
*Attorneys for Marlene Clark*
140 East 45th Street, 25th Floor
New York, New York 10017

  Jeffrey Chubak, Esq.
    Of Counsel

KIRKLAND & ELLIS LLP
*Counsel for the Debtors and*
 *Debtors-in-Possession*
601 Lexington Avenue
New York, New York 10022

  James H.M. Sprayregen, P.C., Esq.
  Jonathan S. Henes, P.C., Esq.
  Patrick J. Nash, Jr., P.C., Esq.
  Ryan Preston Dahl, Esq.
  Bradley Thomas Giordano, Esq.
    Of Counsel

AKIN GUMP STRAUSS HAUER & FELD LLP
*Counsel to the Ad Hoc First Lien Group*
One Bryant Park
New York, New York 10036

---

¹   The Debtors in these chapter 11 cases include Avaya Inc.; Avaya CALA Inc.; Avaya EMEA Ltd.; Avaya Federal Solutions, Inc.; Avaya Holdings Corp.; Avaya Holdings LLC; Avaya Holdings Two, LLC; Avaya Integrated Cabinet Solutions Inc.; Avaya Management Services Inc.; Avaya Services Inc.; Avaya World Services Inc.; Octel Communications LLC; Sierra Asia Pacific Inc.; Sierra Communication International LLC; Technology Corporation of America, Inc.; Ubiquity Software Corporation; VPNet Technologies, Inc.; and Zang, Inc.

      Ira S. Dizengoff, Esq.
      Philip C. Dublin, Esq.
      Abid Qureshi, Esq.
          Of Counsel

STROOCK & STROOCK & LAVAN LLP
*Counsel to the Ad Hoc Crossover Group*
180 Maiden Lane
New York, New York 10038

      Kristopher M. Hansen, Esq.
      Sayan Bhattacharyya, Esq.
      Gabriel E. Sasson, Esq.
          Of Counsel

MORRISON & FOERSTER LLP
*Counsel for the Official Committee*
 *Of Unsecured Creditors*
250 W 55th Street
New York, New York 10019

      Lorenzo Marinuzzi, Esq.
      Todd M. Goren, Esq.
          Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      Marlene Clark ("Clark") is the surviving spouse of Stephan Clark, a former employee/retiree of the Debtors. Following his retirement from Avaya, Mr. Clark was receiving deferred compensation in the form of monthly pension benefits under a supplemental pension plan, and after his death, those benefits became payable to Clark. Clark seeks a determination that these payments are "retiree benefits" within the meaning of 11 U.S.C. § 1114. (*Marlene Clark's Motion for Order Determining Survivorship Benefits Under Supplemental Plan Are "Retiree Benefits" Under Bankruptcy Code Section 1114(a), Compelling Compliance with Section 1114(e), and Appointing an Official Committee Under Section 1114(d)*, dated May 5, 2017 (the "*Motion*") (ECF Doc. # 522).) The Debtors and various creditor groups oppose the

*Motion*, and argue that the surviving obligation to Clark is an unsecured debt not subject to the requirements of Bankruptcy Code § 1114. For the reasons that follow, the Court concludes that the benefits payable to Clark are not "retiree benefits," and the *Motion* is denied.

## BACKGROUND

### A.  The Debtors' Supplemental Pension Plan

The Debtors are parties to a certain supplemental pension plan (the "Supplemental Plan"),[2] effective January 1, 2009.[3] The Supplemental Plan "is intended to constitute both (i) an unfunded 'excess benefit plan' as defined in ERISA § 3(36), and (ii) an unfunded plan primarily for the purpose of providing deferred compensation and pension benefits for a select group of management or highly compensated employees . . . ." (Supplemental Plan at Art. 1.) The benefits include a "Minimum Retirement Benefit" payable to eligible former officers of Avaya ("Retirees") in the form of a single life annuity paid monthly to Retirees upon retirement. The Minimum Retirement Benefit amount is calculated based upon the Retiree's salary on his or her last day of employment, minus certain offsets based on other Avaya retirement payments. (Supplemental Plan at § 4.2.)

The Supplemental Plan includes a "Survivor Benefit" payable to the Retiree's surviving spouse. (Supplemental Plan at § 4.3.) The Survivor Benefit, like the

---

[2]  A copy of the Supplemental Plan is annexed to the *Motion* as Exhibit 2.

[3]  The Supplemental Plan is the successor to a certain "Lucent Technologies Inc. Supplemental Pension Plan" (the "Lucent Plan") previously offered by Lucent Technologies Inc. ("Lucent"). When Lucent spun off Avaya as a separate business in October 2000, the Supplemental Plan assumed Lucent Plan liabilities to certain "Avaya Individuals" that had accrued as of September 30, 2000. (Supplemental Plan at Arts. 1 & 2.)

Minimum Retirement Benefit, is a single life annuity, paid monthly, calculated using the same formula as the Minimum Retirement Benefit.  (Supplemental Plan at § 4.3.)  Clark became eligible to receive the Survivor Benefit on July 1, 2014, at which point she began receiving annuity payments in the same amount that her husband had been receiving under the Supplemental Plan before he passed away.  (*See Motion*, Ex. 3.)

Upon filing for chapter 11, the Debtors suspended all payments under the Supplemental Plan, including Clark's Survivor Benefit, (*see Motion*, at ¶ 7 & Ex. 4), and their Schedules of Assets and Liabilities listed a single $90.21 million unsecured non-priority claim on account of unpaid amounts under the Supplemental Plan.[4]  (*Schedule E/F* at 439 of 500 (ECF Doc. # 337).)[5]  Under the currently proposed plan, the Debtors estimate that they will distribute approximately 19.7% to unsecured creditors on account of the allowed amount of their claims.  (*See Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates*, dated Sept. 8, 2017, at iii (ECF Doc. # 1106).)

**B.    Clark's Motion**

Clark filed the *Motion* on May 5, 2017, requesting that the Court determine that the Survivor Benefit constitutes a "retiree benefit" within the meaning of Bankruptcy Code § 1114 because her right to receive it was triggered by the death of her husband.  (*Motion* at ¶¶ 12-13.)  She argues that the Debtors must reinstate her Survivor Benefit

---

[4]    Clark argues that because the Supplemental Plan benefits are payable from the Debtors' general assets, the Schedules should list separate claims for each individual beneficiary.  The resolution of this issue does not affect the disposition of the *Motion*.

[5]    "# of #" refers to the page number and total number of pages placed by the CM/ECF filing system at the top of every page of a filed document.

payments and treat any unpaid postpetition amounts as administrative expenses in accordance with Bankruptcy Code § 1114.  (*Motion* at ¶¶ 14-15.)  In addition, Clark contends that an official committee should be appointed under § 1114(d) to represent the surviving spouses.  (*Motion* at ¶¶ 16-18.)

The Debtors, an *ad hoc* group of lenders holding first lien debt (the "First Lien Group"),[6] a separate *ad hoc* "crossover" group of lenders holding both first lien and second lien debt (the "Crossover Group")[7] and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the First Lien Group and the Crossover Group, the "Objectors") opposed the *Motion*.[8]  In the main, they contend that Bankruptcy Code § 1114 applies only to "medical, surgical, or hospital care" and "sickness, accident, disability" benefits and "benefits in the event of death," and does not encompass retirement income or deferred compensation.  (*Debtors' Objection* at ¶¶ 12-14; *First Lien Objection* at ¶ 3; *Crossover Objection* at ¶¶ 6-8; *Committee Objection* at

---

[6]    Members of the Ad Hoc First Lien Group are listed in the *Eighth Amended Verified Statement Pursuant to Bankruptcy Rule 2019*, dated Sept. 12, 2017 (ECF Doc. # 1146).

[7]    Members of the Ad Hoc Crossover Group are listed in the *Eighth Supplemental Verified Statement of the Ad Hoc Crossover Group Pursuant to Bankruptcy Rule 2019*, dated Sept. 11, 2017 (ECF Doc. # 1132).

[8]    *See Debtors' Objection to Marlene Clark's Motion for Order Compelling Compliance with 11 U.S.C. § 1114(e) and Appointing an Official Committee Under 11 U.S.C. § 1114(d)*, dated May 18, 2017 ("*Debtors' Objection*") (ECF Doc. # 609); *Objection of the Ad Hoc First Lien Group to Marlene Clark's Motion for Order Determining Survivorship Benefits Under Supplemental Plan are "Retiree Benefits" Under Bankruptcy Code Section 1114(a), Compelling Compliance with Section 1114(e), and Appointing an Official Committee Under Section 1114(d)*, dated May 18, 2017 ("*First Lien Objection*") (ECF Doc. # 612); *Objection of the Ad Hoc Crossover Group to Marlene Clark's Motion for Order Determining Survivorship Benefits Under Supplemental Plan are "Retiree Benefits" Under Bankruptcy Code Section 1114(a), Compelling Compliance with Section 1114(e), and Appointing an Official Committee Under Section 1114(d)*, dated May 18, 2017 ("*Crossover Objection*") (ECF Doc. # 614); *Objection of the Official Committee of Unsecured Creditors to Marlene Clark's Motion for Order Determining Survivorship Benefits Under Supplemental Plan are "Retiree Benefits" Under Bankruptcy Code Section 1114(a), Compelling Compliance with Section 1114(e), and Appointing an Official Committee Under Section 1114(d)*, dated May 18, 2017 ("*Committee Objection*") (ECF Doc. # 616).

¶¶ 8-9.) Further, they argue that the Survivor Benefit cannot be a "benefit in the event of death" because a Retiree's death does not give rise to the benefit; it merely transfers an existing pension benefit to the surviving spouse. (*Debtors' Objection* at ¶¶ 14-15; *First Lien Objection* at ¶¶ 4-5; *Crossover Objection* at ¶¶ 9-10; *Committee Objection* at ¶ 10.) In addition, the First Lien Group claims that § 1114 does not apply to a plan like the Supplemental Plan that is terminable at will, (*First Lien Objection* at ¶ 7), and the Debtors and the Committee submit that the Supplemental Plan is not a "plan, fund, or program" under § 1114, which the parties agree parallels the definition of "welfare plan" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et al.* ("ERISA"). (*Debtors' Objection* at ¶¶ 17-20; *Committee Objection* at ¶¶ 14-15; *Reply In Support of Marlene Clark's Motion for Order Determining Survivorship Benefits Under Supplemental Plan Are "Retiree Benefits" Under Bankruptcy Code Section 1114(a), Compelling Compliance with Section 1114(e), and Appointing an Official Committee Under Section 1114(d)*, dated May 21, 2017 ("*Clark's Reply*"), at ¶ 2 (ECF Doc. # 635).) Moreover, the appointment of an official committee of retired employees is not warranted, (*Debtors' Objection* at ¶¶ 21-22; *First Lien Objection* at ¶ 6; *Crossover Objection* at ¶ 11; *Committee Objection* at ¶ 16), and Clark lacks Article III standing to make such a request. (*First Lien Objection* at ¶ 6.)

Clark filed an omnibus reply to the objections. In addition to reiterating her previous arguments, (*Clark's Reply* at ¶¶ 15-16, 25-26), and attempting to distinguish the cases cited by the Objectors, (*Clark's Reply* at ¶¶ 17-22), she asserted for the first time that the Debtors are judicially and collaterally estopped from arguing that the Survivor Benefit is not protected by § 1114 in light of the decision in *In re Lucent Death*

*Benefits ERISA Litig.*, 541 F.3d 250 (3d Cir. 2008) ("*Lucent*").  (*Clark's Reply* at ¶¶ 3-14.)  According to Clark, Lucent successfully argued in that case that a certain death benefit (the "Death Benefit") constituted an unvested benefit under a welfare plan as defined by ERISA, and given the overlap between the definitions of retiree benefits under the Bankruptcy Code and a welfare plan under ERISA, the Debtors are precluded from arguing that the Survivor Benefit is *not* a benefit under a welfare plan (*i.e.*, a retiree benefit).  (*Clark's Reply* at ¶¶ 3-14.)  In the same vein, Clark submits that the Debtors' and the Committee's argument that the Supplemental Plan is not a "plan, fund, or program" is moot, given that *Lucent* effectively held that the Death Benefit qualified as such a plan.  (*Clark's Reply* at ¶¶ 23-24.)  Clark also asserts that the at-will termination clause is irrelevant because a debtor cannot modify or terminate retiree benefits covered by section 1114 except in accordance with that section.  (*Clark's Reply* ¶¶ 32-36.)

      The Debtors filed a sur-reply, (*Debtors' Sur-Reply to Marlene Clark's Reply In Support the Motion for Order Compelling Compliance with 11 U.S.C. § 1114(e) and Appointing an Official Committee Under 11 U.S.C. § 1114(d)*, dated May 24, 2017 ("*Debtors' Sur-Reply*") (ECF Doc. # 653)), arguing that Clark had improperly raised the judicial and collateral estoppel arguments for the first time in *Clark's Reply*, (*id.* at ¶¶ 1-2), but in any event, the estoppel arguments lack merit.[9]  (*Id.* at ¶¶ 3-9.)

---

[9]     I have considered the Debtor's sur-reply to the extent it responds to the issues first raised in Clark's reply because the sur-reply was the one and only opportunity the Objectors had to answer those arguments.  Clark subsequently filed a letter sur-reply to the Debtor's sur-reply.  (ECF Doc. # 670.)  Clark's submission was wholly unauthorized, and amounted to a reply on an issue first raised in her own reply.  Accordingly, I have not considered it.

**DISCUSSION**

A.   **The Meaning of Section 1114**

Section 1114(a) provides:

> For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or *benefits in the event of* sickness, accident, disability or *death under any plan, fund, or program* (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. § 1114(a) (emphasis added). "Retiree benefits" are afforded significant protections and treatment under the Bankruptcy Code. The debtor must continue to pay retiree benefits as administrative expenses throughout a chapter 11 case, it cannot terminate or modify retiree benefits absent a court order and only after demonstrating that it has complied with the procedures set forth in section 1114, and if the debtor seeks to terminate or modify retiree benefits, the court must, upon request, appoint a committee to represent the interests of retirees. 11 U.S.C. § 1114(d)-(g).

Section 1114 does not, however, protect pension benefits. *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 226 (6th Cir. 2009) ("[Section] 1114 does not apply to [the debtor's] benefit program directed at administering pensions.") (citing *Adventure Res., Inc. v. Holland*, 137 F.3d 786, 795 (4th Cir. 1998)); *In re Lyondell Chem. Co.*, 445 B.R. 296, 301 (Bankr. S.D.N.Y. 2011) (same); *In re WorldCom, Inc.*, 364 B.R. 538, 549-50 (Bankr. S.D.N.Y. 2007) (same); *In re Exide Techs.*, 378 B.R. 762, 768 (Bankr. D. Del. 2007) (same); *In re Farmland Indus., Inc.*, 294 B.R. 903, 919 (Bankr. W.D. Mo. 2003) (same). Thus, § 1114 would not have protected Mr. Clark's Minimum Retirement Benefit were he still living. Furthermore, Clark does not contend that the Survivor Benefit constitutes

reimbursement for medical, surgical or hospital care payments, or a benefit in the event of sickness, accident or disability. Instead, she maintains that the Survivor Benefit is a "payment for . . . benefits in the event of . . . death." Accordingly, the question posed by the *Motion* is whether Mr. Clark's pension benefit, which was clearly not a "retiree benefit," was transformed into a "retiree benefit" under § 1114(a) because following his death it became payable to his or her surviving spouse.

The statute's plain language serves as the initial basis for statutory interpretation. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Where the statute's meaning is clear from its plain language, the analysis ends unless the literal application produces an absurd result. *Ron Pair Enters.*, 489 U.S. at 242 ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (internal quotation marks omitted); *accord Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992)); *United Sav. Ass'n. of Texas v. Timbers of Inwood Forest Assocs.*, Ltd., 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . ."). Where the statute's plain language as clarified by context fails to resolve the ambiguity, a court may resort "first to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history."

*United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012) (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005)).

The phrase "benefits in the event of death" under § 1114 is facially ambiguous because both sides have supplied reasonable interpretations. On the one hand, the surviving spouse's right to receive the benefit arises upon the death of the Retiree, suggesting that it is a "benefit in the event of death." On the other hand, the benefit in the form of the Minimum Retirement Benefit pre-exists the Retiree's death, is not a "retiree benefit" when it is payable to the Retiree, and the only thing that death triggers is a transfer of the Retiree's right to receive deferred compensation to his surviving spouse. In short, the Objectors maintain that an existing benefit that survives the beneficiary's death and becomes payable to a different beneficiary is not a "benefit in the event of death." None of the parties have cited or discussed any specific canons of statutory interpretation, and consequently, we turn to the legislative history.

Section 1114 of the Bankruptcy Code was enacted in direct response to the LTV Corporation's bankruptcy, where LTV announced its intention to stop providing health and life insurance benefits to its retirees almost immediately after filing its chapter 11 petition in this Court. *See* Susan J. Stabile, *Protecting Retiree Medical Benefits in Bankruptcy: The Scope of Section 1114 of the Bankruptcy Code*, 14 Cardozo L. Rev. 1911, 1926 & n.86 (1993) ("Stabile"). Congress responded by passing the Retiree Benefits Bankruptcy Protection Act of 1988, now codified as Bankruptcy Code § 1114. The Senate Report as well as statements from debates in the House of Representatives and the Senate emphasized that the purpose of the legislation was to preserve retiree benefits

related to health, disability and life insurance.  According to the Senate Report:

> The bill, as amended, addresses situations with respect to retiree insurance benefits, such as occurred last year when LTV Corporation, after filing a Chapter 11 Bankruptcy petition, immediately terminated the *health and life insurance benefits* of approximately 78,000 retirees. . . . *This bill is not intended to affect current law treatment of pension benefits* in Chapter 11 proceedings.

S. Rep. No. 100-119, at 2-4 (1987), *reprinted in* 1988 U.S.C.C.A.N. 683, 683-85 (emphasis added).  In a debate in the House of Representatives over the bill, Representative Edwards similarly noted:

> HR 2969 is legislation designed to protect the *health, life, and disability benefits* of retirees when companies file chapter 11 bankruptcy. . . . It is imperative that we protect the retirees from the sudden and unilateral termination of their *health, life, and disability benefits* in the event that their former employers file for reorganization under the bankruptcy laws. Retirees who have devoted their working lives to the betterment of their employers' businesses deserve payment of their *retiree health benefits* to the fullest extent possible in a reorganization.

134 Cong. Rec. H3488-89 (daily ed. May 23, 1988) (statement of Rep. Edwards) (emphasis added).  Senator Metzenbaum echoed the same point in a Senate debate held three days later, stating that "this legislation is a major reform in our bankruptcy laws.  It protects *retiree health and life insurance benefits* when companies go into bankruptcy."  134 Cong. Rec. S6824-25 (daily ed. May 26, 1988) (statement of Sen. Metzenbaum) (emphasis added).

Conversely, section 1114 does not protect pension benefits, a point on which there is universal agreement.  The Survivor Benefit payable to Clark is based on her right to receive Mr. Clark's deferred compensation – his pension – and the survivorship of the Debtors' obligation to make those payments does not transmute a pension payment into a "retiree benefit" protected by section 1114.  This conclusion is supported by several

decisions in this and other districts. In *WorldCom*, the court concluded that a retirement plan providing for the payment of deferred compensation was not "for the purpose of providing" the type of benefits identified in section 1114(a), but rather was intended to defer income and associated income taxes. *WorldCom*, 364 B.R. at 550. Furthermore, "that the timing and method of payment of the deferred income may have been altered in the event of death or disability is merely incidental to that purpose." *Id.* Similarly, in *Exide*, the retirement plan provided for annual payments, and upon the death of the retiree after payments had begun, his or her beneficiary would receive either a lump sum distribution equal to the present value of the retiree's benefit or the remaining installment payments. *Exide*, 378 B.R. at 768. The court ruled that the retirement plan did not pay death benefits because the death benefit provision simply provided an alternative for the timing and method of the annual payments that were already due and did not include additional benefits upon the retiree's death. *Id.* at 768-69. Finally, *Lyondell* involved "special retirement allowance" payments owed to a retiree's surviving spouse. There, as here, the spouse beneficiary maintained that the payments were entitled to administrative expense status under § 1114 because they were transferred to her "in the event of" her husband's death, but the court rejected her argument:

> Pension benefits or benefits that provide for annual payments upon retirement are not "retiree benefits." And the feature of the annuity arrangement to provide contingency payments to [the retiree]'s beneficiary upon death does not change that.

*Lyondell*, 445 B.R. at 301 (footnotes omitted).

Clark's attempts to distinguish this case from *WorldCom*, *Lyondell*, and *Exide* are not persuasive. Clark is correct that *WorldCom* and *Exide* involved contingent transfers

- 12 -

to non-spouse transferees where the actual claimant was the retiree rather than the survivor. (*Clark's Reply* at ¶ 18.) Nevertheless, these cases support the proposition that a death benefit feature does not convert a pension payment into a "retiree benefit," and this conclusion is bolstered by the principle of interpretation "that preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006); *accord Trustees of Amalgamated Ins. Fund v. McFarlin's Inc.*, 789 F.2d 98, 100 (2d Cir. 1986) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed."). Moreover, Clark does not offer any case law that supports her reading of the statute. She cites *Farmland*, (*see id.* at ¶ 16), where the court held that "plans and programs [that] provide benefits in the event of death . . . constitute 'retiree benefits' within the meaning of § 1114(a) . . . ." *Farmland*, 294 B.R. at 921, but the passage cited by Clark was referring to life insurance benefits, not to transferred pension or deferred compensation benefits. *See id.* In fact, the same court explicitly found that payments under deferred compensation plans and enhanced retirement plans were not protected as retiree benefits under § 1114. *Id.*

## B.  ERISA and *Lucent*

Clark also contends that the Court should look to ERISA to determine the scope of "retiree benefits" under section 1114(a) because its language tracks the definition of "welfare plan" under 29 U.S.C. § 1002(1)(A).[10] (*Clark's Reply* at ¶ 2.); *accord* Stabile, 14

---

[10] Section 1002(1) defines a "welfare plan" as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of

- 13 -

Cardozo L. Rev. at 1931-32 ("These words are taken from the definition of 'employee welfare benefit plan' contained in ERISA."). Moreover, several courts have looked to the parallel definition of "plan, fund, or program" under ERISA for guidance when interpreting the Bankruptcy Code. *See, e.g.*, *Lyondell*, 445 B.R. at 299; *In re Certified Air Techs., Inc.*, 300 B.R. 355, 370-71 (Bankr. C.D. Cal.2003); *In re New York Trap Rock Corp.*, 126 B.R. 19, 22 (Bankr. S.D.N.Y. 1991). While courts should not automatically use ERISA definitions to fill in the blanks in the Bankruptcy Code, *see Howard Delivery*, 547 U.S. at 661-62 (citing cases), both sides agree that the ERISA definitions are relevant. Consequently, I consider them with due regard, however, for the different purposes that animate ERISA and the Bankruptcy Code.

A given program qualifies as a "plan, fund, or program" under ERISA if it requires an ongoing administrative program to meet the employer's obligation. *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987). Such a program may exist "(1) where an employer's undertaking requires managerial discretion, that is, where the undertaking could not be fulfilled without ongoing, particularized, administrative analysis of each case; (2) where a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits; and (3) where the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 737 (2d Cir. 2001) (internal citations and quotation marks omitted). No single factor is determinative, *Hardy v. Adam Rose Ret. Plan*, 576 Fed. App'x 20, 21

---

insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ."

(2d Cir. 2014) (citations omitted), and there is no rule that "one or more of these factors will be determinative in every case." *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 566 (2d Cir. 1998).

Although Clark argues that the Survivor Benefit is a "plan, fund, or program" under ERISA, she contends that the Court need not consider the *Kosakow* factors.[11] (*Clark's Reply* at ¶ 24.)  Instead, she argues that the decision in *Lucent* collaterally and/or judicially estops the Debtors from contending that the Survivor Benefit is not a welfare plan within the meaning of ERISA, and hence, a "retiree benefit" within the meaning of Bankruptcy Code § 1114.  (*Clark's Reply* at ¶¶ 3-14.)  In that case Lucent, a successor to AT&T, adopted a plan that included the Death Benefit.  The latter provided that in the event of the death of an employee who was receiving or was eligible to receive a pension granted under the plan, the benefit committee could, in its discretion, authorize the payment of the Death Benefit to the employee's surviving spouse or dependent not to exceed the maximum amount that could have been paid as a Sickness Death Benefit if the employee had died on his or her last day of service before retirement.  *Lucent*, 541 F.3d at 252.  The board of directors could change or terminate the plan prospectively, and in 1997, Lucent eliminated the Death Benefit for employees

---

[11]    Nevertheless, the Survivor Benefit, plainly fails to satisfy the first *Kosakow* factor.  The Survivor Benefit is an annuity based on the Minimum Retirement Benefit.  Once the annuity is computed, no further calculation is required, the survivor is not required to do anything, and the benefit is tantamount to a one-off transaction, like a single lump sum benefit, which does not qualify as an ERISA plan under the Supreme Court's decision in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987).  *Hardy v. Adam Rose Ret. Plan*, 957 F. Supp. 2d 407, 415 (S.D.N.Y. 2013), *aff'd*, 576 F. App'x 20 (2d Cir. 2014); *accord Lyondell*, 445 B.R. at 300.  Furthermore, the computation of the amount of the Survivor Benefit involves a simple, one-time mathematical calculation, and does not involve any discretion on the part of the Debtors.  *See Nowak v. Int'l Fund Servs. (N.A.), L.L.C.*, No. 09-CV-5103, 2009 WL 2432715, at *2 (S.D.N.Y. Aug. 7, 2009).

who retired after January 1, 1998. It made a further amendment in 2003 to eliminate the Death Benefit for all management employees regardless of the date of retirement. *Id.* at 252-53. Several class action lawsuits were filed in 2003 and 2004 challenging the termination of the Death Benefit under ERISA and federal common law. *Id.* at 253. The Third Circuit concluded, *inter alia*, that the Death Benefit portion of Lucent's pension plan was a welfare plan because it did not provide retirement income to the employee, it was not an annual benefit and it did not commence at a normal retirement age, and it did not directly relate to an accrued benefit by paying out an accumulated amount of accrued benefits. *Id.* at 255.

Clark waived this argument by raising it for the first time in her reply. *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.,* 485 F.3d 85, 97 n.12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time in a reply brief."); *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 n.5 (2d Cir. 2006) ("[W]e generally do not consider arguments that are raised for the first time in a reply brief."); *Patterson v. Balsamico,* 440 F.3d 104, 113 n.5 (2d Cir. 2006) ("This Court generally will not consider arguments raised for the first time in a reply brief."). Even if she did not waive the argument, it lacks merit because it is based on the mistaken view that the Debtors were parties or in privity with parties to the *Lucent* litigation. The party asserting collateral estoppel must show, an "identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Pub. Adm'r of the Cty. of Bronx,* 246 N.E.2d 725, 729 (N.Y. 1969). The party asserting judicial estoppel must demonstrate that "1) a party's later position is 'clearly

inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010). In both cases, the party to be estopped had to have been a party or in privity with a party to the earlier proceeding that forms the basis of the estoppel.

The Debtors were not parties to the *Lucent* litigation, (*see Amended Complaint, Foss v. Lucent Techs.*, at ¶¶ 21–24, Case No. 03-05017 (D.N.J. Nov. 10, 2005), Doc. # 44), nor in privity with any parties. The Debtors were spun off by Lucent in 2000, and the *Lucent* lawsuits were not filed until 2003 and 2004 by which time the Debtors existed as entirely separate entities. In addition, the concept of privity is limited to "those who control an action although not parties to it. . . ; those whose interests are represented by a party to the action. . .; [and] successors in interest to those having derivative claims." RESTATEMENT (FIRST) OF JUDGMENTS § 83 (1942) (citations omitted); *accord Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997); *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970). Clark does not contend that the Debtors controlled the *Lucent* litigation or participated in it. In addition, the Debtors' interests were not represented or implicated in *Lucent* which involved a different issue. *Lucent* concerned the Death Benefit under the Lucent Technologies Inc. Management Pension Plan of 1996, *Lucent*, 541 F.3d at 252, but the Survivor Benefit is contained in the Debtors' 2009 Supplemental Plan. Finally, the Debtors are not successors in interest with derivative claims that were adjudicated in *Lucent*. Accordingly, the Debtors are not estopped based on arguments that Lucent made or decisions that the Court of Appeals reached in

that case.

Furthermore, Clark failed to demonstrate that the characteristics of the Death Benefit that drove the *Lucent* decision are present in the Survivor Benefit. To the contrary, unlike the Death Benefit, the Survivor Benefit is directly related to the annual payments of accrued deferred compensation otherwise payable to the Retiree, and are directly tied to the eligibility for retirement payments under the Supplemental Plan. Finally, as previously stated, bankruptcy's goal of "equal distribution among creditors" and "the complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress," *Howard Delivery*, 547 U.S. at 655, weigh against the conclusion that the *Lucent* serves as a conclusive guide to the interpretation of "retiree benefits" under section 1114.

In conclusion, the Survivor Benefit is not a "retiree benefit" within the meaning of 11 U.S.C. § 1114(a), and the portion of the *Motion* seeking the appointment of a retiree committee is denied. The Court has considered Clark's remaining arguments and concludes that they have been rendered moot or lack merit. Submit order.

Dated: New York, New York
       September 18, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Court