UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------X
                                            :
In re:                                      :       Case No. 17-10089 (SMB)
                                            :
        AVAYA INC., *et al.*[1]             :       Chapter 11
                                            :
        Debtors.                            :       (Jointly Administered)
-----------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## REGARDING MOTION TO ENFORCE BAR DATE
## ORDER AND DISCHARGE INJUNCTIONS

**A P P E A R A N C E S :**

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

        James H.M. Sprayregen, P.C.
        Jonathan S. Henes, P.C.
        Patrick J. Nash, Jr., P.C.
        Gregory S. Arovas, P.C.
        Natasha Hwangpo, Esq.
            Of Counsel

            – and –

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036

        Arthur Steinberg, Esq.
        Scott Davidson, Esq.

*Counsel for the Debtors and
  Debtors-in-Possession*


ANGELA ADAMS-DeCARLO
6437 Majestic Drive

---

[1]        The Debtors in these chapter 11 cases included Avaya Inc.; Avaya CALA Inc.; Avaya EMEA Ltd.; Avaya Federal Solutions, Inc.; Avaya Holdings Corp.; Avaya Holdings LLC; Avaya Holdings Two, LLC; Avaya Integrated Cabinet Solutions Inc.; Avaya Management Services Inc.; Avaya Services Inc.; Avaya World Services Inc.; Octel Communications LLC; Sierra Asia Pacific Inc.; Sierra Communication International LLC; Technology Corporation of America, Inc.; Ubiquity Software Corporation; VPNet Technologies, Inc.; and Zang, Inc.  All cases other than Avaya Inc. have been closed.

North Ridgeville, Ohio 44039

*Claimant Pro Se*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The Debtor, Avaya Inc.*,* has moved for an injunction to prevent Angela Adams-DeCarlo ("Claimant"), who never filed a proof of claim, from continuing an action to collect a prepetition claim. (*See Debtors' Motion for an Order Enforcing the Bar Date Order Injunction and the Discharge Injunction Under Debtors' Chapter 11 Plan of Reorganization*, dated Apr. 12, 2018 ("*Motion*") (ECF Doc. # 1934).)[2] The Claimant, who is appearing *pro se*, has supplied evidence to the Court indicating that the Debtor did not provide her with actual notice of the bar date or the confirmation hearing and she did not have actual notice of either. In addition, the Claimant has requested the chance to file a late claim if it is necessary to do so. For the reasons that follow, the Court concludes that a trial is necessary to resolve issues surrounding the mailing and receipt of the Bar Date Notice, defined below, and whether the Claimant has demonstrated excusable neglect.

## BACKGROUND

The Claimant was formerly employed by the Debtor. While in the Debtor's employ, and as of September, 2016, she was receiving long term disability ("LTD") benefits under a plan administered by the Debtor's Claims Administrator, Avaya Absence Management Service Center (Sedgewick CMS) ("Sedgewick"). (*Motion*, Ex. C, ¶ 2.)

---

[2]     "ECF Doc. #" refers to the electronic docket in Case No. 17-10089.

On September 15, 2016, the Claimant received a letter from Dane Street on behalf

Sedgewick informing her that Dane Street had scheduled an independent medical

examination of the Claimant in early October.  (*Second Sur-Reply*, at ECF p. 14 of 29

(ECF Doc. # 2171).)[3]  The letter was addressed to the Claimant at 6437 Majestic Drive,

North Ridgeville, OH 44039 (the "Ohio Address"), and the examination was scheduled

to take place in Bedford, Ohio.  By email dated October 14, 2016, Sedgewick advised the

Claimant that it had received the results of the independent medical examination and

her LTD benefits would be terminated as of November 1, 2016.  (*Id.*, ECF p. 19 of 29.)

The Claimant appealed the denial of the continuation of her LTD benefits, and her claim

was finally denied by letter, dated July 21, 2017.  (*Motion*, Ex. C, at ¶ 2.)

In the interim, the Debtors filed their chapter 11 petitions on January 19, 2017

(the "Petition Date"), and the next day, the Court signed an order authorizing Prime

Clerk LLC to serve as noticing and claims agent for the Debtors pursuant to 28 U.S.C. §

156(c).  (*See Order (I) Authorizing and Approving Employment and Retention of Prime

Clerk LLC as Claims and Noticing Agent for the Debtors and Debtors in Possession

Nunc Pro Tunc to the Petition Date, and (II) Granting Related Relief*, dated Jan. 20,

2017 (ECF Doc. # 48).)  The Claimant was not listed as a creditor in the Debtors'

bankruptcy schedules.  (*Declaration of Benjamin J. Steele in Support of Debtors'

Motion for Order Enforcing Bar Date Order Injunction and Discharge Injunction*

---

[3]     The *Second Sur-Reply* refers to the Claimant's submission, dated July 2, 2018.  "ECF p." refers to
the pagination imprinted at the top of each page of the document by the Court's CM/ECF system.

*Under Debtors' Chapter 11 Plan Of Reorganization*, dated Apr. 12, 2018 ("*Steele Declaration*"), at ¶ 2.)[4]

On March 22, 2017, the Court entered an order (ECF Doc. # 301) (the "Bar Date Order") establishing May 8, 2017 ("Bar Date") as the deadline by which non-governmental prepetition creditors, including the Claimant, were required to file proofs of claim.  Any entity that was required to file a claim but failed to do so would be "forever barred, estopped, and enjoined from asserting such claim against the Debtors . . . and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to or arising from such claim" (the "Bar Date Order Injunction").  (Bar Date Order ¶ 17.)  The Bar Date Order directed the Debtors to mail the Bar Date Notice and Proof of Claim Form, *inter alia*, to "all known creditors and other known holders of potential Claims against the Debtors" (*id.* ¶ 13(d)), as well as to "all current and former employees (to the extent that contact information for former employees is available in the Debtors' records)."  (*Id.* ¶ 13(l).)

Prime Clerk sent copies of the Bar Date Notice and Proof of Claim Form by first class mail to the Claimant at 921 Catlin Street, Simi Valley, California (the "California Address") on March 30, 2017.  (*Steele Declaration* ¶ 3.)[5]  The Claimant did not file a proof of claim in the Debtors' bankruptcy cases.  (*Id.* ¶ 8.)

---

[4]        The *Steele Declaration* is annexed as Exhibit B to the *Motion*.

[5]        Prime Clerk subsequently sent the Confirmation Hearing Notice to the Claimant at the California Address on November 3, 2017, (*Steele Declaration* ¶ 4), and none of the notices mailed to the Claimant at the California Address were returned as undeliverable.  (*Id.* ¶¶ 6-7.)  Although this opinion focuses on the Bar Date Notice, a separate question concerns whether the Claimant is bound by the Discharge Injunction, described above, based on inadequate notice.  The parties have not addressed this issue and I do not consider it.

4

Approximately two weeks later, the Claimant terminated her employment with the Debtors when she signed a Termination Agreement and Release on April 14, 2017 ("Termination Agreement").[6]  Below her signature, she listed her home phone number as 805-522-8787.  (*Id.*, Ex. A, at ECF p. 17 of 18.)  The billing address for that number is the California Address, and the number was still active as of March 2018.  (*Second Sur-Reply*, ECF p. 6 of 29.)  However, she simultaneously advised the Debtors in separate emails to send her final payroll stub and paper document of her severance payment by email or by mail to the Ohio Address.  (*Second Sur-Reply*, ECF pp. 22, 24 of 29.)

By *Order (I) Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates and (II) Granting Related Relief*, dated Nov. 28, 2017 ("Confirmation Order") (ECF Doc. # 1579), the Court confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of Avaya Inc. and Its Debtor Affiliates*, dated Oct 31, 2017 ("Plan").[7]  The Plan became effective on December 15, 2017 (the "Effective Date).  (*See* ECF Doc. # 1675.)  Article VIII(B) of the Plan included a discharge, *inter alia,* of all claims against the Debtors or their assets or properties that arose before the Effective Date whether or not a proof of claim had been filed.  (Plan 47-48.)  Article VIII(F), *inter alia*, permanently enjoined all entities from commencing or continuing any action with respect to a discharged claim (the "Discharge

---

[6]    An executed copy of the Termination Agreement is annexed as Exhibit A to the (*Debtors' Reply Brief in Support of Motion for an Order Enforcing the Bar Date Order Injunction and the Discharge Injunction Under Debtors' Chapter 11 Plan of Reorganization*, dated June 21, 2018 ("*Debtors Reply*") (ECF Doc. # 2059).)

[7]    A copy of the Plan is annexed as Exhibit A to the Confirmation Order.

Injunction," and together with the Bar Date Order Injunction, the "Injunctions"). (Plan 49-50.)

On the same day the Court confirmed the Plan, the Claimant, represented by counsel, commenced an action against Sedgewick, Avaya Absence Management Service Center Appeals Unit and the Avaya Inc. Long Term Disability Plan in the United States District Court for the Northern District of Ohio (the "Ohio Action"). (*Motion*, Ex. C.) She challenged the termination of her LTD benefits, and sought their continuation. Although the complaint did not name any Debtor as a defendant, it alleged that the LTD plan was funded by the employees and "the Company from its general assets and is liable for payment of the benefits to the Plaintiff." (*Id.*, Ex. C, ¶ 1.) The Claimant contends that it was only in March 2018 that she first learned from her attorney about the Bar Date (which had long since passed). (*First Sur-Reply*, ECF p. 3 of 8 (ECF Doc. # 2069).)[8]

The Debtors filed the *Motion* on April 12, 2018, seeking to enforce the Injunctions and halt the Ohio Action.[9] Following the service of the *Motion*, the Claimant made numerous submissions. (*See Letter*, dated Apr. 17, 2018 (ECF Doc. # 1960); *First Sur-Reply*; *Second Sur-Reply.)* The Claimant stated that during the years 2016-2017 she retained her residency at the California Address, was gravely ill, and to the best of her knowledge, "all mail addressed to me was received." (*Letter*, dated Apr. 17, 2018, at ECF p. 1 of 10).) To the extent relevant to the *Motion*, she insisted that she

---

[8]      The *First Sur-Reply* refers to the Claimant's submission, dated June 25, 2018.

[9]      The caption of the complaint in the Ohio Action included the Claimant's Ohio Address.

never received an "official/written notice of the bankruptcy or any correspondence regarding the submission of a claim form," (*id.*), and "[t]he filing of the claim was never brought to my attention at any time prior to the Avaya Attorney's notification." (*Id.*, ECF p. 2 of 10.) She also asked for permission to file a claim if it was necessary for her to do so, (*id.*), which the Court treats as a motion to file a late claim based on excusable neglect.

## DISCUSSION

### A.    Subject Matter Jurisdiction

To invoke the bankruptcy court's post-confirmation jurisdiction, a party must show that the plan provides for the retention of jurisdiction over the dispute, and the matter has a "close nexus" to the bankruptcy plan. *Cohen v. CDR Creances S.A.S.* (*In re Euro-Am. Lodging Corp.*)*,* 549 F. App'x 52, 54 (2d Cir. 2014) (summary order); *Ace Am. Ins. Co. v. State of Mich. Workers' Comp. Ins. Agency* (*In re DPH Holdings Corp.*), 448 F. App'x 134, 137 (2d Cir. 2011) (summary order), *cert. denied*, 567 U.S. 935 (2012); *Penthouse Media Grp. v. Guccione (In re General Media, Inc.)*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005). The "close nexus" test is met "when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement." *General Media*, 355 B.R. at 73 (quoting *Resorts Int'l Fin., Inc. v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 168-69 (3d Cir. 2004); *accord ResCap Liquidating Tr. v. Primary Capital Residential Advisors, LLC* (*In re Residential Capital*), 527 B.R. 865, 870-71 (S.D.N.Y. 2014); *In re Metro-Goldwyn Mayer Studios Inc.*, 459 B.R. 550, 556 (Bankr. S.D.N.Y. 2011). In addition, a bankruptcy court retains post-confirmation jurisdiction to

interpret and enforce its own orders.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

The Court concludes that it has subject matter jurisdiction over the *Motion*.  The *Motion* seeks to enforce the Bar Date Order Injunction, a prior order of the Court, and the Discharge Injunction, a provision of the Plan.  In addition, under the Plan, and among other things, the Court retained jurisdiction to "enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan," (Plan, Art. XI § 8, at 54), "issue injunctions . . . or take such other action as may be necessary or appropriate to restrain" any entity from interfering with the "consummation or enforcement of the Plan," (*id.*, Art. XI § 11, at 54), and "enforce all orders previously entered by the Bankruptcy Court."  (*Id.*, Art. XI, § 22, at 55.)

## B.    Notice

The *Motion* raises two questions relating to the notice of the proceedings that resulted in the Injunctions:  did the Debtors provide actual notice to the Claimant, and/or, did the Claimant nonetheless have actual knowledge of the Bar Date?  When a creditor is not scheduled as required by Bankruptcy Code § 521, "[t]he burden of establishing that a creditor has received adequate notice rests with the debtor."  *In re Massa*, 187 F.3d 292, 296 (2d Cir. 1999).  The nature of the notice depends on whether the creditor is known or unknown.  A known creditor is one whose identity is either known or "reasonably ascertainable" by the debtor.  *Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 490 (1988).  An unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do

8

not in due course of business come to knowledge [of the debtor]." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 317 (1950).  Known creditors are entitled to actual notice and unknown creditors are generally entitled to notice by publication.  *See DePippo v. Kmart Corp.*, 335 B.R. 290, 295–96 (S.D.N.Y. 2005) ("While actual notice is required if the creditor is a 'known' creditor, constructive notice is sufficient where a creditor is 'unknown.'") (citation omitted); *In re BGI, Inc.*, 476 B.R. 812, 820 (Bankr. S.D.N.Y. 2012) ("For unknown creditors, constructive notice, such as notice by publication, will suffice.").  In chapter 11 cases, notice of or awareness that a bankruptcy case is pending does not give the creditor the information needed to ascertain the bar date, *GAC Enter., Inc. v. Medaglia* (*In re Medaglia*), 52 F.3d 451, 457 (2d Cir. 1995); *Shu Lun Wu v. May Kwan Si, Inc.*, 508 B.R. 606, 612 (S.D.N.Y. 2014), and a creditor who was not served with notice of the bar date but nonetheless learns that a case is pending is not under a duty to discover the bar date.  *City of New York v. New York, N.H. & H.R. Co.* (*In re New York, N.H. & H.R. Co.*), 197 F.2d 428, 431–32 (2d Cir. 1952) (Frank, J., dissenting), *rev'd*, 344 U.S. 293 (1953).

### 1.    The Claimant Was Entitled to Actual Notice

The Claimant was a known creditor as of the Petition Date.  By the Petition Date, Sedgewick had already terminated the Claimant's LTD benefits.  In addition, the Claimant appealed that determination administratively, although we do not know whether the appeal was pending as of the Petition Date.  Moreover, the Bar Date Order required the Debtors to mail the Bar Date Notice and Proof of Claim Form to "known holders of potential Claims," and the Claimant held a "potential" claim for future LTD benefits.  The Bar Date Order also required the Debtors to mail the Bar Date Notice and

Proof of Claim Form to all current and former employees.  Consequently, the Claimant was entitled to actual notice of the Bar Date.

### 2.    The Adequacy of the Notice

The Debtors sent notice to the California Address.  Under the so-called "mailbox rule," "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430 (1932); *accord In re AMR Corp.*, Case No. 11-15463 (SHL), 2016 WL 1068955, at *3 (Bankr. S.D.N.Y. Mar. 17, 2016) (internal quotation marks and citations omitted); *In re Borders Grp., Inc.*, 462 B.R. 48, 52 (Bankr. S.D.N.Y. 2011) (collecting cases).  The party seeking to gain the benefit of the presumption "must provide evidence of actual mailing in the form of an affidavit submitted by an individual who supervised the mailing." *Borders*, 462 B.R. at 52.  If the notice-giving party establishes that it is entitled to the presumption, the recipient cannot rebut the presumption simply by denying receipt. *AMR Corp.*, 2016 WL 1068955, at *3 ("Federal courts in New York have held 'quite uniformly' that an affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of mailing.*) (internal citation omitted).

According to the *Affidavit of Service*, sworn to Apr. 4, 2017 by Ian Stern (ECF Doc. # 354),

> On or before March 30, 2017, at my direction and under my supervision, employees of Prime Clerk caused the Bar Date Notice along with the following document, **individualized to include** the name and address of the party, to be served via First Class Mail on the Master Mailing List attached hereto as Exhibit D.

(ECF pp. 1-2 of 1879.)  The Claimant's name and redacted address appear on Exhibit D. (*Id.*, ECF pp. 109 of 1879.)  At my request, the Debtors provided an unredacted portion of Exhibit D which showed that the Bar Date Notice and Proof of Claim Form were mailed to the Claimant at the California Address.

Although Mr. Stern did not personally mail the Bar Date Notice to the Claimant, or see anyone place it in a mail box, his affidavit testimony triggers the presumption that these documents were mailed to and received at the California Address.  Prime Clerk, a professional claims and noticing agent retained by Court order, mailed thousands of Bar Date Notices following the entry of the Bar Date Order.  No one person within the organization can attest to the mailing of any particular notice.  Moreover, despite the volume of notices sent at the same time and in the same manner, problems of non-receipt have not been brought to the Court's attention.  Finally, the Claimant has failed to rebut the presumption.  Accordingly, the Debtors are entitled to rely on the presumption to establish the fact that the Bar Date Notice was mailed to and received at the California Address.

It does not necessarily follow, however, that the Debtors have satisfied their burden of showing that they gave the Claimant actual notice of the Bar Date.  Under Federal Bankruptcy Rule 2002(a)(7), the clerk (here, Prime Clerk) must mail notice of "time fixed for filing of proofs of claim pursuant to Rule 3003(c)" to all creditors at least twenty-one days before the deadline.[10]  If the creditor has not designated a specific address (the Claimant did not), "the notices shall be mailed to the address shown on the

---

[10]    Bankruptcy Rule 3003 applies to the filing of proofs of claim or interest in chapter 9 and 11 cases.

list of creditors or schedule of liabilities, whichever is filed later." FED. R. BANKR. P.
2002(g)(2).

The Rules contemplate sending notice to an actual address supplied by a debtor,
because if the debtor thought someone was a creditor, it would have listed the creditor
in its schedules.  The Bankruptcy Rules do not address where to send notices when, as
here, the debtor fails to schedule or list a known creditor.  In addition, the Bar Date
Order did not designate the appropriate address to which to send the Bar Date Notice.
Nevertheless, resort to the rules governing the service of the summons and the
complaint supply an answer.  Strict compliance with the service requirements of Federal
Bankruptcy Rule 7004(b) satisfies the requirements for constitutionally sufficient
notice, *Jobin v. Otis* (*In re M & L Bus. Mach. Co.*), 190 B.R. 111, 115-16 (D. Colo. 1995),
and serves as a prerequisite to the exercise of personal jurisdiction.  *Keys v. 701
Mariposa Project, LLC* (*In re 701 Mariposa Project, LLC*), 514 B.R. 10, 16 (B.A.P. 9th
Cir. 2014).  If service on the Claimant, an individual, at her "dwelling house or usual
place of abode," *see* FED. R. BANKR. P. 7004(b)(1), is sufficient to confer personal
jurisdiction and affect her rights, it should be sufficient actual notice where the Federal
Bankruptcy Rules do not specify a different address.[11]

Here, the evidence to date fails to establish that the Claimant's "dwelling house or
usual place of abode" was located at the California Address rather than the Ohio
Address.  On the one hand, Sedgewick used the Ohio Address in dealing with the

---

[11]    In contrast, once the Court acquires personal jurisdiction over a defendant, subsequent papers
can be mailed to the defendant's "last known address."  This implies that mailing to the "last known
address" in the first instance is insufficient.

Claimant.  It had sent communications to the Claimant at the Ohio Address before the

Petition Date and scheduled the Claimant to undergo a medical examination in Ohio,

which apparently took place there.  In addition, the Claimant had advised the Debtors

directly in mid-April, 2017, shortly after the Bar Date Notice but long before the notice

of the confirmation hearing, to send the documentation relating to her final pay to the

Ohio Address.

On the other hand, there is also evidence that the Claimant resided at the

California Address at the time the Bar Date Notice was mailed.  She stated that she

"retained my residency" at the California Address "[d]uring the years 2016-2017," and to

the best of her knowledge (at a time when she was gravely ill), "all mail addressed to me

was received."  (*Letter*, dated Apr. 17, 2018, ECF p. 1 of 10.)  And while she claimed that

she never received any "official/written notice of the bankruptcy" at the California

Address, she stated in a February 22, 2017 email that one day earlier she had received a

nineteen page document from this Court apparently relating to her severance benefits.

(*Email* dated July 12, 2018, at ECF p. 5 of 5 (ECF Doc. # 2172.)  If that mailing was sent

by Prime Clerk, it is likely that it was mailed to the California Address since that is the

only address Prime Clerk used to provide notice to the Claimant.  Finally, the Claimant

used a telephone that was billed to the California Address, and also listed this telephone

number as her contact number in the Termination Agreement.

Furthermore, even if Prime Clerk incorrectly sent the Bar Date Notice to the

California Address, the Claimant may still may have received actual notice of the Bar

Date based on her own statement that she retained a residence during the relevant

period at the California Address and received mail sent there.  If the Claimant received

13

actual knowledge of the Bar Date despite the fact that the notice was sent to the wrong address, or acquired actual knowledge of the Bar Date in some other manner, she was not free to ignore it:

> [A] creditor who independently acquires knowledge of a pending action that will affect its rights cannot sit idly by, let time pass and assert its rights at a later date when it may be impossible or impractical to unwind earlier actions that affect the rights of others. Thus, although a known creditor with knowledge of the chapter 11 case who did not receive actual notice is not deemed to know the bar date or be under a duty to discover it, a creditor who has actual knowledge of the bar date ignores it at its peril.

*In re Queen Elizabeth Realty Corp.*, Case No. 13–12335 (SMB), 2017 WL 1102865, at *5 (Bankr. S.D.N.Y. Mar. 24, 2017), *aff'd*, 586 B.R. 95 (S.D.N.Y. 2018).

## C.    Excusable Neglect

The inquiry regarding the adequacy of notice and the Claimant's knowledge of the Bar Date dovetails with the Claimant's request to file a late claim.  Rule 9006(b)(1) governs the permissibility of filing a late claim in a chapter 11 case.  *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 389 (1993).[12]  Under *Pioneer*, the determination whether to allow a late claim is an equitable one that takes account of all of the surrounding circumstances:

> These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395.

---

[12]    Federal Bankruptcy Rule 3002(c)(2), (c)(3), (c)(4) and (c)(6), incorporated through Federal Bankruptcy Rule 3003(c)(3), provide additional grounds for filing a late claim, but they are not applicable in this case.

14

The burden of proof rests with the party asserting excusable neglect.  *Midland Cogen. Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 121 (2d Cir. 2005).  The several factors are not accorded equal weight.  In the "typical" case, "the length of the delay, the danger of prejudice, and the movant's good faith 'usually weigh in favor of the party seeking the extension.'"  *Id.* at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003), *cert. denied*, 540 U.S. 1105 (2004)).[13] The most important factor is the reason for delay.  "While prejudice, length of delay, and good faith might have more relevance in a close[ ] case, the reason-for-delay factor will always be critical to the inquiry."  *Silivanch*, 333 F.3d at 366 n. 7 (quoting *Graphic Commc'ns Int'l Union v. Quebecor Printing Providence, Inc.,* 270 F.3d 1, 5–6 (1st Cir. 2001) (alterations in original)); *accord Enron*, 419 F.3d at 123.

The Claimant contends that she did not learn about the Bar Date until March 2018, approximately ten months after the deadline,[14] but this is a disputed question of fact for the reasons stated in the previous section.  If Prime Clerk mailed notice to an incorrect address, the Claimant did not receive actual notice and lacked actual knowledge of the Bar Date, it is more likely that the Court will grant her leave to file a late claim.  Conversely, if Prime Clerk provided the Claimant with actual notice of the Bar Date or she had actual knowledge of the Bar Date, and cannot satisfactorily explain her failure to file a timely claim, it is less likely but not inevitable that she will fail to

---

[13]    The evidence does not suggest bad faith by either side.

[14]    The Claimant points to certain communications with Prime Clerk in March 2018, during which she was supposedly informed that she did not have to file a claim.  (*See Second Sur-Reply*, ECF pp. 11-12 of 29.)  Assuming that the Claimant moved expeditiously to assert her LTD benefits claim from and after her communications with Prime Clerk, these communications do not provide a reason for failing to take the necessary steps to file a claim by the Bar Date or for the nearly ten months after it had expired.

show excusable neglect.  I note, in this regard, that the Claimant, who is *pro se*, has stated that she was gravely ill at some point during the relevant period.  A severe illness resulting in the inability to file a timely claim would likely weigh in favor of finding excusable neglect.  *See Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580*, 899 F. Supp. 1228, 1231 (S.D.N.Y. 1995) (collecting cases): *cf. Epps v. City of Schenectady*, No. 1:10-CV-1101 (MAD/CFH), 2013 WL 4455621, at *3 (N.D.N.Y. Aug. 16, 2013) (finding no excusable neglect partly because plaintiff "did not explain why his illness rendered him unable to timely file a notice of appeal").

Accordingly, a trial is necessary to determine whether the Debtor provided actual notice of the Bar Date to the Claimant, whether she had actual knowledge of the Bar Date, and whether she has demonstrated excusable neglect permitting her to file a late claim.  The Debtors are directed to consult with the Claimant — who must attend the trial — to determine a mutually convenient time for the trial and contact chambers with that information.

So ordered.

Dated:   New York, New York
         September 11, 2018

                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                              United States Bankruptcy Judge