UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
In re:                                           :
                                                 :
    AVAYA, INC.,                          :        Chapter 11
                                                 :        Case No. 17-10089 (SMB)
                     Debtor.        :
-------------------------------------------------X

# MEMORANDUM DECISION AND ORDER DENYING
# MOTION TO SEAL KOBAR DECLARATION

Alan Wattenmaker is a former employee of Avaya. He filed secured claim no. 3103 in the amount of $170,000 (the "*Claim*") on May 5, 2017.[1] The principal components of the *Claim* are a $92,000 New York state court judgment and Wattenmaker's pension benefits. Avaya moved to expunge and/or reclassify the *Claim* along with other claims in the *Debtors' Eighth Omnibus Objection to Certain: (I) Amended Claims; (II) No Liability Claims; and (III) Claims to Be Modified*, dated Feb. 5, 2018 ("*Objection*") (ECF Doc. # 1785). Wattenmaker and Avaya's counsel subsequently exchanged correspondence in which the latter explained how Avaya computed Wattenmaker's claim. This did not resolve the parties' dispute, and the Debtor eventually filed the *Supplemental Declaration of James Kobar in Support of the Debtors' Eighth Omnibus Objection to Certain: (I) Amended Claims; (II) No Liability Claims; and (III) Claims to Be Modified with Respect to Claim No. 3103*, dated July 11, 2018 ("*Kobar Declaration*") (ECF Doc. # 2094) in support of the *Objection*.

The *Kobar Declaration* amplified the explanations provided by Avaya's counsel relating to Wattenmaker's pension benefits. A claim for pension benefits is based on the

---

[1] A copy of Wattenmaker's claim is annexed as Exhibit B to the *Debtors' Sur-Reply in Support of Debtors' Objection to Proof of Claim Number 3103 Filed by Alan Wattenmaker*, dated Apr. 19, 2018 ("*Sur-Reply*") (ECF Doc. # 1942).

Avaya Inc. Pension Plan ("Pension Plan").[2] An employee such as Wattenmaker, who worked for Avaya (or its predecessor, Lucent) for ten years, becomes eligible for monthly pension benefits the day after his 65th birthday. (Pension Plan § 4.1(a), (b).) The amount of the monthly pension benefit is based on two factors: the employee's pension band and his years and months of employment, *i.e.,* his start date and his termination or retirement date. (Pension Plan § 4.2(c)(i).) The pension band is determined under Avaya's collective bargaining agreement with the Communications Workers of America[3] and based on job title and locality. The parties agree that Wattenmaker belonged in pension band 125.

Tables included in the Pension Plan set forth the monthly pension benefit. (*See* Pension Plan § 4.2(c)(ii).) For example, a person in pension band 125 who retires after July 1, 2009 is entitled to a monthly benefit of $70.23 multiplied by his years and months of service. If he worked for Avaya for exactly ten years, his monthly benefit would be $702.30 starting on the day after his 65th birthday.[4] Under certain circumstances, an employee may elect an earlier eligibility date and receive retroactive benefits plus a reasonable interest adjustment. (Pension Plan at § 4.1(h)(ii).). Any accrued, unpaid benefits earn interest at "the interest rate provided in [Internal Revenue] Code § 417(e)(3)(c), for the month of August most recently preceding the first

---

[2]     The *Kobar Declaration* attached the Pension Plan as of January 1, 2016 as Exhibit B. At the Court's request, Avaya subsequently provided the Pension Plan dated as of January 1, 2010, which was in effect when Wattenmaker retired. The relevant portions of the two Pension Plans are identical, and the Court will refer to the Pension Plan attached to the *Kobar Declaration*.

[3]     The collective bargaining agreement, effective May 24, 2009, is annexed as Exhibit A to the *Kobar Declaration*.

[4]     An employee may also be entitled to supplemental monthly pension benefits based on the average amount of differentials, wage additives and other special payments he received within thirty-six months of his date on which his pension benefits are determined. (Pension Plan § 4.2(c)(iii).)

day of the Plan Year during which the Participant's Annuity Starting Date occurs."
(Pension Plan at § 2.1(b)(ii).)

The *Kobar Declaration* provided the roadmap for navigating the complex, 184-page Pension Plan and explained how Wattenmaker's monthly pension benefit is computed. The *Kobar Declaration* also summarized the pension benefits he had already received (including the amounts withheld for tax purposes) since this amount reduced the pension benefits to which Wattenmaker claimed he was entitled. As a result, the *Kobar Declaration* included references to the date Wattenmaker began working for Avaya or its predecessor Lucent, the date he retired, the month and year (but not the day) he was born and interest calculations.

The instant matter arises from Wattenmaker's request to redact portions of the *Kobar Declaration*. (*Request to Redact and Restrict Supplemental Declaration (Doc. 2094) with Regard to Claim #3103*, filed Nov. 14, 2018 ("*First Request*") (ECF Doc. # 2241).) The *First Request*, filed four months after the *Kobar Declaration*, identified six items of information Wattenmaker wanted redacted:

    1)    all references to the Claimant's date of birth (including but not limited to page 6)

    2)    Claimant's age and/or marital status (including but not limited to page 6[)]

    3)    all numerics and/or calculations relating to payments, pension, benefits, or retirement[]

    4)    all amounts relating to payments sent, made, entitled to, and/or due and/or deductions (including but not limited to pages 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16)

    5)    all information relating to the Claimant's employment dates, hire dates, ending dates, work title, years of service (including but not limited to pages 5, 6, 224)

    6)    All information containing the Claimant's signature, payments address, (exhibit C, page 225, exhibit F page 239)

3

(*Id.* at ECF pp. 2-3 of 3.)[5] The *First Request* did not articulate the reasons why redaction was necessary but Wattenmaker expressed a concern about identity theft. (*See Transcript of 1/8/2019 Hr'g*, at 6:2-22 (ECF Doc. # 2282).)

The *First Request* was listed on the agenda prepared by Avaya's counsel to be heard with other matters on January 8, 2019. On that date, Wattenmaker protested that Avaya improperly included the *First Request* in the agenda, and it should not have been heard at that time. Based on the representation of Avaya's counsel that the date had been fixed by the Court, the Court heard and denied the *First Request* for the reasons stated on the record. (*See id.* at 10:9-11:21.) However, the Court directed Avaya's counsel to settle the proposed order denying the *First Request* on fourteen days' notice and advised Wattenmaker that he if supplied a good reason during the interim why the information should be redacted, the Court would reconsider the *First Request*. (*Id.* at 12:11-15.)

Avaya filed the proposed order denying the request on January 9, 2019, (ECF Doc. # 2277), and noticed it for settlement and signature on January 30, 2019. In the interim, Wattenmaker made another request to seal and/or redact the *Kobar Declaration*. (*Motion for a Protective Order to Exclude, Seal, and/or Redact the Supplemental Declaration by James Kobar (Doc. 2094)*, dated Jan. 22, 2019 ("*Second Request*") (ECF Doc. # 2285).) The *Second Request* included the following justifications for the redactions:

> 1. The Court has stated that Kobar's Declaration was unnecessary. If it is unnecessary then surely putting it under seal or allowing portions to be redacted should not be a problem.

---

[5] The citation "ECF pp. 2-3 of 3" and similar citations refer to the pagination imprinted by the Courts CM/ECF system at the top of each page.

2.	There is no opposition by []Avaya to the sealing or redacting from public view portions of the documents.

3.	The Declaration contains a number of prohibited statements including the unwarranted and unnecessary release of the Claimant's date of birth.  (the date of birth being a major piece of confidential information that is used by financial institutions, hospitals and other medical organizations for access to confidential medical records, credit agencies, other institutions that maintain confidential and private records, and enjoy freedom form [*sic*] identity theft.

4.	The Court had stated that the "public has a right to know" however, the "public's right to know" can and should not impinge on the Claimant's right to privacy, security, and freedom from identity theft.

5.	The public can file for non-redacted documents with the court if it can prove a need for the redacted information.

6.	The court did not hear nor did the court rule on the Claimant's request to postpone and extend the statutorily [*sic*] due dates for the: A) Notice of Intent to Request Redaction B) Statement of Items to be Redacted Request C) Other deadlines required in Rule 9037 with regard to Kobar's Declaration.

7.	"Kobar's Declaration" could just have easily stated of the Claimant "his birth date" without stating in the declaration the Month and Year and thereby violating the prohibitions of Fed. R. Bankr. 9037 and Fed. R. Civil Procedure Rule 5.2.

8.	Granting the right to redact would avoided [*sic*] an appearance of harassment by Avaya against the Claimant who it is well known has a concern and sensitivity to personal and confidential information being released to the public.

9.	Granting the right to redact would avoided [*sic*] untold present and future harm and danger seeing that the Claimant is the subject of Identity Theft and that there is a clear and present danger that the release of non-redacted information would negatively impact on the On Going investigation of that Identity theft.

10.	Financial and personal information like that contained in these documents has lead [*sic*] to attempted breaks into the Claimant's accounts[.]

11.	The Transcript of the 1/8/19 Hearing was not available till 1/17/19. A review of that transcript reveals an incorrect conclusion by the Court that the Identity Theft started a few decades ago.  This was based on the misunderstanding of a question in Court and the reply by the Claimant. (who is well known to suffer from Hearing and Learning Disabilities) The correct information is that the harmful effects of the Identity Theft was detected a few years ago.

(*Id.* at ECF p. 2 of 6.)

The Court did not sign Avaya's proposed order and scheduled a hearing that eventually took place on March 19, 2019. In order to reach the substance of Wattenmaker's concerns, it will reconsider its prior bench ruling and address the *First Request* and the *Second Request* (collectively, the "*Requests*") together. This moots Wattenmaker's various procedural contentions including that the hearing on the *First Request* was not scheduled for January 8, 2019 and that he was unprepared.

## DISCUSSION

There is a strong presumption and public policy in favor of public access to court records, *see, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978); *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d. Cir. 1995) ("*Amodeo II*"), "rooted in the public's first amendment right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 26 (2d Cir. 1994) (stating that public access "helps safeguard 'the integrity, quality, and respect in our judicial system,' and permits the public 'to keep a watchful eye on the workings of public agencies'" (internal citations omitted)).

The public's right to access, though strong, is not absolute and in the bankruptcy context, certain statutory provisions and related rules either require or authorize a Court to limit access through redaction or sealing. For example, Rule 9037 of the Federal Rules of Bankruptcy Procedure ("Rule 9037") mandates the redaction of certain personal information:

> (a) **Redacted Filings**. Unless the court orders otherwise, in an electronic or paper filing made with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual, other than the debtor, known to be and identified as a minor, or a financial-account number, a party or nonparty making the filing may include only:

6

> (1) the last four digits of the social-security number and taxpayer-identification number;
>
> (2) the year of the individual's birth;
>
> (3) the minor's initials; and
>
> (4) the last four digits of the financial-account number.

Rule 9037 includes other provisions relevant to the *Requests*. It specifies certain exemptions from the redaction requirement including information contained in the official record of a state court proceeding, Rule 9037(b)(3), it authorizes the court to issue a protective order requiring additional redactions for cause shown, Rule 9037(d), and an entity waives the protection of Rule 9037(a) as to the entity's own information by filing it without redaction and not under seal. Rule 9037(g). Finally, Rule 9037 begins with the phrase "[u]nless the court orders otherwise," which indicates that the Court retains authority to require that information otherwise subject to redaction should be included in the filing. 1 DANIEL R. COQUILLETTE, ET AL., MOORE'S FEDERAL PRACTICE-CIVIL § 5.2.05 (3rd ed. 2018) (discussing Federal Rule of Civil Procedure 5.2).[6]

The only redaction to the *Kobar Declaration* required by Rule 9037(a) is the reference to the month of Wattenmaker's birth that appears on page 6 at paragraph 12. *See* Rule 9037(a)(2).[7] I decline in the exercise of discretion to order the redaction of Wattenmaker's month of birth. Under the Pension Plan, Wattenmaker became eligible to receive his pension benefits on the day following his 65th birthday. The *Kobar Declaration* refers to the first day of the month following his 65th birthday in explaining

---

[6]     Rule 9037 and its civil, criminal and appellate rule analogues, respectively, FED. R CIV. P. 5.2, FED. R. CRIM. P. 49.1 and FED R. APP. P. 25(a)(5) (which incorporates the other privacy/redaction rules by reference), were adopted in compliance with section 205(c)(3) of the E-Government Act of 2002, Public Law No. 107–347. *See* FED. R. BANKR. P. 9037 advisory notes to 2007 amendments.

[7]     The *Kobar Declaration* purposely omitted the day of his birth to protect his privacy. (*Kobar Declaration* at ¶ 12 n. 14.)

7

the date on which pension benefits started to accrue.  (*Kobar Declaration* at ¶ 12.)

Thus, the month of Wattenmaker's birth in 1948 is material to his *Claim.*

Although redaction is not mandatory, the Court may protect other private information in a judicial record upon an appropriate showing.  Rule 9037, in this regard, complements Bankruptcy Code § 107, 2 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 107.02[2], at 107-5 (16th ed. 2018) ("COLLIER"), which provides in pertinent part:

> (a) Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
> 
> . . .
> 
> (c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
> 
>> (A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.[8]
>> 
>> (B) Other information contained in a paper described in subparagraph (A).
>> 
>> . . . .

Bankruptcy Code § 107(a) reinforces the general presumption in favor of public filing.  *Geltzer v. Andersen Worldwide, S.C.*, No. 05 Civ. 3339 (GEL), 2007 WL 273526,

---

[8]    Title 18, § 1028(d)(7) defines "means of identification" to include the following:

(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C) unique electronic identification number, address, or routing code; or

(D) telecommunication identifying information or access device (as defined in section 1029(e)).

at *3 (S.D.N.Y. Jan. 30, 2007) (Lynch, J.)  However, subsection 107(c), added by section 234 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, authorizes the Court, upon a showing of cause, to limit the disclosure of private information that presents a danger of identity theft.  H.R. REP. 109-31, at 69 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 137; *accord* Rule 9037(d) (authorizing a court to require the redaction of additional information for cause).  If a court determines that the document at issue is a judicial record and the presumption of public access attaches, it must then balance concerns for impairing law enforcement or judicial efficiency against the privacy interests of the person resisting disclosure.  *Amodeo II*, 71 F.3d at 1050.  Although this standard was developed in cases that involved the common law presumption of public access, it provides helpful guidance in deciding whether the party seeking redaction has shown cause under 11 U.S.C. § 107(c) and Rule 9037.[9]

The *Kobar Declaration* was submitted in support of the *Objection* and qualifies as a judicial record.  A document is a judicial document or judicial record when it is filed with the court and "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); *accord Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  The *Kobar Declaration* is relevant and useful to the Court's determination of Wattenmaker's pension benefits under the Pension Plan.  It assists the Court by identifying the relevant provisions in the Pension Plan, summarizes the payment information culled from other

---

[9]  During oral argument, Wattenmaker contended that the *Kobar Declaration* was expert discovery material that never should have been filed in the first place.  Discovery materials are not public records at least until they are used.  FED. R. CIV. P. 5(d)(1)(A); s*ee* S.D.N.Y. LBR. 7005-1 ("Except as otherwise provided in these Local Bankruptcy Rules or by Court order, transcripts of depositions, exhibits to depositions, interrogatories, answers to interrogatories, document requests, responses to document requests, requests for admissions, and responses to requests for admissions may not be filed with the Court.").  The *Kobar Declaration* is not discovery material; it is a pleading submitted in support of the *Objection.*

9

documents and explains the interest computations which are based on the dates of payment of retroactive benefits and the published IRS rates.[10] Furthermore, the *Kobar Declaration* will allow any member of the public to understand how the Court reached its determination without the necessity of perusing the Pension Plan. Accordingly, it is relevant and useful to my determination of the allowed amount of the *Claim* and the presumption of public access attaches. In addition, the *Kobar Declaration* promotes judicial efficiency for the same reason.

Wattenmaker has failed to show that his privacy interests outweigh the presumption of public access to the information in the *Kobar Declaration* and the judicial efficiencies realized through its use. In determining the weight to be accorded the asserted right of privacy, courts should consider the degree to which the subject matter is traditionally considered private rather than public and the nature and degree of the injury in light of the sensitivity of the information, the subject and how someone seeking access could use it. *Amodeo II*, 71 F.3d at 1051. The person who seeks to prevent disclosure must support his request with a concrete showing of potential harm. *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 144-45 (2d Cir. 2016) ("'Broad and general findings' and 'conclusory assertion[s]' are insufficient to justify deprivation of public access to the record, . . . 'specific, on-the-record findings'

---

[10] Wattenmaker argues that I previously ruled that the *Kobar Declaration* was unnecessary, and consequently, there is no reason that it should be filed or available for public inspection. When the Court stated that the *Kobar Declaration* was unnecessary, it meant that Wattenmaker's pension benefit claim is based on what the Pension Plan says and not on what the *Kobar Declaration* says it says. Nevertheless, the *Kobar Declaration* helps the Court in the manner indicated. Wattenmaker is free to point to any other provisions he believes are relevant.

10

are required.") (quoting *United States v. Erie Cty.,* 763 F.3d 235, 243 (2d Cir. 2014) (internal quotation marks omitted)).[11]

Wattenmaker's penchant for secrecy and general fear of identity theft are doubtless shared by a substantial portion of the populace but do not constitute cause for the issuance of a protective order. All personal information about an individual is arguably private. If a desire for secrecy or general fear of identity theft constituted cause for redaction, a court would have to seal or redact all personal information in every case. Wattenmaker's showing lacks specificity, and instead, relies on conclusory allegations and a reference, without elaboration, to a prior incident when he was a victim of identity theft. (*See Second Request* at ECF p. 2 of 6 ("Granting the right to redact would avoided [*sic*] untold present and future harm and danger seeing that the Claimant is the subject of Identity Theft and that there is a clear and present danger that the release of non-redacted information would negatively impact on the On Going investigation of that Identity theft [and] Financial and personal information like that contained in these documents has lead [*sic*] to attempted breaks into the Claimant's accounts.").) But with the possible exception of his name, date of birth and address, the information Wattenmaker seeks to redact — calculations regarding his pension benefits, payment information, his employment dates and his title — is not the type of information that is private or would subject him to identity theft.[12]

---

[11]     The *Second Request* contends that the information should be sealed and a member of "[t]he public can file for non-redacted documents with the court if it can prove a need for the redacted information." (*Second Request*, ECF p. 2 of 6.) The statement flips the test on its head. Wattenmaker is seeking a protective order and bears the burden of showing cause for redaction.

[12]     The *First Request* also sought to prevent the disclosure of Wattenmaker's marital status and his signature. The *Kobar Declaration* does not actually refer to Wattenmaker's marital status; it states that he elected the federal withholding rate for "Single-1." (*Kobar Declaration* at ¶¶ 23, 36.) Even if this reference disclosed Wattenmaker's marital status, he has not shown that the disclosure of this

11

Furthermore, some of the information he seeks to redact is contained in state court judicial records which this Court has no authority to redact. *Cf.* Rule 9037(b)(3) (exempting official records of state court proceedings from the mandatory redaction requirements). Wattenmaker had sued Avaya pre-petition for employment discrimination. His claims were ultimately settled pursuant to a settlement term sheet, (*Kobar Declaration*, Ex. C, at ECF pp. 224-25 of 244), that was enforced pursuant a decision of the New York State Supreme Court. (*Id.*, Ex. D.) The settlement term sheet disclosed Wattenmaker's revised termination date, his resulting extended length of employment with Avaya and included his signature. Pursuant to paragraph 6 of the settlement term sheet, Wattenmaker agreed to keep "all matters relating to the fact and terms of the settlement agreement . . . completely confidential," but Avaya did not make the same promise. (*See id.*, Ex. C, at ECF p. 224 of 244.) The information set forth in the state court documents cannot be redacted.

But even if all of the information that Wattenmaker seeks to redact was private, including his name, address and month of birth, he has waived his privacy rights through his own voluntary disclosure of this information and the filing of the *Claim*. Generally, a person waives a right to privacy by disclosing the information he claims is private. *See Giacco v. City of New York*, 502 F. Supp. 2d 380, 388 (S.D.N.Y. 2007) (plaintiff's disclosure of his positive test for marijuana eliminated his expectation of right to privacy and waived right to privacy under the Due Process Clause of the Fourteenth Amendment in suit against defendant for disclosing information), *aff'd*, 308 F. App'x 470 (2d Cir. 2009); Rule 9037(g). In addition, a person waives his right to

---

information invades his privacy or subjects him to the danger of identity theft. And as discussed later, he waived any objection to the disclosure of his signature.

12

privacy when he puts the private information at issue in a lawsuit. *E.g., Gill v. Gilder*, No. 95 CIV. 7933(RWS), 1997 WL 419983, at *3 (S.D.N.Y. July 28, 1997) ("A plaintiff waives his right to privacy in his medical records when he puts his medical condition at issue in a lawsuit . . . A plaintiff determines the issues brought before the court and cannot then selectively decide what information to reveal and what information to withhold."); *Crawford v. Manion*, No. 96 Civ. 1236 (MBM), 1997 WL 148066, at *2 (S.D.N.Y. Mar. 31, 1997) ("Here, plaintiff waived his right to privacy in his medical records by bringing a lawsuit in which his medical history was a pertinent issue.").

Here, Wattenmaker waived his privacy rights. "The filing . . . of [a] proof of claim is analogous to the commencement of an action within the bankruptcy proceeding," *Nortex Trading Corp.*, 311 F.2d 163, 164 (2d Cir. 1962); *accord Cerrato v. BAC Home Loans Servicing* (*In re Cerrato*), 504 B.R. 23, 38 (Bankr. E.D.N.Y. 2014); *see* 4 COLLIER ¶ 502.02, and the objection to the claim is the equivalent of the answer. *O'Neill v. Cont'l Airlines* (*In re Cont'l Airlines*), 928 F.2d 127, 129 (5th Cir. 1991); *Townsend v. Quantum3 Grp., LLC*, 535 B.R. 415, 422 (M.D. Fla. 2015) (collecting authorities); *Cerrato*, 504 B.R. at 38. By filing the *Claim*, Wattenmaker put the allowed amount of the *Claim* at issue. The factors relevant to its determination include his pension benefit eligibility date (hence, his birthday), his length of service (hence, his start and termination dates) and his pension band (which is undisputed). It also put into issue any prior pension payments he received because they must be deducted from the allowed amount of the *Claim* and the dates and amounts of any retroactive payments of past benefits because interest must be added.

Furthermore, the *Claim* disclosed much of the information Wattenmaker wants redacted. It listed Wattenmaker's name, mailing address and telephone number. (*Sur-*

13

*Reply*, Ex. B, at ECF at pp. 13, 15 of 37.)   Although Wattenmaker redacted his signature on the copy of the settlement term sheet he attached to his *Claim*, (*id.*, Ex. B, ECF p. 25 of 37), he did not redact his signature on the *Claim* itself.  (*Id.*, Ex. B, at ECF p. 15 of 37.) The *Claim* also included Wattenmaker's own computations regarding the amount of the *Claim*.  He said he was owed "$170,000 +," (*id.* at ECF pp. 14, 26 of 37), based on (i) $92,000.00 reflected in the settlement term agreement, (ii) forty months of pension benefits (through May 2017) at $2,000.00 per month and (iii) interest from January 2014 in an amount to be determined.  (*Id.* at ECF p. 26 of 37.)  Moreover, Avaya's *Objection* identified Wattenmaker by name, address and claim amount, (*see Objection*, Ex. A, Schedule 3, at ECF p. 27 of 33), and he is not seeking to redact any information in the *Objection*.

In conclusion, Wattenmaker's *Requests* are denied.  In addition, Avaya is directed to file the *Declaration of James Kobar in Support of Avaya, Inc.'s Motion for Summary Judgment*, dated Jan. 22, 2019 and the exhibits thereto and the *Business Records Affidavit* [of Brendon Banks], dated Jan. 22, 2019 and the exhibits annexed thereto.  As to the latter, Avaya should redact the references to Wattenmaker's date of birth (but not the month or year) and any additional information subject to mandatory redaction under Rule 9037(a).  The Court has considered Wattenmaker's other arguments and concludes that they lack merit.

So ordered.

Dated:   New York, New York
         March 28, 2019

                                                     /s/ *Stuart M. Bernstein*
                                                     STUART M. BERNSTEIN
                                                     United States Bankruptcy Judge