```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
In re:                                          :
                                                :
        AVAYA, INC.,                            :      Chapter 11
                                                :      Case No. 17-10089 (SMB)
                        Debtor.                 :
------------------------------------------------X
```

# MEMORANDUM DECISION AND ORDER
# GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

**A P P E A R A N C E S:**

KIRKLAND & ELLIS LLP
Attorneys for Debtor
601 Lexington Avenue
New York, New York 10022

    James H.M. Sprayregen, P.C.
    Jonathan S. Henes, P.C.
    Patrick J. Nash, Jr., P.C.
    Christina L. Briesacher, Esq.
        Of Counsel

ALAN WATTENMAKER
Wattenmaker *Pro Se*
c/o AMI, CFC AWvAV
127 West 23rd Street
Apartment 501
New York, New York 10024-0501

**STUART M. BERNSTEIN**
**UNITED STATE BANKRUPTCY JUDGE:**

        Alan Wattenmaker, a former employee of the debtor Avaya, Inc. ("Avaya"),[1] filed

secured claim no. 3103 in the amount of "$170,000 +" (the "*Claim*") on May 5, 2017.[2]

Avaya moved to expunge and/or reclassify the *Claim* along with other claims in the

*Debtors' Eighth Omnibus Objection to Certain: (I) Amended Claims; (II) No Liability*

---

[1]    References to Avaya include its predecessor, Lucent Technologies, Inc., where appropriate.

[2]    A copy of Wattenmaker's claim is annexed as Exhibit B to the *Debtors' Sur-Reply in Support of Debtors' Objection to Proof of Claim Number 3103 Filed by Alan Wattenmaker*, dated Apr. 19, 2018 ("*Sur-Reply*") (ECF Doc. # 1942). "ECF Doc." refers to the docket entry on the CM/ECF case docket.

*Claims; and (III) Claims to Be Modified*, dated Feb. 5, 2018 ("*Objection*") (ECF Doc. # 1785) and thereafter moved for summary judgment on the *Objection* pursuant to Fed. R. Bankr. P. 7056 and 9014(c). (*See Avaya Inc.'s Motion for Summary Judgment and Memorandum of Law in Support*, dated Nov. 21, 2018 ("*Motion*") (ECF Doc. # 2248).) For the reasons that follow, the *Motion* is granted but certain issues must still be resolved before the allowed amount of the *Claim* in addition to Wattenmaker's post-petition pension benefits can be finally determined.[3]

## BACKGROUND

Except as may be otherwise noted, the facts set forth are not subject to reasonable dispute. Avaya hired Wattenmaker on April 20, 1998 and terminated him from employment on June 11, 2009. In June 2012, Wattenmaker, represented by counsel, sued Avaya in New York Supreme Court claiming discrimination based on age, religion and disability. (Decision and Order, N.Y. Cty. Index No. 102877/2012, slip. op. at 1 (N.Y. Sup. Ct. dated July 22, 2016) ("Decision & Order").[4] On or about November 26, 2013, the parties to the New York action attended a mediation and agreed to settlement terms that were memorialized in a Settlement Term Sheet.[5] (*Id.* at 1, 3.) The Settlement Term Sheet provided in relevant part that (i) Avaya would reinstate Wattenmaker for one day on January 13, 2014 and Wattenmaker would voluntarily retire the same day; (ii) Wattenmaker would be entitled to sixteen years of service credit (as opposed to his

---

[3]     Consequently, the Court views the *Motion* as a motion for partial summary judgment.

[4]     A copy of the Decision & Order is attached to the *Declaration of Christina L. Briesacher in Support of Avaya Inc.'s Motion for Summary Judgment*, dated Nov. 21, 2018 ("*Briesacher Declaration*") (ECF Doc. # 2250, at ECF pp. 230-38 of 271). "ECF pp. 230-38 of 271" and similar citations refer to the page numbers imprinted at the top of each page by the Court's CM/ECF system.

[5]     A copy of the Settlement Term Sheet is annexed to the *Briesacher Declaration* at ECF pp. 227-28 of 271.

actual service credit of roughly eleven years); (iii) Wattenmaker would get the pension, employment retirement medical benefits and the retirement benefits to which he would be entitled under the collective bargaining agreement with the Communications Workers of America ("CWA"), based on the retirement date of January 13, 2014; and (iv) Avaya would pay Wattenmaker $92,000. (Settlement Term Sheet at ¶¶ 2, 3.)

The Settlement Term Sheet contemplated a more formal agreement, (*id.* at ¶ 1; Decision & Order at 2), and Wattenmaker, by his counsel, was required to deliver a fully executed agreement by December 3, 2013 or waive his ability to receive any payments under the settlement agreement in 2013. (Settlement Term Sheet at ¶ 11.) During the following year, the parties exchanged documents but could not reach agreement. (Decision & Order at 2.) Avaya forwarded what it considered the final draft on October 7, 2014 ("October Draft"), and when Wattenmaker refused to sign it, moved in state court to enforce the Settlement Term Sheet or alternatively, the October Draft. (*Id.*)

The state court concluded that the Settlement Term Sheet was binding and enforceable, (*id.* at 2-7), and the October Draft did not supersede it because Wattenmaker did not sign the October Draft. (*Id.* at 8.) It appears that a money judgment in the sum of $92,000 ("Judgment") was also entered on September 14, 2016, because Wattenmaker's counsel filed a Notice of Entry of Judgment on or about September 16, 2016 that referred to a Judgment.[6] However, the Notice of Appeal from the Decision & Order filed by Wattenmaker's counsel on September 18, 2016 did not mention the Judgment and only referred to the Decision & Order. (*See Briesacher Declaration*, Ex. C, at ECF p. 2 of 22.) The commencement of this chapter 11 case on

---

[6] A copy of the Notice of Entry of Judgment, dated Sept. 16, 2016, is annexed to the *Claim*. (ECF pp. 16, 17 of 37.)

3

January 19, 2017 automatically stayed the appeal as to Avaya and Wattenmaker has not sought relief from the automatic stay to prosecute the appeal.

Following the commencement of the chapter 11 case, Wattenmaker filed the *Claim*.[7] The principal components of the *Claim* were the $92,000 Avaya agreed to pay pursuant to the Settlement Term Sheet and Wattenmaker's pension benefits. As to the latter, Wattenmaker estimated that he was entitled to $2,000.00 per month for forty months (through May 2017). He also claimed he was entitled to "retirement benefits TBD," interest from January 2014 (also to be determined) and "expenses TBD." After Avaya filed the *Objection*, Wattenmaker updated his computations in an email to Avaya as follows:

> Payment due $92,000, pension 49 months @2000/mo. = $98,000, Legal expenses approximately $30,000, interest from approximately January, 2014 @ 5% $11,000/year, times = 5 years = $55,000, expenses TBD = approximate total $275,000

(*Sur-Reply* at ¶ 4 & Ex. C.) When informal attempts to resolve the *Objection* failed, Avaya filed the *Supplemental Declaration of James Kobar in Support of the Debtors' Eighth Omnibus Objection to Certain: (I) Amended Claims; (II) No Liability Claims; and (III) Claims to Be Modified with Respect to Claim No. 3103*, dated July 11, 2018 ("*Kobar Declaration*") (ECF Doc. # 2094) in support of the *Objection*.

Wattenmaker was out of town during the summer of 2018 working at a summer camp, and upon his return, the Court scheduled a conference relating to the *Objection* for September 6, 2018. Following the conference, the Court signed an order scheduling the trial on the *Objection* for November 7, 2018. (*See Order (I) Scheduling Trial Date and Procedures in Connection With the Debtors' Objection to Claim No. 3103, and (II)*

---

[7]    Wattenmaker actually filed twenty-five claims but all of his claims except the *Claim* have been expunged. (*Motion* at 2 n.3.)

4

*Granting Related Relief*, signed Sept. 12, 2018 (ECF Doc. # 2188).) The scheduling order also stated that the *Kobar Declaration* would constitute Kobar's direct testimony and Wattenmaker could depose Kobar at a mutually convenient time before the trial. (*Id.* at ¶ 4.)

Instead of deposing Kobar, Wattenmaker filed a request for an extension of discovery and an adjournment of the trial date. (*See Motion to Extend the Due Date for Discovery and Trial Date, in Connection with the Debtors' Objection to Claim No. 3103, and (II) Granting Related Relief*, dated Sept. 30, 2018 (ECF Doc. # 2207).) Avaya's counsel disclosed at the ensuing hearing that Wattenmaker had served 133 discovery requests consisting of document demands and/or interrogatories. (*Transcript of 10/25/18 Hr'g* at 11:23-12:3 ("*Tr. (10/25)*" (ECF Doc. # 2236).) After reviewing the proposed discovery, the Court concluded that Wattenmaker's discovery requests were largely if not completely irrelevant to the three issues that governed Wattenmaker's pension calculation: his start date, his termination date and his band (described below) under the collective bargaining agreement ("CBA") between Avaya and the CWA. Because the material facts appeared to be few and not subject to reasonable dispute, the Court suggested that Avaya make a motion for partial summary judgment or summary judgment. (*Id.* at 51:16-53:10.) In accordance with the Court's suggestion, Avaya filed the *Motion*.

**The Motion**

Avaya seeks summary judgment limited to determinations on the following issues: (i) the Settlement Term Sheet is binding and enforceable, (*Motion* at 3-8), a proposition that Wattenmaker does not dispute although he contends that Avaya breached the Settlement Term Sheet (*see Declaration of Claimant and Claimant's*

5

*Reply to Avaya Inc.'s Motion for Summary Judgment (Claim #3103) and Declaration of Claimant and Claimant's Justification for Discovery*, dated Dec. 11, 2018 (ECF Doc. # 2259, at ECF pp. 4-5 of 11)); (ii) the CBA and Pension Plan govern the calculation of Wattenmaker's pension, the relevant information needed to calculate the pension are not subject to dispute, (*Motion* at 8-9), and it follows that Wattenmaker became entitled to a monthly pension, beginning on February 2013, in the sum of $1,123.68; (iii) Wattenmaker has failed to identify any specific claim for additional medical or retirement benefits to which he is entitled, (*id.* at 9-10), and (iv) the sum of $92,000 is an allowable unsecured claim, not a priority claim. (*Id.* at 10-12.)

Wattenmaker's contentions have been spread across numerous pleadings and are repeated in the *Claimant's Reply and Opposition to Avaya Inc.'s Motion for Summary Judgment and Memorandum of Law in Support of Opposition*, filed Apr. 2, 2019 ("*Wattenmaker Opposition*") (ECF Doc. # 2324). His principal contention is that the Settlement Term Sheet required Avaya to reinstate him for one day as an active employee and give him work. (*See id.* at ECF p. 25 of 61 ("The meaning of this condition [reinstatement for one day] is that Avaya is obligated to reinstate Claimant, giving the Claimant work to perform as an active full time (SCSE) with all the rights, salaries, benefits and etc. of that position.").) It never did, and consequently, he was never terminated and is still employed by Avaya. (*See, e.g., id.* at ECF p. 13 of 61 ("Avaya mentions that Creditor claims to be employed till this very day but has not present [*sic*] a single argument to refute this statement."); *Tr. (10/25)* at 15:21-16:1 (stating that he has not been terminated and is still employed by Avaya).)

Wattenmaker points to other alleged breaches of the Settlement Term Sheet. He contends, among other things, that Avaya has failed to provide him with wages for the

6

one day he worked, overtime pay, vacation pay, carry beeper payments, "Call out Tech/Engineer" payments, meal and travel allowance payments, on the job educational benefits, off the job and after-hours educational benefits, non-profit organization Avaya match contributions/donations, leave of absence benefits, city allowance pay upgrade, various awards, additional "cross over time" from Bell Atlantic, New York Telephone employment and the right to view, make comments on, and get a complete copy of his employee personal file.  (*Wattenmaker Opposition* at ECF p. 10 of 61.)  Avaya has also deprived him of certain pension and "voluntary retirement" benefits (the latter includes "newsletters, phone, museum, misc. discounts, monthly retirement Breakfasts that all retirees and active (SCSEs) attend etc.*")*, denied him the separate medical benefits due under the CBA or independent of the CBA, breached the confidentiality and non-disparagement provisions and failed to comply with certain deadlines.  (*Id.* at ECF pp. 10-12, 25-27 of 61.)

Finally, Wattenmaker argues that the $92,000 is entitled to priority because it was not due and owing until the Judgment was entered and that occurred within four months of the petition date, (*see id.* at ECF pp. 7-8 of 61), and he should be reimbursed for expenses incurred due to Avaya's failure to make sure that Wattenmaker received the benefits to which he was entitled.  (*Id.* at ECF pp. 12 of 61.)[8]

---

[8]  In a separate pleading, Wattenmaker opposes the *Motion* and seeks sanctions against Avaya for failing to comply with the District Court's Local Civil Rules 7.2 and 56.2 regarding certain accommodations granted to *pro se* litigants.  (*Claimant's 1st Notice of and Motion to Dismiss Avaya Inc.'s (Entire) Motion for Summary Judgment (ECF Doc. 2248) With Prejudice and Sanctions, Suppliment* [sic] *to Claiment's* [sic] *Reply to Debtors* [sic] *Motion for Summary Judgment*, dated Mar. 29, 2019 (ECF Doc. # 2319); *Claimant's 2nd Notice of and Motion to Dismiss Avaya Inc.'s (Entire) Motion For Summary Judgment (ECF Doc. 2248) With Prejudice and Sanctions, Supplement to Claimants* [sic] *Reply to Debtors* [sic] *Motion for Summary Judgment*, dated Mar. 31, 2019 (ECF Doc. # 2320).)  The Local Bankruptcy Rules, which govern these proceedings, do not contain similar provisions.  Accordingly, his request for sanctions is denied.

8

## DISCUSSION

**A.     Standards Governing the *Motion***

As this is essentially a contract case, I briefly review the principles that govern the determination of the *Motion*. When asked to interpret contractual language, the question under New York law[9] is "whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2002)). Ambiguity presents a question of law. *Id.* A contract is ambiguous if it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods*, 309 F.3d at 83 (internal quotation marks and citation omitted); *accord Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010); *Maverick Tube*, 595 F.3d at 466. An agreement is not ambiguous if it has a definite and precise meaning, and unambiguous language does not become ambiguous because a party urges a different interpretation that strains the language beyond its ordinary meaning. *Maverick Tube*, 595 F.3d at 467; *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). Where the dispute concerns a provision of the contract, the Court must consider the contract "as a whole to ensure that undue emphasis is not placed upon particular words and phrases," *Bailey v. Fish & Neave*, 868 N.E.2d 956,

---

[9]     The Settlement Term Sheet does not state which law governs and neither side has addressed this issue. I will apply New York law to the interpretation of the Settlement Term Sheet because it was executed in New York to settle a New York lawsuit brought by Wattenmaker and Wattenmaker has resided in New York at all relevant times. In any event, the Court is not aware of any conflict between New York law and the rules of contract interpretation applicable in any other jurisdiction that might conceivably apply.

9

959 (N.Y. 2007); *accord Maverick Tube*, 595 F.3d at 468, and "seek to give '[e]ffect and meaning . . . to every term of [a] contract.'" *XL Specialty Ins. Co. v. Level Glob. Inv'rs, L.P.*, 874 F. Supp. 2d 263, 284 (S.D.N.Y. 2012) (quoting *Reda v. Eastman Kodak Co.*, 649 N.Y.S.2d 555, 557 (N.Y. App. Div. 1996)).

**B.    Wattenmaker's Pension Benefit**

A claim for pension benefits is based on the Avaya Inc. Pension Plan ("Pension Plan").[10]  An employee such as Wattenmaker, who worked for Avaya for at least ten years, becomes eligible for monthly pension benefits the day after his 65th birthday. (Pension Plan § 4.1(a), (b).)  The amount of the monthly pension benefit is based on two factors: the employee's pension band and his years and months of employment, *i.*e.*,* his start date and his termination or retirement date.  (*Id.* § 4.2(c)(i).)  The pension band is determined under the CBA[11] based on job title and locality.

The following critical information is undisputed or cannot be reasonably disputed.  First, Wattenmaker was born in January 1948 and reached his 65th birthday in January 2013.  It appears that Avaya paid the pension on the first day of the month. Accordingly, Wattenmaker became entitled to receive his monthly pension beginning February 1, 2013.  (*See Business Records Affidavit* [of Brendon Banks], dated Jan. 22,

---

[10]    The *Kobar Declaration* attached the Pension Plan, As Amended and Restated Effective January 1, 2016, as Exhibit B.  At the Court's request, Avaya subsequently provided the Pension Plan, As Amended and Restated Effective January 1, 2010.  (*Declaration of James Kobar In Support of Avaya Inc.'s Motion for Summary Judgment*, dated Jan. 22, 2019 ("*Second Kobar Declaration*"), Ex. A (ECF Doc. # 2322).) This Pension Plan was in effect in January 2014.  (*Second Kobar Declaration* at ¶ 2.)  The relevant portions of the 2010 and 2016 Pension Plans are identical and the Court will refer to the Pension Plan attached to the *Kobar Declaration*.

[11]    The CBA, effective May 24, 2009, is annexed as Exhibit A to the *Kobar Declaration*.  The 2009 CBA is the current CBA in effect.  (*Kobar Declaration* at ¶ 10 n. 11).)

10

2019 ("*Banks Affidavit*"), Ex. C., at ECF p. 308 of 332).)[12] Second, he started his employment with Avaya on April 20, 1998 and was terminated from actual employment on June 10, 2009. (*See id.*) At that point, he had accrued between 11.0833 and 11.167 years of service.[13]

One of the purposes of the settlement embodied in the Settlement Term Sheet was to give Wattenmaker additional service credit by creating a new, albeit fictional retirement date; the parties agreed that he would be reinstated and voluntarily retire on the same day, January 13, 2014, and be entitled to sixteen years of service credit. (Settlement Term Sheet at ¶ 2.) As the New York Supreme Court explained in enforcing the Settlement Term Sheet:

> [The Settlement Term Sheet] terminates plaintiff's employment and requires him to discontinue this action and not pursue arbitration over his termination. In exchange plaintiff receives $92,000, 16 years of service credit, and any benefits he earned under the applicable collective bargaining agreement.

(Decision & Order at 4.) Finally, Wattenmaker conceded that if the January 13, 2014 retirement date is correct, he belonged in band 125. (*Tr. (10/25)* at 16:2-16.)[14]

---

[12] The *Banks Affidavit* was filed as part of the same document that included the *Second Kobar Declaration*. (ECF Doc. # 2322.)

[13] Wattenmaker worked for Avaya for eleven years, one month and twenty days, ten days shy of his monthly anniversary date. It is not clear if he is entitled to receive service credit only for completed months, *i.e.*, eleven years and one month (11.0833) or a full month's credit for the partial month, *i.e.*, eleven years and two months (11.167). Because the Settlement Term Sheet fixed his service credit at sixteen years, the Court need not resolve this question.

[14] Wattenmaker now states that "after more careful review the pension band 125 based on my job function is also in dispute." (*Wattenmaker Opposition*, ECF p. 16 of 61.) He has not identified what band he belongs in or pointed to a different band in the CBA. Wattenmaker cannot create a factual dispute simply by saying "I don't agree." *See* Fed. R. Civ. P. 56(c)(1)(A) (party disputing fact must support his assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

Given a band of 125 and sixteen years of service credit, we can readily compute Wattenmaker's monthly pension under the unambiguous provisions of the Pension Plan. According to the table on pages 30-31 of the Pension Plan, (*see Kobar Declaration*, Ex. B, at ECF pp. 68-69 of 244), his monthly pension is $70.23 multiplied by his sixteen years of service, or $1,123.68.[15]

Wattenmaker's proffered interpretation, that Avaya never gave him duties, never terminated him and still employs him, is unreasonable. The Settlement Term Sheet was entered into more than four years after Wattenmaker last worked for Avaya and a year after Wattenmaker had sued Avaya for employment discrimination. It settled a litigation; it was not an employment agreement. Reading the Settlement Term Sheet as a whole, Wattenmaker's simultaneous reinstatement and retirement was part of the deal to give him more service credit and a larger pension, not new duties for the one day he was deemed to be reinstated. In addition, it granted him the retirements under the CBA based on a retirement date of January 13, 2014. The Settlement Term Sheet is unambiguous on this critical issue, and I conclude as a matter of law that Wattenmaker was terminated on January 13, 2014 and became entitled under the Pension Plan to receive a monthly pension of $1,123.68 beginning on February 1, 2013.

### C. Wattenmaker's Other Arguments That Avaya Breached the Settlement Term Sheet Lack Merit.

Wattenmaker maintains that Avaya breached the confidentiality and non-disclosure agreements. Under the Settlement Term Sheet, the confidentiality and non-

---

[15] The same table shows that based on his actual termination date in June 2009, his monthly pension would have been $67.53. Whether multiplied by 11.0833 or 11.167 years of service credit, the Settlement Term Sheet increased Wattenmaker's monthly pension benefit by almost $400.

12

17-10089-smb    Doc 2329    Filed 04/22/19    Entered 04/22/19 11:07:05    Main Document
Pg 13 of 15

disparagement provisions (¶¶ 6, 7) bind only Wattenmaker. In addition, his allegations of breach are conclusory.

Wattenmaker further alleges that Avaya breached the Settlement Term Sheet by failing to provide a litany of employment and voluntary retirement benefits summarized above, benefits that supposedly attached to his reinstatement and voluntary retirement. (*See Wattenmaker Opposition* at ECF pp. 9-10 of 61.) Many of the benefits he lists incorrectly assume that he became an active employee of Avaya after January 13, 2014 and remains an active employee to this day. In addition, the Settlement Term Sheet did not provide these benefits and Wattenmaker has failed to identify their source, such as the Pension Plan, the CBA, employment manuals or similar documents. Wattenmaker also fails to identify any employment and voluntary retirement benefits available to him under the CBA or otherwise that he has not received. For example, he has not pointed to any expense he incurred that Avaya wrongfully refused to fund. Accordingly, Avaya is entitled to partial summary judgment to the extent that the *Claim* seeks a monetary award based on the failure to provide retirement benefits other than his monthly pension benefits granted under the Pension Plan.

**D.    The Classification of the $92,000 Claim**

Wattenmaker's argument that a portion of the $92,000 settlement is entitled to a wage priority lacks merit. The Bankruptcy Code affords a limited priority for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" that were "*earned 180 days before the date of the filing of the petition*," 11 U.S.C. § 507(a)(4)(A) (emphasis added) and "claims for contributions to an employee benefit plan . . . arising from *services rendered within 180 days before the date of the filing*." 11 U.S.C. § 507(a)(5)(A) (emphasis added). Wattenmaker's claim for employment discrimination

13

accrued no later than the date he was terminated by Avaya in June 2009. The $92,000 settlement as well as the other provisions of the Settlement Term Sheet, executed in November 2013, resolved that claim and any other claims that Wattenmaker had relating to his employment with Avaya.

Wattenmaker's contention that the $92,000 was not earned until the Decision & Order was filed in September 2016, within the 180-day period, is wrong. He confuses a disputed claim with an unmatured claim. By June 2009, all of the facts that gave rise to his employment discrimination claim (and Avaya's alleged liability) were fixed. At that point, Wattenmaker held an unliquidated, matured, disputed employment discrimination claim and brought a lawsuit in 2012 on that claim. The Settlement Term Sheet merely liquidated the claim and rendered it undisputed. Even using the reinstatement/retirement date of January 13, 2014 as Wattenmaker's last date of employment, the settlement was still not "earned 180 days before" the petition date or based on services rendered "within 180 days" of the petition date. Accordingly, Avaya is entitled to partial summary judgment determining that Wattenmaker's claim for $92,000 is a general, unsecured claim, not a priority claim.

### E.    Unresolved Questions

Having determined the amount of Wattenmaker's monthly pension benefit and the correct classification of the $92,000 settlement, certain factual and legal issues preclude a complete disposition of the *Claim* and the *Objection.*

First, the *Claim* includes legal fees and "expenses TBD." These were not addressed in the *Motion*.

14

Second, the computation of the pension benefit portion of the *Claim* requires further factual development.  At some point, Wattenmaker refused the tender of pension benefit payments and equitable principles may stop the running of interest on the payments he refused.  *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 285 (S.D.N.Y. 2014).

Third, the parties dispute the date that interest began running on the $92,000 settlement.  Avaya concedes that interest may be owed from the date of the entry of the judgment enforcing the Settlement Term Sheet to the petition date.  (*Motion* at 10 n. 5.)  Wattenmaker contends that it began to accrue on the date that the Settlement Term Sheet was signed.  (*Wattenmaker Opposition* at ECF pp. 46-47 of 61.)  The accrual of pre-verdict interest is governed by N.Y.C.P.L.R. § 5001.  The parties will have an opportunity to clarify their positions regarding the date on which interest began to accrue in future proceedings.

For the reasons stated, the *Motion* is granted.  The Court has considered Wattenmaker's other arguments and concludes that they lack merit.  The parties should contact chambers to schedule a hearing to address further proceedings.

So ordered.

Dated:   New York, New York
         April 22, 2019

                                                   /s/ *Stuart M. Bernstein*
                                                      STUART M. BERNSTEIN
                                            United States Bankruptcy Judge