UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
In re:                                                   :
                                                         :
    AVAYA, INC.,                           :    Chapter 11
                                                         :    Case No. 17-10089 (SMB)
                 Debtor.              :
------------------------------------------------X

## MEMORANDUM DECISION AND ORDER REGARDING CLAIMANT'S MOTION FOR RECONSIDERATION

**A P P E A R A N C E S:**

KIRKLAND & ELLIS LLP
Attorneys for Debtor
601 Lexington Avenue
New York, New York 10022

    James H.M. Sprayregen, P.C.
    Jonathan S. Henes, P.C.
    Patrick J. Nash, Jr., P.C.
    Christina L. Briesacher, Esq.
        Of Counsel

ALAN WATTENMAKER
Wattenmaker *Pro Se*
c/o AMI, CFC AWvAV
127 West 83rd Street
Apartment 501
New York, New York 10024-0501

**STUART M. BERNSTEIN
UNITED STATE BANKRUPTCY JUDGE:**

        The history of this long-running claim dispute is set forth most recently in the Court's *Memorandum Decision and Order Granting Second Motion for Partial Summary Judgment And Allowing Claim 3103 In Part*, dated Sept. 16, 2019 ("*Second Decision*") (ECF Doc. # 2392.)  Briefly, the claimant, Alan Wattenmaker, is a former employee of the debtor Avaya, Inc. ("Avaya").[1]  He filed secured, priority claim no. 3103 in the amount of "$170,000.00 +" (the "*Claim*") on May 5, 2017.  Avaya objected to the

---

[1]     References to Avaya include its predecessor, Lucent Technologies Inc., where appropriate.

*Claim* (the "*Objection*") and the Court granted partial summary judgment in Avaya's favor. (*See Memorandum Decision and Order Granting Motion for Partial Summary Judgment*, dated Apr. 22, 2019 ("*First Decision*") (ECF Doc. # 2329).) The Court concluded in the *First Decision* that Wattenmaker held an unsecured claim in the sum of $92,000.00 based on a prepetition settlement of a litigation and was entitled to a monthly pension benefit in the sum of $1,123.68 commencing February 1, 2013. Wattenmaker has refused to cash his benefit checks and the Court has authorized Avaya to stop sending them until Wattenmaker says he is willing to accept them.

The *First Decision* identified three open issues that needed to be resolved before the *Objection* could be fully adjudicated. They related to the allowance of the portion of the *Claim* seeking legal fees and "expenses TBD," Wattenmaker's right to interest in connection with monthly pension benefit payments he had refused to accept and the date when interest began to run on the $92,000.00 settlement. (*First Decision* at 14-15.) Shortly thereafter, Avaya filed *Avaya Inc.'s Supplemental Motion for Summary Judgment and Memorandum of Law in Support*, dated May 10, 2019 (ECF Doc. # 2341)) which Wattenmaker opposed. (*See (Updated) Notice of Claimant's Opposition to Avaya Inc.'s Supplemental Summary Judgment Motion with Regard to Claim 3103*, dated June 13, 2019 ("*Opposition*") (ECF Doc. # 2372).)

Avaya's supplemental motion addressed the three open questions which were resolved in the *Second Decision*. The Court concluded that Wattenmaker was not entitled to legal fees under the American Rule and was not entitled to ongoing interest because he had refused the tender of his pension checks. The Court viewed his request for expenses and health-related retirement benefits granted under the relevant collective bargaining agreement ("CBA") which were referenced in the parties' settlement. The

2

Court noted that Wattenmaker had not satisfied his initial burden because he had not attached the CBA or identified the benefits to which he was allegedly entitled but denied.  (*Second Decision* at 6.)  The Court also cited to documentary evidence in the record explaining that Avaya would no longer provide medical or prescription coverage or subsidize Medicare Part B premiums effective January 1, 2017.  Furthermore, while Avaya would fund a Health Reimbursement Account ("HRA") up to $2,200.00 per annum, the retiree had to meet eligibility requirements.  (*Id.* at 7.)  Wattenmaker failed to demonstrate that he met the eligibility requirements for the HRA.  (*Id.* at 8.)

**The Motion for Reconsideration**

On December 9, 2019, Wattenmaker filed his *Claimant's Motion (#K) to Renew Claimant's Opposition to Avaya's Motion For Summary Judgment and/or Avaya's 2nd Motion for Summary Judgment and/or Avaya's Inc.'s Supplemental Motion for Summary Judgment*, dated Dec. 5, 2019 ("*Reconsideration Motion*") (ECF Doc. #2403)), which the Court treated as a motion for reconsideration of the partial disallowance of the *Claim* under 11 U.S.C. § 502(j).  (*Scheduling Order*, dated Dec. 16, 2019 (ECF Doc. # 2404).)  The *Reconsideration Motion* contended that Avaya had not provided the HRA benefit from February 1, 2013 through January 1, 2019, and accordingly, he was entitled to a claim in the amount of $14,400.00 plus 9% interest compounded daily.  He also claimed that he was entitled to reimbursement for his medical insurance premiums at the rate of $185.00 per quarter (plus 9% annual interest compounded daily).  (*See Reconsideration Motion* at ECF pp. 7 of 10.)  In addition, he requested one day of salary in the sum of $461.54 (plus 9% annual interest compounded daily) on the theory that the settlement agreement reinstated him for one day.

3

Upon receipt of the *Reconsideration Motion*, the Court issued the *Scheduling Order*. It directed Avaya to file a response within thirty days and in particular, "address Wattenmaker's contention that he was denied $2,400.00 per year (or some other sum) for six years or any part thereof in connection with a medical reimbursement account." Avaya filed a timely response. (*See Avaya Inc.'s Opposition to Wattenmaker' Motion (#K) to Renew and/or Reargue Avaya's Motion for Summary Judgment and/or Avaya's 2nd Motion for Summary Judgment and/or Avaya's Inc.'s Supplemental Motion for Summary Judgment*, dated Jan. 15, 2020 ("*Opposition*") (ECF Doc. # 2408.) The *Opposition* primarily argued that Wattenmaker had failed to demonstrate his eligibility for retirement medical benefits because he never enrolled in the Avaya-sponsored plan but even if he had, he failed to show that he had paid for insurance coverage or other medical expenses that were covered by the Avaya plan.[2] (*Opposition* at ¶ 7.) In addition, Avaya raised a threshold argument that the *Reconsideration Motion* was moot. (*Id.* at ¶ 13 & nn. 8, 9.)

## DISCUSSION

### A. Mootness

Bankruptcy Code § 502(j) authorizes the Court to reconsider the disallowance of a claim for cause but does not guarantee that a claim allowed upon reconsideration will receive a distribution:

> Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by

---

[2] According to Avaya, Wattenmaker enrolled in the Avaya plan effective January 1, 2019.

4

> such other holder.  This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

11 U.S.C. § 502(j).  The first quoted clause means that if the estate's assets have been fully distributed under the plan, the reconsideration motion may be moot.  *See* 4 COLLIER ON BANKRUPTCY ¶ 502.11[2] (16th ed. 2019.)  Avaya's mootness argument implies that the plan set aside a fixed "pot" of money for the unsecured class, Avaya distributed the remaining "pot" to the unsecured creditors holding allowed claims in November 2019 after the Court rendered its final order disallowing the *Claim* in part, (*see Opposition* at ¶ 6), and even if Wattenmaker prevails and the Court allows all or part of his previously disallowed claim, there is no money left to pay the newly allowed portion.

The *Opposition* does not, however, demonstrate that the *Reconsideration Motion* is moot.  Although it cites to the plan and an order establishing a disputed claims reserve and authorizing distributions to the unsecured creditors, it does not explain how they render the *Reconsideration Motion* moot.  Importantly, Avaya has not provided a declaration from someone with personal knowledge attesting to the fact that all of the money set aside under the plan for the unsecured creditor class has been distributed.  Accordingly, I reject the mootness argument.

## B.   Retirement Medical Benefits

Under the Settlement Term Sheet described in the *First Decision*, Wattenmaker was entitled to "employment retirement medical benefits and the retirement benefits to which he would be entitled under the collective bargaining agreement with the Communications Workers of America, based on the retirement date of January 13,

5

17-10089-smb    Doc 2412    Filed 02/10/20    Entered 02/10/20 10:26:05    Main Document

2014." He concedes that "the Union Contract did not obligate Avaya to provide Retirees Medical Insurance or any other medical benefits," but argues that the "employment retirement medical benefits" referred to in the Settlement Term Sheet include medical benefits provided under another medical plan. (*Reconsideration Motion* at p. 7 of 10.) It appears from the summary of benefits attached as Exhibit F to the *Declaration of Christina L. Briesacher in Support of Avaya Inc.'s Motion for Summary Judgment*, dated Nov. 21, 2018 ("*Briesacher Declaration*") (ECF Doc. # 2250), that prior to January 1, 2017, Avaya provided medical and prescription coverage for represented retirees like Wattenmaker through the Avaya-sponsored Represented Retiree Medical Plan and either separately or as part of that plan also subsidized a retiree's Medicare Part B premium. Avaya terminated these health benefits effective January 1, 2017, and established a Health Reimbursement Account ('HRA") funded by Avaya, apparently starting January 1, 2017, to replace the former health plan. However, to be eligible for HRA funding, a Medicare-Eligible retiree had to "be enrolled *or remain enrolled* in a medical and prescription drug plan offered through OneExchange," "a service dedicated to helping both Medicare and Non- Medicare individuals choose the right medical and prescription coverage option that meets their individual needs."

Avaya's core argument is that Wattenmaker had to enroll in the Avaya-sponsored plans to meet their eligibility requirements but did not until the plan year beginning January 1, 2019. Initially, the Court limits its consideration to the claims that accrued prepetition because those are the claims included in the *Claim*.[3] As to those claims, Avaya's response is inadequate. The statement that he had to enroll but didn't is contained in an unsworn submission by Avaya's counsel rather than in an affidavit from

---

[3]  The allowed amount of the *Claim* must be determined as of the petition date. 11 U.S.C. § 502(b).

someone with personal knowledge and/or documents that demonstrate the requirements for eligibility and Wattenmaker's failure to meet them. Furthermore, Wattenmaker alleges that he spent $185.00 per quarter through January 1, 2019 to cover insurance premiums. If these premiums were covered by an Avaya plan and he was eligible for benefits under that plan, he should be entitled to reimbursement for the pre-petition portion.[4]

Accordingly, the Court will grant reconsideration solely to take evidence on these issues. While Wattenmaker bears the burden of proving his claim for "employment retirement medical benefits," he has provided some evidence that he paid medical insurance premiums pre-petition, Avaya sponsored a health plan that may have paid for or reimbursed employees for these benefits and I am unable to determine from the state of the record whether Wattenmaker was entitled to reimbursement for the premiums he paid. Avaya is directed to produce to Wattenmaker (even if it has already done so), deliver to the Court and file on ECF a declaration attaching the relevant Avaya-sponsored plans, including any summaries of the plans, relating to eligibility for and the scope of employment retirement medical benefits that Avaya offered to retirees like Wattenmaker during the relevant pre-petition period together with a supplemental memorandum that identifies and explains the relevant provisions. If Wattenmaker was affirmatively required to enroll to receive particular benefits but did not, Avaya should also provide a declaration from someone with personal knowledge that he did not enroll prior to the petition date. Avaya should produce the declarations and documents within fourteen days of the date of this order. Wattenmaker will have thirty days from that

---

[4] The Court draws no conclusion regarding the date that Wattenmaker's right to retirement benefits accrued.

date to reply. At the same time, he should serve Avaya and provide the Court with evidence of any medical or other health-related bills that he paid prior to and including January 19, 2017.

### C. Wattenmaker's Other Claims

#### 1. Continued Employment Benefits

Wattenmaker seeks wages ($461.54) for the one day he says he was reinstated under the Settlement Term Sheet. (*Reconsideration Motion* at 7 of 10.) As the Court explained in the past, his reinstatement was a fiction that provided him with a greater pension; he was never actually reinstated and in fact, simultaneously resigned. (*First Decision* at 11.) Furthermore, the Settlement Term Sheet did not provide for the payment of one day's wages; it provided for a lump sum settlement payment of $92,000.00. Hence, his claim for one day of salary lacks merit and is denied.

#### 2. Compound Interest at 9% per annum

Wattenmaker requests interest at 9% per annum, compounded daily, on the claims included in the *Reconsideration Motion*. (*Reconsideration Motion* at 6-7 of 10.) Wattenmaker is only entitled to simple interest at 9% per annum on his pre-petition state law claims. *See Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) ("New York courts have held that in a breach of contract action of this sort prejudgment interest must be calculated on a simple interest basis at the statutory rate of nine percent.") (citing N.Y.C.P.L.R. § 5004). Furthermore, unmatured, or post-petition interest, is disallowed under 11 U.S.C. § 502(b)(2).

### 3. Litigation and Other Expenses

Federal Bankruptcy Rule 7054(b), made applicable to this contested matter through Federal Bankruptcy Rule 9014(c), provides, with certain exceptions that are not germane, that the "court may allow costs to the prevailing party" but the award of costs is discretionary. 10 COLLIER ON BANKRUPTCY ¶ 7054.05 (16th ed. 2019). The "prevailing party" for the purpose of taxing costs is "the party in whose favor judgment was entered, even if that judgment does not fully vindicate the litigant's position in the case." 10 MOORE'S FEDERAL PRACTICE § 54.101[3] (3d ed. 2019). Wattenmaker is the "prevailing party" because the Court entered an order partially allowing the *Claim* in a sum greater than the amount at which Avaya proposed to allow it in the *Objection*.

Title 28, section 1920 allows the Court to tax (1) fees of the clerk and marshal; (2) fees for court reporter's stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for copies of papers necessarily obtained; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters. This Court has not adopted a local rule regarding the taxation of costs and typically follows the comprehensive provisions of Rule 54.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Aside from procedural requirements, Local Rule 54.1(c) provides for the taxation of the following costs:

1. Trial transcripts;
2. Deposition transcripts used or received in evidence at trial;
3. Witness fees, travel expenses and subsistence except that a party is not entitled to his own witness, travel or subsistence fees;
4. Interpreting fees;
5. Exemplification and copies of papers provided the original was not available and the copy was used or received in evidence. The cost of copies used for the convenience of counsel or the Court are not taxable;

9

      6.     Maps, charts, models, photographs and summaries;

      7.     Attorney fees and related costs to the extent authorized by the Court;

      8.     Fees of masters, receivers, commissioners and court appointed experts;

      9.     Costs for title searches.

      10.    Docket fees, and the reasonable and actual fees of the clerk and of a marshal, sheriff and process server unless otherwise ordered by the court.

Wattenmaker contends that as the prevailing party he is entitled to expenses including medical and dental bills and court and fees (all to be determined), travel to and from Court ($332.75), postage ($174.67) and copying and printing ($1,105.92). He is not entitled to tax his medical and dental bills or postage, and as a party, he cannot tax his travel expenses. Furthermore, he has not identified any Court fees. He is entitled to the cost of making one copy of any exhibit that he attached to his papers submitted in connection with the *Objection*. Accordingly, he may seek to tax his copying costs within thirty days of the date of this order by filing and serving a notice of taxation with the Court. His notice of taxation should identify the exhibits whose copying costs he seeks to tax and attach bills for the costs claimed. Avaya will have seven days to file any objections. The failure to notice taxation of costs within the time set forth in this order shall constitute a waiver of the right to costs.

**D.    Discovery**

Wattenmaker requested discovery in his *Application to Update, Append, Change, Correct, and/or Modify, Etc.*, dated Jan. 12, 2019 [sic] ("*Update*") (ECF. Doc. # 2407).)[5] The requests included the following:

      1.     Term Sheet statements concerning the delineation of different terms.

      2.     Missing Avaya records of buy outs and offers to leave payroll.

---

[5]    He made similar requests in other submissions.

10

    3.    Additional expenses.

    4.    Entitlement of pre-petition medical, reimbursement, and other benefits.

    5.    Entitlement to reinstated active employee benefits.

    6.    Entitlement to benefits that other retirees and employees received.

    7.    On several occasions Judge Bernstein has instructed Avaya to present a list all the Off Payroll Offers and Buy-outs offered to other employees. However, Avaya has never supplied them.

(*Update* at 5-6 of 8.)

The Court has already directed the production of the Avaya-sponsored plans that set forth the medical and health benefits available to retirees like Wattenmaker during the relevant pre-petition period. He is entitled to nothing more. The Court has already concluded in the *First Decision* that the Settlement Term Sheet is unambiguous and he cannot offer parol or other evidence to vary its meaning. The buyouts and other benefits offered to other employees is irrelevant and contrary to Wattenmaker's assertion, this Court never directed Avaya to provide that information. Wattenmaker did not obtain what amounts to a "most favored nations" clause under the Settlement Term Sheet. He became entitled to "employment retirement medical benefits" and the only reasonable interpretation of that phrase relates to what Avaya offered to all similarly situated retirees under the Avaya-sponsored plans. Indeed, the *Reconsideration Motion* seeks the allowance of claims under his "Reimbursement Medical Account." (*Reconsideration Motion* at 6-7 of 10.)

    So ordered.

Dated:   New York, New York
           February 10, 2020

                                                /s/ *Stuart M. Bernstein*
                                                  STUART M. BERNSTEIN
                                           United States Bankruptcy Judge