UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
In re:                                        :
                                              :
        AVAYA, INC.,                          :          Chapter 11
                                              :          Case No. 17-10089 (SMB)
                        Debtor.               :
-----------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## REGARDING DISALLOWANCE OF CLAIM
## WITHOUT PREJUDICE AND TAXATION OF COSTS

**A P P E A R A N C E S :**

KIRKLAND & ELLIS LLP
Attorneys for Debtor
601 Lexington Avenue
New York, New York 10022

        James H.M. Sprayregen, P.C.
        Jonathan S. Henes, P.C.
        Patrick J. Nash, Jr., P.C.
        Christina L. Briesacher, Esq.
                Of Counsel

ALAN WATTENMAKER
Wattenmaker *Pro Se*
c/o AMI, CFC AWvAV
127 West 83rd Street
Apartment 501
New York, New York 10024-0501

**STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

        Avaya, Inc. and Alan Wattenmaker, a former employee, have been involved in a

long-running dispute regarding Avaya's objection to his proof of claim ("Claim").  In its

most recent decision, the Court granted limited reconsideration and directed both sides

to produce certain information in connection with the portion of the Claim seeking

retirement medical benefits.  Avaya says it has produced all of the available information

although it is not all of the information it was directed to produce.  Wattenmaker filed

two responses to Avaya's submission[1] but stated that due to the current Covid-19 pandemic, he is unable to access the records he has been directed to produce regarding his medical expenses.  (*Second Replay* at ECF p. 17-19.)[2]  Unless Wattenmaker can demonstrate that he has incurred medical expenses that he claims should have been reimbursed or otherwise covered under Avaya's retirement medical benefit programs, the question of his eligibility and the extent of his coverage are moot.  Accordingly, the Court will sustain Avaya's objection to his claim for retirement medical benefits without prejudice to reconsideration should Wattenmaker produce the information ordered by the Court showing that he has incurred expenses he deems reimbursable.  Separately, Wattenmaker's application for costs in the sum of $677.95 is granted.

## DISCUSSION

The background to this dispute is set forth in several prior decisions of the Court. *See In re Avaya, Inc.*, Case No. 17-10089, 2019 WL 1750908 (Bankr. S.D.N.Y Mar. 28, 2019) ("*Wattenmaker I*"); *In re Avaya, Inc.*, Case No. 17-10089, 2019 WL 1858847 (Bankr. S.D.N.Y Apr. 2, 2019) ("*Wattenmaker II*"); *In re Avaya, Inc.*, Case No. 608 B.R. 366 (Bankr. S.D.N.Y 2019) ("*Wattenmaker III*"); and *In re Avaya, Inc.*, Case No. 17-10089, 2020 WL 697203 (Bankr. S.D.N.Y Feb. 10, 2020) ("*Wattenmaker IV*").  I

---

[1]    See *Claimant's Preliminary Reply and Opposition to Avaya's Second Supplemental Declaration of James Kobar in Support of the Debtors' Eighth Omnibus Objection to Certain: (I) Amended Claims; (II) No Liability Claims; and (III) Claims to be Modified With Respect to Claim No. 3103 (ECF Doc #2418)*, dated Apr. 8, 2020 ("*First Reply*") (ECF Doc. # 2424) and *Claimant's Reply to the Court's Scheduling Order (ECF Doc #2404) and Opposition to Second Supplemental Declaration of James Kobar in Support of the Debtors' Eighth Omnibus Objection to Certain: (I) Amended Claims; (II) No Liability Claims; and (III) Claims to be Modified With Respect to Claim No. 3103 (ECF Doc #2418)*, dated June 8, 2020 ("*Second Reply*") (ECF Doc. # 2428).)

[2]    "ECF p. [#] of [#]" refers to the page numbers imprinted by the Court's CM/ECF system at the top of each page of a filed document.

assume familiarity with these decisions and limit the discussion to the facts relevant to the instant matter.

Avaya hired Wattenmaker on April 20, 1998 and terminated him from employment on June 11, 2009.[3] He subsequently commenced an action against Avaya in the New York Supreme Court ("State Court Action") claiming discrimination based on age, religion and disability. The parties settled the State Court Action on or about November 26, 2013 and memorialized the terms in a Settlement Term Sheet. Among other things, the Settlement Term Sheet reinstated Wattenmaker for one day on January 13, 2014, Wattenmaker voluntarily retired the same day and Wattenmaker was granted the pension, employment retirement medical benefits and the retirement benefits to which he would be entitled under the collective bargaining agreement with the Communications Workers of America ("CWA"), based on the retirement date of January 13, 2014.

Following the commencement of the chapter 11 case, Wattenmaker filed the Claim. The Claim included numerous components all but one of which have been resolved in the Court's prior decisions. In *Wattenmaker IV,* the Court granted reconsideration relating to Wattenmaker's claim for retirement medical benefits. Avaya sponsored various medical and dental plans during the pre-petition period of Wattenmaker's retirement, *i.e.*, between January 13, 2014 and January 19, 2017.[4]

---

[3]    References to Avaya include its predecessor, Lucent Technologies, Inc., where appropriate.

[4]    The Claim is limited to the pre-petition amounts, if any, owed to Wattenmaker.

Wattenmaker claimed that he had incurred various reimbursable medical expenses, but Avaya contended that he was not eligible because he failed to opt into the plans. To expedite the resolution of the remaining issue, the Court directed both sides to produce information:

> Avaya is directed to produce to Wattenmaker (even if it has already done so), deliver to the Court and file on ECF a declaration attaching the relevant Avaya-sponsored plans, including any summaries of the plans, relating to eligibility for and the scope of employment retirement medical benefits that Avaya offered to retirees like Wattenmaker during the relevant pre-petition period together with a supplemental memorandum that identifies and explains the relevant provisions. If Wattenmaker was affirmatively required to enroll to receive particular benefits but did not, Avaya should also provide a declaration from someone with personal knowledge that he did not enroll prior to the petition date. Avaya should produce the declarations and documents within fourteen days of the date of this order. Wattenmaker will have thirty days from that date to reply. At the same time, *he should serve Avaya and provide the Court with evidence of any medical or other health-related bills that he paid prior to and including January 19, 2017.*

*Wattenmaker IV*, 2020 WL 697203, at *3 (emphasis added).

In response, Avaya submitted the *Second Supplemental Declaration of James Kobar in Support of the Debtors' Eighth Omnibus Objection to Certain: (I) Amended Claims; (II) No Liability Claims; and (III) Claims to be Modified With Respect to Claim No. 3103*, dated Mar. 11, 2020 ("*Kobar Declaration*") (ECF Doc. # 2418).)[5] The *Kobar Declaration* attached the following documents:

- Summary Plan Descriptions for the Avaya 2013, 2015 and 2016 Retiree Medical Expense Plans (Ex. A-1, A-2 and A-3);[6]

---

[5]    Kobar is the Benefits Manager at Avaya and has worked in Avaya's benefits department for eighteen years. He is "responsible for the day-to-day operations and management of the Hourly Pension Plan benefit program, and . . . familiar with the Company's broader suite of retirement benefits." (*Kobar Declaration* ¶ 1.)

[6]    According to Kobar, "[d]espite a reasonable search, the Company is unable to locate a copy of the summary plan descriptions for the Medical Expense Plan for the year 2014. However, based on my experience and my review of Avaya records and the Enrollment Records, there were no substantive

4

• Summary Plan Descriptions for the Avaya 2013, 2014 and 2015 Retiree Dental Expense Plans (Ex. B-1, B-2 and B-3);[7]

• Annual benefit enrollment guides for 2014 through 2017 (Ex. C-1, C-2, C-3 and C-4);

• Summary Plan Description for the 2017 Health Reimbursement Arrangement Plan for Represented Retirees (Ex. E); and

• Letter to Wattenmaker describing the medical benefits available for 2017 (Ex. D).

The narrative portion of the *Kobar Declaration* directed the Court to and explained the relevant provisions of the Plans relating to coverage and eligibility.[8] According to Kobar, for the Plans covering 2014, 2015 and 2016, a retiree had to opt into a specific plan, and if he didn't, he would default to an individual plan. (*Kobar Declaration* ¶¶ 27-28.) Similar opt in/default rules applied to the dental plans. (*Id.* ¶¶ 38-39.) In 2017, Avaya discontinued the medical plans for retirees in Wattenmaker's position and established a Health Reimbursement Account ("HRA") plan. (*Id.* ¶¶ 31-32; Ex. D at 1.) An eligible retiree had to opt into the HRA plan. (*Id.*, Ex. E at 6.)

According to Kobar, Wattenmaker never opted into any particular plan prior to the petition date, and Wattenmaker has not contended that he did. Kobar also stated

---

changes to the Medical Expense Plan in 2014 as compared to 2013, 2015, or 2016." (*Kobar Declaration* ¶ 8 n. 3.)

[7]    According to Kobar, "[d]espite a reasonable search, Avaya is unable to locate a copy of the summary plan description for the Dental Plan for the years 2016 or 2017. However, based on my experience and my review of Avaya and vendor records, there were no substantive changes to the Dental Plan in 2016 or 2017 as compared to 2013, 2014, or 2015." (*Kobar Declaration* ¶ 11 n. 4.)

[8]    Wattenmaker continues to question Kobar's expert credentials, (*First Reply*, at ECF pp. 2-3 of 9), but Kobar is not testifying as an expert. As the Court previously explained in response to a similar argument, the provisions of the relevant plans govern Wattenmaker's rights; Kobar's explanation assists the Court by focusing it on the relevant provisions and "Wattenmaker is free to point to any other provisions he believes are relevant." *Wattenmaker I*, 2019 WL 1750908, at *6 n. 10. Wattenmaker has not identified any other provision that the Court should read or specify any provision that Kobar has misinterpreted.

that Wattenmaker was not identified in Avaya's records until around August 1, 2016 (the approximate time the State Court Action was resolved) and consequently, his retirement medical benefits became effective on August 1, 2016.  (*Kobar Declaration* ¶¶ 29-30.) However, Wattenmaker, became a retiree as of January 13, 2014 regardless of what Avaya's records showed, and under the Settlement Term Sheet, he became entitled to retirement medical benefits as of that date.

Accordingly, Wattenmaker might be entitled to reimbursement for medical and/or dental expenses incurred during all or part of the pre-petition period provided that he complied with the conditions precedent to reimbursement under the plan that covered him.  In particular, "Medical Expense Plan participants were generally required to submit a claim for reimbursement within 15 months after the date of service, including a copy of the original bill as well as the Explanation of Benefit statement from the primary medical program provider, such as Medicare.  *See* Ex. A-1 at 104–105 (describing the claims process); Ex. A-2 at 105–106 (same); Ex. A-3 at 105–106 (same)." (*Kobar Declaration* ¶ 26 n. 14.)[9]  In other words, even if Wattenmaker was covered by the Avaya retirement medical plans during the pre-petition period, he would still have been required to submit claims under the plan to obtain reimbursement.

As noted, the Court directed Wattenmaker to produce "evidence of any medical or other health-related bills that he paid prior to and including January 19, 2017."  He has failed to comply with the Court's order.  He claims that he is unable to access this

---

[9]     Wattenmaker was eligible for Medicare Part A and Part B at all relevant times during his retirement.  Under the Avaya Medical Plans, Medicare was deemed his primary insurer whether or not he registered for it.  (Ex. A-1 at 36 ("When you or a dependent becomes Medicare-eligible, regardless of age, Medicare takes over as the primary benefit plan."); Ex. A-2 at 36 (same); (Ex. A-3 at 36 (same).

information because of the current pandemic as well as personal health reasons and the

fact that he has had to move from New York.  (*Second Reply* at ECF p. 17 of 19.)  Based

on Wattenmaker's inability to comply with the Court's order to provide evidence of

reimbursable medical expenses, he cannot demonstrate that he incurred reimbursable

expenses under any Avaya plan.  Rather than force the parties to engage in continued

litigation regarding the scope of his coverage at this time, particularly since Avaya may

choose to reimburse a reasonable amount of expenses rather than engage in continual,

expensive litigation, the Court will await the production by Wattenmaker of any

evidence of his medical expenses.  Accordingly, Avaya's objection to Wattenmaker's

claim for retirement medical benefits is sustained without prejudice to Wattenmaker's

right to seek reconsideration upon the production of evidence of expenses he claims are

reimbursable under any of Avaya's medical or dental plans during the pre-petition

period.

## Taxation of Costs

*Wattenmaker IV* also addressed Wattenmaker's request to tax costs.  The Court

concluded that Wattenmaker was entitled to tax costs and identified the categories of

costs he could recover:

> He is entitled to the cost of making one copy of any exhibit that he attached
> to his papers submitted in connection with the *Objection*.  Accordingly, he
> may seek to tax his copying costs within thirty days of the date of this order
> by filing and serving a notice of taxation with the Court. His notice of
> taxation should identify the exhibits whose copying costs he seeks to tax and
> attach bills for the costs claimed. Avaya will have seven days to file any
> objections. The failure to notice taxation of costs within the time set forth in
> this order shall constitute a waiver of the right to costs.

*Wattenmaker IV*, 2020 WL 697203, at *5.

7

Wattenmaker's Notice of Taxation, (*see Claimant's Notice of Taxation*, dated Mar. 11, 2020 (ECF Doc. # 2419)), sought $677.95 as set forth in an attached "Preliminary List."  Although Exhibit A seems to go well beyond the costs of copying exhibits or transcripts that he attached to his papers, Avaya responded that it consented to pay the costs but opposed any additional costs as the deadline has passed.  (*Letter From Ameneh M. Bordi, Esq. to the Court*, dated Mar. 17, 2020 (ECF Doc. # 2420).) The letter does not indicate that a copy was sent to Wattenmaker.  Wattenmaker's right to additional costs can be addressed when, as and if he seeks them.  Consequently, Wattenmaker's application for costs in the sum of $677.95 is granted.

So ordered.

Dated:  New York, New York
          October 20, 2020

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

8